Case No. 23-40076

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

R J REYNOLDS TOBACCO COMPANY; Santa Fe Natural Tobacco
Company, Incorporated; ITG Brands LLC; Liggett Group LLC; Neocom,
Incorporated; Rangila Enterprises, Incorporated; Rangila LLC; Sahil Ismail,
Incorporated; Is Like You, Incorporated,

Plaintiffs-Appellees,

v.

FOOD & DRUG ADMINISTRATION; United States Department of Health
and Human Services; Robert M. Califf, Commissioner of Food and Drugs;
Xavier Becerra, Secretary, U.S. Department of Health and Human Services,

Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of Texas

BRIEF FOR APPELLANTS

*Of Counsel:*

SAMUEL R. BAGENSTOS
  *General Counsel*
  *Dep't of Health and Human Services*

MARK RAZA
  *Chief Counsel*
  *Food and Drug Administration*

WENDY S. VICENTE
  *Deputy Chief Counsel for Lit.*
  *Food and Drug Administration*

JULIE LOVAS
  *Senior Counsel*
  *Office of the Chief Counsel*
  *Food and Drug Administration*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

DAMIEN M. DIGGS
  *United States Attorney*

MARK B. STERN
LINDSEY POWELL
CATHERINE M. PADHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7712*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 616-5372*

## STATEMENT REGARDING ORAL ARGUMENT

This case presents a First Amendment challenge to a final rule issued by the U.S. Food and Drug Administration (FDA) implementing provisions of the Family Smoking Prevention and Tobacco Control Act (Tobacco Control Act or Act) that require updated health warnings on cigarette packages and advertisements. The district court held that the images required by the rule are unconstitutional, and it vacated the rule in its entirety. Given the importance of the issues, the government respectfully requests oral argument.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

STATEMENT OF JURISDICTION ......................................................4

STATEMENT OF THE ISSUES ...........................................................5

STATEMENT OF THE CASE................................................................5

    A.    Statutory Background................................................................5

    B.    Regulatory background..............................................................11

    C.    District Court Proceedings........................................................18

SUMMARY OF ARGUMENT..............................................................22

STANDARD OF REVIEW ...................................................................25

ARGUMENT.........................................................................................25

I.    The Warnings Are Consistent with the First Amendment .................25

    A.    The text of the warnings withstands any potentially
        applicable level of scrutiny .........................................................25

        1.    The warning statements withstand review
            under *Zauderer* .....................................................25

        2.    The updated warning statements would also
            withstand review under *Central Hudson*.............................34

    B.    The addition of images to the warning statements
        likewise withstands First Amendment scrutiny.........................41

II.     Any Unconstitutional Component of the Updated
        Warnings Is Severable from the Remainder of the Rule......................58

III.    Any Remedy Should Be Limited to Plaintiffs .......................................64

CONCLUSION ..................................................................................................66

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Alaska Airlines, Inc. v. Brock*,
    480 U.S. 678 (1987) ..................................................................59

*American Acad. of Pediatrics v. FDA*,
    No. 1:16-cv-11985, 2019 WL 1047149 (D. Mass. Mar. 5, 2019) ................... 12

*American Meat Inst. v. USDA*,
    760 F.3d 18 (D.C. Cir. 2014) ........................................... 11, 22, 26, 28

*Ayotte v. Planned Parenthood of N. New England*,
    546 U.S. 320 (2006) ..................................................................58

*Board of Trs. of the State Univ. of N.Y. v. Fox*,
    492 U.S. 469 (1989) ................................................................ 35

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,
    447 U.S. 557 (1980) ............................................... 20, 24, 34

*Citizens United v. FCC*,
    558 U.S. 310 (2010) ................................................................ 35

*CTIA-The Wireless Ass'n v. City of Berkeley*,
    928 F.3d 832 (9th Cir. 2019) ........................................... 28

*Discount Tobacco City & Lottery, Inc. v. United States*,
    674 F.3d 509 (6th Cir. 2012) ......... 1, 8, 9, 28, 31, 32, 34, 35, 36, 38, 43, 55, 61

*Franciscan All., Inc. v. Becerra*,
    47 F.4th 368 (5th Cir. 2022) ........................................... 64

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010) ................................................................ 58

*Hersh v. United States ex rel. Mukasey*,
    553 F.3d 743 (5th Cir. 2008) ........................................... 35

*Ibanez v. Florida Dep't of Bus. & Prof'l Regulation*,
    512 U.S. 136 (1994) ........................................................ 33-34

iv

*Leavitt v. Jane L.*,
    518 U.S. 137 (1996) ........................................................................ 63

*Louisiana Crawfish Producers, In re*,
    852 F.3d 456 (5th Cir. 2017) ........................................................ 25

*MD/DC/DE Broad. Ass'n v. FCC*,
    236 F.3d 13 (D.C. Cir. 2001) ................................................. 59, 61

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
    559 U.S. 229 (2010) ........................................................................ 28

*National Elec. Mfrs. Ass'n v. Sorrell*,
    272 F.3d 104 (2d Cir. 2001) ......................................................... 28

*National Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ...................................................... 26, 33, 38-39

*Navarro-Miranda v. Ashcroft*,
    330 F.3d 672 (5th Cir. 2003) ........................................................ 22

*New York v. United States*,
    505 U.S. 144 (1992) ........................................................................ 59

*Public Citizen Inc. v. Louisiana Attorney Disciplinary Bd.*,
    632 F.3d 212 (5th Cir. 2011) ........................................................ 34

*R.J. Reynolds Tobacco Co. v. FDA*,
    696 F.3d 1205 (D.C. Cir. 2012) .............................................. 11, 25

*R.M.J., In re*,
    455 U.S. 191 (1982) ........................................................................35

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ................................................................... 25

*Turner Broad. Sys., Inc. v. FCC*,
    520 U.S. 180 (1997) ........................................................................ 39

*Zauderer v. Office of Disciplinary Counsel of the Sup. Ct. of Ohio*,
    471 U.S. 626 (1985) ................................ 18, 23, 27, 28, 32, 39, 42, 54

**Statutes:**

Administrative Procedure Act:
5 U.S.C. § 701 *et seq.* ........................................................ 4
5 U.S.C. § 706(2) .............................................................. 64

Comprehensive Smoking Education Act,
Pub. L. No. 98-474, § 2, 98 Stat. 2200, 2200 (1984) ............................7

Family Smoking Prevention and Tobacco Control Act,
Pub. L. No. 111-31, 123 Stat. 1776 (2009) ....................................11
§ 5, 123 Stat. at 1782 ........................................................11
§ 201(b), 123 Stat. at 1845 ...................................................62
§ 202(b), 123 Stat. at 1845 ...................................................11
21 U.S.C. § 387 note .............................................. 4, 11, 59, 65
Legislative Finding 31 .......................................1, 6, 12, 42
Legislative Finding 49 ......................................................6

Federal Cigarette Labeling and Advertising Act,
Pub. L. No. 89-92, 79 Stat. 282 (1965):
§ 2(1), 79 Stat. at 282 .......................................................7
§ 4, 79 Stat. at 283 ..........................................................7
15 U.S.C. § 1331 ............................................................. 7
15 U.S.C. § 1331(1) .......................................................... 41
15 U.S.C. § 1333(a)(1) ....................................................... 9
15 U.S.C. § 1333(a)(1)-(2) ................................................... 60
15 U.S.C. § 1333(a)(2) .................................................... 2, 10
15 U.S.C. § 1333(b)(2) ................................................ 2, 10, 60
15 U.S.C. § 1333(d)[1] .............................................. 2, 9, 14, 60
15 U.S.C. § 1333(d)[2] ................................................. 9, 10, 15

15 U.S.C. § 4402(a)(1)-(2) ................................................... 61

28 U.S.C. § 1291 ............................................................. 4

28 U.S.C. § 1331 ............................................................. 4

28 U.S.C. § 2201 ............................................................. 4

**Legislative Material:**

H.R. Rep. No. 111-58, pt. 1 (2009) ........................................................ 8-9, 26, 60

**Other Authorities:**

FDA, *Public Health Education Campaigns,* https://www.fda.gov/
    tobacco-products/public-health-education/public-health-
    education-campaigns (last updated Feb. 9, 2023) ......................................40

76 Fed. Reg. 36,628 (June 22, 2011) ................................................................... 11

84 Fed. Reg. 42,754 (Aug. 16, 2019)............................. 12, 13, 14, 15, 26, 27, 29,
                                                        30, 32, 36, 37, 38, 42, 44,
                                                        53, 54, 55, 56, 57

85 Fed. Reg. 15,638 (Mar. 18, 2020) ........................ 1, 5, 6, 12, 14, 15, 16, 17, 28,
                                                        29, 30, 31, 32, 33, 36, 37, 38, 39, 40,
                                                        41, 43, 44, 45, 46, 48, 49, 50, 51, 52,
                                                        53, 54, 55, 56, 57, 60, 61, 62

## INTRODUCTION

Despite decades of public and private efforts to communicate the negative health consequences of cigarette use, most people do not have a complete understanding of the many serious health consequences of smoking, and more than 30 million Americans continue to smoke cigarettes at the cost of more than 480,000 lives per year.  85 Fed. Reg. 15,638, 15,638, 15,652 (Mar. 18, 2020).  Adolescents in particular "underestimate the degree to which smoking can shorten life and the likelihood that they will suffer tobacco-related disease," *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 525 (6th Cir. 2012), and an overwhelming majority of those who become addicted to nicotine begin using tobacco products as minors, 21 U.S.C. § 387 note (Legislative Finding 31).

In enacting the Family Smoking Prevention and Tobacco Control Act, Congress found that the Surgeon General's warnings that have appeared on cigarette packages and advertisements for the past 35 years are all but invisible to consumers, and there remain substantial gaps in public awareness of the myriad health risks of smoking.  In order to promote greater public understanding of those risks, the Tobacco Control Act updates the text of the required warning statements (and authorizes FDA

to make further updates), and it requires that the warnings occupy the top 50% of the front and rear panels of cigarette packages and 20% of cigarette advertisements. 15 U.S.C. § 1333(a)(2), (b)(2). The Act also directs FDA to issue a rule requiring color images depicting the negative health consequences of smoking to accompany the updated warning statements. *Id.* § 1333(d)[1].[1] Consistent with that directive, the final rule at issue here requires eleven warning statements and accompanying images on cigarette packages and advertisements.

