No. 23-40076

_____

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

R.J. REYNOLDS TOBACCO COMPANY; SANTA FE NATURAL TOBACCO
COMPANY, INCORPORATED; ITG BRANDS LLC; LIGGETT GROUP LLC;
NEOCOM, INCORPORATED; RANGILA ENTERPRISES, INCORPORATED;
RANGILA LLC; SAHIL ISMAIL, INCORPORATED; IS LIKE YOU,
INCORPORATED,

Plaintiffs-Appellees,

v.

FOOD & DRUG ADMINISTRATION; UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES; ROBERT M. CALIFF, COMMISSIONER OF
FOOD AND DRUGS; XAVIER BECERRA, SECRETARY, U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the Eastern District of Texas
No. 6:20-cv-00176-JCB
Hon. J. Campbell Barker

_____

**BRIEF FOR AMICUS CURIAE PUBLIC CITIZEN
SUPPORTING DEFENDANTS-APPELLANTS AND REVERSAL**

_____

Nandan M. Joshi
Scott L. Nelson
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
*Counsel for Public Citizen*

May 18, 2023

**AMICUS CURIAE PUBLIC CITIZEN'S SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS PURSUANT TO FIFTH CIRCUIT RULES 28.2.1 AND 29.2**

————————

No. 23-40076

————————

R.J. REYNOLDS TOBACCO COMPANY; SANTA FE NATURAL TOBACCO COMPANY, INCORPORATED; ITG BRANDS LLC; LIGGETT GROUP LLC; NEOCOM, INCORPORATED; RANGILA ENTERPRISES, INCORPORATED; RANGILA LLC; SAHIL ISMAIL, INCORPORATED; IS LIKE YOU, INCORPORATED,

Plaintiffs-Appellees,

v.

FOOD & DRUG ADMINISTRATION; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT M. CALIFF, COMMISSIONER OF FOOD AND DRUGS; XAVIER BECERRA, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Defendants-Appellants.

Pursuant to this Court's Rules 28.2.1 and 29.2, amicus curiae Public Citizen submits this supplemental certificate of interested persons to fully disclose all those with an interest in this matter and provide the required information as to amicus's corporate status and affiliations.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are

made in order that the judges of this Court may evaluate possible disqualification or recusal.

**A.** Undersigned counsel certifies that amicus curiae **Public Citizen, Inc.**, is a nonprofit, non-stock corporation. It has no parent corporation, and no publicly traded corporation has an ownership interest in it of any kind.

**B.** Amicus curiae is represented by **Nandan M. Joshi**, **Scott L. Nelson**, and **Allison M. Zieve** of **Public Citizen Litigation Group**, which is a non-profit, public interest law firm that is part of **Public Citizen Foundation, Inc**., a non-profit, non-stock corporation that has no parent corporation and in which no publicly traded corporation has an ownership interest of any kind.

**C.** The parties and their counsel, in this Court and the district court, are:

### 1. Plaintiffs-appellees and their counsel

- R.J. Reynolds Tobacco Co., Is Like You, Inc., Neocom, Inc., Rangila Enterprises, Inc., Rangila, LLC, Sahil Ismail, Inc., and Sante Fe Natural Tobacco Co., Inc., represented by:
    - Jones Day, a law firm, and attorneys Ryan Jeffrey Watson, Christian George Vergonis, Alex Potapov, and Autumn Hamit Patterson.

- ITG Brands, LLC, represented by:
    - Latham & Watkins, a law firm, and attorneys Monica Christine Groat, Nicholas L. Schlossman, Philip J. Perry, Richard P. Bress, Ryan J. Watson, and Andrew D. Prins.
- Liggett Group, LLC, represented by:
    - Kasowitz, Benson, Torres, L.L.P., a law firm, and attorneys Deva Roberts, Leonard A. Feiwus, Nancy E. Kaschel, and Constantine Z. Pamphilis; and
    - O'Melveny, a law firm, and attorneys Meaghan McLaine VerGow and Scott A. Harman-Heath.

## 2. Defendants-appellants and their counsel.

Defendants-appellants are governmental entities not required to be reported under Rule 28.2.1. Attorneys for defendants-appellants are:
- Stephen Michael Pezzi
- Catherine Meredith Padhi
- Lindsey E. Powell
- Mark B. Stern

Respectfully submitted,

/s/ Nandan M. Joshi
Nandan M. Joshi
*Counsel for Public Citizen*

# TABLE OF CONTENTS

AMICUS CURIAE PUBLIC CITIZEN'S SUPPLEMENTAL
CERTIFICATE OF INTERESTED PERSONS PURSUANT TO
FIFTH CIRCUIT RULES 28.2.1 AND 29.2 ......................................i

TABLE OF CONTENTS ...........................................................iv

TABLE OF AUTHORITIES ........................................................ v

INTEREST OF AMICUS CURIAE ............................................... 1

SUMMARY OF ARGUMENT ..................................................... 2

ARGUMENT ............................................................................ 5

I.   The FDA's health warnings should be evaluated under
     *Zauderer* ........................................................................ 5

     A.   The *Zauderer* standard applies to disclosure regulations
          governing commercial goods and services. ..................... 5

