No. 23-40076

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

R J Reynolds Tobacco Company; Santa Fe Natural Tobacco Company, Incorporated; ITG Brands LLC; Liggett Group LLC; Neocom, Incorporated; Rangila Enterprises, Incorporated; Rangila LLC; Sahil Ismail, Incorporated; Is Like You, Incorporated,

*Plaintiffs-Appellees,*

v.

Food & Drug Administration; United States Department of Health and Human Services; Robert M. Califf, Commissioner of Food and Drugs; Xavier Becerra, Secretary, U.S. Department of Health and Human Services,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Texas
No. 6:20-cv-00176 (Barker, J.)

## RESPONSE BRIEF FOR APPELLEES

Philip J. Perry
Andrew D. Prins
Latham & Watkins LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, DC 20004
(202) 637-2200
philip.perry@lw.com

*Counsel for Plaintiff-Appellee*
*ITG Brands LLC*

Ryan J. Watson
Christian G. Vergonis
Alex Potapov
Amelia A. DeGory
Jones Day
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939
rwatson@jonesday.com

*Counsel for Plaintiffs-Appellees*
*R.J. Reynolds Tobacco Company,*
*et al.*

(additional counsel listed on inside cover)

(continued from front cover)

Nicholas L. Schlossman
LATHAM & WATKINS LLP
300 Colorado Street
Austin, TX 78701
(737) 910-7300
nicholas.schlossman@lw.com

*Counsel for Plaintiff-Appellee*
*ITG Brands LLC*

Constantine Pamphilis
KASOWITZ BENSON
TORRES LLP
1415 Louisiana Street,
Suite 2100
Houston, TX 77002
(713) 220-8852
dpamphilis@kasowitz.com

*Counsel for Plaintiff-Appellee*
*Liggett Group LLC*

# CERTIFICATE OF INTERESTED PERSONS

*R J Reynolds Tobacco Company v. Food & Drug Administration*,
No. 23-40076

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.    Plaintiff-Appellee **R.J. Reynolds Tobacco Company** is a North Carolina corporation. R.J. Reynolds Tobacco Company is a direct, wholly owned subsidiary of R.J. Reynolds Tobacco Holdings, Inc., which is a direct, wholly owned subsidiary of Reynolds American Inc., which is an indirect, wholly owned subsidiary of British American Tobacco, p.l.c., a publicly traded corporation.

2.    Plaintiff-Appellee **Santa Fe Natural Tobacco Company, Incorporated** is a New Mexico corporation headquartered in North Carolina. Santa Fe Natural Tobacco Company is a direct, wholly owned subsidiary of Reynolds American Inc., which is an indirect, wholly owned subsidiary of British American Tobacco, p.l.c., a publicly traded corporation.

3.    Plaintiff-Appellee **ITG Brands LLC** is a Texas limited liability company headquartered in North Carolina. ITG Brands, LLC is a limited liability company with its sole member being ITG Brands Holdpartner LP. ITG Brands Holdpartner LP's general partner is ITG Brands Holdco LLC and its limited partner is ITG Holdings

USA Inc.  The sole member of ITG Brands Holdco LLC is ITG Holdings USA, Inc. ITG Holdings USA Inc. is a wholly owned subsidiary of Imperial Tobacco US Holdings BV, which is a Dutch private limited company.  Imperial Tobacco US Holdings BV is an indirect subsidiary of Imperial Brands plc, which is a publicly traded United Kingdom public limited company.

4.    Plaintiff-Appellee **Liggett Group LLC** is a Delaware limited liability company headquartered in North Carolina.  Liggett Group LLC is a direct, wholly owned subsidiary of VGR Holding LLC, which is a direct, wholly owned subsidiary of Vector Group Ltd., a publicly traded corporation.

5.    Plaintiff-Appellee **Neocom, Incorporated** is a Texas corporation.

6.    Plaintiff-Appellee **Rangila Enterprises, Incorporated** is a Texas corporation.

7.    Plaintiff-Appellee **Rangila LLC** is a Texas limited liability company.

8.    Plaintiff-Appellee **Sahil Ismail, Incorporated** is a Texas corporation.

9.    Plaintiff-Appellee **Is Like You, Incorporated** is a Texas corporation.

10.    Defendant-Appellant **Food & Drug Administration ("FDA")** is a federal agency.  FDA regulates cigarettes marketed in the United States using authority delegated to it by the Department of Health and Human Services ("HHS").  21 U.S.C. § 387a(e).

11.    Defendant-Appellant **United States Department of Health and Human Services** is a federal agency.  Under the Food, Drug, and Cosmetic Act and

the Tobacco Control Act, HHS is responsible for regulating cigarettes marketed in the United States. *Id.* §§ 321(d), 387a(a).

12.     Defendant-Appellant **Robert M. Califf, Commissioner of Food and Drugs**, has been delegated authority to administer the Tobacco Control Act. *See* 2016 FDA Staff Manual Guide § 1410.10(1)(A)(1) (Feb. 22, 2023), https://tinyurl.com/2u7edjen.

13.     Defendant-Appellant **Xavier Becerra, Secretary, U.S. Department of Health and Human Services** is the federal official responsible for the implementation and enforcement of the Tobacco Control Act and the Rule.

14.     This appeal potentially impacts the financial interests of the tobacco industry as a whole, including manufacturers, distributors, and retailers, as well as consumers.

15.     The parties and their counsel are:

| **Plaintiffs-Appellees** | **Counsel** |
|---|---|
| R.J. Reynolds Tobacco Company; Santa Fe Natural Tobacco Company; Incorporated; Neocom, Incorporated; Rangila Enterprises, Incorporated; Rangila LLC; Sahil Ismail, Incorporated; Is Like You, Incorporated | Ryan J. Watson Christian G. Vergonis Alex Potapov Amelia A. DeGory JONES DAY 51 Louisiana Ave., N.W. Washington, DC 20001 (202) 879-3939 rwatson@jonesday.com cvergonis@jonesday.com apotapov@jonesday.com |

| **Plaintiff-Appellee** | **Counsel** |
|---|---|
| ITG Brands LLC | Philip J. Perry<br>Andrew D. Prins<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, N.W.,<br>Suite 1000<br>Washington, DC 20004<br>(202) 637-2200<br>philip.perry@lw.com<br>andrew.prins@lw.com<br><br>Nicholas L. Schlossman<br>LATHAM & WATKINS LLP<br>300 Colorado Street<br>Austin, TX 78701<br>(737) 910-7300<br>nicholas.schlossman@lw.com |

| **Plaintiff-Appellee** | **Counsel** |
|---|---|
| Liggett Group LLC | Constantine Pamphilis<br>KASOWITZ BENSON<br>TORRES LLP<br>1415 Louisiana Street,<br>Suite 2100<br>Houston, TX 77002<br>(713) 220-8852<br>dpamphilis@kasowitz.com |

| **Defendants-Appellants** | **Counsel** |
|---|---|
| United States Food & Drug Administration;<br>United States Department of Health and Human Services;<br>Robert M. Califf, Commissioner of Food & Drugs;<br>Xavier Becerra, Secretary, U.S. Department of Health and Human Services | Lindsey E. Powell<br>US. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, DC 20530<br>lindsey.e.powell@usdoj.gov<br><br>Catherine Meredith Padhi<br>Mark Bernard Stern<br>US. Department of Justice |

Civil Division, Appellate Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
catherine.m.padhi@usdoj.gov
mark.stern@usdoj.gov

Stephen Michael Pezzi
US. Department of Justice
Civil Division
1100 L Street, N.W.
Washington, DC 20530
stephen.pezzi@usdoj.gov

| *Amicus Curiae* | **Counsel** |
|---|---|
| Public Citizen | Nandan M. Joshi<br>Allison Zieve<br>Public Citizen Litigation Group<br>1600 20th Street, N.W.<br>Washington, DC 20009<br>(202) 588-1000<br>njoshi@citizen.org<br>azieve@citizen.org |

| *Amicus Curiae* | **Counsel** |
|---|---|
| Public Health Law Center | Agatha M. Cole<br>Beverly, P.L.L.C.<br>43 W. 43rd Street<br>Suite 159<br>New York, NY  10036<br>(917) 524-8055<br>agatha@beverlypllc.com |

| *Amici Curiae* | **Counsel** |
|---|---|
| American Academy of Pediatrics;<br>American Cancer Society; American<br>Cancer Society Cancer Action Network;<br>American Heart Association; American<br>Lung Association; American Medical | Scott P. Lewis<br>Austin P. Anderson<br>ANDERSON & KREIGER, LLP<br>50 Milk Street, Floor 21<br>Boston, MA |

Association; Campaign for Tobacco-Free
Kids; Children's Hospital Association of
Texas; National Association of Hispanic
Nurses; Texas Academy of Family
Physicians; Texas Hospital Association;
Texas Medical Association; Texas Nurses
Association; Texas Pediatric Society;
Texas PTA; The Cooper Institute; Truth
Initiative Foundation; Bruce C. Carter,
M.D.; David Lakey, M.D.

(617) 621-6576
slewis@andersonkreiger.com
aanderson@andersonkreiger.com

*/s/ Ryan J. Watson*
Ryan J. Watson
*Counsel for Plaintiffs-Appellees*
*R.J. Reynolds Tobacco Company,*
*et al.*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellees R.J. Reynolds Tobacco Company; Santa Fe Natural Tobacco Company, Incorporated; ITG Brands LLC; Liggett Group LLC; Neocom, Incorporated; Rangila Enterprises, Incorporated; Rangila LLC; Sahil Ismail, Incorporated; and Is Like You, Incorporated request oral argument. This case raises a host of important questions, including the scope of First Amendment protections against compelled speech. Oral argument would materially assist the Court in resolving these questions.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ............................................................. i

STATEMENT REGARDING ORAL ARGUMENT ................................................ vii

TABLE OF AUTHORITIES ........................................................................................ xi

STATEMENT OF THE ISSUES ................................................................................ 1

INTRODUCTION........................................................................................................ 1

JURISDICTIONAL STATEMENT ............................................................................ 4

STATEMENT OF THE CASE .................................................................................... 4

    A.    The Tobacco Control Act Directs FDA To Issue a
Graphic-Warnings Rule. ................................................................................ 4

    B.    FDA's First Graphic-Warnings Rule Compelled Plaintiffs To
Disseminate Grotesque Anti-Smoking Images in Violation of the
First Amendment. ........................................................................................... 5

    C.    FDA's Second Graphic-Warnings Rule Likewise Compels
Plaintiffs To Disseminate Grotesque Anti-Smoking Images.................... 7

        1.    FDA selected warnings that would frighten, shock, and
disgust consumers. ........................................................................... 9

        2.    FDA's own analysis shows that the selected warnings
would mislead consumers and convey inaccurate
information about smoking risks. .................................................. 10

        3.    FDA's analysis fails to show that the Rule will meaningfully
affect the public's knowledge of smoking risks. ......................... 11

    D.    Plaintiffs Successfully Challenge the Rule. ................................................ 12

SUMMARY OF THE ARGUMENT.......................................................................... 13

STANDARD OF REVIEW......................................................................................... 15

ARGUMENT ............................................................................................................... 15

I.    THE RULE VIOLATES THE FIRST AMENDMENT, AS THE DISTRICT COURT
CORRECTLY HELD.............................................................................................. 15

    A.    The District Court Correctly Held that *Zauderer* Does Not Apply. ....... 17

# TABLE OF CONTENTS
(continued)

**Page**

1.  The district court correctly concluded that the warnings are not accurate, purely factual, and uncontroversial.......................... 17

    a.  The warnings convey an ideological message. ................... 17

    b.  The warnings convey false and misleading messages. ...... 22

    c.  FDA's arguments are unavailing. ........................................ 26

2.  The warnings are not reasonably related to "consumer deception." ....................................................................................... 29

B.  The District Court Correctly Held that the Rule Fails *Central Hudson.* ......................................................................................................... 32

    1.  There is no substantial government interest................................. 32

        a.  FDA has no substantial interest in mandating misleading disclosures........................................................... 33

        b.  FDA has no substantial interest in simply providing information................................................................................ 33

        c.  FDA's informational interest is inadequate because the public already knows about the risks of smoking....... 35

    2.  The Rule does not directly advance FDA's asserted interest. ..... 38

    3.  The Rule is more extensive than is necessary to serve FDA's asserted interest. .................................................................. 40

    4.  For the same reasons, the Rule would also fail *Zauderer*. ............. 46

II.  THE RULE VIOLATES THE APA. ............................................................................ 47

    A.  FDA Acted Arbitrarily and Capriciously.................................................. 47

    B.  FDA Failed To Provide Meaningful Notice. ........................................... 48

    C.  FDA Failed To Provide a Meaningful Opportunity To Comment. ...... 50

    D.  These Errors Were Prejudicial.................................................................. 51

III.  THE RULE VIOLATES THE TCA. ......................................................................... 52

IV.  THE RELIEF ORDERED BY THE DISTRICT COURT IS APPROPRIATE. ................ 53

    A.  The Rule Should Be Set Aside in Its Entirety.......................................... 53

# TABLE OF CONTENTS
### (continued)

**Page**

B.      A Vacatur Providing Nationwide Relief Is Appropriate. ........................ 57

CONCLUSION ...................................................................................... 59

CERTIFICATE OF SERVICE ............................................................... 60

CERTIFICATE OF COMPLIANCE ...................................................... 61

# TABLE OF AUTHORITIES

**Page(s)**

C**ASES**

*303 Creative LLC v. Elenis,*
No. 21-476, 2023 WL 4277208 (U.S. June 30, 2023) .......................................... 16, 32