FDA's rule fully accords with the First Amendment. There should be little doubt as to the validity of the textual warning statements required by the rule, which convey undisputed facts about the negative health consequences of smoking. Statements of this type have long been required on cigarette packages and advertisements, and the scientific literature demonstrates that smoking causes each of the conditions described in the updated warnings. The record also amply demonstrates that the warnings'

---

[1] Section 1333 as amended contains two provisions labeled Subsection (d). They are distinguished in this brief by the addition of bracketed numerals.

larger size and more prominent placement will facilitate greater public understanding of these significant risks.

The addition of images depicting common presentations of these undisputed health risks does not alter the constitutional analysis. FDA explained its basis for selecting the particular images at issue and determined that each warning is likely to further the government's interest in promoting greater public understanding of the negative health consequences of smoking.

The district court misunderstood the appropriate constitutional analysis and the administrative record in declaring that the images are not factual and in stating that FDA failed to consider alternatives such as smaller, text-only warnings and public information campaigns. The Tobacco Control Act reflects Congress's judgment that smaller, text-only warnings do not adequately communicate the risks of cigarette use, and the administrative record confirms that the existing text-only warnings are ineffective as compared to larger, pictorial warnings in communicating health information about the risks of smoking. In addition, FDA expressly considered and rejected the other alternatives cited by the court. The warnings convey important factual information in a format that directly

advances the government's substantial interest, and the rule withstands review under any arguably applicable standard.

The district court also erred in concluding that the rule's components are not severable from each other despite express statements in both the Act and the final rule. Congress determined that the current warnings are ineffective and that changes to their text, size, placement, and pictorial content would promote greater public understanding of the undisputed risks of smoking. The Act makes clear that if some of those changes—*e.g.*, the addition of images—cannot be implemented, other aspects of the warnings, including their updated text, size, and placement, should still take effect. *See* 21 U.S.C. § 387 note. The same provision also confirms that any relief should be limited to the parties to this case. *Id.*

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331 and 2201 and 5 U.S.C. § 701 *et seq.* ROA.25. The district court entered final judgment on December 7, 2022. ROA.10221. The government filed a timely notice of appeal on February 1, 2023. ROA.10222-23. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

**1.** Whether FDA's final rule implementing provisions of the Tobacco Control Act requiring that cigarette packages and advertisements include warnings to promote public understanding of the undisputed health risks of smoking is consistent with the First Amendment.

**2.** Whether images and/or warning statements that are consistent with the First Amendment can be severed from any images or statements found to be invalid so as to implement Congress's intent that the current warnings be replaced by larger, updated warnings that will better promote public understanding of the undisputed health risks of smoking.

**3.** Whether any relief is properly limited to the parties to this case.

## STATEMENT OF THE CASE

### A.    Statutory Background

**1.** The Tobacco Control Act responds to decades of evidence regarding the myriad health risks posed by cigarettes and the tobacco industry's marketing of these inherently dangerous products. "Cigarette smoking remains the leading cause of preventable disease and death in the United States and is responsible for more than 480,000 deaths per year among cigarette smokers and those exposed to secondhand smoke." 85

Fed. Reg. at 15,652. "Although cigarette smoking prevalence has generally declined over the past several decades, approximately 34.2 million U.S. adults smoke cigarettes," along with more than 1 million middle- and high-school students. *Id.* Tobacco companies "have designed their cigarettes to precisely control nicotine delivery levels and provide doses of nicotine sufficient to create and sustain addiction." 21 U.S.C. § 387 note (Legislative Finding 49). As a result, becoming addicted to nicotine is easy; stopping is very hard.

Despite laws prohibiting the sale of tobacco products to individuals under the age of 21, the "overwhelming majority of Americans who use tobacco products begin using such products while they are minors and become addicted to the nicotine in those products before reaching the age of 18." 21 U.S.C. § 387 note (Legislative Finding 31). "[O]n average, each day in the United States, approximately 1,800,000 youth ages 12-17 smoke their first cigarette, and 170 youth become daily cigarette smokers." 85 Fed. Reg. at 15,652. Smokers thus typically become addicted well before they are capable of exercising adult judgment.

**2.** Since 1966, Congress has required textual warning statements on cigarette packaging so that "the public may be adequately informed" of the

dangers of smoking.  Federal Cigarette Labeling and Advertising Act, Pub. L. No. 89-92, § 2(1), 79 Stat. 282, 282 (1965) (codified as amended at 15 U.S.C. § 1331).  The original health warning read, "Caution: Cigarette Smoking May Be Hazardous to Your Health."  *Id.*  § 4, 79 Stat. at 283.

Congress has updated the required warnings periodically to make "Americans more aware of any adverse health effects of smoking, to assure the timely and widespread dissemination of research findings and to enable individuals to make informed decisions about smoking." Comprehensive Smoking Education Act of 1984, Pub. L. No. 98-474, § 2, 98 Stat. 2200, 2200 (1984).  Since the 1984 Act took effect, Congress has required manufacturers to display the following four statements on cigarette packages and advertisements on a rotating basis:

> SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, and May Complicate Pregnancy.

> SURGEON GENERAL'S WARNING: Quitting Smoking Now Greatly Reduces Serious Risks to Your Health.

> SURGEON GENERAL'S WARNING: Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, And Low Birth Weight.

> SURGEON GENERAL'S WARNING: Cigarette Smoke Contains Carbon Monoxide.

These warnings, referred to as the Surgeon General's warnings, "take up less than 5% of cigarette packaging and advertising" and "appear on only one side panel of the cigarette pack." *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 563 (6th Cir. 2012). "[E]mpirical studies consistently indicate that these warnings"—which have gone unchanged for several decades—"are given little attention or consideration by viewers" and "do not effectively convey the risks of smoking." *Id.* (quotation marks omitted). Despite decades of health warnings and public information campaigns, "adolescents underestimate the degree to which smoking can shorten life and the likelihood that they will suffer tobacco-related disease," and both adolescent and adult smokers "[a]re more than twice as likely as nonsmokers to doubt that tobacco use, even for a period of 30 to 40 years, w[ill] cause death." *Id.* at 525.

**3.** Finding that "[t]he current Surgeon General warnings on tobacco products are ineffective in providing adequate warnings about the dangers of tobacco products," Congress included in the Family Smoking Prevention and Tobacco Control Act provisions that "require[] stronger and more specific health warnings" and that "incorporate color graphics." H.R. Rep.

No. 111-58, pt. 1, at 4 (2009).  The Act directs that cigarette packages and

advertisements bear one of the following statements, on a rotating basis:

> WARNING: Cigarettes are addictive.
>
> WARNING: Tobacco smoke can harm your children.
>
> WARNING: Cigarettes cause fatal lung disease.
>
> WARNING: Cigarettes cause cancer.
>
> WARNING: Cigarettes cause strokes and heart disease.
>
> WARNING: Smoking during pregnancy can harm your baby.
>
> WARNING: Smoking can kill you.
>
> WARNING: Tobacco smoke causes fatal lung disease in nonsmokers.
>
> WARNING: Quitting smoking now greatly reduces serious risks to your health.

15 U.S.C. § 1333(a)(1).  The Act further provides that the Secretary of

Health and Human Services "may adjust the . . . text of any of the label

requirements . . . if the Secretary finds that such a change would promote

greater public understanding of the risks associated with the use of tobacco

products."  *Id.* § 1333(d)[2].  The Act also directs the Secretary to "issue

regulations that require color graphics depicting the negative health

consequences of smoking to accompany the label statements."  *Id.*

§ 1333(d)[1].  This statutory provision was upheld against a facial First

Amendment challenge in *Discount Tobacco*, 674 F.3d at 551.

The Tobacco Control Act provides specific instructions about the warnings' format. The warning labels must comprise the top 50% of the front and rear panels of cigarette packages and 20% of any cigarette advertisement. 15 U.S.C. § 1333(a)(2), (b)(2). In addition, the text on cigarette packages generally must be in conspicuous 17-point type; but if the 17-point type would take up more than 70% of the warning label, smaller type may be used as long as the text occupies at least 60% of that area. *Id.* § 1333(a)(2). For advertisements, the required text size varies with the advertisement's size. *Id.* § 1333(b)(2). As with the text of the warning statements, the Secretary may change the "format, type size, [and] color graphics" of the warnings to promote greater public understanding of the risks of smoking. *Id.* § 1333(d)(2).

The statute also contains a severability clause. Section 5 of the Tobacco Control Act directs that "[i]f any provision of this division, of the amendments made by this division, or of the regulations promulgated under this division (or under such amendments), or the application of any such provision to any person or circumstance is held to be invalid, the remainder of this division, such amendments and such regulations, and the application of such provisions to any other person or circumstance shall

10

not be affected and shall continue to be enforced to the fullest extent possible."  Pub. L. No. 111-31, § 5, 123 Stat. 1776, 1782 (2009) (codified at 21 U.S.C. § 387 note).

### B.    Regulatory Background

**1.**  This case concerns the constitutionality of FDA's 2020 rule implementing the Tobacco Control Act's warning provisions.  Before issuing that rule, FDA initially promulgated a different rule that prescribed images to accompany the textual warning statements set forth in the Tobacco Control Act.  76 Fed. Reg. 36,628 (June 22, 2011).  A divided panel of the D.C. Circuit applied intermediate scrutiny—in a portion of the opinion that has since been overruled, *see American Meat Inst. v. USDA*, 760 F.3d 18, 22 (D.C. Cir. 2014) (en banc)—and held that the warnings did not withstand First Amendment review based on the administrative record for that rulemaking and the specific images selected.  *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205 (D.C. Cir. 2012).

In undertaking the current rulemaking as required by the Tobacco Control Act, FDA explained that the purpose of the warnings—as expressly contemplated by the Act, Tobacco Control Act § 202(b), 123 Stat. at 1845—is to "promote greater public understanding of the negative

11

health consequences of cigarette smoking." 85 Fed. Reg. at 15,638.[2] While

warning statements have long been required on cigarette packages and

advertisements, there is overwhelming evidence that "the existing Surgeon

General's warnings currently used in the United States go unnoticed and

are effectively 'invisible.'" *Id.* This is particularly true for adolescents, who

constitute by far the greatest share of new smokers. The "overwhelming

majority of Americans who use tobacco products begin using such

products while they are minors and become addicted to the nicotine in

those products before reaching the age of 18." 21 U.S.C. § 387 note

(Legislative Finding 31). As FDA explained, adolescents generally "do not

see or read, and do not remember, the current . . . warnings." 84 Fed. Reg.