     B.   The FDA's health warnings impose disclosure
          requirements. .............................................................. 8

II.  The district court erred in failing to apply *Zauderer* to the
     challenged disclosure rule. ............................................... 10

III. *Zauderer* is not confined to disclosure requirements designed to
     prevent consumer deception ............................................ 22

CONCLUSION ...................................................................... 30

CERTIFICATE OF SERVICE .................................................... 31

CERTIFICATE OF COMPLIANCE ............................................ 32

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*American Meat Institute v. U.S. Department of Agriculture,*
   760 F.3d 18 (D.C. Cir. 2014) ....................................................2, 10, 16, 26

*Bolger v. Youngs Drug Products Corp.,*
   463 U.S. 60 (1983) ...............................................................................6

*Central Hudson Gas & Electric Corp.*
  *v. Public Service Commission of New York,*
   447 U.S. 557 (1980) ......................................................................6, 7, 24

*Cigar Ass'n of America v. FDA,*
   964 F.3d 56 (D.C. Cir. 2020) ..................................................................1

*CTIA—The Wireless Ass'n v. City of Berkeley, California,*
   928 F.3d 832 (9th Cir. 2019)...........................................................14, 27

*Discount Tobacco City & Lottery, Inc. v. United States,*
   674 F.3d 509 (6th Cir. 2012)....................................................2, 12, 20, 22

*Dwyer v. Cappell,*
   762 F.3d 275 (3d Cir. 2014) ..................................................................24

*FDA v. Brown & Williamson Tobacco Corp.,*
   529 U.S. 120 (2000) .............................................................................2

*Lorillard Tobacco Co. v. Reilly,*
   533 U.S. 525 (2001) .........................................................................2, 23

*Milavetz, Gallop & Milavetz, P.A. v. United States,*
   559 U.S. 229 (2010) .........................................6, 9, 10, 17, 18, 19, 20, 25

*National Electrical Manufacturers Ass'n v. Sorrell,*
   272 F.3d 104 (2d Cir. 2001) .........................................................13, 14, 27

*National Institute of Family and Life Advocates v. Becerra*,
  138 S. Ct. 2361 (2018) ...................................................6, 14, 27

*New York State Restaurant Ass'n*
  *v. New York City Board of Health*,
  556 F.3d 114 (2d Cir. 2009) ..................................................27

*Nicopure Labs, LLC v. FDA*,
  944 F.3d 267 (D.C. Cir. 2019) ...................................................1

*Ohralik v. Ohio State Bar Ass'n*,
  436 U.S. 447 (1978) ...........................................................6

*Pharmaceutical Care Management Ass'n v. Rowe*,
  429 F.3d 294 (1st Cir. 2005) ............................................27, 30

*R.J. Reynolds Tobacco Co. v. FDA*,
  696 F.3d 1205 (D.C. Cir. 2012) ......................................1, 15, 16

*Virginia Board of Pharmacy, Inc. v. Virginia Citizens*
  *Consumer Council*,
  425 U.S. 748 (1976) ...........................................................5

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
  471 U.S. 626 (1985) ............................3, 6, 7, 20, 21, 23, 24, 26, 28

## Statutes

11 U.S.C. §§ 101(3) and (12A) ...............................................17

11 U.S.C. § 528(a)(4)............................................................17

15 U.S.C. § 69b.................................................................29

15 U.S.C. § 1333(a) ............................................................8

15 U.S.C. § 1333(b)(1)..........................................................8

15 U.S.C. § 1333(d)[1]..............................................................8, 12, 18, 20

15 U.S.C. § 1333(d)[2]..............................................................9

21 U.S.C. § 343(k) ....................................................................29

21 U.S.C. § 343(q) ....................................................................29

49 U.S.C. § 32908(b) .................................................................29

Family Smoking Prevention and Tobacco Control Act,
   Pub. L. No. 111-31, 123 Stat. 1776 (2009)

   § 2(17), 123 Stat. 1778 ........................................................22

   § 2(29), 123 Stat. 1778 ..........................................................8

## Regulations

16 C.F.R. § 455.2......................................................................29

17 C.F.R. § 229.402 ..................................................................29

17 C.F.R. § 229.406 ..................................................................29

21 C.F.R. § 201.57.....................................................................29

Food and Drug Administration, Tobacco Products; Required Warnings
   for Cigarette Packages and Advertisements,
   85 Fed. Reg. 15638 (Mar. 18, 2020)..........................9, 11, 13, 16, 19, 21

## Other Authorities

H.R. Rep. No. 111-58, pt. 1 (2009) ...........................................21

## INTEREST OF AMICUS CURIAE[1]

Amicus curiae Public Citizen is a nonprofit consumer advocacy organization with members in all fifty states. Public Citizen appears before Congress, administrative agencies, and courts on a wide range of issues important to consumers. Such issues include policies that promote public health, including policies concerning appropriate regulation of food, drug, and tobacco products by the Food and Drug Administration (FDA).