*Allstate Ins. Co. v. Abbott,*
495 F.3d 151 (5th Cir. 2007) ........................................ 30

*Am. Beverage Ass'n v. City & Cnty. of San Francisco,*
916 F.3d 749 (9th Cir. 2019) (en banc) ................................. 27, 47

*Am. Meat Inst. v. U.S. Dep't of Agriculture*
760 F.3d 18 (D.C. Cir. 2014) (en banc) ................................. 5, 6, 33, 41, 46

*Am. Radio Relay League, Inc. v. FCC,*
524 F.3d 227 (D.C. Cir. 2008) ........................................ 49

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,*
143 S. Ct. 1258 (2023) ........................................ 24, 27

*Bldg. Trades Unions v. OSHA,*
878 F.3d 271 (D.C. Cir. 2017) ........................................ 49

*Bradley v. Viking Ins. Co. of Wis.,*
56 F.4th 1011 (5th Cir. 2023) ........................................ 15

*Brown v. Ent. Merchants Ass'n,*
564 U.S. 786 (2011) ........................................ 32, 44

*Cent. Ill. Light Co. v. Citizens Util. Bd.,*
827 F.2d 1169 (7th Cir. 1987) ........................................ 30

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
447 U.S. 557 (1980) ........................................*passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Chamber of Commerce v. SEC,*
  412 F.3d 133 (D.C. Cir. 2005) ...................................................... 48

*Chamber of Commerce v. U.S. Dep't of Labor,*
  885 F.3d 360 (5th Cir. 2018) ...................................................... 55

*Cigar Ass'n of Am. v. FDA,*
  964 F.3d 56 (D.C. Cir. 2020) ...................................................... 47

*Citizens United v. FCC,*
  558 U.S. 310 (2010) .................................................................. 34

*Clinton v. City of New York,*
  524 U.S. 417 (1998) .................................................................. 52

*Community for Creative Non-Violence v. Turner,*
  893 F.2d 1387 (D.C. Cir. 1990) .................................................. 55

*Discount Tobacco City & Lottery, Inc. v. United States,*
  674 F.3d 509 (6th Cir. 2012) ...................................................... 57

*Dwyer v. Cappell,*
  762 F.3d 275 (3d Cir. 2014) ...................................................... 30

*Edenfield v. Fane,*
  507 U.S. 761 (1993) .................................................................. 34

*Ent. Software Ass'n v. Blagojevich,*
  469 F.3d 641 (7th Cir. 2006) ........................................ 26, 32, 45, 47

*Franciscan All., Inc. v. Becerra,*
  47 F.4th 368 (5th Cir. 2022) .................................................. 57, 58

*Glickman v. Wileman Bros. & Elliott, Inc.,*
  521 U.S. 457 (1997) .................................................................. 30

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hersh v. U.S. ex rel. Mukasey,*
553 F.3d 743 (5th Cir. 2008) ........................................................30, 32, 34

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston,*
515 U.S. 557 (1995) .......................................................................... 16

*Ibanez v. Florida Dep't of Bus. & Prof'l Reg.,*
512 U.S. 136 (1994) ................................................................ 29, 38, 40, 46

*Idaho Conservation League v. Wheeler,*
930 F.3d 494 (D.C. Cir. 2019) ........................................................ 48

*Int'l Dairy Foods Ass'n v. Amestoy,*
92 F.3d 67 (2d Cir. 1996) ................................................................ 34

*Janus v. Am. Fed'n of State, Cnty., & Mun. Employees, Council 31,*
138 S. Ct. 2448 (2018) ....................................................................15, 16

*Kern Cnty. Farm Bureau v. Allen,*
450 F.3d 1072 (9th Cir. 2006) ........................................................ 49, 50

*Linmark Assocs. v. Twp. of Willingboro,*
431 U.S. 85 (1977) .......................................................................... 42

*Lorillard Tobacco Co. v. Reilly,*
533 U.S. 525 (2001) ........................................................................ 42

*MD/DC/DE Broadcasters Ass'n v. FCC,*
253 F.3d 732 (D.C. Cir. 2001) ........................................................ 55, 56

*Milavetz, Gallop & Milavetz, P.A. v. United States,*
559 U.S. 229 (2010) ........................................................................29, 30, 32

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) .......................................................................... 47

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*N.C. Growers' Ass'n v. UFW,*
702 F.3d 755 (4th Cir. 2012) ..................................................... 50

*Nat'l Ass'n of Home Builders v. EPA,*
682 F.3d 1032 (D.C. Cir. 2012).................................................. 48

*Nat'l Ass'n of Mfrs. v. SEC,*
800 F.3d 518 (D.C. Cir. 2015) .............................. 22, 26, 33, 38

*Nat'l Inst. of Family & Life Advocates v. Becerra,*
138 S. Ct. 2361 (2018) ........................................................*passim*

*Nat'l Lifeline Ass'n v. FCC,*
921 F.3d 1102 (D.C. Cir. 2019)......................................... 49, 50

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs,*
145 F.3d 1399 (D.C. Cir. 1998) ................................................ 58

*Navarro-Miranda v. Ashcroft,*
330 F.3d 672 (5th Cir. 2003) .................................................... 54

*Netchoice, LLC v. Paxton,*
49 F.4th 439 (5th Cir. 2022) ............................................... 30, 31

*Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.,*
494 F.3d 188 (D.C. Cir. 2007)............................................ 50, 51

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n,*
475 U.S. 1 (1986)................................................................. 16, 32

*Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin.,*
471 F.3d 1350 (D.C. Cir. 2006) ................................................ 53

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Phillips Petroleum Co. v. Johnson,*
  22 F.3d 616 (5th Cir. 1994), *modified on other grounds*, No. 93-1377,
  1994 WL 484506 (Sept. 7, 1994) ............................................................. 49, 50

*Porter v. Califano,*
  592 F.2d 770 (5th Cir. 1979) ......................................................................... 43

*Prometheus Radio Project v. FCC,*
  652 F.3d 431 (3d Cir. 2011) .......................................................................... 50

*Public Citizen Inc. v. Louisiana Att'y Disciplinary Bd.,*
  632 F.3d 212 (5th Cir. 2011) ......................................................................... 40

*R.J. Reynolds Tobacco Co. v. FDA,*
  696 F.3d 1205 (D.C. Cir. 2012) ...............................................................*passim*

*R.J. Reynolds Tobacco Co. v. FDA,*
  845 F. Supp. 2d 266 (D.D.C. 2012) ................................................................ 5

*Safe Extensions, Inc. v. FAA,*
  509 F.3d 593 (D.C. Cir. 2007) ...................................................................... 47

*Sierra Club v. U.S. Fish & Wildlife Serv.,*
  245 F.3d 434 (5th Cir. 2001) ......................................................................... 51

*Solite Corp. v. EPA,*
  952 F.2d 473 (D.C. Cir. 1991) ...................................................................... 50

*Sorrell v. IMS Health Inc.,*
  564 U.S. 552 (2011) ........................................................................................ 3

*Sw. Elec. Power v. EPA,*
  920 F.3d 999 (5th Cir. 2019) .................................................................... 47, 48

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.,*
  799 F.3d 437 (5th Cir. 2015) ................................................................ 30, 31

*Tex. Office of Pub. Util. Counsel v. FCC,*
  183 F.3d 393 (5th Cir. 1999) ...................................................................... 43

*Turner Broad. Sys., Inc. v. FCC,*
  512 U.S. 622 (1994) .................................................................................... 46

*Turner Broad. Sys., Inc. v. FCC,*
  520 U.S. 180 (1997) .................................................................................... 46

*U.S. Steel Corp. v. EPA,*
  595 F.2d 207 (5th Cir. 1979) ...................................................................... 51

*United States v. Elrawy,*
  448 F.3d 309 (5th Cir. 2006) ...................................................................... 54

*United States v. Philip Morris USA Inc.,*
  566 F.3d 1095 (D.C. Cir. 2009) .................................................................. 43

*United States v. Philip Morris USA Inc.,*
  No. 99-CV-2496, 2016 WL 3951273 (D.D.C. Apr. 19, 2016) .................. 35

*United States v. United Foods,*
  533 U.S. 405 (2001) .................................................................................... 16

*V.I. Tel. Corp. v. FCC,*
  444 F.3d 666 (D.C. Cir. 2006) .................................................................... 58

*Video Software Dealers Ass'n v. Schwarzenegger,*
  556 F.3d 950 (9th Cir. 2009) ...................................................................... 33

*W. Va. Bd. of Educ. v. Barnette,*
  319 U.S. 624 (1943) .................................................................................... 16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Wantou v. Wal-Mart Stores Tex., L.L.C.*,
   23 F.4th 422 (5th Cir. 2022) ............................................... 29

*Wooley v. Maynard*,
   430 U.S. 705 (1977) ............................................... 16

*Zauderer v. Office of Disciplinary Counsel*,
   471 U.S. 626 (1985) ............................................... *passim*

**STATUTES**

15 U.S.C. § 4402(a) ............................................... 57

5 U.S.C. § 500 *et seq.* ............................................... 14

5 U.S.C. § 553(b)(3) ............................................... 9

5 U.S.C. § 553(c) ............................................... 50

5 U.S.C. § 701 *et seq.* ............................................... 4

5 U.S.C. § 706(2)(A) ............................................... 47, 58

15 U.S.C. § 1333(a) ............................................... 4, 5

15 U.S.C. § 1333(b) ............................................... 4, 5, 31

15 U.S.C. § 1333(d)[1] ............................................... *passim*

15 U.S.C. § 1333(d)[2] ............................................... 52, 53

15 U.S.C. § 1334(c) ............................................... 42

15 U.S.C. § 1335 ............................................... 42

21 U.S.C.§ 331 ............................................... 31

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

21 U.S.C. § 343(q)(2)(A) .................................................................... 52

21 U.S.C. § 387 .................................................................................. 30

21 U.S.C. § 387 note..................................................................... 54, 58

21 U.S.C. § 387a-1(a)(2) ................................................................... 42

21 U.S.C § 387c(a)(7) ........................................................................ 31

21 U.S.C. § 387k ................................................................................ 31

21 U.S.C. § 387p ................................................................................ 42

28 U.S.C. § 1291 .................................................................................. 4

28 U.S.C. § 1331 .................................................................................. 4

28 U.S.C. § 2202 .................................................................................. 4

Pub. L. No. 89-92, 79 Stat. 282 (1965) ............................................. 35

Pub. L. No. 98-474, 98 Stat. 2200-02 (1984)..................................... 35

**RULES AND REGULATORY MATERIALS**

21 C.F.R. § 1140.16 ...................................................................... 41, 42

21 C.F.R. § 1140.34 ........................................................................... 42

*Required Warnings for Cigarette Packages and Advertisements*, 76 Fed. Reg.
   36,628 (June 22, 2011)............................................................... 5, 9

*Tobacco Products; Required Warnings for Cigarette Packages and Advertisements*,
   84 Fed. Reg. 42,754 (Aug. 16, 2019)..........................................*passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Tobacco Products; Required Warnings for Cigarette Packages and Advertisements;*
   *Additional Materials; Reopening of the Comment Period,* 84 Fed. Reg. 60,966
   (Nov. 12, 2019) ................................................................................... 10, 50

*Tobacco Products; Required Warnings for Cigarette Packages and Advertisements,*
   85 Fed. Reg. 15,638 (Mar. 18, 2020) ........................................................*passim*

### OTHER AUTHORITIES

Eunice Park-Lee, et al., *Tobacco Product Use Among Middle and High School*
   *Students—United States, 2022,* CDC (2022),
   https://tinyurl.com/3hmhfpsu ......................................................................... 32

FDA, *FDA Releases New Ads, Including First Focused on Mental Health Effects*
   *of Cigarette Smoking Among Youth* (Jan. 10, 2023),
   https://tinyurl.com/23rx9t75 .......................................................................... 44

Master Settlement Agreement, https://tinyurl.com/y6te8olv ....................................... 42

Norman E. Sharpless, *Press Announcement* (Aug. 20, 2019),
   https://tinyurl.com/y3kmouoa ......................................................................... 44

## STATEMENT OF THE ISSUES

FDA promulgated an unprecedented rule requiring cigarette manufacturers to devote the top 50% of the front and back of cigarette packages and 20% of cigarette advertising to shocking and misleading graphic warnings. The district court held that the Rule violated the First Amendment; it then vacated the Rule and issued a declaratory judgment. The issues presented in this case are:

1.      Did the district court correctly decide that the Rule violates the First Amendment because the government has failed to adequately justify this sweeping imposition on Plaintiffs' freedom of speech?