42,754, 42,761 (Aug. 16, 2019); *see also id.* 42,760-61 (describing numerous

studies, including one in which only 19% of adolescents could correctly

recall the general theme of a warning statement after being shown

advertisements with one of the existing Surgeon General's warnings).

---

[2] In an action brought by public health groups, a district court ordered FDA to submit for publication a proposed rule by August 15, 2019, and a final rule by March 15, 2020. *American Acad. of Pediatrics v. FDA*, No. 1:16-cv-11985, 2019 WL 1047149, at *3 (D. Mass. Mar. 5, 2019).

FDA also found that "consumers are largely unaware of the negative health consequences of cigarette smoking not mentioned in current warnings as well as more specific information about the negative health effects and their mechanisms." 84 Fed. Reg. at 42,766. Indeed, multiple studies show that about a third of adult smokers did not know that cigarettes are proven to cause cancer, let alone the "complete range of [other] illnesses" caused by smoking. *Id.* at 42,761-62.

To determine what warnings would best promote public understanding of the negative health consequences of smoking, FDA began with a "careful review of the scientific literature on the health risks associated with cigarette smoking," focusing in particular "on negative health effects that are less known, less understood, or about which the public holds misperceptions." 84 Fed. Reg. at 42,765. FDA identified some of the health conditions more recently linked to smoking as "an opportunity to educate the public about negative health consequences of cigarette smoking that are subject to particularly low awareness and understanding." *Id.* at 42,766.

FDA undertook a series of consumer research studies to identify warning statements that would promote greater understanding of the risks

13

of smoking.  The statements evaluated by FDA included those set forth in the Tobacco Control Act as well as statements drafted by the agency to provide information about more recently identified health risks.  84 Fed. Reg. at 42,767-68.  The statements drafted by the agency generally outperformed those set forth in the Act in conveying new information to study participants.  *Id.*  Following several rounds of study, FDA selected five of the statements set forth in the Act, along with ten additional warning statements, to pair with images for further testing.  *Id.* at 42,769.

To determine what images "depicting the negative health consequences of smoking" should accompany the warning text, as required by 15 U.S.C. § 1333(d)[1], "FDA consulted the medical literature and internal Agency medical experts to identify common, visual presentations of each health condition described by the textual warning statements," 85 Fed. Reg. at 15,661, and it selected a concordant, medically accurate, photorealistic image depicting each condition.  FDA explained that the photorealistic illustration format "provid[es] factually accurate images that depict common presentations of the health conditions in a realistic and objective format devoid of non-essential elements."  84 Fed. Reg. at 42,770 (also explaining that bar charts and graphs would be less effective because

14

they are often misinterpreted by the public and require a higher degree of numerical proficiency to understand).

Following a series of consumer research studies, FDA selected thirteen text-and-image pairings for inclusion in the proposed rule, 84 Fed. Reg. at 42,766, and it ultimately chose eleven of those pairings for the final rule issued on March 18, 2020.  All eleven of the selected pairings outperformed the current Surgeon General's warnings on measures that FDA determined were most predictive of improved understanding, including ''new information'' and ''self-reported learning.''  85 Fed. Reg. at 15,659.  Of the eleven warnings, two use textual statements provided in the Tobacco Control Act, while the other nine use new or modified text, consistent with 15 U.S.C. § 1333(d)[2].  *See* 85 Fed. Reg. at 15,641-42.

The required warnings are depicted below:

Required
Warnings:
2020 Final Rule












In the preamble to the final rule, FDA explained that "[t]here is no controversy about whether cigarette smoking causes the negative health consequences that form the content of the warnings."  85 Fed. Reg. at 15,646; *see id.* at 15,670 (noting that for each of the health conditions identified in the warnings, the causal link with cigarette smoking is well

documented in the scientific literature).  The text of each warning describes an undisputed health risk of smoking, and the concordant images that accompany the text show common presentations of those conditions.  *See id.* at 15,646.  In response to comments, FDA acknowledged that the "factually accurate content" of the warnings "may evoke subjective, emotional responses from some consumers" because that content reflects the "very real, serious, and sometimes deadly outcomes of cigarette smoking."  *Id.*  But "the possibility that factual content may evoke an emotional reaction does not render the content less factual."  *Id.*

Like the Tobacco Control Act, the preamble to the final rule expressly states that "[i]n the event that some portions of the rule are stricken, . . . each other portion of the rule would 'function sensibly' on its own" and is severable from the remainder.  85 Fed. Reg. at 15,695.  Thus, "if a court were to invalidate all of the images . . . FDA intends for the invalidated images to be severed and all the warnings to go into effect with only their textual warning statements."  *Id.*  Similarly, "if a court were to invalidate some of the . . . text-and-image pairings[], but some of the pairings remained valid, FDA intends that the remaining required warnings would go into effect."  *Id.*

## C.    District Court Proceedings

Plaintiffs—four cigarette manufacturers and five cigarette retailers—

filed suit challenging the new warnings rule under the First Amendment

and the Administrative Procedure Act, and challenging the Tobacco

Control Act's graphic-warning provision under the First Amendment.  The

government moved to dismiss or transfer the case based on the lack of

standing of the only party (a retailer) for which venue in the district was

independently appropriate.  The parties also filed cross-motions for

summary judgment.  Only plaintiffs' First Amendment challenge to the

final rule and the corresponding scope of relief are at issue on appeal.

The district court held that the warnings are inconsistent with the

First Amendment and granted summary judgment for plaintiffs.

ROA.10178.  The court first found inapplicable the standard of review set

forth in *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*,

471 U.S. 626 (1985).  That standard provides that required disclosures of

factual and uncontroversial information in the context of commercial

speech are constitutional unless they are unduly burdensome.  The district

court found the standard inapplicable on the ground that the warnings

"may convey one thing to one person and a different thing to another,"

ROA.10205, and thus "are not purely factual and uncontroversial,"
ROA.10200.

The court addressed only three of the eleven warnings prescribed by
the rule before holding all eleven unconstitutional.  With respect to the
warning that "[s]moking causes head and neck cancer," the court found
that "[o]ne person might view the image as showing a typical
representation of the sort of neck cancer caused by smoking before a
person could seek medical treatment," whereas another "might view the
image as showing a stylized, exaggerated representation of neck cancer,
perhaps in an effort to provoke repulsion."  ROA.10205.  Still other
viewers, the court speculated, "might interpret the depicted person's gaze,
in conjunction with the text, as expressing regret at her choice to smoke or
the message that smoking is a mistake."  ROA.10205.

With respect to the warning that "[s]moking can cause heart disease
and strokes by clogging arteries," the court posited that "[c]onsumers may
reasonably interpret the image in this warning as indicating that open-
heart surgery, whose scars are shown, is the most common treatment for
heart disease," when in fact "non-surgical treatment is 2.5 times more
common or typical."  ROA.10206-07.  The court criticized the warning that

"[s]moking causes cataracts, which can lead to blindness" for being unclear as to "whether it shows cataracts or blindness" or whether the image "depict[s] the most common result of cataracts." ROA.10207.

Without acknowledging FDA's findings that these images depict common presentations of the undisputed health risks identified by the warning text, and without examining the other eight warnings, the court held that "each of the graphic warnings required by the FDA rule" has the "capacity for multiple reasonable interpretations" such that "consumers may perceive expression whose truth has not been established by the record." ROA.10208. The court also reasoned that, "[a]s to each warning, it is not beyond reasonable probability that consumers would take from it a value-laden message that smoking is a mistake," making the warnings "provocative." ROA.10205-06.

The court then evaluated the warnings under the standard established by *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980), which asks whether a restriction on commercial speech is not more extensive than necessary to advance a substantial governmental interest. The court held that, even assuming the warnings further a substantial government interest, the "narrow-tailoring

20

requirement is not met here" because "the government has not shown that compelling these large, graphic warnings is necessary in light of other options." ROA.10210-11.[3] The court stated that, "[r]ather than taking over half of a package's face, the government may take advantage of other strategies such as increasing funding for anti-smoking advertisements in various forms of media, increasing funding for speakers and school instruction, and increasing anti-smoking resources in the government's own communications." ROA.10210. The court held that FDA "cannot argue that less burdensome warnings on cigarette packages and advertisements would not achieve the government's interest," asserting that FDA had "not test[ed] the efficacy of 'smaller or differently placed warnings.'" ROA.10211.

The court rejected the government's argument that any unconstitutional elements of the required warnings should be severed from the remainder. Although the Tobacco Control Act and the final rule expressly provide that any unconstitutional provisions are severable, the

---

[3] Plaintiffs argued for strict scrutiny, but the court did not decide that question because it held that the warnings could not withstand intermediate scrutiny. ROA.10208.

district court held that the statute's "general" severability provision must yield to the "specific direction that health warnings must include both graphics and text, which become effective only as a whole." ROA.10213 (quoting *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 676 (5th Cir. 2003)). The court then ordered the rule vacated, rejecting the government's arguments that the remedy should be tailored to plaintiffs. ROA.10214-20.

## SUMMARY OF ARGUMENT

**A.** For decades, Congress has required cigarette manufacturers to include warnings on product packages and advertisements to promote public understanding of the negative health consequences of smoking. There is "no dispute about Congress's authority to require health warnings on cigarette packages," *American Meat Inst. v. USDA*, 760 F.3d 18, 31 (D.C. Cir. 2014) (en banc) (Kavanaugh, J., concurring in judgment), and plaintiffs do not suggest that the existing Surgeon General's warnings are at odds with the First Amendment.

It is not seriously controverted that the existing warnings go largely unnoticed. They also provide no information about a variety of significant health risks that have received less public attention than those identified in the Surgeon General's warnings. Congress determined that larger,

22

updated warnings that include images are needed to help ensure that the

public in general—and adolescents in particular—better understand these

serious and undisputed risks.

There should be little doubt that the larger, updated warning

statements required by FDA's rule are consistent with the First

Amendment.  There is overwhelming scientific evidence that smoking

causes each of the conditions described in the warnings' text.  These factual

and uncontroversial statements are properly subject to review under

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S.

626 (1985), and they readily withstand such review.  The record shows that

the larger size of the warnings is justified by the government's interest in

promoting public understanding of these risks, and there is no evidence

that the warnings will unduly burden plaintiffs' speech, which will still

occupy a full 80% of advertisements and over 50% of product packages.