Public Citizen is concerned about aggressive applications of commercial-speech doctrine that stifle regulatory measures designed to protect consumers. And Public Citizen has participated as amicus curiae in numerous cases involving application of the First Amendment to government regulation of commercial speech. Many of these cases have addressed FDA regulation of tobacco products. *See Cigar Ass'n of Am. v. FDA*, 964 F.3d 56 (D.C. Cir. 2020); *Nicopure Labs, LLC v. FDA*, 944 F.3d

---

[1] This brief was not authored in whole or part by counsel for a party. No party, counsel for a party, or any other person (excluding amicus curiae, its members, and its counsel) contributed money intended to fund the brief's preparation or submission. Counsel for the parties have consented in writing to its filing.

267 (D.C. Cir. 2019); *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205 (D.C. Cir. 2012), *overruled in part*, *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18 (D.C. Cir. 2014) (en banc); *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509 (6th Cir. 2012).

Public Citizen has also appeared as amicus curiae to address other challenges to federal and state regulation of tobacco products. *See, e.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000). Public Citizen submitted an amicus brief supporting the FDA in the district court in this case.

## SUMMARY OF ARGUMENT

The FDA regulation at issue in this case requires cigarette manufacturers and retailers to disclose the health risks associated with smoking to consumers and to do so in a manner that Congress and the FDA have determined will best ensure that consumers are made aware of those risks—through the use of a textual statement on cigarette advertising and packaging, accompanied by an image depicting the text. In invalidating the FDA's regulations under the First Amendment, the district court applied a higher level of First Amendment scrutiny than is warranted. The district court's rationale, if adopted by this Court, would

undermine the important public-health benefits served by the federal government's regulation of tobacco marketing and, more broadly, undermine the important public interests that disclosure obligations serve.

**I.** Because the rule concerns disclosure requirements rather than restrictions on commercial speech, the question whether the rule violates the First Amendment should be evaluated using the deferential standard of review set forth in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985).

**II.** Under *Zauderer*, the health warnings should have been upheld because, in combination, the textual statement and color images provide important and purely factual information to consumers about the health risks of smoking—the existence of which is not subject to any legitimate controversy. The district court erred in holding that *Zauderer* did not apply.

First, the court suggested that *Zauderer* was not the proper standard for evaluating the images because consumers that view them may receive the message that "smoking is a mistake." Purely factual and uncontroversial disclosures that have the effect of altering consumer

behavior, however, remain subject to review under *Zauderer*'s standard. That consumers may react to an image warning about the dangers of an indisputably deadly product by avoiding it does not alter the factual and accurate nature of the image or the warning it conveys. Warnings do not have to be ineffective to be permissible under *Zauderer*.

The district court's suggestion that realistic images cannot qualify for review under *Zauderer* would severely constrain the government's ability to ensure that consumers have important information about products and services offered for sale. *Zauderer* recognizes that images have communicative value, and that courts are capable of distinguishing between images that are accurate and those that are misleading or manipulative.

**III.** *Zauderer* is not confined to disclosure requirements that are designed to advance the state's interest in preventing consumer deception. Rather, as every court of appeals to have considered the issue has recognized, the minimal intrusion on commercial speakers' First Amendment interests that disclosure requirements entail applies in any situation where consumers lack awareness about important characteristics about products and services in the marketplace. Indeed,

thousands of disclosure regulations have been promulgated that are designed to increase consumer awareness about products and services notwithstanding the absence of advertising that may be potentially misleading. No federal appellate court has ever concluded that all such regulations are subject to heightened scrutiny under the First Amendment.

## ARGUMENT

I.  **The FDA's health warnings should be evaluated under**
    ***Zauderer.***

    **A. The *Zauderer* standard applies to disclosure regulations**
    **governing commercial goods and services.**

The Supreme Court first recognized commercial speech as constitutionally protected expression in 1976. *See Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 770 (1976). In the nearly half-century since, courts have consistently applied two principles in assessing the constitutionality of laws that regulate commercial speech.

First, courts have accorded commercial speech "less protection" than "other constitutionally safeguarded forms of expression" in light of "the 'common-sense' distinction between speech proposing a commercial

transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 64–65 (1983) (third quotation quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455–56 (1978)).

Second, courts have recognized "material differences between disclosure requirements and outright prohibitions on speech." *Zauderer*, 471 U.S. at 650. Prohibitions on protected commercial speech are assessed under the test articulated in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 563–66 (1980). *Central Hudson* directs courts to apply "intermediate scrutiny" to the prohibition and to uphold it if the prohibition "directly advanc[es] a substantial governmental interest and [is] no more extensive than is necessary to serve that interest." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010) (cleaned up). In contrast, laws that compel the disclosure of information rather than prohibiting speech are subject to "a lower level of scrutiny … in certain contexts." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2372 (2018) (*NIFLA*). Specifically, *Zauderer* permits the government to require "purely factual and uncontroversial disclosures about commercial

products," such as "health and safety warnings," *id.* at 2376, so long as the required disclosure is not "'unjustified or unduly burdensome,'" *id.* at 2372 (quoting *Zauderer*, 471 U.S. at 651). Under *Zauderer*, a commercial disclosure standard is justified if it is "reasonably related" to the governmental interest that the law is designed to address. *Zauderer*, 471 U.S. at 651.