2.      Does the Rule violate the Administrative Procedure Act because FDA acted arbitrarily and capriciously and failed to provide meaningful notice and opportunity to comment?

3.      Does the Rule violate the Tobacco Control Act because FDA improperly changed the number of warnings and added its own textual warnings?

4.      Was the relief granted by the district court appropriate?

## INTRODUCTION

In 2012, the D.C. Circuit struck down the first version of FDA's graphic-warnings rule, noting that the Agency had not provided a "shred of evidence" that it would reduce smoking. *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1219 (D.C. Cir. 2012). FDA has now issued a second version of the rule—requiring similarly grotesque warnings—but it no longer even asserts that the warnings would have any real-world

public-health impact. FDA's inability to defend the rule on this basis has locked it into a series of extreme and contrived positions in this litigation.

Lacking evidence to support any other justification, FDA asserts that its concededly unprecedented Rule may commandeer private speech based on a *purely informational* interest. In other words, FDA need not demonstrate that the compelled disclosure will have *any* impact on real-world behavior or public-health outcomes; nor does it need to tie the compelled disclosure to the correction of a deceptive message.

In its view, the information does not even have to be *important*. FDA need not show that its warning is material to the recipient, or even that the government itself has ever treated the information as significant. Nor does FDA have to make any serious showing that the thrust of the information is unfamiliar to the public. Instead, FDA insists it is free to compel whatever more granular messages it wishes, so long as the specific information imparted is in some sense "new."

In addition, the compelled disclosure can include large, grotesque, and shocking "photorealistic" images. And although such images are inherently subject to multiple interpretations, the government need not provide any evidence that the public will interpret the images correctly, or even determine what messages the graphic warnings are actually sending and whether they are accurate. Indeed, the evidence here showed that the messages sent by the warnings are both exaggerated and misleading.

Nor is it necessary for the government to test alternatives, such as public-information campaigns that it has championed as successful. It is not necessary

even to test less-intrusive warnings, such as smaller warnings or text-only warnings, even when there is record evidence that they would perform just as well. Instead, the government can make compelling speech its first resort.

Putting these contentions together, FDA's bottom line is genuinely startling. FDA believes it could require any product or advertisement to include large, disturbing, and misleading graphic warnings in the service of "informing" the public of the government's messages. No product or advertisement would be safe—because the government could always pick a more obscure piece of information to convey. And these rules could not be confined to cigarettes; the First Amendment contains no carve-out for disfavored products or unpopular messages. *See, e.g., Sorrell v. IMS Health Inc.*, 564 U.S. 552, 577-78 (2011).

Unsurprisingly, the district court rejected the government's arguments in a careful and straightforwardly correct opinion. Perhaps recognizing the weaknesses of its position, FDA now offers only a half-hearted legal bricolage in defense of the graphic component of the warnings, and instead focuses on salvaging the accompanying text. But the textual warnings, too, violate the First Amendment—not least because their size and prominence would still impermissibly interfere with and drown out cigarette manufacturers' speech. Moreover, FDA has not come close to demonstrating that such warnings would advance even its purely informational interest. And in any event, as the district court correctly noted, Congress expressly prohibited the text from being separated from the graphics.

3

The Rule is equally flawed under the Administrative Procedure Act ("APA") and the Tobacco Control Act ("TCA")—arguments that the district court did not need to reach.  FDA violated the APA by acting arbitrarily and capriciously in several respects, and by depriving the public of meaningful notice and an opportunity to comment.  And FDA violated the TCA by changing the number and text of the warnings without statutory authority.

Finally, contrary to the government's position, vacatur of the entire Rule was the correct remedy under longstanding administrative-law principles and this Court's precedents.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 2202 and 5 U.S.C. § 701 *et seq.*  It entered final judgment in Plaintiffs' favor on December 7, 2022.  ROA.10221.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

### A.    The Tobacco Control Act Directs FDA To Issue a Graphic-Warnings Rule.

The TCA requires that cigarette packages and advertising bear one of nine textual warnings.  15 U.S.C. § 1333(a)(1), (b)(1).  It also requires FDA to "issue regulations that require color graphics depicting the negative health consequences of smoking to accompany" these warnings.  *Id.* § 1333(d)[1].  Together, the textual warnings and color

graphics must occupy the top 50% of the front and back of cigarette packages and the top 20% of cigarette advertising. *Id.* § 1333(a)(2), (b)(2).

> **B.    FDA's First Graphic-Warnings Rule Compelled Plaintiffs To Disseminate Grotesque Anti-Smoking Images in Violation of the First Amendment.**

In 2011, FDA issued a rule requiring that all cigarette packages and advertising bear one of nine disturbing images, including a body with a massive incision, diseased body parts, and a wailing baby. *Required Warnings for Cigarette Packages and Advertisements*, 76 Fed. Reg. 36,628 (June 22, 2011) ("2011 Rule"). FDA said that the 2011 Rule would "reduc[e] the number of Americans…who use cigarettes" by making consumers "depressed, discouraged, and afraid" to buy them. 76 Fed. Reg. at 36,629, 36,638 (quotation marks omitted).

The 2011 Rule was quickly invalidated under the First Amendment—first by the district court and again on appeal by the D.C. Circuit. *R.J. Reynolds Tobacco Co. v. FDA*, 845 F. Supp. 2d 266, 277 (D.D.C. 2012); *R.J. Reynolds*, 696 F.3d at 1222.

The D.C. Circuit held that, for three reasons, the 2011 Rule was not subject to the standard of scrutiny set forth in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), under which "purely factual and uncontroversial disclosures are permissible if they are reasonably related to the State's interest in preventing deception of consumers, provided the requirements are not unjustified or unduly burdensome." *R.J. Reynolds*, 696 F.3d 1205, 1212 (D.C. Cir. 2012), *overruled in part by Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 31 (D.C. Cir. 2014) (en banc) (quotation marks omitted). *First*, the

warnings were not "purely factual." As "FDA tacitly admit[ted]," the warnings were "primarily intended to evoke an emotional response, or, at most, shock the viewer into retaining the information in the text warning." *Id.* at 1216. *Second*, the warnings were not "uncontroversial"; rather, "many of the images chosen by FDA could be misinterpreted by consumers." *Id.* *Third*, the warnings were not "reasonably related to the State's interest in preventing deception of consumers."[1]

The court then held that the 2011 Rule failed to satisfy the standard set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). The court first held that "FDA ha[d] not provided a shred of evidence…showing that the graphic warnings will 'directly advance' its interest in reducing the number of Americans who smoke." 696 F.3d at 1219. The court then held that FDA's asserted interest in "effectively communicating health information regarding the negative effects of cigarettes" was "purely informational" and "not an independent interest capable of sustaining the Rule." *Id.* at 1221 (quotation marks omitted). The court therefore vacated the rule.

---

[1] FDA incorrectly asserts that the portion of the opinion holding that *Zauderer* did not apply "has since been overruled" by the D.C. Circuit. Br. 11 (citing *Am. Meat*, 760 F.3d at 22). In reality, *American Meat* rejected only the third of three independent reasons for finding *Zauderer* inapplicable (the consumer-deception holding). 760 F.3d at 31.

### C.    FDA's Second Graphic-Warnings Rule Likewise Compels Plaintiffs To Disseminate Grotesque Anti-Smoking Images.

In 2019, FDA once again issued a proposed graphic-warnings rule.  *Tobacco Products; Required Warnings for Cigarette Packages and Advertisements*, 84 Fed. Reg. 42,754 (Aug. 16, 2019) ("Proposed Rule").   FDA received extensive comments.  *See, e.g.*, ROA.124-925.   In March 2020, FDA issued the final Rule.   85 Fed. Reg. 15,638, 15,638-710 (Mar. 18, 2020).

The Rule abandoned FDA's previously asserted interest of reducing smoking, repeatedly emphasizing that "increased smoking cessation and decreased initiation are not the purpose[s] of this rule."  85 Fed. Reg. at 15,650; *see id.* at 15,660, 15,665.  Instead, FDA said that the Rule would "promote greater public understanding of the negative health consequences of cigarette smoking," particularly by focusing on "less-known health consequences of smoking."  *Id.* at 15,640.

The Rule replaced seven of the Act's textual warnings with nine new warnings, and adopted eleven graphic images.  *Id.* at 15,685, 15,708-09.  Together, the following textual warnings and graphic images must occupy the top 50% of the front and back of cigarette packages and the top 20% of cigarette advertisements.  *Id.* at 15,709; *see id.* at 15,641.



**WARNING:** Smoking causes head and neck cancer.



**WARNING:** Smoking reduces blood flow to the limbs, which can require amputation.



**WARNING:** Tobacco smoke can harm your children.



**WARNING:** Smoking reduces blood flow, which can cause erectile dysfunction.



**WARNING:** Tobacco smoke causes fatal lung disease in nonsmokers.



**WARNING:** Smoking causes COPD, a lung disease that can be fatal.



**WARNING:** Smoking causes bladder cancer, which can lead to bloody urine.



**WARNING:** Smoking causes type 2 diabetes, which raises blood sugar.



**WARNING:** Smoking during pregnancy stunts fetal growth.



**WARNING:** Smoking causes cataracts, which can lead to blindness.



### 1. FDA selected warnings that would frighten, shock, and disgust consumers.

In the 2011 Rule, FDA conceded that it designed the warnings to make consumers "depressed, discouraged, and afraid" to buy cigarettes. 76 Fed. Reg. at 36,638 (quotation marks omitted). The D.C. Circuit held that those warnings were "unabashed attempts to evoke emotion (and perhaps embarrassment) and browbeat consumers into quitting." *R.J. Reynolds*, 696 F.3d at 1217.

The evidence demonstrates that FDA took the same approach here. Notably, although FDA conducted individual interviews, focus groups, and two consumer research studies, 84 Fed. Reg. at 42,767, 42,770-71, it avoided asking any study participants how the new warnings made them feel. ROA.1611-12; *see also* 85 Fed. Reg. at 15,668. Nevertheless, many study participants volunteered that the warnings made them feel frightened, shocked, or disgusted. *E.g.*, ROA.1391, 1401, 1407, 1409, 1411, 1413; *see also* ROA.1233-34. And instead of seeking to make the warnings more neutral, FDA repeatedly accepted recommendations to make the images *more* emotional and grotesque. ROA.1407, 1417-18, 1420, 1422-23; *see also* ROA.1234-35.

FDA also initially tried to bury evidence of the warnings' emotional impact. When FDA issued the Proposed Rule, it refused to release the qualitative study reports, which included participants' reactions to the warnings and highlighted FDA's drive to make the warnings even more evocative. *See* 84 Fed. Reg. at 42,767, 42,771. After several commenters criticized FDA for failing to release the reports, FDA relented— but only after the comment period had closed. *Tobacco Products; Required Warnings for Cigarette Packages and Advertisements; Additional Materials; Reopening of the Comment Period*, 84 Fed. Reg. 60,966, 60,966-68 (Nov. 12, 2019). FDA then gave the public fifteen days to comment on these nearly 600-page reports. *Id.*

### 2.    FDA's own analysis shows that the selected warnings would mislead consumers and convey inaccurate information about smoking risks.

The graphic warnings convey a host of factually inaccurate and misleading messages about smoking health risks. Public comments demonstrated that all of the Rule's warnings misleadingly exaggerate smoking risks. *See infra* 22-25. And the results of FDA's own qualitative studies further demonstrated that the graphic warnings convey misleading, confusing, and inaccurate messages. ROA.1378, 1380, 1386-88, 1429, 1443, 1445. For instance, some study participants thought that the erectile-dysfunction image depicted a "strained relationship," infertility, "[i]nsomnia/sleeplessness," or "stress/depression." ROA.1643, 1645.

At a minimum, participants' reactions to FDA's draft graphic warnings raised serious questions about the clarity and accuracy of the messages conveyed. *See infra*

23-24.  But instead of probing these issues, FDA withheld the qualitative study reports on the draft graphic warnings for months, *see infra* 48-49, and declined to undertake similar studies of the final graphic warnings.

> ### 3.    FDA's analysis fails to show that the Rule will meaningfully affect the public's knowledge of smoking risks.

Before issuing the Proposed Rule, FDA commissioned two quantitative studies. The first was designed to determine whether the FDA-created textual warnings would promote greater public understanding of smoking risks.  84 Fed. Reg. at 42,767.  The second was designed to determine whether the graphic warnings (including text and images) would increase understanding of smoking risks.  84 Fed. Reg. at 42,771.  Both studies had "significant short comings" that make them "unreliable."  ROA.1614-15. In particular, neither study had a nationally representative sample.  *See* ROA.1473, 1494. Nor were they peer-reviewed before FDA issued the Proposed Rule, which led to criticism that they "were not credible."  85 Fed. Reg. at 15,661.  FDA responded that its studies had been peer-reviewed subsequent to the Proposed Rule, claiming that the reviewers were largely positive.  *Id.*  Contrary to FDA's characterization, the peer reviewers raised serious, substantive concerns about FDA's studies, including (among many others) the lack of an adequate theoretical framework and failure to use representative samples.  ROA.1498, 1500-01, 1503-04, 1507-09, 1512-13, 1515-16, 1519-21, 1524, 1526-32.