The addition of images to these warning statements does not alter the

constitutional analysis.  FDA selected photorealistic images that depict

common presentations of the undisputed health risks identified in the

warning text.  The record shows that the images at issue corroborate and

enhance consumer understanding of the undisputed factual content of the

warning statements.  Like the warnings' text, the statement-and-image

pairings disclose factual and uncontroversial information about the health

risks of smoking and are subject to—and withstand—review under

*Zauderer*.

The warnings would likewise withstand review under *Central Hudson*

*Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980),

were that the applicable standard.  The government has a substantial

interest in promoting public understanding of the undisputed health risks

of smoking.  And, contrary to the district court's suggestion, FDA

appropriately considered alternative means of promoting such

understanding and found that they would be inadequate substitutes for the

rule at issue.

**B.**  If the Court were to conclude that certain images or aspects of the

warnings did not withstand review, the appropriate course would be to

sever those parts of the rule from the remainder.  Both Congress and FDA

expressly stated their intent that all valid aspects of the rule take effect

without any invalid portions, and there is ample evidence that the

remaining provisions would function on their own.  The district court

erred in finding that the images are not severable from the updated

warning statements.  And it also erred in vacating the rule and entering relief that is not limited to the parties to this case.

## STANDARD OF REVIEW

This Court "review[s] grants of summary judgment *de novo*, applying the same standard as the district court." *In re Louisiana Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017).  The "Administrative Procedure Act governs [the Court's] review of the record," *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1217-18 (D.C. Cir. 2012), and the agency's "evaluation of the underlying facts is entitled to appropriate weight," *Trump v. Hawaii*, 138 S. Ct. 2392, 2422 (2018).

## ARGUMENT

**I.    The Warnings Are Consistent with the First Amendment.**

**A.    The text of the warnings withstands any potentially applicable level of scrutiny.**

**1.    The warning statements withstand review under *Zauderer*.**

**a.**  That the textual health warnings required by the final rule are consistent with the First Amendment should not be subject to serious dispute.  The proposition that cigarette manufacturers should disclose a product's inherent risks is neither novel nor controversial.  Congress has

mandated health warnings of this type since 1965, and plaintiffs do not question their constitutionality.  There remains "no dispute about Congress's authority to require health warnings on cigarette packages." *American Meat Inst. v. USDA*, 760 F.3d 18, 31 (D.C. Cir. 2014) (en banc) (Kavanaugh, J., concurring in judgment).  Similarly, in reviewing other types of disclosures, the Supreme Court has declined to "question the legality of health and safety warnings long considered permissible." *National Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2376 (2018).

Like previous warnings, the updated warnings use straightforward language to communicate uncontroverted facts about the health risks of smoking.  "Cigarette smoking remains the leading cause of preventable disease and death in the United States."  84 Fed. Reg. at 42,758.  In addition to the roughly "163,700 deaths from cancer, 160,600 deaths from circulatory conditions, and 113,100 deaths from pulmonary diseases each year," "[c]igarette smoking also causes many other health conditions," *id.*, and it "harms nearly every organ of the body," H.R. Rep. No. 111-58, pt. 1, at 2.

The record shows that "smokers have approximately 45 percent higher risk of diabetes than nonsmokers," and an estimated "1.8 million

Americans have diabetes due to smoking." 84 Fed. Reg. at 42,759. In

addition, "[c]urrent smokers are nearly three times as likely as never

smokers to have peripheral arterial disease, a condition that can lead to

amputation of limbs," and "[m]ale smokers have been found to be 40 to 50

percent more likely to have erectile dysfunction due to diminished blood

flow." *Id.* "Current smokers have also been found to have approximately

50 percent higher risk of age-related cataracts than never smokers." *Id.* at

42,758. And "[s]mokers also have increased risk of many types of cancer,

beyond lung cancer." *Id.* at 42,759. The updated warning statements

convey factual information about these undisputed health risks.

**b.** Because the required warning statements communicate "factual

and uncontroversial" information in the context of commercial speech, they

are subject to review under *Zauderer v. Office of Disciplinary Counsel of the*

*Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). Unlike restrictions on

speech, disclosure requirements do not prevent manufacturers "from

conveying information to the public" but rather require "more information

than they might otherwise be inclined to present." *Id.* at 650. As a result,

the Supreme Court has upheld required disclosures of "purely factual and

uncontroversial information" as long as they are not "unjustified or unduly

burdensome" so as to "chill[] protected commercial speech." *Id.* at 651; *see Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249-51 (2010).

Contrary to plaintiffs' contention, *see* ROA.2194 n.4, ROA.2208, this Court has not previously held that *Zauderer* is limited to disclosures that are intended to avoid consumer deception. *See* ROA.10203. Every court of appeals to consider that question has held that *Zauderer* "sweeps far more broadly" and is based not on the interest in combatting deception specifically but instead on the "'material differences between disclosure requirements and outright prohibitions on speech.'" *American Meat*, 760 F.3d at 22 (quoting *Zauderer*, 471 U.S. at 650); *see CTIA-The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 844 (9th Cir. 2019); *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 556–57 (6th Cir. 2012); *National Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 114-15 (2d Cir. 2001). The Court need not resolve that question here, however, because the warnings at issue are "intended in part to correct consumer misperceptions regarding the risks presented by cigarettes, and thereby 'to dissipate the possibility of consumer confusion or deception.'" 85 Fed. Reg. at 15,645 (quoting *Zauderer*, 471 U.S. at 651); *see Discount Tobacco*, 674 F.3d at 562 (concluding, based on the "decades-long deception by Tobacco Companies" and the fact

that "advertising promoting smoking deceives consumers if it does not warn consumers about tobacco's serious health risks," that the warnings are reasonably related to avoiding consumer deception).

**c.** As discussed above, the record amply demonstrates the "factual and uncontroversial" nature of the required warning statements. Each of the health conditions described in the warnings has been causally linked to smoking, 85 Fed. Reg. at 15,670, and FDA explained its basis for concluding that each warning statement is factually accurate, *id.* at 15,672-84. "There is no controversy about whether cigarette smoking causes the negative health consequences that form the content of the warnings." *Id.* at 15,646.

Plaintiffs nevertheless urge that the warning statements "misleadingly focus[] on conditions that less frequently arise from smoking as opposed to more prevalent conditions," and that *Zauderer* therefore does not apply. ROA.2202. As an initial matter, plaintiffs are incorrect in stating that the prescribed warnings focus on rare health consequences to the exclusion of common ones. The three warnings that concern lung and heart disease plainly address "more prevalent conditions." *See* 84 Fed. Reg. at 42,758. The same is true of the warning for type 2 diabetes, as an estimated "1.8 million Americans have diabetes due to smoking." *Id.* at

42,759.  And erectile dysfunction is "40 to 50 percent more likely" among

male smokers in comparison to the male population generally.  *See id.*

While other warnings address somewhat less common conditions,

the risks are still significant and relevant to a person's ability to make an

informed choice regarding cigarette use.  For example, it is true that

smoking more often causes lung cancer than it does bladder cancer, but

"current smokers have been found to have almost four times the risk of

bladder cancer as never smokers," and smoking is responsible for an

estimated 5,000 bladder cancer deaths in the United States each year, 84

Fed. Reg. at 42,759 — or roughly "40 percent of bladder cancer deaths"

nationwide, 85 Fed. Reg. at 15,675.  Those undisputed scientific findings

amply support the statement that "smoking causes bladder cancer,"

making it factual and uncontroversial.  Each of the other warning

statements adopted by FDA likewise communicates a scientifically

established fact about the negative health consequences of smoking.  *See*

*id.* at 15,646, 15,672-84.

The verb "cause" has long been used in tobacco warning statements

to convey the causal relationship between smoking and various health

conditions, and plaintiffs err in contending that the "use of the word

30

'cause' (as opposed to . . . phrases such as 'increases the risk of,' 'may cause,' or 'can cause')" renders the warnings "misleading, confusing, or inaccurate." ROA.2202. The existing Surgeon General's warnings caution that "smoking *causes* lung cancer," for example, and no one contends that this statement is misleading even though a majority of smokers never develop lung cancer. Likewise, nearly half of the warning statements prescribed by the Tobacco Control Act identify conditions that smoking "causes," and the Sixth Circuit held that those statements are factual and subject to review under *Zauderer*. *See Discount Tobacco*, 674 F.3d at 558 (finding it "beyond cavil that smoking presents the serious health risks described in the warnings" prescribed by the Tobacco Control Act and holding that, "[b]ecause the textual warnings require disclosing factual information rather than opinions, *Zauderer*'s rational-basis rule applies"). There is thus nothing novel about the rule's use of the word "cause" to convey an undisputed causal relationship between smoking and a health condition, as in the warning that "[s]moking causes type 2 diabetes." 85 Fed. Reg. at 15,683 (finding that "[t]his statement is supported by strong epidemiological evidence that confirms the appropriate use of the causal language as written").

31

**d.** The updated warning statements should be upheld under

*Zauderer* because they are not "unduly burdensome." *Zauderer*, 471 U.S. at

651. FDA found "considerable evidence that the [current] Surgeon

General's warnings go largely unnoticed and unconsidered," and "the

scientific literature strongly supports that larger warnings . . . are necessary

to ensure that consumers notice, attend to, and read the messages

conveyed by the warnings." 85 Fed. Reg. at 15,640, 15,647; *see* 84 Fed. Reg.

at 42,779; *Discount Tobacco,* 674 F.3d at 530 (concluding that "[t]he

government has provided ample evidence supporting the size requirement

for the new" cigarette warnings prescribed by the Tobacco Control Act).

Similarly, the "placement of the warnings at the top 50 percent of the front

and rear panels of the packages and at least the top 20 percent of

advertisements will better ensure noticeability of the warnings." 85 Fed.

Reg. at 15,651.

As the Sixth Circuit found, tobacco manufacturers have "not shown

that the remaining portions of their packaging are insufficient for them to

market their products," and any such argument is "undercut by Plaintiffs'

claim that the warnings will not reduce the use of their tobacco products."