*Zauderer* explains that when commercial speakers are required to disclose information about their products or businesses, "the interests at stake … are not of the same order" as when commercial speech is restricted. *Id.* "Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides," a commercial speaker's "constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal." *Id.* Disclosure requirements are a preferred form of regulating commercial speech precisely because they "trench much more narrowly on an advertiser's interests than do flat prohibitions on speech." *Id.* These considerations led the Supreme Court in *Zauderer* to hold more demanding scrutiny— including *Central Hudson*'s intermediate scrutiny—inapplicable to

requirements of factual disclosures in commercial advertising, and to limit review of such requirements to a substantially more deferential level of constitutional scrutiny. *Id.*

## B. The FDA's health warnings impose disclosure requirements.

Congress enacted the Family Smoking Prevention and Tobacco Control Act (Tobacco Control Act or Act) "to address the public health crisis created by actions of the tobacco industry." Pub. L. No. 111-31, § 2(29), 123 Stat. 1776, 1778 (2009). The Tobacco Control Act prohibits the manufacture or sale of cigarettes unless the packaging includes one of nine specified health labels, such as "WARNING: Cigarettes cause fatal lung disease" and "WARNING: Smoking during pregnancy can harm your baby." 15 U.S.C. § 1333(a). The Act also requires such labels to appear in cigarette advertising. *Id.* § 1333(b)(1). The Act directs the Secretary of Health and Human Services to "issue regulations that require color graphics depicting the negative health consequences of smoking to accompany the label statements." *Id.* § 1333(d)[1] (first of two subsections (d)). The Secretary is authorized to adjust the labels and the accompanying color graphics to ensure that they are "clear, conspicuous, [and] legible," *id.*, and to "adjust the format, type size, color graphics, and

text of any of the label requirements … if [he] finds that such a change would promote greater public understanding of the risks associated with the use of tobacco products," *id*. § 1333(d)[2] (second of two subsections (d)).

In the rule under review, the FDA, acting under the Secretary's authority, promulgated eleven health-warning labels. ROA.10188–89. The FDA also promulgated "color graphics depicting the negative health consequences of smoking to accompany new textual warning statements." Tobacco Products; Required Warnings for Cigarette Packages and Advertisements, 85 Fed. Reg. 15638, 15638 (Mar. 18, 2020) (Final Rule). The FDA explained that "[p]ictorial cigarette health warnings promote greater public understanding about the negative health consequences of smoking as they increase the noticeability of the warning's message, increase knowledge and learning about the negative health consequences of smoking, and benefit diverse populations that have disparities in knowledge about the negative health consequences of smoking." *Id*. at 15697–98.

The FDA rule requires manufacturers and sellers to disclose the health risks associated with cigarettes. It does not "prevent" the tobacco

industry "from conveying any additional information." *Milavetz,* 559 U.S. at 250. "[B]ecause the challenged provisions impose a disclosure requirement rather than an affirmative limitation on speech, … the less exacting scrutiny described in *Zauderer*" should govern review of the FDA's rule. *Id*. at 249.

## II.   The district court erred in failing to apply *Zauderer* to the challenged disclosure rule.

The health warnings pass muster under *Zauderer*: They provide important and purely factual information about the health risks of smoking, and that information is not subject to legitimate dispute. Although the district court recognized—and the parties agreed—that the FDA's rule requires "disclosures" and that the disclosures involves "commercial speech," the court held that *Zauderer* did not apply because the disclosures are not, in its view, purely factual and uncontroversial. ROA.10204. The court's conclusion was based on a misreading of *Zauderer*.

**A.** The health warnings required by the FDA's rule qualify for review under *Zauderer* because they accurately convey information to consumers about the health effects of smoking cigarettes. There is no dispute that the warnings themselves relate to "the good … being

offered." *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 27 (D.C. Cir. 2014) (en banc) (*AMI*). Specifically, the eleven health warnings identify medical conditions that can arise as a result of smoking:

- WARNING: Tobacco smoke can harm your children.

- WARNING: Tobacco smoke causes fatal lung disease in nonsmokers.

- WARNING: Smoking causes type 2 diabetes, which raises blood sugar.

- WARNING: Smoking reduces blood flow to the limbs, which can require amputation.

- WARNING: Smoking causes cataracts, which can lead to blindness.

- WARNING: Smoking causes bladder cancer, which can lead to bloody urine.

- WARNING: Smoking reduces blood flow, which can cause erectile dysfunction.

- WARNING: Smoking causes head and neck cancer.

- WARNING: Smoking can cause heart disease and strokes by clogging arteries.

- WARNING: Smoking during pregnancy stunts fetal growth.

- WARNING: Smoking causes COPD, a lung disease that can be fatal.

Final Rule, 85 Fed. Reg. at 15708–09.

Although the district court stated that "the label statements required by the FDA rule do not qualify for First Amendment scrutiny

under *Zauderer* because they are not purely factual and uncontroversial," ROA.10200, the court did not, in fact, identify any inaccuracy or controversial matter in the text.