In any event, as discussed below, the studies actually showed that the Rule will *not* materially impact the public's understanding of smoking risks. *See infra* 34-37.

### D.    Plaintiffs Successfully Challenge the Rule.

In April 2020, Plaintiffs challenged the Rule in the Eastern District of Texas. *See* ROA.71. They sought summary judgment, arguing that the Rule violated the First Amendment, the APA, and the TCA, and should be set aside in its entirety. ROA.1213-88. FDA defended the Rule, but conceded that it is unprecedented in U.S. history. ROA.10450-52.

The district court granted summary judgment to Plaintiffs on their First Amendment challenge. ROA.10220.

Like the D.C. Circuit with the 2011 Rule, the district court held that *Zauderer* review is inapplicable and invalidated the warnings under *Central Hudson.* ROA.10202-03, 10208-11. The court concluded that "all of the warnings here" are not "purely factual" and "uncontroversial" because "each warning" is subject to multiple reasonable interpretations, the warnings' imagery "is provocative," and "[a]s to each warning, it is not beyond reasonable probability that consumers would take from it a value-laden message that smoking is a mistake." ROA.10205-06.

The court also identified "a broader problem": "FDA has not made a record-based showing" "that each image-and-text pairing conveys only one, unambiguous meaning that is factually correct." ROA.10206. This problem, too, affected "each image-and-text pairing." ROA.10206. For all of these reasons, the court

12

concluded that the warnings are not "purely factual and uncontroversial and objectively accurate as required" for *Zauderer* to apply.  ROA.10208.

The district court went on to hold that the Rule "does not meet *Central Hudson*'s narrow tailoring requirement."  ROA.10208.  Citing the Supreme Court's decision in *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2376 (2018) ("*NIFLA*"), the court found that "[t]he government has not shown that compelling these large, graphic warnings is necessary in light of other options," including public-information campaigns and "smaller or differently placed warnings."  ROA.10210-11.  Having held that the Rule violates the First Amendment, the district court did not reach Plaintiffs' statutory arguments.  ROA.10212.

The district court then rejected FDA's request that the court "sever and declare invalid only certain aspects of the warnings."  ROA.10212.  The court held that the TCA "does not allow the court to 'sever' the FDA's warnings by simply deleting their graphical component."  ROA.10213.  Rather, "the Act directs that graphics and text must accompany each other in the new warnings."  ROA.10213 (citing 15 U.S.C. § 1333(d)[1]).

The district court issued a declaratory judgment and vacated the Rule.  ROA.10213.  The court concluded that the question whether vacatur is appropriate was "resolved at this stage by Fifth Circuit precedent."  ROA.10219-20.

## SUMMARY OF THE ARGUMENT

**I.**    The Rule violates the First Amendment, as the district court correctly held.

13

First, as the district court explained, the *Zauderer* test does not apply because the warnings are not "purely factual," "accurate," or "uncontroversial." To the contrary, they convey the government's ideological anti-smoking message and are susceptible to multiple interpretations, many of which are false or misleading. *Zauderer* also does not apply because the warnings are not related to preventing consumer deception.

As the district court also correctly held, the Rule fails the *Central Hudson* test. First, there is no substantial government interest. FDA lacks any interest in compelling misleading disclosures. FDA also cannot sustain the Rule based on a purely informational interest, divorced from any real-world benefit. And in any event, the informational interest fails here because the public is nearly universally aware of the harms of smoking. Second, FDA cannot show that the Rule will meaningfully advance even its purely academic interest.

Third, the Rule is more extensive than necessary because it commandeers the top 50% of the front *and* back of cigarette packages and the top 20% of cigarette advertising for gruesome warnings. FDA needed, at a minimum, to consider less-burdensome alternatives, which it entirely failed to do.

For the same reasons, even if the *Zauderer* test applied, the Rule would fail it.

**II.** FDA violated the APA, 5 U.S.C. § 500 *et seq.*, in several respects. First, the Rule is arbitrary and capricious, including because the record evidence shows that the Rule would not advance FDA's goal of educating the public about smoking risks. FDA also failed to provide meaningful notice and an opportunity to comment by

withholding certain information during the rulemaking process, and by giving the public only fifteen days to comment on FDA's qualitative studies (which further revealed the Rule's defects).

**III.**    FDA violated the TCA by increasing the total number of warnings and by revising the statutory textual warnings.

**IV.**    The district court appropriately invalidated the Rule in its entirety. The government's severability arguments fail because the entire rule is invalid, because the TCA expressly prohibits separating the images from the textual warnings, and because FDA did not consider whether, and there is no basis for thinking that, whatever portion of the Rule remained would function sensibly absent the rest of the Rule. The court also correctly vacated the Rule, per the APA and this Court's precedents.

## STANDARD OF REVIEW

The court "review[s] the grant of summary judgment *de novo*." *Bradley v. Viking Ins. Co. of Wis.*, 56 F.4th 1011, 1014 (5th Cir. 2023).

## ARGUMENT

## I.    THE RULE VIOLATES THE FIRST AMENDMENT, AS THE DISTRICT COURT CORRECTLY HELD.

The First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Janus v. Am. Fed'n of State, Cnty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2463 (2018) (quotation marks omitted). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what

shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or act their faith therein.*" *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (emphasis added). Compelled speech "violates that cardinal constitutional command." *Janus*, 138 S. Ct. at 2463. These principles apply not just to opinions, "but equally to statements of fact the speaker would rather avoid," and apply to "business corporations." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573-74 (1995); *see United States v. United Foods*, 533 U.S. 405, 409-11 (2001); *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n*, 475 U.S. 1, 16 (1986) (plurality op.). The government therefore may not compel individuals or businesses to "use their private property as a 'mobile billboard' for the State's ideological message." *Wooley v. Maynard*, 430 U.S. 705, 715 (1977); *see 303 Creative LLC v. Elenis*, No. 21-476, 2023 WL 4277208, at *8 (U.S. June 30, 2023).

FDA argues that the Rule is lawful under the test set out in *Zauderer*, which is a narrow exception that allows the government to compel commercial speakers to disclose "purely factual and uncontroversial information about the terms under which [their] services will be available" if it is "reasonably related to the State's interest in preventing deception of consumers" and is not "unjustified or unduly burdensome." *Zauderer*, 471 U.S. at 651. But the district court correctly held that *Zauderer* does not apply and that the Rule cannot satisfy the *Central Hudson* standard. In any event, the Rule flunks any standard of First Amendment scrutiny—because, at bottom, the government has failed to identify a legitimate interest, it has not demonstrated that the

Rule would advance even its stated interest, and it has not shown that the Rule is appropriately tailored to that interest.

## A.    The District Court Correctly Held that *Zauderer* Does Not Apply.

No court has applied *Zauderer* to a compelled-speech requirement that includes a government-selected image.  This Court should not be the first.

### 1.    The district court correctly concluded that the warnings are not accurate, purely factual, and uncontroversial.

The narrow *Zauderer* exception applies only to compelled disclosures of "accurate," "purely factual," and "uncontroversial" information.  *Zauderer*, 471 U.S. at 651.  The Rule's warnings, however, are none of these, because they are value-laden and misleading.

#### a.    The warnings convey an ideological message.

As the district court correctly held, due to the warnings' provocative imagery, it is probable that "consumers would take from [each warning] a value-laden message that smoking is a mistake."  ROA.10204-05.  Using the neck-tumor image as an example, the court noted that it is subject to different reasonable interpretations, including that the warning is "an effort to provoke repulsion" by portraying "a stylized, exaggerated representation of neck cancer," and that the warning is a "message that smoking is a mistake" based on "the depicted person's gaze," which "arguably express[es] regret at her choice to smoke."  ROA.10205.

17



The district court could have gone further. The record demonstrates that it is *certain* that consumers would take a value-laden message from the warnings.

*First*, it is apparent from the warnings themselves that they each convey an ideological message. For example, the warnings include images of a sick child wearing a breathing mask; bloody, diseased lungs from a dead person; diseased feet with several toes missing; bloody urine; and a crying, underweight baby.

 

 



Indeed, a number of the images are quite similar to the "inflammatory images" from the first graphic-warnings rule—which the D.C. Circuit declared "cannot rationally be viewed as pure attempts to convey information to consumers," *R.J. Reynolds*, 696 F.3d at 1216-17.

*2011 Warnings*          *Current Warnings*



Moreover, the images' shocking nature is only reinforced by the warnings' large size and prominent placement.  85 Fed. Reg. at 15,709.  And inclusion of the images *in addition to* the (purportedly factual) textual warning statements demonstrates that the images are necessarily serving a purpose other than communicating purely factual information.

FDA's tactics are akin to the "shock-and-awe" advocacy used in numerous ideological debates, such as when animal-rights activists display photographs of mutilated animals. No one would contend that such photographs are "purely factual." To the contrary, they are designed to "shock" others into agreeing with the non-factual message that the targeted practice should be stopped. Similarly, no one could contend that FDA could mandate the following as "purely factual" warnings.




*Second*, record evidence demonstrates that consumers *do* in fact take value-laden messages from FDA's warnings. Although FDA (tellingly) refused to ask the study participants how the warnings made them feel, those participants repeatedly described the images as "grotesque," "gruesome," "disgusting," and the like. ROA.1391, 1395, 1401, 1407, 1409, 1411-13; *see also* ROA.1299-1307. But FDA ignored those responses,

and instead made the warnings *more* frightening, shocking, and disgusting.  *See supra* 9-10. And FDA hid those damning reports.  *See supra* 9.

In short, the warnings are "hardly…non-ideological" because they "skew public debate" and "stigmatize" consumers.  *See Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015) (panel reh'g) (internal quotation marks omitted).

**b.    The warnings convey false and misleading messages.**

As the district court further recognized, there is "a broader problem" with the warnings:  FDA did *absolutely zero* testing to ensure that the warnings have only one meaning (let alone an accurate meaning), and they reasonably can be interpreted in different ways, at least some of which are not factual or uncontroversial. ROA.10206-08.

As the district court held, "FDA has not made a record-based showing…that each image-and-text pairing conveys only one, unambiguous meaning that is factually correct."  ROA.10206.  To the contrary, "each of the graphic warnings" is easily capable of multiple interpretations.  ROA.10208.  Take the open-heart-surgery image, for example:



FDA acknowledged that the warnings should depict diseases as they are "typically experienced." 84 Fed. Reg. at 42,770. Yet, although consumers could reasonably interpret the open-heart-surgery image as showing "the most common treatment for heart disease," FDA presented "no evidence of that assertion's truth"; rather, a different intervention is "2.5 times more common than open-heart surgery" as a treatment for heart disease—record evidence FDA does not dispute. ROA.10206-07 (citing 85 Fed. Reg. at 15,677-78). Consumers could also interpret the image to mean that "open-heart surgery is the best treatment for heart disease, even if not the most common." ROA.10207; *see also* ROA.1577. But "that message would seem opinion-based" and is unsupported by the record. ROA.10207.

The same goes for the cataracts image:



This warning mentions both cataracts *and* blindness, so a consumer could reasonably interpret it as depicting blindness. ROA.10207. And even if the "text were limited to cataracts," "some consumers may reasonably interpret the image as depicting the most common result of cataracts," but FDA presented "no evidence of that depiction being

accurate." ROA.10207. Rather, as "commenters told the FDA" and FDA again conceded, "cataracts in the United States are typically treated long before they progress to the stage shown." ROA.10207; *see also* ROA.1648-50, 1691-99.

Again, the district court is correct, but it could have gone further. FDA's so-called "photorealistic" images are *inherently* susceptible to multiple subjective interpretations. *See R.J. Reynolds*, 696 F.3d at 1216 (recognizing images will give rise to subjective interpretations and misinterpretations); *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1285 (2023) ("Many photographs will be open to various interpretations."). And—although not designed to target this issue—*FDA's own studies* demonstrated that consumers will take away misleading and inaccurate messages from the Rule's images and text. For example:

- Some study participants interpreted the erectile-dysfunction image as referring to stress, insomnia, or infertility. ROA.1443, 1645.

- Some participants stated "that it was unclear what was wrong with the child" in the near-final "Sick Child" image. ROA.1429.

- The draft statement that "Smoking Causes Diabetes" inaccurately conveyed to consumers that smoking is the sole or primary cause of diabetes, or invariably causes diabetes. ROA.1378.

*See also* ROA.1251. Indeed, the reactions of study participants confirm that *every* graphic warning will mislead, confuse, or shock consumers. *See* ROA.1300-07 (collecting illustrative responses from study participants); ROA.2230-55 (same); *see also* ROA.1352, 1354, 1356, 1359, 1363-66, 1376-80, 1386-88, 1390-1411, 1414-18, 1420-22, 1429, 1431-32, 1434-41, 1443-45.