*Discount Tobacco*, 674 F.3d at 567. FDA determined that "[t]here is ample

room for manufacturers to distinguish their products from other products

using the lower half of a cigarette package and the remaining 80 percent of

advertisements for brand names, logos, or other information."  85 Fed. Reg.

at 15,647.  "There is also additional space on the side panels of cigarette

packages due to the removal of the Surgeon General's warnings."  *Id.*  With

respect to commenters' "concern that the rule will render cigarette

packages indistinguishable from one another because of certain display

cases that show only the top portions of cigarette packages," FDA noted

that "there is no requirement that display cases be configured that way,"

and such displays in any event "commonly feature a large amount of

'header,' 'flipper,' and other cigarette advertising that is subject only to a 20

percent requirement," leaving 80 percent of that space for brand

advertising and other promotional material.  *Id.*

The requirements here are unlike those found unduly burdensome in

other cases.  The disclosure required in *National Institute of Family & Life

Advocates,* which entailed a 29-word statement repeated "in as many as 13

different languages" regarding the medical licensing of certain facilities

and providers, was likely to "drown[] out [a] facility's own message."  138

S. Ct. at 2378.  Similarly, in *Ibanez v. Florida Department of Business &*

33

*Professional Regulation*, 512 U.S. 136, 146 (1994), the substantial length of the required disclosure prevented practitioners from using the "Certified Financial Planner" or "CFP" designation on business cards, letterhead, or yellow-pages listings—thereby preventing them from engaging in the desired speech. And in *Public Citizen Inc. v. Louisiana Attorney Disciplinary Board*, 632 F.3d 212, 228-29 (5th Cir. 2011), a requirement to disclose at least five different pieces of information in attorney advertisements was so extensive as to effectively preclude advertisements of the type that triggered the requirement. There is no contention that the warnings at issue here will similarly preclude plaintiffs' speech. *See Discount Tobacco*, 674 F.3d at 567.

### 2. The updated warning statements would also withstand review under *Central Hudson*.

**a.** The updated warning statements would also withstand review under *Central Hudson* were that the applicable standard. In applying *Central Hudson*, courts will uphold a restriction on commercial speech as long as it directly advances a substantial governmental interest and is no more extensive than necessary to further that interest. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566 (1980). That standard

does not require that a rule be "the least restrictive means" of regulating but rather is satisfied if the rule is "in proportion to the interest served." *Board of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) (quoting *In re R.M.J.*, 455 U.S. 191, 203 (1982)).

"There can be no doubt that the government has a significant interest . . . in warning the general public about the harms associated with the use of tobacco products." *Discount Tobacco*, 674 F.3d at 519. This Court has previously found "'substantially compelling' for First Amendment purposes" the government's interest "in ensuring that debtors who are contemplating filing for bankruptcy have some basic knowledge about the process." *Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 766 (5th Cir. 2008). And the disclosures here enable consumers "to make informed decisions and give proper weight" to the serious health risks of using cigarettes. *Citizens United v. FCC*, 558 U.S. 310, 371 (2010) (upholding mandatory campaign-finance disclosures). As the district court observed, "[p]romoting public understanding of the dangers of smoking is also the state interest behind the current regime of 'Surgeon General's Warnings,' which plaintiffs do not question under *Central Hudson*." ROA.10209 (footnote omitted).

FDA's findings amply support Congress's determination that updated warnings are needed to address the "gaps in public understanding" left by the current Surgeon General's warnings. 85 Fed. Reg. at 15,654. FDA found that "consumers suffer from a pervasive lack of knowledge about and understanding of the many negative health consequences of smoking." *Id.* at 15,654. About a third of adult smokers do not know that cigarettes are proven to cause cancer, let alone the "range of [other] illnesses caused by smoking." 84 Fed. Reg. at 42,761-62; *see* 85 Fed. Reg. at 15,654 (reiterating that "the published literature indicates that consumers do not understand the wide range of illnesses caused by smoking" (emphasis omitted)).

There is also substantial "evidence that adolescents underestimate the degree to which smoking can shorten life and the likelihood that they will suffer tobacco-related disease." *Discount Tobacco*, 674 F.3d at 525. Both adolescent and adult smokers "[a]re more than twice as likely as nonsmokers to doubt that tobacco use, even for a period of 30 to 40 years, w[ill] cause death." *Id.* While warning statements have long been required on cigarette packages and advertisements, there is overwhelming evidence that "the existing Surgeon General's warnings currently used in the United

States go unnoticed and are effectively 'invisible.'"  85 Fed. Reg. at 15,638.

And multiple studies show that "consumers are largely unaware of the

negative health consequences of cigarette smoking not mentioned in

current warnings."  84 Fed. Reg. at 42,766.

FDA determined that disclosure of the negative health consequences

identified in the warnings will directly advance the government's interest

in promoting greater public understanding of the risks of smoking.  FDA

explained that "the impact of cigarette warnings on knowledge is greatest

for topics that are not well known to the public."  84 Fed. Reg. at 42,764.

The agency studied the effect of the required warning statements and

found that each statement outperformed the current Surgeon General's

warnings along measures that are most "predictive of improved

understanding."  85 Fed. Reg. at 15,658; 84 Fed. Reg. at 42,769.  More than

85% of study participants indicated that the warnings for diabetes and

bladder cancer conveyed new information.  85 Fed. Reg. at 15,675, 15,682.

And more than 70% of participants reported the same of the warnings for

head and neck cancer, cataracts, erectile dysfunction, and reduced blood

flow.  *Id.* at 15,674-75, 15,680-82.

There is "abundant evidence" that larger warnings likewise promote greater public understanding. *Discount Tobacco*, 674 F.3d at 565. The "scientific literature strongly supports that larger warnings, such as those of the size [required by the] rule, are necessary to ensure that consumers notice, attend to, and read the messages conveyed by the warnings, which leads to improved understanding of the specific health consequences" described in the warnings. 84 Fed. Reg. at 42,779. Moving the warnings from the small, side panels of packages to the more prominent front and back panels also increases the likelihood that the warning messages will be noticed. "[T]he communicative value of the size and location requirements" for the new warnings is thus "amply supported by evidence." 85 Fed. Reg. at 15,665.

**b.** The district court erred in concluding that the warnings fail to withstand review under *Central Hudson* because "the government has not shown that compelling these large, graphic warnings is necessary in light of other options," such as "increasing funding for anti-smoking advertisements in various forms of media, increasing funding for speakers and school instruction, and increasing anti-smoking resources in the government's own communications." ROA.10210 (citing *National Inst. of*

*Family & Life Advocates*, 138 S. Ct. at 2376).  The court also faulted FDA for

not "test[ing] the efficacy of 'smaller or differently placed warnings'" to

assess whether "less burdensome warnings on cigarette packages and

advertisements would" achieve the government's interest.  ROA.10211.

The district court's analysis runs counter to the Supreme Court's

admonishment that, "[b]ecause the First Amendment interests implicated

by disclosure requirements are substantially weaker than those at stake

when speech is actually suppressed," it is not "appropriate to strike down

such requirements merely because other possible means by which the State

might achieve its purposes can be hypothesized."  *Zauderer*, 471 U.S. at 651

n.14.  Congress made a considered decision that larger, updated warnings

are needed to promote public understanding of the negative health

consequences of smoking.  *See Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180,

196 (1997).  And FDA's findings amply support the judgment reflected in

the Tobacco Control Act that larger, updated warnings are needed to

promote public understanding of these risks.  *See* 85 Fed. Reg. at 15,650; 84

Fed. Reg. at 42,762-64, 42,779; *see also infra* pp. 53-57 (discussing FDA's

evidence that larger, more prominent warnings accompanied by

concordant images are needed to promote public understanding of the risks of smoking).

Even if it were appropriate to hypothesize about available alternatives, the district court erred in finding that the government failed to evaluate other options, including public information campaigns. *Infra* pp. 55-58. FDA already conducts such campaigns, and it has determined that they "are not, by themselves, an effective alternative" to the required warnings. 85 Fed. Reg. at 15,657-58.[4] Rather, they serve as a valuable complement to warnings included on product packages or advertisements in achieving the government's substantial interest in promoting greater public understanding of the health consequences of smoking. Indeed, FDA explained that these campaigns "can provide effective targeting and messaging," but "they do not reach every person who looks at a package of cigarettes or advertisements and do not receive as many impressions"—meaning instances in which the intended audience has the opportunity to view the content—as does "a comprehensive program of cigarette package

---

[4] *See* FDA, *Public Health Education Campaigns*, https://www.fda.gov/ tobacco-products/public-health-education/public-health-education- campaigns (last updated Feb. 9, 2023).

and cigarette advertisement warnings." *Id.* at 15,648.  Warnings on product

packages convey relevant information at precisely the moment that a

person is considering whether to smoke.

In addition, "[s]mokers and nonsmokers, including adolescents, also

are frequently exposed to cigarette advertising appearing in a range of

marketing channels, including print and digital media, outdoor locations,

and in and around retail establishments where tobacco products are sold."

85 Fed. Reg. at 15,653.  The inclusion of health warnings in those

advertisements "can provide a critical opportunity to" promote

understanding of these risks.  *Id.*  The decision to ensure that every person

who picks up a pack of cigarettes or sees a cigarette advertisement "be

adequately informed about any adverse health effects of cigarette

smoking" reflects a decades-long policy judgment by Congress that should

be respected.  15 U.S.C. § 1331(1).

### B.    The addition of images to the warning statements likewise withstands First Amendment scrutiny.

**1.**  The addition of images that accurately depict the negative health

consequences identified in the warnings' text does not change the

applicable level of scrutiny or the outcome of the analysis.  The images

41

work with the warning statements to "strengthen[] and reinforce[]" understanding of the negative health consequences of smoking, particularly for youth, 84 Fed. Reg. at 42,763-64, who are especially unlikely to notice the existing text-only warnings, *see id.* at 42,760-61. Promoting understanding of these risks among adolescents is especially important because "[a]n overwhelming majority of Americans who use tobacco products begin using such products while they are minors and become addicted to the nicotine in those products before reaching the age of 18." 21 U.S.C. § 387 note (Legislative Finding 31). And "[t]obacco advertising and promotion play a crucial role in the decision of these minors to begin using tobacco products." *Id.*

Because, as shown below, the information conveyed through the text-and-image warning pairs is "factual and uncontroversial," the pairings—like the text-only warning statements—are properly reviewed under *Zauderer*. The Supreme Court observed that the image at issue in that case was "an accurate representation of the Dalkon Shield [Intrauterine Device (IUD)] and ha[d] no features that are likely to deceive, mislead, or confuse the reader." *Zauderer*, 471 U.S. at 647. While that part of the opinion addressed a restriction precluding the use of the image in advertisements

rather than a provision requiring its disclosure, the Court's discussion of
the image "demonstrates that a picture can be accurate and factual."
*Discount Tobacco*, 674 F.3d at 560. "If a picture can accurately represent an
IUD, then there is no reason why a picture could not also accurately
represent a negative health consequence of smoking, such as a cancerous
lung." *Id.* "As the Sixth Circuit noted, medical students look at such
pictures or drawings to learn about medical conditions and biological
systems because they are factual" and useful in conveying information
about the presentation of those conditions. 85 Fed. Reg. at 15,646 (citing
*Discount Tobacco*, 674 F.3d at 559).