The images that accompany the textual warnings do not make the disclosures as a whole inaccurate or any less factual. Under the Tobacco Control Act, the purpose of the images is to "depict[] the negative health consequences of smoking." 15 U.S.C. § 1333(d)[1]. In upholding the constitutionality of that statutory requirement against a facial challenge, the Sixth Circuit identified several types of images that could illustrate medical harms caused by smoking and still "fall within the ambit of *Zauderer*":

> [A] picture or drawing of a nonsmoker's and smoker's lungs displayed side by side; a picture of a doctor looking at an x-ray of either a smoker's cancerous lungs or some other part of the body presenting a smoking-related condition; a picture or drawing of the internal anatomy of a person suffering from a smoking-related medical condition; a picture or drawing of a person suffering from a smoking-related medical condition; and any number of pictures consisting of text and simple graphic images.

*Discount Tobacco*, 674 F.3d at 559.

As contemplated by *Discount Tobacco*, the FDA developed the images required by the current disclosure rule "us[ing] a certified medical

illustrator to design images that depicted common visual presentations of the health conditions and/or showed disease states and symptoms as they are typically experienced, and that present the health conditions in a realistic and objective format devoid of non-essential elements." Final Rule, 85 Fed. Reg. at 15646. Just as the text of each warning presents purely factual information about the health conditions caused by smoking tobacco, medically accurate visual depictions of those warnings placed in proximity to the text are purely factual as well. The warnings as a whole thus satisfy *Zauderer*.

**B.** The district court's reasoning for concluding that that the FDA-mandated health warnings are not purely factual and uncontroversial are inconsistent with applicable principles.

**1.** The court concluded that *Zauderer* did not apply because "it is not beyond a reasonable probability that consumers would take from [the disclosures] a value-laden message that smoking is a mistake." ROA.10205–06. The possibility that consumers might take warnings to heart and change their purchasing decisions, however, does not preclude a finding that the warnings are factual and uncontroversial. Courts routinely uphold factual disclosures about products and services that

could have the effect of changing consumer behavior. *See, e.g., Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 115 (2d Cir. 2001) ("By encouraging such changes in consumer behavior, the labeling requirement is rationally related to the state's goal of reducing mercury contamination."); *CTIA—The Wireless Ass'n v. City of Berkeley, California*, 928 F.3d 832, 846 (9th Cir. 2019) (affirming denial of preliminary injunction against a disclosure that advised consumers how to avoid excessive cell phone radiation). Indeed, disclosure requirements would serve little purpose if they could be invalidated on the ground that consumers might use the information provided in deciding whether to purchase and use the products or services at issue.

That a rational consumer might react to factual information about the grave dangers posed by a product by concluding that it would be a "mistake" to use it does not make the message itself impermissibly "value-laden." Indeed, the Supreme Court emphasized in *NIFLA* that it did "not question the legality of health and safety warnings long considered permissible." 138 S. Ct. at 2376. Labeling a health warning value-laden because it promotes the value of health would render the

Supreme Court's recognition that such warnings are permissible a dead letter.

**2.** The FDA's current set of images does not suffer from the infirmity that the D.C. Circuit identified with images that the FDA had earlier issued. *See R.J. Reynolds*, 696 F.3d 1205; *see also* ROA.10182–83 (reprinting prior rule's required disclosures). In *R.J. Reynolds*, the FDA "concede[d] that the images [were] not meant to be interpreted literally." 696 F.3d at 1216. Instead, the images were "primarily intended to evoke an emotional response, or, at most, shock the viewer into retaining the information in the text warning." *Id.* Indeed, the court concluded that, rather than visually depicting the health consequences of smoking, as required by the Tobacco Control Act, "many of the images [did] not convey *any* warning information at all." *Id.* For instance, the prior images included "images of a woman crying, a small child, and the man wearing a T-shirt emblazoned with the words 'I QUIT,'" none of which, the court stated, "offer[ed] any information about the health effects of smoking." *Id.* And each of the prior warnings included the telephone number "1-800-QUIT-NOW," which, "when presented without any explanation about the services provided on the hotline, hardly sounds like an

unbiased source of information." *Id*. In light of the disconnect between the health warnings identified in the text and the images chosen, the D.C. Circuit concluded that *Zauderer* did not apply. *Id*. at 1217.[2]

There is no such disconnect here. Each of the images depicts "common visual presentations of the health conditions and/or shows disease states and symptoms as they are typically experienced, and … present[s] the health conditions in a realistic and objective format devoid of non-essential elements." Final Rule, 85 Fed. Reg. at 15646.

The district court largely did not dispute that the images selected by the FDA accurately depict the underlying health conditions described in the accompanying textual warnings.[3] The court nonetheless described the images as "value-laden," as opposed to factual, because it concluded

---

[2] The D.C. Circuit in *R.J. Reynolds* also stated that it did not apply *Zauderer* because, in its view, *Zauderer* applies only to disclosures to prevent deception. *See* 696 F.3d at 1214. As discussed below, *see* Section III, *infra*, the *en banc* D.C. Circuit in *AMI* overruled *R.J. Reynolds* on that point. *See AMI*, 760 F.3d at 22.