In short, it is no surprise that, as the district court held, "each of the graphic warnings" can be reasonably interpreted to convey inaccurate meanings. ROA.10208. Beyond the heart-disease and cataracts images discussed above, *each* of the remaining images is misleading and confusing:

- The "Diseased Non-Smoker's Lungs" image depicts lungs that "do not look like a non-smoker's lungs" and have unusually large and numerous cancerous lesions. ROA.1653.

- The "Diseased Feet" image depicts a condition that could affect, at most, one in 1,000 smokers. ROA.1660-61.

- The "Neck Tumor" image misleadingly suggests that "a cancerous mass of that size could arise" before a reasonable person would seek treatment. ROA.1657.

- The "Sick Child" image depicts a rare "worst case scenario" of a child being hospitalized, and requiring oxygen, due to a tobacco-smoke-induced asthma attack. ROA.1645-46.

- The "Crying Baby" image depicts a newborn weighing four pounds, when even the low end of normal birth weight for babies born to smoking women is more than five pounds. ROA.1577.

- The "Bloody Urine" image is misleading because "the association between bladder cancer and consistent smoking of up to ten cigarettes per day was not statistically significant." ROA.1685.

- The "Erectile Dysfunction" image misleadingly suggests that erectile dysfunction is commonplace for smokers. ROA.1688.

- The "COPD Nasal Cannula" image misleadingly "depicts a 'worst case scenario,'" in which a smoker not only develops COPD, but requires home oxygen. ROA.1687.

- The "Finger Prick" image is "misleading in that it does not convey either the absolute or relative risk of" smoking-related diabetes, and instead suggests that smoking results in diabetes, requiring painful blood-glucose monitoring.

ROA.1689.

This problem is not limited to the graphic element of the warnings. The textual warnings are likewise misleading. Most of them misleadingly focus on conditions that less frequently arise from smoking. Indeed, FDA conceded that the warnings are focused on conditions that are "less known to the public" (rather than focusing on conditions most frequently caused by smoking). 84 Fed. Reg. at 42,758. The statements also conveyed misleading, confusing, or inaccurate messages to study participants, including by their use of the word "cause" (as opposed to more accurate phrases such as "increases the risk of," "may cause," or "can cause"). ROA.4083, 4128; *see also* ROA.1300-07 (participants thought textual warnings were confusing or misleading); ROA.2238, 2250, 2253.

In short, the warnings are anything but "factual." And for the same reasons, they are also not "uncontroversial." *See Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 652 (7th Cir. 2006).; *Nat'l Ass'n of Mfrs.*, 800 F.3d at 530.

### c.    FDA's arguments are unavailing.

FDA oddly accuses the district court of "not identify[ing] any way in which these images or the text-and-image pairings are inaccurate or uncontroversial." Br. 46. As shown above, the district court did so persuasively and in detail. ROA.10204-08. *See supra* 12-13, 17-22. Moreover, the burden is on *the government* to show that each image conveys solely an unambiguous, factually correct meaning, which it has not even *attempted* to do through its studies here (which demonstrate the opposite, *supra* at 23-25).

26

*See, e.g., Zauderer*, 471 U.S. at 641; *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019) (en banc).  And FDA's criticisms of the court's reasoning fall flat.

*First*, as to the district court's holding that each image is value-laden, FDA defends the neck-tumor image solely by claiming that "the person depicted is not crying, grimacing, or making any other expression indicative of a strong emotion."  Br. 52.  But the court correctly concluded that a reasonable consumer could interpret the depicted person's gaze as "expressing regret at her choice to smoke."  ROA.10205.  That comports with the Supreme Court's observation that "[a] subject as open to interpretation as the human face…reasonably can be perceived as conveying several possible meanings."  *Andy Warhol*, 143 S. Ct. at 1285.  Indeed, FDA's own report shows that it *accepted* recommendations to "[m]aintain the look of sadness/despair" for the neck-tumor image.  ROA.1417-18, 1420, 1422-23.  And notably, other images *do* indisputably depict "crying" (the baby), "grimacing" (the man in the erectile-dysfunction warning), and "other expression[s] indicative of a strong emotion" (the woman in the erectile-dysfunction warning).

  

Furthermore, FDA completely ignores two other possible interpretations of the neck-tumor image identified by the district court, the first of which is inaccurate and the second of which is value-laden: "One person might view the image as showing a typical representation of the sort of neck cancer caused by smoking before a person could seek medical treatment. Another person might view the image as showing a stylized, exaggerated representation of neck cancer, perhaps in an effort to provoke repulsion." ROA.10205.

More broadly, FDA argues that the warnings evoke emotional responses simply because they accurately reflect serious outcomes of cigarette smoking. *E.g.*, Br. 52. But, as shown above, the warnings are deliberately inflammatory and carry FDA's anti-smoking message.

*Second*, as to the district court's holding that the images are subject to multiple interpretations and therefore are not accurate and purely factual, FDA defends a few of the images, but its arguments miss the mark. *See* Br. 47-50. For each, FDA responds that the image reflects an outcome that *sometimes* occurs, but does not dispute that this is not the most-common outcome (and that, for instance with head-and-neck cancer, this outcome *extremely rarely* presents in this manner). Nor does FDA address the court's point (at ROA.10206) that the images could reasonably be misunderstood as depicting the most-common outcome (or in other ways—for example, as showing optimal treatment).

Take the head-and-neck cancer image. As FDA acknowledges, it defended that warning in the Rule by asserting that neck tumors of this size are "not unusual" for patients in underserved communities. Br. 49-50. But, as the district court observed with respect to the cataracts image, ROA.10207-08, nothing about the head-and-neck cancer image indicates that it applies only to underserved communities. This is a prime example of why the images are ambiguous and misleading. *See R.J. Reynolds*, 696 F.3d at 1216 (an image is subject to misinterpretation if it could cause consumers to believe that a rare consequence of smoking is common).

### 2.    The warnings are not reasonably related to "consumer deception."

*Zauderer* also is inapplicable here because the warnings are not "reasonably related to…preventing deception of consumers." *Zauderer*, 471 U.S. at 651; *see also* ROA.1243-45; ROA.2192-94.[2] *Zauderer* is suited to that unique context—where the underlying commercial speech has little or no constitutional worth and compelled corrective speech will help prevent consumer deception. *See Zauderer*, 471 U.S. at 651. But when the government seeks to regulate lawful, non-misleading speech, there is no reason to apply a standard less strict than *Central Hudson*, regardless of whether the regulation restricts speech or compels a disclosure. *See Cent. Hudson*, 447 U.S. at 564-66. Thus, the Supreme Court has specified that an "essential feature[]" of the disclosures in

---

[2] Although the district court did not reach this issue, ROA.10203, this Court may affirm on any basis supported by the record. *See Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 434-35 (5th Cir. 2022).

*Zauderer* was that they were aimed at "inherently misleading commercial advertisements," *see Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 250 (2010), and repeatedly explained that, to qualify for *Zauderer* review, a required disclosure must be "an appropriately tailored check against deception or confusion," *Ibanez v. Florida Dep't of Bus. & Prof'l Reg.*, 512 U.S. 136, 146 (1994); *see also Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 491 (1997) (Souter, J., joined by Rehnquist, C.J., and Scalia and Thomas, JJ., dissenting); *Milavetz*, 559 U.S. at 257 (Thomas, J., concurring). Indeed, it is undisputed that the Supreme Court has never held that *Zauderer* applies outside the consumer-deception context.

This Court's precedent likewise recognizes that *Zauderer* is intended to evaluate regulations that "are directed at deceptive or misleading commercial speech and require a disclosure." *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 453 (5th Cir. 2015); *see also Cent. Ill. Light Co. v. Citizens Util. Bd.*, 827 F.2d 1169, 1173 (7th Cir. 1987) (similar); *Dwyer v. Cappell*, 762 F.3d 275, 282 (3d Cir. 2014) (similar). And this Court has acted on this view, repeatedly applying heightened scrutiny rather than *Zauderer* in analyzing compelled disclosures that were unrelated to preventing consumer deception. *See Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 164-65 (5th Cir. 2007); *Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 764-68 (5th Cir. 2008).[3]

---

[3] An amicus argues that, under *Netchoice, LLC v. Paxton*, 49 F.4th 439, 485 (5th Cir. 2022), *Zauderer* is *not* limited to disclosures designed to prevent consumer deception.

Here, the graphic warnings are not necessary to prevent consumer deception. Federal law already prohibits false or misleading claims on cigarette packages and advertising. *See* 21 U.S.C. §§ 331(a), 387c(a)(1), (7), 387k; *see also R.J. Reynolds*, 696 F.3d at 1214-15. Additionally, FDA acknowledges that the Rule's goal is to "promote greater public understanding," not prevent consumer deception. *See* 85 Fed. Reg. at 15,668.

FDA briefly argues that these warnings *are* related to consumer deception. Br. 28-29. Not so. *First*, the operative question, as this Court explained in *Test Masters*, is whether *the commercial speech at issue* is deceptive or misleading, not whether consumers are imperfectly informed more generally. 799 F.3d at 453. Here, the commercial speech at issue is undisputedly non-deceptive and non-misleading. *Second*, even if past consumer deception were relevant, FDA makes no attempt to show that any previous misrepresentations by tobacco companies continue to mislead consumers today despite more than five decades of federal warnings (let alone that those misrepresentations pertained to the subject matter of these warnings). *Third*, the Rule governs not just manufacturers but also retailers (including several Plaintiffs). *See, e.g.*, 85 Fed. Reg. at 15,690; 15 U.S.C. § 1333(b)(1). And there is no suggestion that those Plaintiffs *ever* engaged in any deceptive speech relating to tobacco.

---

Doc. 55 at 12-13 n.3. But that question was not presented in *Netchoice* because the parties did not raise it.

## B.    The District Court Correctly Held that the Rule Fails *Central Hudson*.

FDA has suggested that, if *Zauderer* does not apply, the Rule should be subject to *Central Hudson*.  85 Fed. Reg. at 15,648; *see* Br. 34.  Under *Central Hudson*, courts must analyze three prongs: (1) "whether the asserted governmental interest is substantial"; (2) "whether the regulation directly advances the governmental interest asserted"; and (3) "whether it is not more extensive than is necessary to serve that interest."  447 U.S. at 564, 566.  As the district court held, the Rule fails this test.[4]

### 1.    There is no substantial government interest.

FDA does not argue that the Rule is justified by an interest in reducing smoking—presumably because it already tried and failed to justify graphic warnings on this basis.[5]  *See supra* 5-6.  Instead, FDA argues that the Rule will "promote greater

---

[4] By its terms, *Central Hudson* applies to speech "restrictions," not compelled disclosures.  447 U.S. at 564; *see also Hersh*, 553 F.3d at 764-68 (applying strict scrutiny, not *Central Hudson*, to a compelled commercial disclosure to which *Zauderer* was inapplicable).  Thus, if the government compels a commercial actor to express a message that is not subject to *Zauderer*, strict scrutiny applies.  *See, e.g., 303 Creative*, 2023 WL 4277208, at *19; *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011); *Pac. Gas*, 475 U.S. at 17-18 (plurality op.); *Hersh*, 553 F.3d at 764-68; *Ent. Software*, 469 F.3d at 652.  Plaintiffs also preserve the argument that *all* commercial speech regulations should be reviewed under strict scrutiny.  *See Milavetz*, 559 U.S. at 255-56 (Thomas, J., concurring in part and concurring in the judgment).  Because the Rule fails *Central Hudson*, it *a fortiori* fails strict scrutiny.

[5] FDA's brief emphasizes smoking risks, particularly among adolescents.  *E.g.*, Br. 1.  Such concerns do not support the Rule, because FDA does not contend that the Rule would reduce smoking among *any* group, including adolescents.  Moreover, youth smoking "has been steadily declining during the past 2 decades" absent these warnings,

public understanding of the negative health consequences of cigarette smoking." 85 Fed. Reg. at 15,638; *see* Br. 35. There are numerous problems with FDA's reliance on that alleged interest.

### a. FDA has no substantial interest in mandating misleading disclosures.

There can never be a substantial governmental interest in mandating misleading disclosures. *See Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 967 (9th Cir. 2009), *aff'd*, 564 U.S. 786 (2011); *Nat'l Ass'n of Mfrs.*, 800 F.3d at 539 (Srinivasan, J., dissenting). Because the graphic warnings are misleading, *see supra* 21-25, they cannot be upheld under any level of First Amendment scrutiny.