In promulgating the final rule, "FDA undertook a rigorous multistep
process to develop, test, and refine images that: (1) Are factually accurate;
(2) depict common visual presentations of the health conditions . . . and/or
show disease states and symptoms as they are typically experienced;
(3) present the health conditions in a realistic and objective format that is
devoid of non-essential elements; and (4) are concordant with the
accompanying text statements on the same health conditions." 85 Fed.
Reg. at 15,670. Going warning by warning, FDA explained the basis for its
conclusion that each "image depicts a factually accurate, common visual

43

presentation of the health condition and shows the disease state as it is typically experienced." *Id.* at 15,672; *see id.* at 15,672-85 (discussing each image). FDA also explained that, in each case, "[b]ecause the required warning contains the textual warning statement and image paired together, the image aids in understanding the negative health consequence that is the focus of the textual warning statement, and vice versa." *Id.* at 15,672. Thus, the factual nature of each image's depiction must be assessed in context of its accompanying textual warning statement.

Specific examples illustrate the way in which the text-and-image pairings promote understanding of factual and uncontroversial information about the negative health consequences of smoking. The text of the diabetes warning states that "Smoking causes type 2 diabetes, which raises blood sugar." As discussed, that statement reflects the undisputed fact that "smokers have approximately 45 percent higher risk of diabetes than nonsmokers." 84 Fed. Reg. at 42,759. The image accompanying the statement shows a person taking a blood glucose measurement—"a common action taken by people with type 2 diabetes." 85 Fed. Reg. at 15,683. And the blood glucose meter shows an elevated blood glucose level of 175 mg/dL, which represents a common presentation of the condition.

44

*See id.* These common features of diabetes are presented "in a realistic and objective format" that "does not contain additional unnecessary details . . . and does not contain any elements intended to evoke a negative emotional response." *Id.*

The same is true of the statement that "[s]moking during pregnancy stunts fetal growth," which is accompanied by an image of an infant on a scale that reads "4.00 lbs." 85 Fed. Reg. at 15,676. FDA explained that there is a "causal relationship between smoking and restricted fetal growth," *id.*, and "low birth weight is a strong and important indicator of fetal growth restriction," *id.* at 15,677. The warning image depicts a newborn on a scale that displays a weight of four pounds, which FDA observed is a low, but not "extremely" low, birth weight. *See id.* FDA explained that it chose not to include depictions of an incubator or a tube because such measures are more closely associated with premature birth than with stunted fetal growth, and the warning does not address premature birth. *Id.* In response to comments that the infant in the image is in apparent distress, FDA explained that "[c]rying among newborns is common and expected in this setting." *Id.*

45

The warning that "[s]moking causes bladder cancer, which can lead to bloody urine," is likewise accompanied by an image that "depicts a factually accurate, common visual presentation of the health condition and shows a symptom of the disease state as it is typically experienced." 85 Fed. Reg. at 15,675. FDA explained that "bloody urine is a very common, and, in most cases, the first visible symptom[,] of bladder cancer," *id.* at 15,676. The "specimen cup with a gloved hand depicts a routine sampling procedure typical in laboratory testing and medical processing of biological samples." *Id.* at 15,675. And the "color depicted in the image is factually accurate" as a typical presentation of bloody urine. *Id.* In each of these examples—as with the other text-and-image warning pairs—the warning statement and image convey factual information regarding an undisputed health risk of smoking.

**2.** Although the district court did not identify any way in which these images or the text-and-image pairings are inaccurate or controversial, it nevertheless declined to apply the *Zauderer* standard based on the view that "imagery can be more prone to ambiguous interpretation" than verbal statements, ROA.10205-06, and the conjecture that, "[b]ecause of their capacity for multiple reasonable interpretations, consumers may perceive

expression whose truth has not been established by the record,"
ROA.10208.  These sweeping objections overlook the close relationship
between the warning texts and their accompanying images, and they fail to
engage with FDA's findings regarding the specific ways in which the
images depict common presentations of undisputed health consequences of
smoking.

    The district court erred in not considering each of the eleven
warnings individually before holding them unconstitutional.  And for the
three images actually addressed in the opinion, the court's criticisms do not
bear scrutiny.  With respect to the warning that "[s]moking can cause heart
disease and strokes by clogging arteries," the district court acknowledged
that open-heart surgery—the scars of which are depicted in the warning
image—"is a 'common' and 'typical[]' treatment" for heart disease.
ROA.10206 (alteration in original).  But the court further observed that
"non-surgical treatment is 2.5 times more common," and it speculated that
"[c]onsumers may reasonably interpret the image in this warning as
indicating that open-heart surgery . . . is the most common treatment for
heart disease."  ROA.10206-07.

Contrary to the court's suggestion, the fact that heart disease may also be treated through other means does not detract from the fact that the procedure depicted is performed on hundreds of thousands of individuals annually to address the effects of coronary artery disease. 85 Fed. Reg. at 15,678. And the warning text and image together clearly convey the undisputed fact that heart disease is a negative health consequence of smoking. The court cited no support for the idea that a common and recognizable representation of a health condition is not "factual" simply because there may also be other ways to represent the condition.

With respect to the warning that "[s]moking causes cataracts, which can lead to blindness," the court questioned whether the image "depict[s] the most common result of cataracts" and faulted the image for being unclear as to "whether it shows cataracts or blindness." ROA.10207. But a depiction of either cataracts or blindness would accord with the warning statement, and the court again failed to explain why an image must depict the most common presentation of a disease in order to convey factual information. There is no dispute that smoking is "a major causal risk factor in the development and progression of cataracts," or that cataracts can lead to blindness. 85 Fed. Reg. at 15,684. While cataracts can be treated

surgically, *see id.*, that possibility does not obviate the risk created by smoking so as to make the statement or the image false.  FDA explained that "it is factually accurate and not uncommon for individuals to experience advanced cataracts as depicted in the image," *id.*, and the district court erred in ignoring those findings and substituting its own judgment as to the prevalence and presentation of this condition.

The only other warning the district court specifically addressed is the warning that "[s]moking causes head and neck cancer."  ROA.10205.  With respect to that image, the court speculated that "[o]ne person might view the image as showing a typical representation of the sort of neck cancer caused by smoking before a person could seek medical treatment," whereas another "might view the image as showing a stylized, exaggerated representation of neck cancer, perhaps in an effort to provoke repulsion." ROA.10205.  FDA addressed such concerns in the rulemaking and explained that the depiction is not an exaggeration or an outlier but rather "very similar to other images easily found [in the medical literature] depicting the same health condition."  85 Fed. Reg. at 15,674.  FDA further noted that "it is not unusual for patients from underserved communities to

present at advanced stages for head and neck cancer as depicted in the warning's image." *Id.*

For virtually any medical condition, there will be substantial variation in how the disease presents in different individuals according to their physiology and personal circumstances. Some individuals may experience a more visible or more severe presentation of a condition than other individuals, but the reality of such variation does not make the depiction of a particular presentation counterfactual. FDA explained that "[i]t is not feasible, nor is it our intention, for a single warning to convey all the information that may be related to a particular health condition, such as populations with the highest prevalence of a disease, projected incidence rates, relative risk, mortality rates, or disparities in affected populations." 85 Fed. Reg. at 15,684. Nor could a single image conceivably depict all of the various ways that a disease might present in particular individuals.

Notably, textual warnings are subject to similar limitations—the warning that "smoking causes lung cancer" does not tell viewers how many smokers will develop the condition, what that experience is like, or how often it is fatal. But that limitation has never been thought to render textual statements false or controversial so as to bring them outside the

scope of *Zauderer*.  It remains a fact that smoking causes lung cancer even though the disease does not occur in all smokers and is more severe in some individuals than in others.  It is likewise a fact that head and neck cancer sometimes presents as depicted in the warning image even though not all people with head and neck cancer from smoking will present in that way.  Based on the available scientific and medical evidence, FDA concluded that the selected image is not an outlier but rather "depicts a factually accurate, common visual presentation of the health condition" described in the text, 85 Fed. Reg. at 15,674, making the warning factual and uncontroversial in the relevant sense.

The district court also erred in suggesting that the images required by the rule are "provocative" because, "[a]s to each warning, it is not beyond reasonable probability that consumers would take from it a value-laden message that smoking is a mistake."  ROA.10205-06.  The only aspect of any image that the district court cited in support of that contention is the "gaze" of the person depicted in the head-and-neck-cancer warning, which the district court supposed—without elaboration—might be construed as "expressing regret at her choice to smoke."  ROA.10205.  But the person

depicted is not crying, grimacing, or making any other expression indicative of a strong emotion so as to support that inference.

In response to comments, FDA acknowledged that the "factually accurate content" of the warnings "may evoke subjective, emotional responses from some consumers" because that content reflects the "very real, serious, and sometimes deadly outcomes of cigarette smoking." 85 Fed. Reg. at 15,646. For many, the negative health consequences of using a product might lead them to consider whether using the product is ill-advised. Indeed, one of the current Surgeon General's warnings makes the point more directly where it states that "Quitting Smoking Now Greatly Reduces Serious Risks to Your Health"—yet plaintiffs acknowledge the constitutionality of that warning. And "the possibility that factual content may evoke an emotional reaction" or support an inference about the advisability of certain conduct "does not render the content less factual." *Id.* "There is no controversy about whether cigarette smoking causes the negative health consequences that form the content of the warnings." *Id.* The possibility that improved understanding of those negative health consequences might affect consumer attitudes or beliefs does not alter the factual nature of those risks.

52

**3.**  Because the text-and-image warnings convey factual and
uncontroversial information about the negative health consequences of
smoking, they are subject to review under *Zauderer*.  As discussed above,
*supra* pp. 32-34, the warnings readily withstand such review because they
leave ample space for manufacturers' preferred messages and are not
unduly burdensome.