[3] In examining the warning stating that smoking causes cataracts, which can lead to blindness, the court concluded that consumers could be confused about whether the accompanying image depicted cataracts or blindness. ROA.10207. Because both conditions can be caused by smoking, neither interpretation of the image would be an inaccurate depiction of the health warning.

that "imagery can be more prone to ambiguous interpretation," which "can make it harder for courts to ascertain whether an image has a single, objective meaning that could make it 'purely factual.'" ROA.10204–05. The court identified no case law that equates a "purely factual" disclosure with one that has a "single, objective meaning."

Moreover, adopting such a standard could have ramifications that extend well beyond the images at issue in this case. The disclosures at issue in *Milavetz,* 559 U.S. 229, highlight the problem. *Milavetz* addressed the constitutionality of Bankruptcy Code provisions that regulate the conduct of "debt relief agenc[ies]," which the Code defines to include persons that provide "bankruptcy assistance to an assisted person." *Id.* at 232–33 (citing 11 U.S.C. §§ 101(3) and (12A)). The Code required debt relief agencies to disclose that: "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code." *Id.* at 233 (quoting 11 U.S.C. § 528(a)(4)). Applying *Zauderer*, the Court upheld the disclosures, describing them as providing "an accurate statement identifying the advertiser's legal status and the character of the assistance provided." *Id.* at 250.

Rejecting the argument that "the term 'debt relief agency' is confusing and misleading," the Court explained that, in the absence of any "evidence to support [the] claim that the label is confusing," the argument "amounts to little more than a preference" to be referred to "as something other than a 'debt relief agency.'" *Id*. at 251. As the Court explained, "[b]ecause [the Code provision at issue] by its terms applies only to debt relief agencies, the disclosures are necessarily accurate to that extent." *Id*. Thus, although the term "debt relief agency" could have a meaning other than the Code definition, the disclosures did not lose "purely factual" status on the theory that the term lacked a "single, objective meaning." Instead, the disclosures satisfied *Zauderer* because they provided "interested observers with pertinent information about the advertiser's services and client obligations." *Id*. The FDA's disclosure rule, which is designed to "depict[] the negative health consequences of smoking," 15 U.S.C. § 1333(d)[1], performs the same function with respect to information about the health dangers of smoking cigarettes.

**3.** The district court's conclusion that the images are subject to multiple reasonable interpretations by consumers was, in any event, flawed. In *Milavetz*, the Supreme Court noted that "[t]he required

statement that the advertiser 'helps people file for bankruptcy relief'
gives meaningful context to the term 'debt relief agency.'" 559 U.S. at 252
(cleaned up). Here, in evaluating how consumers may interpret the
images depicting the health effects of smoking, the district court failed to
take adequate account of the fact that each image would be paired with
a related and factually accurate textual warning.

For instance, the district court examined the warning that
"Smoking causes head and neck cancer," and the accompanying image of
"the head and neck of a woman (aged 50–60 years) who has neck cancer
caused by cigarette smoking." Final Rule, 85 Fed. Reg. at 15674; *see*
ROA.10205. The FDA concluded that "the image in the warning is
factually accurate and depicts a common visual presentation of this
negative health consequence." Final Rule, 85 Fed. Reg. at 15674. But
rather than assess whether the FDA's conclusion was correct, the district
court speculated as to how a consumer might interpret the image alone:
According to the court, one person might view it as a "typical
representation" of when "a person should seek medical treatment,"
another might view it as an "exaggerated representation of neck cancer,"
and another might see "regret" about the use of tobacco. ROA.10205. The

textual warning, however, "gives meaningful context," *Milavetz*, 559 U.S. at 252, that the image "depict[s] the negative health consequences of smoking," 15 U.S.C. § 1333(d)[1].

**4.** Finally, the district court suggested that *Zauderer* might not apply to a disclosure requirement that incorporated *any* image, except perhaps symbolic images such as a "map" or an "icon." ROA.10205–06 & n.138. If adopted, such a general rule would severely constrain governments' ability to ensure that consumers have important information about products and services offered for sale. As *Zauderer* recognizes in the context of a state's attempt to bar images in attorney advertising, "[t]he use of illustrations or pictures in advertisements serves important communicative functions: it attracts the attention of the audience to the advertiser's message, and it may also serve to impart information directly." 471 U.S. at 647. That observation is especially pertinent in the context of cigarette advertising. The text-only Surgeon General warnings that have long appeared on cigarette advertising and packaging do "not effectively convey the risks of smoking" because they are "easily overlooked" and because "consumers must be able to read at a relatively high level to properly understand the warnings." *Discount*

*Tobacco*, 674 F.3d at 563. Indeed, Congress's concern that "[t]he current Surgeon General warnings on tobacco products are ineffective in providing adequate warnings about the dangers of tobacco products" was the impetus behind requiring color graphics in the Tobacco Control Act. H.R. Rep. No. 111-58, pt. 1, at 4 (2009); *see also* Final Rule, 85 Fed. Reg. at 15638 (noting that Surgeon General's warnings "go unnoticed and are effectively 'invisible'"). The district court's skepticism of the use of realistic depictions of the health effects of smoking would severely constrain Congress's ability to address consumers' lack of awareness of the dangers of smoking.