### b. FDA has no substantial interest in simply providing information.

As the D.C. Circuit explained in *R.J. Reynolds*, a "purely informational" interest such as FDA's asserted interest here cannot "stand on its own," and should be viewed solely as "a description of the means by which [FDA] plans to accomplish [the] goal of reducing smoking rates, and not an independent interest capable of sustaining the Rule." 696 F.3d at 1221. "[I]t is plainly not enough for the Government to say simply that it has a substantial interest in giving consumers information," because such a "circular formulation" would apply to "any and all disclosure requirements." *Am. Meat*, 760 F.3d at 31 (Kavanaugh, J., concurring in the judgment). FDA's informational rationale can

---

and now stands at 1.6%. Eunice Park-Lee, et al., *Tobacco Product Use Among Middle and High School Students—United States, 2022*, CDC (2022), https://tinyurl.com/3hmhfpsu.

only be understood as a means of achieving an appropriate real-world effect. *R.J. Reynolds*, 696 F.3d at 1221; *see Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 73-74 (2d Cir. 1996); *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993). But here, FDA identifies no such effect, because there is none. Thus, FDA has not met its burden.

FDA cites *Hersh*, 553 F.3d at 766, and *Citizens United v. FCC*, 558 U.S. 310 (2010), as purported examples of adequate informational interests. Br. 35. But *Citizens United* discussed an interest in affecting real-world behavior, not a purely informational interest. 558 U.S. at 368-69 (the disclaimer "avoid[s] confusion by making clear that the ads are not funded by a candidate or political party"); *id.* at 371 ("[the] disclosure permits citizens and shareholders to *react* to the speech of corporate entities in a proper way" (emphasis added)). Similarly, *Hersh* involved an interest in "ensuring that those who enter bankruptcy know what it entails," given that "[t]he amount of debt discharged in bankruptcy is immense," and debtors are "at a disadvantage" "in comparison both to creditors and to their advisors" due to "lack of basic knowledge." 553 F.3d at 766-67. Much like *Citizens United*, the government had an interest in permitting consumers to appropriately *react* to their creditors' speech as they contemplated entering bankruptcy. *Id.* And, as noted above, *Hersh* cuts strongly against FDA because it applied strict scrutiny to a disclosure requirement similar to the warnings here. *See id.* at 764-68.

FDA's reliance on the current Surgeon General's warnings (at 35) misses the mark. Plaintiffs are not challenging the Surgeon General's warnings, but it would be up to the government to articulate a defense for them in the first instance. *NIFLA*,

138 S. Ct. at 2377. Because the Surgeon General's warnings are purely factual, uncontroversial, and focused on primary effects of smoking, it is possible that they are reducing smoking or furthering other real-world objectives, such as combatting the effects of alleged past consumer deception. In any event, at a minimum, the Surgeon General's warnings pertain to serious and common effects of smoking (and thus would be upheld under a test that permitted informational interests but required the information to be material).

> **c.  FDA's informational interest is inadequate because the public already knows about the risks of smoking.**

The public "already know[s]" about the risks of smoking, so FDA's asserted interest in informing the public of those risks cannot be substantial. *See NIFLA*, 138 S. Ct. at 2377. For decades, cigarette packages and advertising have displayed warnings that inform the public about smoking risks. *See* Pub. L. No. 89-92, 79 Stat. 282 (1965); Pub. L. No. 98-474, 98 Stat. 2200-02 (1984). The public has also received such information from other sources, including the government, public-health entities, doctors, insurers, and schools. *See* ROA.1580, 1594-96, 1619-25; *see also United States v. Philip Morris USA Inc.*, No. 99-CV-2496, 2016 WL 3951273, at *1 (D.D.C. Apr. 19, 2016) (requiring tobacco companies to make corrective statements). As a result, the public already knows that smoking is harmful. Indeed, FDA's own survey shows that *99.5%* of individuals believe that cigarette smoking is harmful to health. ROA.1581, 1597-98; *see also* ROA.1253-54.

The public also knows about the major risks of smoking. For example, FDA's own data show that 94% of people believe that smoking cigarettes causes lung cancer, 94% believe that smoking causes lung disease, and 88% believe that smoking causes heart disease. ROA.1603-06; *see* ROA.1610; *see also* ROA.1254. It would be difficult, if not impossible, to improve these numbers. ROA.1597, 1581.

FDA tries to sidestep this problem by claiming that the warnings address "less-known health consequences of smoking." 85 Fed. Reg. at 15,640; *see* Br. 36-37. This is fundamentally flawed for two reasons. *First*, FDA's own evidence shows that seven of the Rule's warnings describe well-known risks.

- **"Tobacco smoke can harm your children."** FDA concedes[6] this risk is well-known, and its study shows this warning was new information to only 2.6% of adults. *See also* ROA.1370, 1608-09; ROA.1255.

- **"Tobacco smoke causes fatal lung disease in nonsmokers."** This is concededly well-known, and FDA's data confirm that 83% of people believe second-hand smoke causes lung disease in non-smokers. ROA.1609; *see also* ROA.1255.

- **"Smoking causes head and neck cancer."** FDA has acknowledged evidence that more than 90% of people know smoking causes various head and neck cancers. 84 Fed. Reg. at 42,761 (citing Dannielle E. Kelley et al., *Effective Message Elements for Disclosures About Chemicals in Cigarette Smoke*, 20 Nicotine & Tobacco Research 1047, 1051 (2018)); ROA.1606-07; *see also* ROA.1255.

- **"Smoking can cause heart disease and strokes by clogging arteries."**

---

[6] FDA has acknowledged "the public already has a high pre-existing level of knowledge of the specific health consequences described in the warnings" that were tested in certain studies. *Id.* at 42,764. Because those four studies tested *all* of the Act's warnings, FDA has effectively conceded that each of those risks is well-known. *See also id.* at 42,767 n.5.

FDA has conceded this is well-known, *see supra* n.6, and FDA's data show that 88% of people understand the heart-disease risk and 80% understand the stroke risk. *See* 84 Fed. Reg. at 42,758; ROA.1604; *see also* ROA.1255.

- **"Smoking during pregnancy stunts fetal growth."** 86% of people believe smoking causes harm to fetuses (per FDA's data), ROA.1606-08, and FDA has relied on other evidence that people know about the smoking-related risks of low birth weight and premature birth. 84 Fed. Reg. at 42,761 (citing Denise M. Levis et al., *Women's Perspectives on Smoking and Pregnancy and Graphic Warning Labels*, 38(5) Am. J. of Health Behavior 755 (2014)); *see also* ROA.1370; ROA.1255.

- **"Smoking causes COPD, a lung disease that can be fatal."** FDA concedes this is well-known, and FDA's data show that 94% of people believe smoking causes lung disease. 84 Fed. Reg. at 42,756; ROA.1605-06; *see also* ROA.1357; ROA.1255.

*Second*, even if the public is less aware of minor or unlikely health consequences covered by the other warnings (like cataracts), FDA lacks a substantial interest in compelling Plaintiffs to speak about these less-known risks. Those warnings serve no purpose because they will not affect smoking consumption (and FDA has not attempted to prove to the contrary), and generally will not even affect people's overall assessment of the risks of smoking. ROA.1600-01. If consumers choose to smoke knowing about its major risks (e.g., lung cancer), it is implausible that they would be deterred by learning it had some minor contributing effect on lesser risks (e.g., cataracts). ROA.1613; *see also* ROA.1256. FDA's effective concession that its warnings will not affect smoking levels empirically confirms this intuitively obvious point. It is also telling that FDA (1) has never addressed any of these risks in any of its prolific

public-education campaigns, *see* ROA.1621-25, and (2) did not even attempt to quantify the benefits of giving consumers this information, *see* ROA.1542; *see also* ROA.1566.

FDA's position has no logical endpoint.  After all, it is always possible to find some granular fact that the public does not know.  Thus, FDA's reasoning could justify a warning on any subject and on any product.  That cannot be right.

### 2.    The Rule does not directly advance FDA's asserted interest.

The Rule also flunks *Central Hudson* because it does not "directly advance[] the governmental interest asserted," and at most "provides only ineffective or remote support for the government's purpose."  *Cent. Hudson*, 447 U.S. at 564, 566; *see Ibanez*, 512 U.S. at 142-43; *Nat'l Ass'n of Mfrs.*, 800 F.3d at 525.  FDA defines the Rule's goal remarkably narrowly: to promote "public understanding of the negative health consequences of smoking" only with respect to the "specific health consequences" depicted in the warnings.  85 Fed. Reg. at 15,655.  As explained above, that purported interest is insufficient because it does not address any real-world problems (such as smoking rates).  *See supra* 32-34.  Indeed, FDA does not even contend that the information is *material* to any real-world decision (and it is not, ROA.1600-03).  But even assuming this purely academic goal were valid, the Rule would not advance it.

FDA's own analyses showed that the warnings performed dismally in changing beliefs about smoking.  The first of its two quantitative studies showed that, when compared to the TCA's textual warnings, *seven* of the nine FDA-created warnings did not lead to a statistically significant increase in the participants' beliefs that smoking has

the negative health consequences corresponding to that warning. ROA.1471-72. It also showed that many of the FDA-created textual warnings were not believable—feedback that FDA consistently ignored. Indeed, FDA even dropped the "believability" question from the second quantitative study. *See* ROA.1521.

FDA then moved the goalposts in its second study by switching focus to two different questions: (1) whether the warning was "new information" to participants, and (2) whether participants reported that they "learned something" from the warning. *See* 84 Fed. Reg. at 42,768, 42,771. But these questions are wholly unreliable, and instead reflect what a peer reviewer called "*post hoc rationalization*." ROA.1498.

*First*, the "new information" and "learned something" questions say little—if anything—about whether warnings will improve the public's understanding of smoking risks. In particular, they do not speak to whether respondents actually *learned* the information in the warnings. *See* 85 Fed. Reg. at 15,665-66 (explaining that, for learning to occur, it is necessary both to attend to the message and to process the information in the message). Unsurprisingly, FDA's chosen measures were criticized by reviewers as non-standard measures of questionable validity. *See* ROA.1503, 1507, 1516. And even with these significant flaws, the second study showed that five of the Rule's eleven graphic warnings had *no* significant effect on the participants' beliefs about smoking risks, and five more had only a small effect that quickly started wearing off. *See* ROA.1489-92, 1485-87; *see also* ROA.1239-40. *Second*, FDA's studies suffered from methodological problems that rendered them unreliable. ROA.1447 (neither study is

nationally representative); ROA.1496-1532; *see also* ROA.1261-62.   FDA ignores its studies' flaws and instead offers general reasons to prefer graphic images.  Br. 54.  Those generic observations fail to engage with the evidence, which shows that these warnings will not have the effect FDA seeks.

Notably, if the textual warnings are considered in isolation—as FDA suggests throughout the brief—its failure of proof becomes even more acute.  After all, the second quantitative study—on which the government heavily relies—did not test the textual warnings separately from the images.  ROA.9519.

### 3.    The Rule is more extensive than is necessary to serve FDA's asserted interest.

The Rule also fails *Central Hudson*'s narrow-tailoring requirement.  *See* 447 U.S. at 565; *Ibanez*, 512 U.S. at 146; *Public Citizen Inc. v. Louisiana Att'y Disciplinary Bd.*, 632 F.3d 212, 228-29 (5th Cir. 2011).  "[I]f the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive."  *Cent. Hudson*, 447 U.S. at 564.  Here, the restriction on commercial speech is extremely burdensome, and numerous less-burdensome alternatives are available.

**a.**    The Rule compels Plaintiffs to use the top 50% of the front *and* back of cigarette packages and the top 20% of cigarette advertising for gruesome warnings, which places onerous burdens on the Plaintiffs.

*First*, the Rule drastically limits the physical space that manufacturers have to communicate.  ROA.1666.  The massive warnings will interfere with manufacturers'

trademarks and trade dress, including, for example, Reynolds's use of its longstanding and iconic Camel logo.

 

*Current pack front*          *Modified pack front*

Manufacturers cannot fix this problem by simply shrinking their brand information. Cigarettes in the United States generally cannot be sold via self-service, and virtually all cigarettes sold are displayed several feet behind a sales counter. ROA.1668; *see* 21 C.F.R. § 1140.16(c). As a result, substantially reducing the size of the brand message on those packages would make it very difficult to read, if not illegible. ROA.1668; *see NIFLA*, 138 S. Ct. at 2378 (invalidating compelled speech that was so large and detailed that it drowned out other speech); *Am. Meat*, 760 F.3d at 27.

*Second*, the warnings themselves will make it harder for Plaintiffs to effectively convey information to consumers. FDA has adopted warnings that are designed to frighten, shock, and disgust consumers, and convey the government's anti-smoking message. *See supra* 17-21, ROA.1666. These highly charged messages will "drown[]out" Plaintiffs' speech. *See NIFLA*, 138 S. Ct. at 2378.

*Third*, the warnings exacerbate these problems by occupying the *top* portion of

packages and advertising, which is naturally the most prominent.  ROA.1666.  Worse, many retail outlets arrange cigarette packages so only the top portion is visible, which would mean that consumers would see *only* the graphic warnings.  ROA.1668-69.




*Current Retail Display*                    *Modified Retail Display*

*Fourth*, the combination of these factors—gruesome images that take up the top 50% of the front and back of cigarette packages—will make all cigarette packages look substantially the same.  That makes it more difficult for manufacturers to "differentiate their brands from competitors' brands."  ROA.1665; *see also* ROA.1664.