For largely the same reasons, the text-and-image pairings would also
withstand review under *Central Hudson* were that the applicable standard
because the warnings directly advance the government's substantial
interest in promoting greater understanding of the health risks of smoking.
Congress recognized that the existing, text-only warnings, which are
printed in small font, go unnoticed and unread.  As FDA explained,
features "that increase the noticeability of the warning label . . . increase the
likelihood that people will see and pay attention to the warning message,"
and the existing warnings contain no such features.  84 Fed. Reg. at 42,762;
*see also* 85 Fed. Reg. at 15,656, 15,659.  Prominently placed warnings that
include features of this kind are accordingly needed to promote greater
understanding of the negative health consequences of smoking.

As the Supreme Court has recognized, "[t]he use of illustrations or pictures in advertisements serves important communicative functions: it attracts the attention of the audience to the advertiser's message, and it may also serve to impart information directly." *Zauderer*, 471 U.S. at 647. Images also increase the time that people spend looking at a warning message, which promotes greater understanding and recall. 84 Fed. Reg. at 42,762-63. Across multiple studies, "[p]articipants assigned to view pictorial cigarette warnings had more accurate recall and were better able to describe the content of the warning compared to those assigned to view the text-only warnings." *Id.* at 42,763-64; *see id.* at 42,770; 85 Fed. Reg. at 15,661, 15,656.

These findings accord with the general recognition that "messages that are accompanied by images closely linked to the message content (i.e., concordant) are shown to increase the likelihood that consumers will comprehend the message." 84 Fed. Reg. at 42,764; *see id*. at 42,770; 85 Fed. Reg. at 15,661, 15,656. "Visual depictions of smoking-related disease in pictorial cigarette warnings help address gaps in public understanding of the negative health consequences of smoking by providing new information beyond what is in the text of the warnings through reinforcing

and helping to depict and explain the health effect described in the text."
84 Fed. Reg. at 42,763; *see id*. at 42,770; 85 Fed. Reg. at 15,656. And the
government presented "abundant evidence establish[ing] that larger
warnings incorporating graphics promote a greater understanding of
tobacco-related health risks." *Discount Tobacco*, 674 F.3d at 565; 84 Fed. Reg.
42,763 ("Many studies have shown that exposure to pictorial cigarette
warnings promotes knowledge of the negative health effects of smoking.").

Without addressing this evidence, the district court asserted that "the
government has not shown that compelling these large, graphic warnings
is necessary in light of other options." ROA.10210. But Congress and the
agency did indeed find that the existing text-only warnings, printed in
small font on the side of the package, were inadequate, and that these
larger pictorial warnings are needed to convey the health risk information
to the public. This is especially true for adolescents. The scientific data,
FDA explained, "support that adolescents . . . do not see or read, and do
not remember, the current . . . Surgeon General's warnings on cigarette
packages and advertisements." 84 Fed. Reg. at 42,761; *see* 85 Fed. Reg. at
15,640. For example, FDA described a study in which 13- to 17-year-olds
were shown tobacco advertisements with the existing Surgeon General's

warnings. Only 19% of these students "were able to recall the general theme of the warning statement[s]" shown. 84 Fed. Reg. at 42,761; *see* 85 Fed. Reg. at 15,640. In a similar study involving high school students, only 15% correctly reported the concept of the warning statement they were shown, and only 6% could report the exact message. 84 Fed. Reg. at 42,761; *see* 85 Fed. Reg. at 15,640. Additionally, "eye-tracking studies, which assess attention to visual stimuli, have documented low levels of attention to the current Surgeon General's warnings in both adults and adolescents." 84 Fed. Reg. at 42,760. In one such study, "nearly half (43.6[%]) of adolescents did not look at the warnings at all," and an additional third (36.7%) looked at the warnings, but not long enough to read the words. *Id.* In another study, researchers showed tobacco advertisements to middle school students and found that they spent, on average, "slightly less than one second" looking at the Surgeon General's warning statements. *Id.*

The evidence evaluated by FDA establishes that "exposure to pictorial cigarette warnings leads to knowledge gains about the harms of smoking among adolescents, whereas . . . the [existing textual] warnings do not." 84 Fed. Reg. at 42,763. With respect to youth in particular, the evidence shows that pictorial warnings "strengthen[] and reinforce[]"

understanding of the negative health consequences of smoking as compared to text-only warnings.  *Id.* at 42,763-64.

Based upon the scientific research that it reviewed, FDA concluded that individuals exposed to pictorial warnings were "dramatically more likely than before to report knowing" the information conveyed by the warnings and had "more accurate recall" of the information.  84 Fed. Reg. at 42,763-64.  These images "reinforc[e] and help[] to depict and explain the health effect described in the text" and thus "address gaps in public understanding" left unfilled by the existing textual warnings.  *Id.* at 42,763; *see also* 85 Fed. Reg. at 15,655-57.

The district court failed to address any of these findings and instead stated in broad generalities that FDA had not adequately considered whether the bigger pictorial warnings were truly needed.  That assertion was incorrect.  Both Congress and FDA found that larger, updated warnings on cigarette packages and advertisements are needed to promote public understanding of the health risks of smoking, and the government chronicled extensive evidence showing that the inclusion of prominent images depicting those risks is necessary to further the government's interest.  The district court erred in failing to credit these findings, or to

acknowledge that FDA is already using many of the alternatives suggested by the court and has concluded that such alternatives are inadequate compared to the warnings the agency adopted. *See supra* pp. 40-41 (discussing FDA's consideration of public information campaigns as another alternative).

## II.   Any Unconstitutional Component of the Updated Warnings Is Severable from the Remainder of the Rule.

Both the Tobacco Control Act and the final rule require that any unconstitutional aspect of the rule be severed from the remainder. Thus, if any text-and-image pairing were found unconstitutional, the remaining warnings should take effect. Likewise, if all of the warning images were held unconstitutional, the updated text, size, and placement of the warnings should still be upheld.

"Generally speaking, when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem," severing any "problematic portions while leaving the remainder intact." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010) (quoting *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29 (2006)). "The standard for determining the severability of an unconstitutional

provision is well established:  Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *New York v. United States*, 505 U.S. 144, 186 (1992) (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)).  Likewise, severability of part of a regulation "depends upon the intent of the agency and upon whether the remainder of the regulation could function sensibly without the stricken provision."  *MD/DC/DE Broad. Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001) (emphasis omitted).

The Tobacco Control Act's broad severability clause governs regulations implementing the Act as well as provisions of the Act itself. Congress directed that, "[i]f any provision of this division . . . , of the amendments made by this division, or of the regulations promulgated under this division (or under such amendments) . . . is held to be invalid, the remainder of this division, such amendments and such regulations . . . shall continue to be enforced to the fullest extent possible."  21 U.S.C. § 387 note.  The preamble to the final rule likewise provides that "FDA intends for the various requirements established by this rulemaking to be severable" and that, "in a circumstance where some but not all of the rule's

provisions are invalidated, FDA's intent is for the other provisions to go into effect." 85 Fed. Reg. at 15,695.

Other aspects of the Tobacco Control Act confirm that Congress intended the provisions updating the warnings to be severable from each other. The evidence before Congress showed that the existing cigarette warnings, which currently occupy only 5% of cigarette packages, go largely unnoticed. H.R. Rep. No. 111-58, pt. 1, at 4. Through the Act, Congress revised these warnings in three important ways: (1) by updating the textual statements, (2) by giving the warnings more prominent size and location, and (3) by directing that images depicting the negative health consequences of smoking accompany the warning text. 15 U.S.C. § 1333(a)(1)-(2), (b)(2), (d)[1]. Each of these separate provisions improves upon the current warnings to better promote understanding of the health risks of smoking. And it is clear that Congress intended for the separate provisions regarding the text, size, and placement of the warnings to take effect even in the absence of accompanying images and did not intend for the 1984 Surgeon General's warnings to remain in place.

Congress's concurrent enactment of larger, updated warnings for smokeless tobacco products without images further confirms that Congress

likewise intended to update the text, size, and placement of cigarette
warnings regardless of whether those warnings are also paired with
images depicting the negative health consequences of smoking.  15 U.S.C.
§ 4402(a)(1)-(2) (prescribing large, text-only warnings for smokeless tobacco
products).  For these reasons, the only appellate judge to have considered
the question concluded that "the portions of the provision requiring
graphic label statements are severable" from the remainder of the statute.
*Discount Tobacco*, 674 F.3d at 527 n.5 (Clay, J., dissenting from the majority's
holding concerning the image requirement but observing that "it is evident
that Congress would have enacted the remainder of the warning label
provision without the inclusion of the graphics requirement").

FDA likewise explained that "the individual aspects of" the rule
promulgating these provisions "are workable on their own and should go
forward in the event that some are invalidated."  85 Fed. Reg. at 15,695; *see*
*MD/DC/DE Broad.*, 236 F.3d at 22.  The agency contemplated a number of
scenarios in which severability would be appropriate.  For example, "if a
court were to invalidate some of the cigarette health warnings (*i.e.*, text-
and-image pairings), but some of the pairings remained valid, FDA intends
that the remaining required warnings would go into effect."  85 Fed. Reg.

at 15,695.  Likewise, "if a court were to invalidate some but not all of the images within the cigarette health warnings, FDA intends that those images would be severed and the corresponding textual warning statements would go into effect without the invalidated images, along with the remaining cigarette health warnings that pair a textual warning statement with an image."  *Id.*  "As a third example, if a court were to invalidate all of the images within the cigarette health warnings, FDA intends for the invalidated images to be severed and all the warnings to go into effect with only their textual warning statements."  *Id.*

The district court's conclusion that the images could not be severed from other aspects of the updated warnings was premised on its view that "the Act directs that graphics and text must accompany each other" insofar as it provides that the "new warnings will not go into effect until the accompanying graphics are specified by rule."  ROA.10213 (citing Tobacco Control Act § 201(b), 123 Stat. at 1845).  In contemplating that the updated text and images would take effect simultaneously, fifteen months after FDA promulgated a final rule, Congress was simply expressing a logistical judgment that all aspects of the warnings should be updated in one fell swoop, rather than piecemeal.  That timing provision offers no support for

the substantive judgment that Congress intended the small, outdated

Surgeon General's warnings to remain in place in the event that images

could not be added.  While it is true that Congress contemplated that the

provisions it enacted would take effect together if valid, "[t]his mode of

analysis, if carried out in every case, would operate to defeat every claim of

severability."  *Leavitt v. Jane L.*, 518 U.S. 137, 143 (1996).  "The relevant

question . . . is not whether the legislature would prefer (A+B) to B, because

by reason of the invalidation of A that choice is no longer available.  The

relevant question is whether the legislature would prefer not to have B if it

could not have A as well."  *Id.*

Congress's findings about the ineffectiveness of the current warnings,

as well as its explicit severability provision, make it evident that Congress

intended provisions updating the warnings' text, size, and placement to

take effect if the provision prescribing images could not.  Thus, in the event

the Court finds some aspects of the rule unconstitutional, there is no sound

basis for frustrating congressional intent on an important issue of public

health by invalidating the rule in its entirety and maintaining the much

smaller existing warnings.