*Zauderer* also puts to rest the district court's concern that courts are incapable of determining whether images in disclosures are accurate and purely factual. *See* ROA.10205–06. In *Zauderer*, the state defended its prophylactic ban on illustrations in attorney advertising by arguing that images can "play on the emotions … and convey false impressions," which makes it "difficult for the State to point to any particular illustration and prove that it is misleading or manipulative." 471 U.S. at 648. The Court rejected the argument that judgments could not be made about images, finding "instructive" governmental efforts to police

"visually deceptive advertising." *Id.* at 649. "[T]he Court's reasoning [in *Zauderer*] demonstrates that a picture can be accurate and factual" and can "accurately represent a negative health consequence of smoking." *Discount Tobacco*, 674 F.3d at 560. Because the images that accompany the textual health warnings under the FDA's rule are accurate in their depiction of the health consequences of smoking, the district court's rationale for not evaluating the disclosures under *Zauderer* should be reversed.

### III. *Zauderer* is not confined to disclosure requirements designed to prevent consumer deception.

In the district court, plaintiffs argued that *Zauderer* does not apply to the FDA's disclosure requirements because, they claimed, *Zauderer* applies only where the state asserts an interest in preventing consumer deception. As the FDA's brief explains, even if *Zauderer* were so limited, it would apply here because the health warnings are designed to overcome the tobacco industry's history of deceiving consumers. *See* FDA Br. 28–29; *see also* Tobacco Control Act § 2(17), 123 Stat. at 1778 ("Tobacco product advertising often misleadingly portrays the use of tobacco as socially acceptable and healthful to minors."). To the extent

this Court addresses *Zauderer*'s applicability in contexts not involving consumer deception, however, it should join the other courts of appeals that have held that *Zauderer* is not limited to disclosures aimed at potentially misleading commercial speech.

**A.** In *Zauderer*, the Supreme Court addressed a state disclosure standard that required attorney advertising that referred to contingent-fee arrangements to mention the client's liability for costs. 471 U.S. at 653. The Court held that the disclosure requirement was justified because the average consumer might not understand the difference between fees and costs. *Id.* at 652. In that context, the Supreme Court held that the disclosure requirement was "reasonably related to the State's interest in preventing deception of consumers," and thus "passe[d] muster" under the First Amendment. *Id.* at 651–52.

*Zauderer*'s discussion of preventing consumer deception, however, had little to do with commercial speech that is actually misleading. As *Zauderer* itself recognized, misleading commercial speech does not receive *any* First Amendment protection. *See id.* at 638 ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading."); *see also*

*Lorillard Tobacco Co.*, 533 U.S. at 554 ("For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading." (quoting *Central Hudson*, 447 U.S. at 566)). The government, therefore, may prohibit misleading commercial speech without satisfying even *Zauderer*'s deferential standard.

*Zauderer* upheld the state's use of disclosure requirements to provide consumers with information as a cure to accurate but nonetheless "potentially misleading" commercial speech. *See*, *e.g.*, *Dwyer v. Cappell*, 762 F.3d 275, 281 (3d Cir. 2014) ("[T]he State may compel supplemental disclosures to clarify truthful but potentially misleading advertisements."). Thus, in *Zauderer*, the attorney advertisement accurately stated that clients would not owe "legal fees" if their lawsuits were unsuccessful, but it failed to address court costs. 471 U.S. at 652. Because "members of the public are often unaware of the technical meanings of such terms as 'fees' and 'costs,'" the advertisement left the impression of "a no-lose proposition" in which a lawsuit could be prosecuted "entirely free of charge." *Id.* The required disclosure was permissible because it was reasonably aimed at preventing that misperception. *Id.* at 653.

24

The Supreme Court addressed a similar situation in *Milavetz*. There, the Court applied *Zauderer* to disclosure requirements that addressed advertisements offering "the promise of debt relief without any reference to the possibility of filing for bankruptcy, which has inherent costs." 559 U.S. at 250. In upholding the disclosure under *Zauderer*, the Court explained that requiring identification of "the advertiser's legal status and the character of the assistance provided" would advance the government's interest in "combat[ting] the problem of inherently misleading commercial advertisements." *Id.*

The common thread in *Zauderer* and *Milavetz* is the recognition that advertisements can mislead consumers if consumers lack complete information about the services being advertised—the distinction between legal costs and fees in *Zauderer*, and about the nature of debt relief services in *Milavetz*. In those circumstances, the government has a legitimate interest in requiring disclosures to address that information disparity, and such disclosures are subject to First Amendment scrutiny under *Zauderer*'s deferential standard.

**B.** The considerations that undergird *Zauderer* are not limited to situations where a seller has omitted critical information from a specific

advertisement about the characteristics of products and services offered for sale. *Zauderer* explained that First Amendment protection for "commercial speech is justified principally by the value to consumers of the information such speech provides." 471 U.S. at 651. Given that the provision of information to consumers is the main reason for holding such speech constitutionally protected in the first place, a commercial entity's "constitutionally protected interest in *not* providing any particular factual information" is "minimal." *Id.*; *see also id.* at 651–52 n.14 (stating that "the First Amendment interests implicated by disclosure requirements are substantially weaker than those at stake when speech is actually suppressed"). And "*Zauderer*'s characterization of the speaker's interest in opposing forced disclosure of such [factual] information [in advertising] as 'minimal' seems inherently applicable beyond the problem of deception." *AMI*, 760 F.3d at 22.