*Fifth*, these burdens are magnified because Plaintiffs have few remaining avenues for communicating with adult consumers.  Plaintiffs' ability to promote their products is severely restricted by federal law, state law, and a settlement between forty-six states and major cigarette manufacturers.  *See* 15 U.S.C. § 1335; 21 U.S.C. § 387a-1(a)(2); 21 C.F.R. § 1140.16(d); 21 C.F.R. § 1140.34(a)-(c); Master Settlement Agreement § III(d), https://tinyurl.com/y6te8olv; *see also* 15 U.S.C. § 1334(c) (federal law does not preempt various state restrictions); 21 U.S.C. § 387p (same); ROA.1264.  Because Plaintiffs have so "few avenues of communication" left with consumers, the Rule "place[s] a greater, not lesser, burden on [their] speech."  *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 564-65 (2001); *see also Linmark Assocs. v. Twp. of Willingboro*, 431 U.S. 85, 93 (1977).

The government asserts that "FDA determined" that cigarette manufacturers retain "ample room" on the "lower half" of their packages and the "remaining 80 percent" of their advertisements. Br. 32-33. But this constitutional question is for this Court, not FDA. Agency actions do not receive "the usual deference when reviewing a potential violation of a constitutional right," and "courts should make an independent assessment." *Tex. Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 410 (5th Cir. 1999); *see also Porter v. Califano*, 592 F.2d 770, 780 (5th Cir. 1979) (it "would be error" for a district court to "rel[y] on agency findings or defer[] to agency rulings" in deciding a First Amendment claim).

**b.**    Particularly given the extremely burdensome nature of the Rule, the district court was correct in holding that the Rule is not "narrowly drawn" because FDA failed to consider and test less-burdensome alternatives. ROA.10210-11; *see Cent. Hudson*, 447 U.S. at 565; *see also United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1143 (D.C. Cir. 2009) (per curiam); *NIFLA*, 138 S. Ct. at 2376 (invalidating California's compelled-speech requirement partly because California "identified no evidence" that a public-advertising campaign would not be sufficiently effective). Here, FDA has numerous less-restrictive ways to achieve its goals. ROA.10210-11.

First, the government could find alternative ways of delivering the information— such as by increasing its own anti-smoking speech (or funding for anti-smoking programs and advertising by third parties). ROA.10210-11. As an added advantage, these alternatives would allow the government to tailor messages to particular groups

(e.g., youth). Indeed, FDA boasts that one of its education campaigns prevented almost 600,000 youths from initiating smoking in under three years. ROA.1588 (quoting Norman E. Sharpless, *Press Announcement* (Aug. 20, 2019), https://tinyurl.com/y3kmouoa); FDA, *FDA Releases New Ads, Including First Focused on Mental Health Effects of Cigarette Smoking Among Youth* (Jan. 10, 2023) (touting this figure), https://tinyurl.com/23rx9t75; ROA.1621-25. The availability of this alternative is fatal to the government's position here, just as it was in *NIFLA*, 138 S. Ct. at 2376.

FDA's primary retort is that it "already conducts" information campaigns. Br. 40. But neither FDA's briefing below nor its appellate brief disputes that it has never run a campaign addressing *these risks*. Indeed, that the government runs so many public-education campaigns and boasts of their effectiveness only underscores why it was necessary to consider a public-education campaign here. This is especially true because record evidence—which FDA ignores—indicates that a public-information campaign would be *more effective* than graphic warnings. ROA.1596-97, 1618, 1627.

FDA also complains that public-education campaigns "do not reach every person who looks at a package of cigarettes." Br. 40. But FDA lacks a sufficient interest in reaching *every* person who ever sees a pack of cigarettes. *Cf. Brown*, 564 U.S. at 803 n.9 ("the government does not have a compelling interest in each marginal percentage point by which its goals are advanced"); *NIFLA*, 138 S. Ct. at 2376 (evidence that a government advertising campaign was relatively ineffective would not justify commandeering private speech).

The district court was also correct that FDA failed to consider the potential efficacy of less-burdensome warnings.  ROA.10211.  For instance, FDA could change the warnings' text, location, and/or size.  But FDA never even considered these options and instead simply assumed that bigger is better—an approach that would equally justify warnings that take up 90% of cigarette packaging.  *See Ent. Software*, 469 F.3d at 652 & n.13 (the government "failed to even explain why a smaller [warning] would not suffice").  Another alternative that FDA should have considered is textual warnings without graphic images.  *See* ROA.1630-32.

The record reflects that several of these readily available less-restrictive alternatives would likely have been effective.  ROA.1586-87, 1593-1615, 1630-38, 1698; *see also* ROA.1266-67.  For instance, a survey compared FDA's warnings to several less-restrictive alternatives and found very few statistically significant differences regarding the amount of "new information" conveyed and respondents' beliefs about smoking risks after viewing the warnings.  ROA.1630-31.  But FDA failed to try *any* of these alternatives.

FDA admits that it did not test any alternative that was not contemplated by the TCA.  85 Fed. Reg. at 15,650-51.  FDA insists it permissibly relied on Congress's purported "judgment" that large new warnings were needed.  Br. 39.  But Congress cannot relieve FDA of its constitutional obligations.  *See supra* 15-16.  Moreover, as the D.C. Circuit noted in rejecting FDA's similar argument in *R.J. Reynolds*, "deference is only warranted where Congress 'base[s] its conclusions upon substantial

evidence,'…and Congress's predictive judgments are not 'insulated from meaningful judicial review.'" 696 F.3d at 1220 n.15 (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 196 (1997), and *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994)). Here, too, FDA has not pointed to any *evidence* considered by Congress that would suggest that less-restrictive versions would not be sufficiently effective.

### 4.    For the same reasons, the Rule would also fail *Zauderer*.

Even under *Zauderer*, the Rule violates the First Amendment because it is "unjustified" and "unduly burdensome," *Zauderer*, 471 U.S. at 651, and FDA has failed to meet its burden to show otherwise, *Ibanez*, 512 U.S. at 146.

The *Zauderer* factors align closely with the *Central Hudson* factors—indeed, as then-Judge Kavanaugh has explained, "*Zauderer* is best read simply as an application of *Central Hudson*" to compelled commercial disclosures, "not a different test altogether." *Am. Meat*, 760 F.3d at 33 (Kavanaugh, J., concurring in the judgment). "Even under *Zauderer*, a disclosure requirement cannot be…unduly burdensome…and [may] extend no broader than reasonably necessary." *NIFLA*, 138 S. Ct. at 2377 (internal quotation marks and citations omitted).

Thus, the Rule fails under *Zauderer* for the same reasons it fails under *Central Hudson*. ROA.10210-11. The Rule is unjustified because it fails to advance a legitimate government interest, *see supra* 31-39, and it is unduly burdensome because it imposes extreme burdens on speech and FDA failed to consider less-burdensome alternatives, *see supra* 39-45.

Notably, the D.C. Circuit recently described *text-only* warnings that took a *smaller* portion of cigar packaging and would cost far *less* to implement as "obtrusive and expensive." *Cigar Ass'n of Am. v. FDA*, 964 F.3d 56, 60, 62 (D.C. Cir. 2020). And the Ninth and Seventh Circuits have invalidated far *smaller* text-only warnings for being too burdensome. *Am. Beverage Ass'n*, 916 F.3d at 754 (applying *Zauderer*); *Ent. Software*, 469 F.3d at 652 & n.13. In short, it is no surprise that the draconian requirements imposed by the Rule cannot survive any level of First Amendment scrutiny.

## II.    THE RULE VIOLATES THE APA.

Because the district court ruled in Plaintiffs' favor on the First Amendment claim, it did not address Plaintiffs' other claims, including that the Rule violates the APA. ROA.10212. However, as previously noted, *supra* n.2, this Court is free to affirm on any ground. As shown below, the Rule violates the APA.

### A.    FDA Acted Arbitrarily and Capriciously.

The APA directs courts to set aside agency action that is "arbitrary [and] capricious." 5 U.S.C. § 706(2)(A). FDA acted arbitrarily in at least three ways.

*First*, an agency acts arbitrarily when it "offer[s] an explanation…that runs counter to the evidence." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see Sw. Elec. Power v. EPA*, 920 F.3d 999, 1013, 1019 (5th Cir. 2019). Agency action also must be supported by substantial evidence. *See R.J. Reynolds*, 696 F.3d at 1218; *Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 604 (D.C. Cir. 2007).

47

Here, the Rule fails these standards for the same reasons it fails First Amendment review. *See supra* 15-46. Most significantly, the Rule lacks *any* evidence demonstrating that the warnings will further FDA's only asserted interest: "promot[ing] greater public understanding" of smoking risks. 84 Fed. Reg. at 42,755. As noted above, FDA's two quantitative studies are deeply flawed and unreliable, and in any event their results undermine the Rule. *See supra* 9-11, 22-25.

*Second*, "when an agency decides to rely on a cost-benefit analysis as part of its rulemaking, a serious flaw undermining that analysis can render the rule unreasonable." *Idaho Conservation League v. Wheeler*, 930 F.3d 494, 507 (D.C. Cir. 2019) (quotation marks omitted); *see also Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1040 (D.C. Cir. 2012). Here, FDA's cost-benefit "analysis" expressly *disclaimed* any attempt to quantify benefits. ROA.1642. This fundamental flaw renders the rule arbitrary. *See* ROA.1589-91.

*Third*, a rule is arbitrary if the agency ignores reasonable alternatives. *Chamber of Commerce v. SEC*, 412 F.3d 133, 144-45 (D.C. Cir. 2005); *see also Sw. Elec. Power*, 920 F.3d at 1017-18, 1021-22. As noted above, FDA refused to evaluate several less-restrictive alternatives. *See supra* 39-45. Instead, FDA considered only three alternative approaches and provided no rational explanation for rejecting them. ROA.1549-60.

## B.    FDA Failed To Provide Meaningful Notice.

FDA also violated the APA by withholding important information from the public. The APA requires that agencies publish a general notice of proposed

rulemaking that includes "a description of the subjects and issues involved" in the proposed rule. 5 U.S.C. § 553(b)(3). That notice must contain "sufficient factual detail and rationale for the rule to permit interested parties to comment meaningfully." *Nat'l Lifeline Ass'n v. FCC*, 921 F.3d 1102, 1115 (D.C. Cir. 2019); *see Phillips Petroleum Co. v. Johnson*, 22 F.3d 616, 620 (5th Cir. 1994), *modified on other grounds*, No. 93-1377, 1994 WL 484506 (Sept. 7, 1994). This includes "technical studies and data that [the agency] has employed." *N. Am.'s Bldg. Trades Unions v. OSHA*, 878 F.3d 271, 301 (D.C. Cir. 2017) (per curiam) (brackets, emphasis, and quotation marks omitted); *accord Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006).

Here, FDA concealed vital information when it issued the Proposed Rule. The Proposed Rule relied on three qualitative studies and two quantitative studies. *See* 84 Fed. Reg. at 42,765-72, 42,777-78. But FDA did not release the underlying data, or even study reports, for the qualitative studies. Instead, FDA released only short descriptions of the studies. 84 Fed. Reg. at 42,767, 42,771. FDA's failure to release these reports and data violates the "fairly obvious proposition that studies upon which an agency relies in promulgating a rule must be made available during the rulemaking." *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 237 (D.C. Cir. 2008). Additionally, FDA did not release the final data sets from the quantitative studies, which would have allowed Plaintiffs to examine the data quality and replicate FDA's statistical analyses. FDA concealed this information to avoid public criticism. ROA.2266. Commenters promptly requested this information, but FDA failed to produce it before the comment

period closed.  *See, e.g.*, ROA.7453-55, 7449-51.

### C.    FDA Failed To Provide a Meaningful Opportunity To Comment.

FDA failed to provide sufficient time to comment on the qualitative study reports.  The opportunity to comment must be "meaningful," *Nat'l Lifeline Ass'n*, 921 F.3d at 1115-17, and must include the chance to comment on the agency's evidence, *Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 494 F.3d 188, 201 (D.C. Cir. 2007); *see Phillips Petroleum*, 22 F.3d at 620; 5 U.S.C. § 553(c).  The failure to "reveal portions of the technical basis for a proposed rule in time to allow for meaningful commentary" is a "serious procedural error."  *Solite Corp. v. EPA*, 952 F.2d 473, 484 (D.C. Cir. 1991) (per curiam) (quotation marks omitted); *accord Kern*, 450 F.3d at 1076.

Here, FDA failed to release the qualitative study reports during the comment period, despite FDA's reliance on them.  *See supra* 9-10.  Nearly a month after the comment period closed, however, FDA finally placed them in the docket.  *See* 84 Fed. Reg. at 60,966-68.  FDA then gave the public just fifteen days to comment.  *Id.*

Courts have made clear that a fifteen-day comment period is inadequate.  *See, e.g.*, *Nat'l Lifeline Ass'n*, 921 F.3d at 1117 (two weeks inadequate); *Prometheus Radio Project v. FCC*, 652 F.3d 431, 453 (3d Cir. 2011) (28 days); *N.C. Growers' Ass'n v. UFW*, 702 F.3d 755, 770 (4th Cir. 2012) (10 days).  FDA's stingy comment period therefore violated the APA.