## III.    Any Remedy Should Be Limited to Plaintiffs.

The district court also erred in ordering nationwide relief that runs to the benefit of non-parties.  After crediting plaintiffs' merits arguments, the court entered a declaratory judgment, stating that "enforcement against plaintiffs of the rule issued by" FDA "would be unlawful as contrary to constitutional right under the First Amendment."  ROA.10221.  The court also vacated the rule, ROA.10221, thereby "rendering it devoid of legal effect in the same way that an appellate vacatur acts on a district-court judgment," ROA.10215.

While the entry of such relief finds support in this Court's precedents, *see Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374-75 (5th Cir. 2022), the question whether 5 U.S.C. § 706(2) supports vacatur of a rule is under review by the Supreme Court, *see United States v. Texas*, No. 22-58 (U.S.) (argued Nov. 29, 2022).  As the government explained in its briefing in that case, § 706(2) is not a remedial provision, and it provides no basis for the entry of such relief.  Brief for Petitioners at 40, *United States v. Texas*, No. 22-58, 2022 WL 4278395, (U.S. Sept. 12, 2022).  Instead, properly interpreted, that provision operates as a rule of decision directing a court to decline to give effect to an unlawful agency action in deciding the case at

hand and granting relief to the parties before it.  *Id.*; *see* ROA.10216 (noting

that "[t]hat is what courts do in the analogous context of holding a statute

unconstitutional; courts simply refuse to enforce the statute in the case at

hand").  The Tobacco Control Act further supports the appropriateness of

more limited relief in these circumstances as it provides that, if the

"application of any" provision of this division of the Act or regulations

promulgated thereunder "to any person or circumstance is held to be

invalid, . . . the application of such provisions to any other person or

circumstance shall not be affected and shall continue to be enforced to the

fullest extent possible."  21 U.S.C. § 387 note.  This provision confirms that,

regardless of whether vacatur is generally available as a remedy, it is not

available in these circumstances.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

*Of Counsel:*

SAMUEL R. BAGENSTOS
  *General Counsel*
  *Dep't of Health and Human Services*

MARK RAZA
  *Chief Counsel*
  *Food and Drug Administration*

WENDY S. VICENTE
  *Deputy Chief Counsel for Lit.*
  *Food and Drug Administration*

JULIE LOVAS
  *Senior Counsel*
  *Office of the Chief Counsel*
  *Food and Drug Administration*

MAY 2023

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

DAMIEN M. DIGGS
  *United States Attorney*

MARK B. STERN
  *s/ Lindsey Powell*

LINDSEY POWELL

CATHERINE M. PADHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7712*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5372*
  *lindsey.e.powell@usdoj.gov*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2023, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court of

Appeals for the Fifth Circuit by using the appellate CM/ECF system.

Service will be accomplished by the appellate CM/ECF system.

*s/ Lindsey Powell*

LINDSEY POWELL

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,650 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*s/ Lindsey Powell*

LINDSEY POWELL

# ADDENDUM

# TABLE OF CONTENTS

15 U.S.C. § 1333 (excerpt) ..................................................................... A1

21 U.S.C. § 387 note (excerpt) .............................................................. A6

15 U.S.C. § 1333 – Labeling (excerpt)

(a) Label requirements

    (1) In general

It shall be unlawful for any person to manufacture, package, sell, offer to sell, distribute, or import for sale or distribution within the United States any cigarettes the package of which fails to bear, in accordance with the requirements of this section, one of the following labels:

    WARNING: Cigarettes are addictive.

    WARNING: Tobacco smoke can harm your children.

    WARNING: Cigarettes cause fatal lung disease.

    WARNING: Cigarettes cause cancer.

    WARNING: Cigarettes cause strokes and heart disease.

    WARNING: Smoking during pregnancy can harm your baby.

    WARNING: Smoking can kill you.

    WARNING: Tobacco smoke causes fatal lung disease in nonsmokers.

    WARNING: Quitting smoking now greatly reduces serious risks to your health.

    (2) Placement; typography; etc.

Each label statement required by paragraph (1) shall be located in the upper portion of the front and rear panels of the package, directly on the package underneath the cellophane or other clear wrapping. Each label statement shall comprise the top 50 percent of the front and rear panels of the package. The word "WARNING" shall appear in capital letters and all text shall be in conspicuous and legible 17-point type, unless the text of the label statement would occupy more than 70 percent of such area, in which case the text may be in a smaller conspicuous and legible type size, provided that at least 60 percent of such area is occupied by required text. The text shall be black on a white background, or white on a black background, in a manner that contrasts, by typography, layout, or color, with all other printed material on the package, in an alternating fashion under the plan submitted under subsection (c).

\*   \*   \*

(b) Advertising requirements

(1) In general

It shall be unlawful for any tobacco product manufacturer, importer, distributor, or retailer of cigarettes to advertise or cause to be advertised within the United States any cigarette unless its advertising bears, in accordance with the requirements of this section, one of the labels specified in subsection (a).

(2) Typography, etc.

Each label statement required by subsection (a) in cigarette advertising shall comply with the standards set forth in this paragraph.  For press and poster advertisements, each such statement and (where applicable) any required statement relating to tar, nicotine, or other constituent (including a smoke constituent) yield shall comprise at least 20 percent of the area of the advertisement and shall appear in a conspicuous and prominent format and location at the top of each advertisement within the trim area.  The Secretary may revise the required type sizes in such area in such manner as the Secretary determines appropriate.  The word "WARNING" shall appear in capital letters, and each label statement shall appear in conspicuous and legible type.  The text of the label statement shall be black if the background is white and white if the background is black, under the plan submitted under subsection (c).  The label statements shall be enclosed by a rectangular border that is the same color as the letters of the statements and that is the width of the first downstroke of the capital "W" of the word "WARNING" in the label statements.  The text of such label statements shall be in a typeface pro rata to the following requirements: 45-point type for a whole-page broadsheet newspaper advertisement; 39-point type for a half-page broadsheet newspaper advertisement; 39-point type for a whole-page tabloid newspaper advertisement; 27-point type for a half-page tabloid newspaper advertisement; 31.5-point type for a double page spread magazine or whole-page magazine advertisement; 22.5-point type for a 28 centimeter by 3 column advertisement; and 15-point type for a 20 centimeter by 2 column advertisement.  The label statements shall be in English, except that—

(A) in the case of an advertisement that appears in a newspaper, magazine, periodical, or other publication that is not in English, the statements shall appear in the predominant language of the publication; and

(B) in the case of any other advertisement that is not in English, the statements shall appear in the same language as that principally used in the advertisement.

(3) Matchbooks

Notwithstanding paragraph (2), for matchbooks (defined as containing not more than 20 matches) customarily given away with the purchase of tobacco products, each label statement required by subsection (a) may be printed on the inside cover of the matchbook.

(4) Adjustment by Secretary

The Secretary may, through a rulemaking under section 553 of title 5, adjust the format and type sizes for the label statements required by this section; the text, format, and type sizes of any required tar, nicotine yield, or other constituent (including smoke constituent) disclosures; or the text, format, and type sizes for any other disclosures required under the Federal Food, Drug, and Cosmetic Act [21 U.S.C. 301 et seq.]. The text of any such label statements or disclosures shall be required to appear only within the 20 percent area of cigarette advertisements provided by paragraph (2). The Secretary shall promulgate regulations which provide for adjustments in the format and type sizes of any text required to appear in such area to ensure that the total text required to appear by law will fit within such area.

(c) Marketing requirements

(1) Random display

The label statements specified in subsection (a)(1) shall be randomly displayed in each 12-month period, in as equal a number of times as is possible on each brand of the product and be randomly distributed in all areas of the United States in which the product is marketed in accordance with a plan submitted by the tobacco product manufacturer, importer, distributor, or retailer and approved by the Secretary.

(2) Rotation

The label statements specified in subsection (a)(1) shall be rotated quarterly in alternating sequence in advertisements for each brand of cigarettes in accordance with a plan submitted by the tobacco product manufacturer, importer, distributor, or retailer to, and approved by, the Secretary.

(3) Review

The Secretary shall review each plan submitted under paragraph (2) and approve it if the plan—

(A) will provide for the equal distribution and display on packaging and the rotation required in advertising under this subsection; and

(B) assures that all of the labels required under this section will be displayed by the tobacco product manufacturer, importer, distributor, or retailer at the same time.

(4) Applicability to retailers

This subsection and subsection (b) apply to a retailer only if that retailer is responsible for or directs the label statements required under this section except that this paragraph shall not relieve a retailer of liability if the retailer displays, in a location open to the public, an advertisement that does not contain a warning label or has been altered by the retailer in a way that is material to the requirements of this subsection and subsection (b).

(d)[1] Graphic label statements

Not later than 24 months after June 22, 2009, the Secretary shall issue regulations that require color graphics depicting the negative health consequences of smoking to accompany the label statements specified in subsection (a)(1). The Secretary may adjust the type size, text and format of the label statements specified in subsections (a)(2) and (b)(2) as the Secretary determines appropriate so that both the graphics and the accompanying label statements are clear, conspicuous, legible and appear within the specified area.

(d)[2] Change in required statements

The Secretary through a rulemaking conducted under section 553 of title 5 may adjust the format, type size, color graphics, and text of any of

the label requirements, or establish the format, type size, and text of any other disclosures required under the Federal Food, Drug, and Cosmetic Act [21 U.S.C. 301 et seq.], if the Secretary finds that such a change would promote greater public understanding of the risks associated with the use of tobacco products.

\*   \*   \*

21 U.S.C. § 387 note (excerpt)

SEVERABILITY Pub. L. 111-31, div. A, §5, June 22, 2009, 123 Stat. 1782, provided that: "If any provision of this division [see Short Title of 2009 Amendment note set out under section 301 of this title], of the amendments made by this division, or of the regulations promulgated under this division (or under such amendments), or the application of any such provision to any person or circumstance is held to be invalid, the remainder of this division, such amendments and such regulations, and the application of such provisions to any other person or circumstance shall not be affected and shall continue to be enforced to the fullest extent possible."