Thus, as the D.C. Circuit has explained, *Zauderer* "sweeps far more broadly than the interest in remedying deception," *id.*, and encompasses disclosure requirements that enable consumers to "make informed choices based on characteristics of the products they wished to purchase," *id.* at 24. Every other circuit court to have addressed the question agrees

with that conclusion. In *CTIA*, the Ninth Circuit applied *Zauderer* to uphold a disclosure requirement concerning cell phone radiation that advanced "the governmental interest in furthering public health and safety." 928 F.3d at 844. Similarly, in *Sorrell*, the Second Circuit applied *Zauderer* in upholding a mercury-content labeling law as a valid means of "protecting human health and the environment from mercury poisoning." 272 F.3d at 115; *see also N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 133 (2d Cir. 2009) (upholding disclosure of calorie content imposed "to better inform consumers about the products they purchase," quoting *Sorrell*, 272 F.3d at 115); *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 297–98, 316 (1st Cir. 2005) (explaining that *Zauderer* applies to "routine disclosure of economically significant information designed to forward ordinary regulatory purposes," including "product labeling laws"); *cf. NIFLA*, 138 S. Ct. at 2376 (recognizing continued "legality of health and safety warnings long considered permissible"). In these cases, as in the case of potentially misleading advertisements, the government used mandatory disclosures to vindicate legitimate interests harmed by lack of consumer awareness.

The application of *Zauderer* to such disclosure laws flows from the fact that, regardless of the legitimate governmental interest being advanced, the burden on the commercial speakers' First Amendment interests remains "minimal." *Zauderer*, 471 U.S. at 651. A regulation that requires tobacco companies to disclose the health risks of smoking so that consumers may make informed purchasing decisions imposes no greater First Amendment burden on the industry than a regulation that requires disclosures in response to a deceptive ad campaign portraying cigarettes as "less dangerous than you might believe." If anything, the latter regulation implicates greater First Amendment interests because it is triggered by the industry's speech, whereas the former is triggered by the non-speech act of placing a dangerous product into commerce. *Zauderer* makes clear that the latter regulation would not be subject to heightened scrutiny, and there is no principled reason why *Zauderer* should not apply to the former as well.

The consequences of confining *Zauderer* to potentially misleading advertisements would be far-reaching and exceedingly problematic. The law is replete with disclosure requirements whose sole or primary purpose is to improve consumers' understanding of the myriad products

and services available to them in the market. Federal law directs vehicle manufacturers to label each vehicle with fuel economy information, in accordance with regulations issued by the Environmental Protection Agency. 49 U.S.C. § 32908(b). With limited exceptions, the Food, Drug, and Cosmetic Act requires that a food product containing artificial coloring or flavoring bear a label so stating, 21 U.S.C. § 343(k), and requires that foods be labeled with nutrition information, *id.* § 343(q). The Securities and Exchange Commission compels a securities issuer to state whether it has a code of ethics, 17 C.F.R. § 229.406, and disclose information about certain officers' executive compensation, *id.* § 229.402. Federal law requires that items of fur apparel include a label identifying the type of animal that produced the fur and the country of origin of imported fur and stating that the apparel contains used fur (if it does). 15 U.S.C. § 69b. The list goes on. *See*, *e.g.*, 21 C.F.R. § 201.57 (requirement mandating warnings on drug labels, including prominent "black box" warnings that emphasize particular hazards); 16 C.F.R. § 455.2 (mandating disclosures of warranty information in "Buyers' Guides" to be displayed on the windows of used cars offered for sale).

As the First Circuit has explained, the "idea that these thousands of routine regulations require an extensive First Amendment analysis is mistaken." *Pharm. Care Mgmt. Ass'n*, 429 F.3d at 316. As the courts of appeals that have addressed the question have uniformly agreed, the deferential test set forth in *Zauderer* is the appropriate test for considering challenges to these disclosures, regardless of whether the disclosures are required to correct false, deceptive, or misleading commercial speech, or otherwise designed to prevent consumer deception, or whether they are aimed at providing other information about products or services that is essential to informed consumer choice.

## CONCLUSION

This Court should reverse the judgment of the district court.

May 18, 2023                         Respectfully submitted,

                              /s/ Nandan M. Joshi
                              Nandan M. Joshi
                              Scott L. Nelson
                              Allison M. Zieve
                              Public Citizen Litigation Group
                              1600 20th Street NW
                              Washington, DC 20009
                              (202) 588-1000

                              *Counsel for Public Citizen*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 18, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.


/s/ Nandan M. Joshi
Nandan M. Joshi

## CERTIFICATE OF COMPLIANCE

This amicus brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 5645 words, as calculated by Microsoft Word 365, less than half the number of words permitted by the rules for the principal brief of a party.

This amicus brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface (Century Schoolbook, 14 point) using Microsoft Word 365.

/s/ Nandan M. Joshi
Nandan M. Joshi