### D.    These Errors Were Prejudicial.

The bar for showing APA prejudice is low, and Plaintiffs easily clear it.  *See Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 444 (5th Cir. 2001); *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 215 (5th Cir. 1979); *Owner-Operator*, 494 F.3d at 202-03.

If the qualitative study reports had been released with the Proposed Rule, or if FDA had reopened the comment period for sixty days, Reynolds's experts could have used the reports to deepen their analysis of whether the proposed warnings were misleading or provoked negative emotions, and Reynolds's survey expert could have included additional survey questions.  *See, e.g.*, ROA.1632-38, 1648-49, 1653, 1657, 1645-46, 1660.  More generally, Plaintiffs could have used the qualitative studies to reinforce their argument in the rulemaking that the warnings were misleading and provoked negative emotions.  *See supra* 21-25; *see also* ROA.2221.

Plaintiffs also suffered prejudice from FDA's failure to timely release the underlying data for all studies.  *See supra* 9-10.  That data provides evidence that the warnings are confusing, misleading, and designed to provoke negative emotions.  *See* ROA.2231-55.  In short, Plaintiffs could have mounted an even more "credible challenge" to the Rule if FDA had complied with the APA.  *See Owner-Operator*, 494 F.3d at 202-03.[7]

---

[7] FDA's arbitrary-and-capricious errors similarly are not harmless because each bears on the substance of FDA's decision.  *See Sierra Club*, 245 F.3d at 444.

### III.   THE RULE VIOLATES THE TCA.

The TCA has two subsections that, together, govern FDA's ability to adjust the Act's warning statements:  Section 201(a) ("Graphic label statements") and Section 202(b) ("Change in required statements").[8]  Section 201(a) says that FDA must "issue regulations that require color graphics depicting the negative health consequences of smoking *to accompany* the label statements specified in subsection (a)(1)."  15 U.S.C. § 1333(d)[1] (emphasis added).  Section 202(b) allows FDA through rulemaking to "adjust the format, type size, color graphics, and text of any of the label requirements,…if the Secretary finds that such a change would promote greater public understanding of the risks associated with the use of tobacco products."  *Id.* § 1333(d)[2].

FDA violated the Act by changing the total number of warnings from nine to eleven.  Nothing in the statute allows FDA to create *additional* warnings.  If Congress had intended to authorize FDA to do that, it would have done so expressly, as it has done elsewhere in the Food, Drug, and Cosmetic Act.  *See* 21 U.S.C. § 343(q)(2)(A).

Before the district court, FDA asserted that it had authority to change "any of the label requirements"—including, apparently, in ways not specified by the statutory text.  ROA.2399.  That interpretation makes no sense; Congress cannot delegate the power to change the text it enacted.  *See, e.g., Clinton v. City of New York*, 524 U.S. 417,

---

[8] Two separate provisions of the TCA were codified as 15 U.S.C. § 1333(d).  This brief refers to them as Sections 201(a) and 202(b) and cites them as § 1333(d)[1] and § 1333(d)[2], respectively.

439-40 (1998).  And if FDA were right, then FDA would also be entitled to change the warnings' size and placement, which eliminates its excuse for not testing alternatives that are not expressly contemplated by the TCA (an argument that is wrong in any event, as explained above).  And FDA's interpretation does not limit the warnings to eleven— it could dictate as many warnings as it wished.[9]

Separately, FDA also violated the TCA by deleting seven of the Act's textual warnings and adding nine of its own.  Section 201(a) allows FDA to make only minor technical adjustments to the warnings' text.  And Section 202(b)'s broader grant of power to adjust the warnings' text kicks in only *after* FDA issues the graphic-warnings rule required by Section 201(a).  This can be seen, in part, from the fact that Section 202(b) also empowers FDA to adjust the warnings' "color graphics"—which of course would be impossible before a graphic-warnings rule is promulgated.

## IV.   THE RELIEF ORDERED BY THE DISTRICT COURT IS APPROPRIATE.

### A.   The Rule Should Be Set Aside in Its Entirety.

The government insists that any unlawful portions of the Rule should be severed.  Br. 58-63.  The district court correctly rejected this argument.  ROA.10212.

---

[9] *Chevron* deference is inapplicable because FDA's position is unambiguously foreclosed by the text and FDA erroneously believed its authority was "plain from the statute's face."  *See Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin.*, 471 F.3d 1350, 1353-54 (D.C. Cir. 2006); 85 Fed. Reg. at 15,642-43.

1.    As an initial matter, severability is irrelevant because the entire Rule is invalid on multiple grounds.  To begin, the asserted interest supporting the entire Rule is invalid.  *See supra* 31-37.  Additionally, no aspect of the Rule meaningfully advances FDA's asserted interest.  *See supra* 37-39.  Moreover, the entire Rule is unduly burdensome.  *See supra* 39-45.  Additionally, Plaintiffs have shown that *both* the images and the text are impermissibly misleading.  *See supra* 21-25.  Finally, Plaintiffs' APA and TCA arguments are not limited to the graphic portion of the warnings.

2.    Even if FDA were right that the textual warnings are lawful, the district court correctly noted that the TCA *prohibits* the images from being separated from the textual warnings.  ROA.10213.  The TCA states that the graphic warnings must "accompany" the textual warnings.  15 U.S.C. § 1333(d)[1].  Thus, Congress has expressly decided that a graphic-warnings rule must involve *both* graphics and text, so those two portions of the Rule cannot be severed from each other.

The TCA's general severability provision is not to the contrary.  That general provision is overcome here by the TCA's specific mandate that graphic images and the TCA's textual warnings must accompany each other.  *See Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 676 (5th Cir. 2003).  And in any event, the two provisions can—and thus should—be harmonized.  *See United States v. Elrawy*, 448 F.3d 309, 315 (5th Cir. 2006).  The severability provision says that if one "provision" of a regulation is invalid, the remainder of the regulation should generally remain in effect.  21 U.S.C. § 387 note.  But here, the textual and graphic warnings are part of the *same provision* of the Rule:

Section 1141.10(a), entitled "Required warnings." Thus, the general severability provision is not even implicated here.

**3.** In short, FDA's severability argument need only be considered if all of the arguments in § IV.A.1, *supra*, are wrong—and, in any event, the Court may not sever the graphics from the text, *see supra* § IV.A.2. As for invalidating only some of the warnings but leaving others in effect, severance also would be inappropriate. In particular, it would remain necessary to ask whether the regulation could "function sensibly" in the absence of the invalidated portion. *MD/DC/DE Broadcasters Ass'n v. FCC*, 253 F.3d 732, 734 (D.C. Cir. 2001); *Chamber of Commerce v. U.S. Dep't of Labor*, 885 F.3d 360, 388 (5th Cir. 2018); *see also R.J. Reynolds*, 696 F.3d at 1222 (invalidating first graphic-warnings rule in full, notwithstanding the TCA's severability provision).[10] Indeed, the D.C. Circuit in *MD/DC/DE Broadcasters* rejected an argument that the court could uphold a severed version of the rule when the agency "never once considered the implications of promulgating [the] rule without [the invalid provision]." 253 F.3d at 736. Here, there is similarly no basis for saying the Rule would function sensibly (that is, would be effective) if some warnings were invalidated, especially since FDA does not know which warnings those would be. FDA is essentially asserting that any subset

---

[10] Nor does the Rule's severability provision counsel a different outcome. Rather, "the ultimate determination of severability will rarely turn on the presence or absence of [a severability clause in a regulation]." *Community for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1394 (D.C. Cir. 1990) (internal quotation marks omitted).

of its warnings could appropriately replace the Surgeon General's warnings—including, for example, solely the erectile-dysfunction warning. That is the opposite of sensible. Moreover, FDA wishes the Court to uphold a set of warnings FDA did not consider in isolation; this is not how severability works. *See id.*

Likewise, even if the Court disagrees with the arguments in § IV.A.1, *supra*, and considers severing the textual warnings from the graphic images, FDA has presented no evidence that textual warnings could sensibly function on their own, because FDA *never even considered* that question. The second quantitative study—on which FDA heavily relies—did not test the textual warnings separately from the images. ROA.9519. The Rule also provides no information as to what text-only graphic warnings would look like. In short, FDA's plea for severance is misplaced.

**4.** FDA's arguments about why this Court should ignore the on-point provision that requires the graphic and textual warnings to "accompany" each other are wrong. To start, FDA denigrates that provision as a mere "logistical judgment." Br. 62. But FDA offers no support for the proposition that Congress's purportedly "logistical" preferences can be disregarded. Indeed, under FDA's suggested approach, manufacturers would have to update the warnings by including large, new textual warnings—the efficacy of which FDA has failed to assess—while FDA takes a third

shot at creating constitutionally defensible images.  It is entirely logical for Congress to avoid such piecemeal regulation.[11]

FDA also attempts to escape the obvious import of the graphic-warnings provision by pointing to a *separate* provision in a *different* statute relating to *another* category of products, which requires textual but *not* graphic warnings for smokeless-tobacco products.  Br. 60-61 (citing 15 U.S.C. § 4402(a)(1)-(2)).  If anything, this provision highlights that Congress wanted graphic warnings to be coupled with textual warnings for cigarettes—it understood how to mandate text-only warnings and did so for smokeless-tobacco products.  *See* 15 U.S.C. § 4402(a)(1)-(2).

### B.     A Vacatur Providing Nationwide Relief Is Appropriate.

As the district court correctly concluded, and as FDA concedes, vacatur with nationwide effect is required by this Court's precedents.  ROA.10214-20; Br. 64; *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374-75 (5th Cir. 2022).[12]

---

[11] FDA also wrongly relies (at 61) on a footnote in a dissent from a different circuit.  *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 527 n.5 (6th Cir. 2012) (Clay, J., dissenting).  Judge Clay was considering a different question (whether the *statutory* graphic-warnings requirement can be severed from the rest of the TCA).  On that distinct issue, which "neither party brief[ed]," Judge Clay concluded that the graphic-warnings provision is severable because Congress had previously expanded and altered the textual warnings.  That is not responsive to the TCA provision requiring graphic warnings to accompany textual warnings.

[12] FDA does not argue that the declaratory judgment entered by the district court was an improper remedy.

The APA provides that a "reviewing court shall…hold unlawful and set aside agency action…found to be" "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This ordinarily requires vacatur of unlawful agency actions. *See V.I. Tel. Corp. v. FCC*, 444 F.3d 666, 671 (D.C. Cir. 2006); *Franciscan All.*, 47 F.4th at 374-75; *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998).

FDA suggests that the TCA may counsel a different result here. *See* Br. 65. But the TCA nowhere purports to displace the appropriate APA remedy (vacatur). Instead, it merely governs what should occur *if* a more limited remedy is ordered. *See* 21 U.S.C. § 387 note.

Indeed, FDA joined a motion to stay the Rule's effective date, which asked the district court to grant relief that runs to nonparties. ROA.1193. FDA can hardly argue now that the court acted beyond its authority by issuing such relief.

## CONCLUSION

This Court should affirm the district court's judgment.

July 12, 2023

Philip J. Perry
Andrew D. Prins
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, DC 20004
(202) 637-2200
philip.perry@lw.com

Nicholas L. Schlossman
LATHAM & WATKINS LLP
300 Colorado Street
Austin, TX 78701
(737) 910-7300
nicholas.schlossman@lw.com

*Counsel for Plaintiff-Appellee*
*ITG Brands LLC*

Respectfully submitted,

*/s/ Ryan J. Watson*
Ryan J. Watson
Christian G. Vergonis
Alex Potapov
Amelia A. DeGory
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939
rwatson@jonesday.com

*Counsel for Plaintiffs-Appellees*
*R.J. Reynolds Tobacco Company,*
*et al.*

Constantine Pamphilis
KASOWITZ BENSON
TORRES LLP
1415 Louisiana Street,
Suite 2100
Houston, TX 77002
(713) 220-8852
dpamphilis@kasowitz.com

*Counsel for Plaintiff-Appellee*
*Liggett Group LLC*

## CERTIFICATE OF SERVICE

I certify that on July 12, 2023, I served a copy of the foregoing on all counsel of record by CM/ECF.

Dated:  July 12, 2023

> */s/ Ryan J. Watson*
> Ryan J. Watson
> *Counsel for Plaintiffs-Appellees*
> *R.J. Reynolds Tobacco Company,*
> *et al.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) & (7)(B), and Fifth Circuit Rules 32.1 & 32.2. Excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, the brief contains 12,998 words and was prepared using Microsoft Word for Microsoft Office 365 and produced in Garamond 14-point font.

Dated:  July 12, 2023

/s/ Ryan J. Watson
Ryan J. Watson
*Counsel for Plaintiffs-Appellees*
*R.J. Reynolds Tobacco Company,*
*et al.*