No. 23-40076

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

RJ REYNOLDS TOBACCO COMPANY; Santa Fe Natural Tobacco Company,
Incorporated; ITG Brands LLC; Liggett Group LLC; Neocom, Incorporated;
Rangila Enterprises, Incorporated; Rangila LLC; Sahil Ismail, Incorporated;
Is Like You, Incorporated,

*Plaintiffs-Appellees*,

v.

FOOD & DRUG ADMINISTRATION; United States Department of Health and
Human Services; Robert M. Califf, Commissioner of Food and Drugs; Xavier
Becerra, Secretary, U.S. Department of Health and Human Services,

*Defendants-Appellants*.

On Appeal from the United States District Court for the
Eastern District of Texas, Tyler Division
Case No. 6:20-cv-176
Honorable District Judge J. Campbell Barker

## *AMICI CURIAE* BRIEF OF ASSOCIATION OF NATIONAL
## ADVERTISERS AND SUMMUS 2, LLC
## IN SUPPORT OF PLAINTIFFS-APPELLEES

James C. Grant
Caesar Kalinowski IV
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Phone:  (206) 622-3150
Email:  jamesgrant@dwt.com
        caesarkalinowski@dwt.com

Attorneys for *Amici Curiae* Association of National Advertisers
and Summus 2, LLC

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees:**
RJ Reynolds Tobacco Company
Santa Fe Natural Tobacco Company, Incorporated
ITG Brands LLC
Liggett Group LLC
Neocom, Incorporated
Rangila Enterprises, Incorporated
Rangila LLC;
Sahil Ismail, Incorporated
Is Like You, Incorporated

**Counsel for Plaintiffs-Appellees RJ Reynolds Tobacco; Santa Fe Natural Tobacco Company, Incorporated; Neocom, Incorporated; Rangila Enterprises, Incorporated; Rangila LLC; Sahil Ismail, Incorporated; Is Like You, Incorporated:**
Ryan Watson
Alex Potapov
Christian Vergonis
Amelia A. DeGory

**Counsel for Plaintiffs-Appellees ITG Brands LLC:**
Philip Perry
Andrew Prins
Nicholas Schlossman

**Counsel for Plaintiffs-Appellees Liggett Group LLC:**
Constantine Pamphilis
Scott Harman-Heath
Deva Roberts
Meaghan McLaine VerGow

**Defendants-Appellants:**
Food and Drug Administration
United States Department of Health and Human Services

i

Robert M. Califf, Commissioner of Food and Drugs
Xavier Becerra, Secretary, U.S. Department of Health and Human Services

**Counsel for Defendants-Appellants Food and Drug Administration; United States Department of Health and Human Services; Robert Califf; Xavier Becerra:**
Lindsey Powell
Catherine Padhi
Stephen Pezzi
Mark Stern

*Amicus Curiae*
Public Citizen

**Counsel for *Amicus Curiae* Public Citizen**
Nandan M. Joshi
Allison Zieve

*Amicus Curiae*
Public Health Law Center

**Counsel for *Amicus Curiae* Public Health Law Center**
Agatha M. Cole

*Amici Curiae*
American Academy of Family Physicians; American Academy of Pediatrics; American Cancer Society; American Cancer Society Cancer Action Network; American Heart Association; American Lung Association; American Medical Association; Campaign for Tobacco-Free Kids; Children's Hospital Association of Texas; National Association of Hispanic Nurses; Texas Medical Association; Truth Initiative Foundation

**Counsel for *Amici Curiae* American Academy of Family Physicians; American Academy of Pediatrics; American Cancer Society; American Cancer Society Cancer Action Network; American Heart Association; American Lung Association; American Medical Association; Campaign for Tobacco-Free Kids; Texas Medical Association; Truth Initiative Foundation**
Scott P. Lewis
Austin P. Anderson

*Amici Curiae*
Washington Legal Foundation

**Counsel for *Amici Curiae* Washington Legal Foundation**
Cory L. Andrews
John M. Masslon II

***Amici Curiae***
Association of National Advertisers
Summus 2, LLC

**Counsel for *Amici Curiae* Association of National Advertisers and Summus 2, LLC**
James Grant
Caesar Kalinowski IV

By:    *s/ James C. Grant*
       James C. Grant

       Attorney of record for *Amici Curiae*
       Association of National Advertisers
       and Summus 2, LLC

# TABLE OF CONTENTS

*Page*

I.  INTRODUCTION .......................................................................................4

II.  DISCUSSION ...........................................................................................5

    A.  The Government Must Meet a Heightened Burden To Force
        Private Parties To Convey Compelled Messages ...................................6

    B.  The Government's Regulation Unconstitutionally Compels
        Controversial and Burdensome Speech .............................................15

        1.  FDA's Forced Speech Fails Because Its Required
            Messages Are Not Purely Factual or Uncontroversial .............16

        2.  FDA's Forced Speech Fails Because It Is Overly
            Burdensome and Fails To Consider Alternatives ....................22

III.  CONCLUSION.........................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*303 Creative LLC v. Elenis*,
    143 S. Ct. 2298 (2023)..................................................................*passim*

*44 Liquormart, Inc. v. Rhode Island*,
    517 U.S. 484 (1996)................................................................8, 9, 18

*Allstate Ins. Co. v. Abbott*,
    495 F.3d 151 (5th Cir. 2007) .......................................................12

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*,
    916 F.3d 749 (9th Cir. 2019) ...............................................16, 20, 24

*Am. Meat Inst. v. U.S. Dep't of Agric.*,
    760 F.3d 18 (D.C. Cir. 2014)......................................................13, 14

*Bigelow v. Virginia*,
    421 U.S. 809 (1975)........................................................................2

*Cent. Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n*,
    447 U.S. 557 (1980)...................................................2, 8, 9, 11, 15

*Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993).................................................................6, 8, 9

*CTIA—The Wireless Ass'n v. City & Cnty. of San Francisco, Cal.*,
    827 F. Supp. 2d 1054 (N.D. Cal. 2011)............................................20

*Edenfield v. Fane*,
    507 U.S. 761 (1993)........................................................................9

*Ent. Software Ass'n v. Blagojevich*,
    469 F.3d 641 (7th Cir. 2006) ...................................................24, 25

*Glickman v. Wileman Bros. & Elliott, Inc.*,
    521 U.S. 457 (1997)......................................................................11

*Greater New Orleans Broad. Ass'n, Inc. v. U.S.*,
    527 U.S. 173 (1999) .......................................................................... 9

*Ibanez v. Fla. Dep't of Bus. & Pro. Regul.*,
    512 U.S. 136 (1994) ...................................................................... 9, 11

*In re R. M. J.*,
    455 U.S. 191 (1982) ........................................................................ 10

*Matal v. Tam*,
    582 U.S. 218 (2017) .......................................................................... 9

*Milavetz, Gallop & Milavetz, P.A. v. U.S.*,
    559 U.S. 229 (2010) .............................................................. 11, 12, 13

*Nat'l Ass'n of Mfrs. v. S.E.C.*,
    800 F.3d 518 (D.C. Cir. 2015) ........................................................ 17

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
    138 S. Ct. 2361 (2018) ...................................................................... 9

*Ohralik v. Ohio State Bar Ass'n*,
    436 U.S. 447 (1978) .......................................................................... 8

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*,
    475 U.S. 1 (1986) ................................................................. 7, 18, 23

*Pub. Citizen Inc. v. La. Att'y Disciplinary Bd.*,
    632 F.3d 212 (5th Cir. 2011) .......................................................... 12

*R.J. Reynolds Tobacco Co. v. Food & Drug Admin.*,
    696 F.3d 1205 (D.C. Cir. 2012) .............................................. 4, 13, 19

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015) .......................................................................... 6

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988) ................................................................. 6, 7, 24

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995) .......................................................................... 9

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ............................................................................*passim*

*Thompson v. W. States Med. Ctr.*,
    535 U.S. 357 (2002) .........................................................................................9

*United States v. United Foods, Inc.*,
    533 U.S. 405 (2001) ...............................................................................11, 12

*U.S. v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803, 812 (2000) ..............................................................................25

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) .........................................................................2, 6, 8, 9

*W. Va. State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) .....................................................................................5, 7

*Wooley v. Maynard*,
    430 U.S. 705 (1977) .........................................................................................7

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
    471 U.S. 626 (1985) .........................................................................*passim*

## Federal Statutes

15 U.S.C. § 1333 ...............................................................................4, 23, 24

## Rules

Fed. R. App. Proc. 29(a) ...............................................................................1

## Regulations and Administrative Materials

21 C.F.R. § 1141 ...............................................................................................4

21 C.F.R. § 1141.10 .........................................................................................6

## Constitutional Provisions

U.S. Const. amend. I ...........................................................................*passim*

**Other Authorities**

85 Fed. Reg. at 15638-01 ........................................................6

85 Fed. Reg. at 15,640 ..........................................................24

85 Fed. Reg. at 15,645 ..........................................................12

85 Fed. Reg. at 15,646 ..........................................................19

85 Fed. Reg. at 15,647 ................................................24, 25, 26

85 Fed. Reg. at 15,650 ..........................................................24

# INTEREST OF *AMICI*[1]

*Amici curiae* include the Association of National Advertisers, Inc. ("ANA") and Summus 2, LLC ("Summus").

The mission of the ANA is to drive growth for marketing professionals, brands and businesses, the industry, and humanity.  The ANA serves the marketing needs of 20,000 brands, with a membership consisting of U.S. and international companies that include client-side marketers, nonprofits, fundraisers, and marketing solutions providers (data science and technology companies, ad agencies, publishers, media companies, suppliers, and vendors).  The ANA serves, educates, and advocates for more than 50,000 industry members that collectively invest more than $400 billion in marketing and advertising annually.  The ANA advances the interests of marketers and protects the well-being of the marketing community, while also serving its members by advocating for clear and coherent legal standards for advertising.

Summus, doing business as Summus Outdoor, is a sign management company with over 50 years of combined history managing the display of commercial messages on signs in multiple cities across the United States.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), no one, except counsel for *amici*, has authored this brief in whole or in part or contributed money toward the preparation of this brief.  In addition, pursuant to Rule 29(a)(2), all parties have consented to the filing of this brief.

Throughout decades of experience in operating signs in compliance with municipal codes, managing government requirements for messages that must be included, and defending advertising clients against various types of purported infractions or burdens, Summus has practical knowledge regarding the proliferation and regulation of commercial speech. Summus has also suffered the effects of inconsistent and ideologically motivated enforcement of "acceptable" speech and government-mandated messaging requirements.

*Amici*'s interest here focuses on preserving robust protections afforded advertising by the First Amendment. In particular, *amici* have a strong concern in safeguarding the longstanding vitality of constitutional protections for commercial speech. *See Cent. Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980). As the Supreme Court has recognized, "[a] consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011) (internal quotation marks and citation omitted). The commercial speech doctrine has steadily evolved, and since it was first acknowledged in *Bigelow v. Virginia*, 421 U.S. 809 (1975) and *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976), the protections afforded such expression have increased significantly. *Amici* in the present context seek to

ensure courts remain vigilant in barring overly burdensome compelled disclosures and government efforts to co-opt private property to carry its preferred message.

## I.    INTRODUCTION

In 2009, Congress put the Food and Drug Administration ("FDA") into a bind, enacting legislation requiring the agency to promulgate rules that would mandate "graphic" warning labels to dominate 50 percent of all cigarette packaging and 20 percent of all advertising.  15 U.S.C. § 1333(a)(2), (b)(2), (d). After the FDA's initial attempt was struck down for violating the First Amendment, *R.J. Reynolds Tobacco Co. v. Food & Drug Admin.*, 696 F.3d 1205 (D.C. Cir. 2012) ("*Reynolds I*"), the agency went back to the literal drawing board to create the new *Graphic Warnings Rule* at issue here, 21 C.F.R. Part 1141 ("the *Rule*").

This latest attempt, however, merely repeats the earlier problems identified by the D.C. Circuit and was again struck down based on its unconstitutionality for good reason.  Record on Appeal ("ROA").10178-10220.  Taken to its logical end, the FDA's *Rule* and corresponding legal position would mean that it—and every other state, county, or municipal government in the country—is free to force private businesses and property holders to carry the government's message. Indeed, if upheld, the *Rule* effectively would result in packaging and advertisements for ***any and all*** goods or services being subject to compelled subsidization of government speech so long as a governmental entity decided that it needed "to promote greater public understanding" of some risk or concern.

As the Supreme Court recognized when it spelled out the limitations on government authority to compel disclosures in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985), "involuntary affirmation could be commanded only on even more immediate and urgent grounds than silence." *Id.* at 650 (quoting *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 633 (1943)). For the reasons discussed below, *amici* urge the Court to hold the Government to a heightened standard and to reject its claim that forced disclosures should be allowed to swallow the limited exception for compelled commercial speech. Otherwise, all advertisers and sign-owners risk having half or more of their private property commandeered for any government's use—even when this conflicts with their own speech and forces them to adopt a message that harms their businesses.

## II.    DISCUSSION

The district court's judgment should be affirmed because the FDA failed to meet its burden to show that the *Graphic Warnings Rule* (A) was implemented to address misleading commercial speech and (B) only included purely factual and uncontroversial government messages that did not overly burden private speakers and property without a substantial and supported need.

**A.    The Government Must Meet a Heightened Burden to Force Private Parties to Convey Compelled Messages**

Although the Government is free to hold or express its own opinions about the risks of smoking or any number of issues, it may not force private parties to disseminate its text and images outside the context of combatting a deceptive message.  In this case, the FDA maintains that all the First Amendment and *Zauderer* require is that government-mandated disclosures be related to some interest, "factual and uncontroversial," and not "unjustified or unduly burdensome."  FDA Br. at 27-28 (quoting *Zauderer*, 471 U.S. at 651). It then further dilutes First Amendment protections by asserting that a permissible interest is providing any information that is "relevant to a person's ability to make an informed choice."  *See id.* at 30.  This strips down applicable protections well beyond what the Constitution allows and ignores the reasons the Supreme Court applies lesser protections for certain types of commercial speech.  *See Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416 n.11 (1993).[2]

---

[2] *Amici* also agree that the *Rule* should be judged under a strict scrutiny standard, *see* ROA.1242, because it requires speech-related disclosures based on content and viewpoint distinctions about a product, *see Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 168-69 (2015), and purports to address *all* forms of advertisement by cigarette manufacturers, distributors, or retailers, *see* 85 Fed. Reg. 15638-01; 21 C.F.R. § 1141.10, regardless of whether the advertisement does more than propose a transaction, *see Va. Pharmacy Bd.*, 425 U.S. at 762; *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988).

As an initial matter, compelling advertisers to disseminate government messages violates their First Amendment "right to refrain from speaking." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).  "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in … matters of opinion or force citizens to confess by word or act their faith therein."  *Barnette*, 319 U.S. at 642.  Except for purely factual and noncontroversial disclosures necessary to prevent deception by the speaker (discussed below), the First Amendment fully protects citizens against being forced to foster the Government's ideas.  *Wooley*, 430 U.S. at 715; *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 16 (1986) ("For corporations as for individuals, the choice to speak includes within it the choice of what not to say.").

There is no doubt that mandatory disclosures necessarily impose significant First Amendment burdens that alter a citizen's speech.  *Riley*, 487 U.S. at 795 ("Mandating speech that a speaker would not otherwise make necessarily alters [its] content."); *id.* at 797-98 (whether "compelled statements of opinion [or] compelled statements of 'fact':  either form of compulsion burdens protected speech").  Just three weeks ago, the Supreme Court re-affirmed this principle unequivocally, noting "the government may not compel a person to speak its own preferred messages," and rejecting the proposition that

"the government [may] force all manner of artists, speechwriters, and others whose services involve speech to speak what they do not believe on pain of penalty." *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2023 WL 4277208, at *3, *8 (2023); *see also id.* at *14 (refuting the "remarkable suggestion that a government forcing an individual to create speech on weighty issues with which she disagrees … only 'incidental[ly] burdens First Amendment liberties'") (internal quotation marks and citations omitted).

Admittedly, while "speech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another," *Va. Pharmacy Bd.*, 425 U.S. at 761, the governmental "interest in protecting consumers from 'commercial harms' … provides 'the typical reason why commercial speech can be subject to greater governmental regulation than noncommercial speech.'" *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 502 (1996) (quoting *Discovery Network*, 507 U.S. at 426). The reason for the Supreme Court's approach is straightforward: the First Amendment does not protect false commercial speech that could harm the consuming public through deception. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978); *Cent. Hudson*, 447 U.S. at 563-64. If commercial speech is not ***inherently misleading***, however, the Government must still prove it has a substantial

interest that is directly advanced by a regulation no more extensive than necessary to serve that interest. *Id.* at 565.

The clear trajectory of Supreme Court jurisprudence is toward greater protection for commercial speech, not less.[3] As Justice Stevens explained, "[t]he mere fact that messages propose commercial transactions does not in and of itself dictate the constitutional analysis that should apply to decisions to suppress them." *44 Liquormart*, 517 U.S. at 501. Regardless of whether expression is commercial or political, it is settled law that government "may not burden the speech of others in order to tilt public debate," and any such regulation is subject to "heightened scrutiny." *Sorrell*, 564 U.S. at 571, 578-79.

---

[3] In the five decades since *Virginia State Board of Pharmacy*, the Supreme Court has invalidated: (1) prohibitions on use of illustrations in attorney ads, *Zauderer*, 471 U.S. at 647-49; (2) an ordinance regulating placement of commercial news racks, *Discovery Network*, 507 U.S. at 430-31; (3) a state ban on in-person CPA solicitation, *Edenfield v. Fane*, 507 U.S. 761, 776-77 (1993); (4) a state ban on using "CPA" and "CFP" on law firm stationery, *Ibanez v. Fla. Dep't of Bus. & Pro. Regul.*, 512 U.S. 136, 148-49 (1994); (5) a restriction on alcohol content on beer labels, *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 491 (1995); (6) a state ban on advertising alcohol prices, *44 Liquormart*, 517 U.S. at 503-05; (7) a federal ban on broadcasting casino ads, *Greater New Orleans Broad. Ass'n, Inc. v. U.S.*, 527 U.S. 173, 195-96 (1999); (8) federal limits on advertising drug compounding practices, *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 377 (2002); (9) a speaker-based state restriction on data mining, *Sorrell*, 564 U.S. at 567-68; (10) federal law restricting disparaging trademarks, *Matal v. Tam*, 582 U.S. 218, 247 (2017); (11) state law requiring disclosure of abortion-related information, *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372 (2018); and (12) a state law that "seeks to force an individual to speak in ways that align with [state] views" but contradicts an individual's religious views, *303 Creative*, 2023 WL 4277208, at *16.

In fact, even where the commercial speech regulation may promote public health, "the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." *Id*. at 571. Here again, the Supreme Court's recent decision in *303 Creative* underscores the point. Rejecting the dissenters' efforts to set aside prior cases striking down state-compelled speech on the basis that the website designer in *303 Creative* was a commercial business advertising its services, the Court emphasized that "none of that makes a difference." 2023 WL 4277208, at *12.

Given that the Government "may not place an absolute prohibition on certain types of potentially misleading information … if the information also may be presented in a way that is not deceptive," the Court has admonished "that the remedy in the first instance is not necessarily a prohibition but preferably a requirement of disclaimers or explanation." *In re R. M. J.*, 455 U.S. 191, 203 (1982) (citation omitted). In *Zauderer*, the Court confirmed that such disclosure requirements are tethered to the underlying reason for lesser protections on commercial speech: they must be purely factual, uncontroversial, not unduly burdensome, and "reasonably related to the State's interest in preventing deception of consumers." 471 U.S. at 651. As Justice Blackmun's earlier concurrence observed in *Central Hudson*, the Court has "never held that commercial speech may be suppressed in order to further the State's interest in

discouraging purchases of the underlying product that is advertised." 447 U.S. at 574-75 (Blackmun, J., concurring in the judgment). Instead, "[p]ermissible restraints on commercial speech have been limited to measures designed to protect consumers from fraudulent, misleading, or coercive sales techniques." *Id.*

Contrary to the FDA's position here, the Supreme Court has never applied *Zauderer* outside of the context of misleading or deceptive commercial speech—nor has the Court ever suggested such application would be proper.[4] In *Ibanez*, for example, it refused to expand the scope of *Zauderer* in invalidating a Florida bar disciplinary ruling based not on any actual deception but only the bar's contention that an attorney's true disclosures might be "potentially misleading": "If … protections afforded commercial speech are to retain their force, we cannot allow rote invocation of the words 'potentially misleading' to supplant the [State's] burden." *Ibanez*, 512 U.S. at 146 (internal quotation marks and citation omitted). Then, in *United States v. United Foods, Inc.*, the Court declined to apply *Zauderer* where there was "no suggestion …

---

[4] Multiple Justices of the Supreme Court have noted that "*Zauderer* carries no authority for a mandate unrelated to the interest in avoiding misleading or incomplete commercial messages." *Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 491 (1997) (Souter, J., joined by Rehnquist, C.J., and Scalia and Thomas, JJ., dissenting); *see Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 257 (2010) (Thomas, J., concurring).

the mandatory assessments imposed to require one group of private persons to pay for speech by others are somehow *necessary to make [ads] nonmisleading*." 533 U.S. 405, 416 (2001) (emphasis added).  More recently, the Supreme Court applied its standard when evaluating a regulation of debt relief agencies that was "directed at *misleading* commercial speech."  *Milavetz*, 559 U.S. at 249 (emphasis in original).

Rulings in this Circuit are in accord.  This Court has repeatedly limited the application of *Zauderer* to requirements directed at false, misleading, or deceptive commercial speech.  *See, e.g.*, *Pub. Citizen Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 219 (5th Cir. 2011); *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 165 (5th Cir. 2007).  The FDA does not address the holdings of these Fifth Circuit cases but instead claims that other courts disagree, and also, that the *Rule* meets *Zauderer*'s standards because it is "intended in part to correct *consumer misperceptions* regarding the risks presented by cigarettes." FDA Br. at 28 (emphasis added) (quoting 85 Fed. Reg. at 15,645).

Such a terse dismissal of longstanding precedent not only diminishes the importance of First Amendment protections against government intrusion but also falls flat by virtue of its logic.  Restrictions on commercial speech or requirements for forced disclosures are only permissible when the ***particular speech at issue*** is deceptive or misleading and could therefore harm the

consuming public. *See Milavetz*, 559 U.S. at 257 (Thomas, J., concurring)

("*Zauderer* does not stand for the proposition that the government can

constitutionally compel the use of a scripted disclaimer in any circumstance in

which its interest in preventing consumer deception might plausibly be at

stake"; instead the Government must show that the particular advertising is

inherently likely to deceive); *Reynolds I*, 696 F.3d at 1215 ("FDA does not

frame this rule as a remedial measure designed to counteract specific deceptive

claims made by the Companies") (emphasis omitted).  That a customer could be

confused about some aspect of a product or its use does not make any and all

advertisements about the product automatically deceptive.

    Most importantly, reducing the government's obligation under

*Zauderer*—*i.e.*, to suggest that it need not establish that advertising

representations are actually deceptive or misleading, but only that it seeks to

"promot[e] public understanding" or encourage consumers to make "an informed

choice"—would eviscerate almost all protections against compelled speech in

the realm of commercial speech.  For as then-Judge Kavanaugh noted, "it is

plainly not enough for the Government to say simply that it has a substantial

interest in giving consumers information.  After all, that would be true of any and

all disclosure requirements." *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18,

31-32 (D.C. Cir. 2014) (Kavanaugh, J., concurring).  Allowing such a *de minimis*

showing could apply to and affect *any* lawful product or service that a government contends consumers may not understand as the Government believes they should—or, put more simply, anytime the Government believes it knows best.  There would be no reason the FDA could not impose similar notice requirements for any number of products.  And, every one of the 30,000-odd state, county, city, and town governments in the United States would be free to do the same.[5]  Without strict and reasoned application of *Zauderer*'s limiting principles, there is virtually no logical stopping point for disclosure requirements on any product that any government body might decide should bear warnings to consumers, based on whatever health or safety rationale regulators or politicians might conjure up.

Accordingly, in addition to those reasons explained below, the Court should affirm that *Zauderer*'s standard is not met here because the Government does not satisfy its required burden to show that the Appellees' speech is inherently deceptive or misleading.

---

[5] As Judge Brown warned in her dissent in *American Meat*:  "[T]he victors today will be the victims tomorrow, because the standard created by this case will virtually ensure the producers supporting this labeling regime will one day be saddled with objectionable disclosure requirements ….  Only the fertile imaginations of activists will limit what disclosures successful efforts from … as-yet-unknown lobbies may compel."  760 F.3d at 52 (Brown, J., dissenting); *see also id.* at 31-32 (Kavanaugh, J., concurring) ("Not surprisingly, governments (federal, state, and local) would love to have such a free pass to spread their preferred messages on the backs of others.").

## B.    The Government's Regulation Unconstitutionally Compels Controversial and Burdensome Speech

Avoiding the issue of deception, the lower court instead granted summary judgment to Plaintiffs-Appellees on the grounds that the FDA failed to meet other requirements under *Zauderer* and *Central Hudson*.  ROA.10203-10205.  Specifically, the court found the Government could not show that the text and images were "purely factual" or uncontroversial, or that its purported interest was sufficient in light of the burdensome nature of the forced disclosures.  *See* ROA.10203-10213.  The Government contends on appeal that it actually met all of the elements because the "warnings use straightforward language," the images "corroborate and enhance consumer understanding" of potential risks of smoking, and the *Rule* "will directly advance the government's interest in promoting greater public understanding of the risks of smoking."  FDA Br. at 23, 26, 53.  But these self-serving and conclusory justifications fail.  Not only are the Government's purported interest and purpose for the grotesque warnings insufficient as a matter of law, they have no limiting principle and could equally be applied to all other products.  As such, the Court should affirm the grant of summary judgment and prevent the Government's attempts to take control of large portions of product packaging and advertising whenever it sees fit.

### 1.    FDA's Forced Speech Fails Because Its Required Messages Are Not Purely Factual or Uncontroversial

The FDA claims that "the statement-and-image pairings" required by the *Rule* merely "disclose factual and uncontroversial information about the health risks of smoking." FDA Br. at 24. But as the district court noted, the mandatory messages make unqualified claims about harms and causation, which are then coupled with provocative and ambiguous graphic images that may actually mislead consumers. ROA.10205-10209 (noting several examples of possible, albeit reasonable, consumer misimpressions from FDA's graphic images). Indeed, whether applied in this context or any number of other conceivable situations, the FDA's position fails because the government may not compel speech to promote its contested views, even if it believes its viewpoint is "enlightened" or "sympathetic." *See 303 Creative*, 2023 WL 4277208, at *15-16.

The Government attempts to support its position by claiming it undertook "a rigorous multistep process to develop, test, and refine images" and asserts that it weighed various scientific considerations. FDA Br. at 43-51. But this does not render the warnings non-controversial. Myriad products implicate issues touching on health, safety, environmental impact, or other potential public concerns, and each offers an "opportunity" (from a regulator's viewpoint) to "add" to the public debate. *See, e.g.*, *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d

749, 757 (9th Cir. 2019) (striking down required disclosures on beverages containing sugar).

To say disclosures are "purely factual" because a government body can point to some scientific support is not an adequate safeguard. The FDA's position suggests a government may require speech as to which not only does a business disagree, but for which there is data or scientific information contradicting the government's view. As the D.C. Circuit explained in the context of dietary disclosures, there are numerous perils when "promoting" public health: scientific understandings evolve, and "propositions once regarded as factual and uncontroversial may turn out to be something quite different." *Nat'l Ass'n of Mfrs. v. S.E.C.*, 800 F.3d 518, 528 n.27 (D.C. Cir. 2015) (comparing a 1977 ruling requiring disclosure about cholesterol risk of eating eggs with a 2018 USDA report confirming no risk).[6] It is one thing for government to change its mind about

---

[6] *See* Peter Whoriskey, *Congress: We need to review the Dietary Guidelines for Americans*, WASHINGTON POST (Dec. 18, 2015), at A13 (noting "[n]utrition science has been in turmoil in recent years," and citing "disagreements over the positions [of] the Dietary Guidelines … on salt, whole milk, saturated fat, cholesterol, [and] the health implications of skipping breakfast"); https://www.washingtonpost.com/news/wonk/wp/2015/12/18/congress-we-need-to-review-the-dietary-guidelines-for-americans/. Consider too the oft-shifting guidance from public health officials about the applicable science and recommended actions during the Covid-19 pandemic. *See* Adam Marcus and Ivan Dransky, *The Science of this Pandemic Is Moving At Dangerous Speeds*, WIRED (Mar. 28, 2020), https://www.wired.com/story/the-science-of-this-pandemic-is-moving-at-dangerous-speeds/.

messages it wants to convey; it is quite another to force private parties to convey those fluctuating messages when the government demands.

The Supreme Court has held that it is "incompatible with the First Amendment" to punish or restrict speech based on concerns that people will make bad decisions or to promote "what the government perceives to be their own good." *Sorrell*, 564 U.S. at 577 (quoting *44 Liquormart*, 517 U.S. at 503). "Nothing in *Zauderer* suggests … that the State is equally free to require corporations to carry the messages of third parties, where the messages themselves are biased against or are expressly contrary to the corporation's views." *Pac. Gas & Elec.*, 475 U.S. at 15-16 n.12. Regardless of whether expression is commercial or ostensibly related to "promoting public health" or other public good (as perceived by government bodies or politicians), it is bedrock law that the government "may not burden the speech of others in order to tilt public debate." *Id.* at 578-79; *see 303 Creative*, 2023 WL 4277208, at *15-16.

The FDA's conclusory assertions about its own judgment that the depictions of harm in the graphic depictions are "common," "expected," or "typical"—and therefore "factual" or "uncontroversial" in the FDA's estimation—also present serious threats to speech rights. *See* FDA Br. at 43-46. Simply claiming that "[t]here is no controversy about … the negative health consequences" of cigarette smoking or that "the content of the warnings" allude to health consequences does

18

not mean the graphics themselves are not controversial.  *See* FDA Br. at 29

(quoting 85 Fed. Reg. at 15,646).  Like the FDA's prior failed attempts, the

warnings here are actually "unabashed attempts to evoke emotion (and perhaps

embarrassment) and browbeat consumers into quitting" the use of a product the

government disfavors.  *Reynolds I*, 696 F.3d at 1217.[7]

Under the FDA's logic, advertisements for a product or service disfavored

by any government from San Francisco to Boston (or anywhere in between)

become fair game for mandatory warnings, no matter how controversial or

unsettled the underlying science may be.  *Reynolds I*, 696 F.3d at 1219 ("FDA's

reliance on … questionable social science is unsurprising when we consider the

raw data regarding smoking rates in countries that have enacted graphic

warnings.").  Every product or technology that some government body believes

---

[7] The press and commentators have recognized the obvious:  "The images aren't easy to look at.  That's the point."  Brian Mastroianni, *FDA Proposes Graphic Warnings for Cigarette Packages.  Will They Work?*, HEALTHLINE (Aug. 26, 2019), https://www.healthline.com/health-news/new-graphic-cigarette-warnings-will-they-work#The-bottom-line; Sheila Kaplan, *The F.D.A.'s New Cigarette Warnings Are Disturbing.  See for Yourself.*, THE NEW YORK TIMES (Aug. 15, 2019), https://www.nytimes.com/2019/08/15/health/cigarette-warnings.html; Lindsey Bever, *FDA's proposed new cigarette warnings are scary.  That's the point.*, WASHINGTON POST (Aug. 15, 2019), https://www.washingtonpost.com/health/2019/08/15/fda-proposed-new-cigarette-warnings-are-scary-thats-point/.  Like the prior proposed warnings, the intended message of these images is also clear:  "If you smoke, you will become a gruesome pariah with Dickensian teeth who abuses children and dies early and alone." *The smoky horror show*, THE ECONOMIST (June 21, 2011), http://www.economist.com/blogs/schumpeter/2011/06/tobacco-regulation?page=2.

might have "bad" effects on users would be susceptible to having its marketing hijacked to become a platform for government hectoring.

These concerns are not hypothetical or hyperbolic. The FDA's *Rule* and its position in this case (if not reined in) would transcend cigarette ads or packaging and could be extended to *any* lawful product or service with which a government disagrees or about which it has something it wants to say. In cases in other states, for example, government authorities have sought to mandate disclosures about sugared soft drinks, *Am. Beverage Ass'n*, 916 F.3d 749, and cell phone electronic transmissions (despite admitting there was no proof of harm from cell phone signals), *CTIA—The Wireless Ass'n v. City & Cnty. of San Francisco, Cal.*, 827 F. Supp. 2d 1054, 1058 (N.D. Cal. 2011). But, if mere putative government concerns are enough to support compelled speech in advertising, as the FDA contends, it could dictate ad disclosures for fast food restaurants such as the following, to warn of dangers of overeating, fat, sugar, or cholesterol:[8]

---

[8] This and the other illustrations below are provided for demonstrative purposes. *Amici* do not mean to suggest in any respect that there is cause or reason for FDA or any governmental authority to compound the First Amendment intrusions presented here by compelling disclosures about fast food, fossil fuels, liquor, firearms, or as to any other product or advertising.



The FDA (or other governmental authorities) might also seek to compel

disclosures about any number of other products that are challenged or maligned,

like sales of firearms or liquor:[9]



[9] *See, e.g.*, *Firearm Warning Labels Approved by Board*, WESTCHESTER COUNTY BOARD OF LEGISLATORS (May 24, 2022), https://westchesterlegislators.com/latest-news/3232-firearm-warning-labels-approved-by-board; *Experts call for updated warnings on alcohol containers*, HARVARD SCHOOL OF PUBLIC HEALTH (Sept. 15, 2022), https://www.hsph.harvard.edu/news/hsph-in-the-news/experts-call-for-updated-warnings-on-alcohol-containers/.

And the breadth of compelled disclosure requirements, per the FDA, could extend to other issues such as concerns about climate change, use of fossil fuels, or any of a host of other topics:[10]



Fortunately, the First Amendment does not allow private parties' speech (or their property used for speech) to be co-opted whenever any government body or politicians seek to advance a cause *du jour*.

### 2.    FDA's Forced Speech Fails Because It Is Overly Burdensome and Fails To Consider Alternatives

The FDA's assertion that a government may commandeer half of all product packaging and a fifth of all advertising space for graphic warning messages ignores the enormous burden such a requirement places on private parties' speech rights.

---

[10] Indeed, FDA's position could allow government regulators or politicians in one state to compel disclosures by industries from other states, even when contrary to views of the businesses' home states. *See, e.g.*, Sonal Patel, *Updates to California's Proposition 65 Warnings Will Affect Oil Industry Nationwide*, POWER (Jan. 3, 2018), https://www.powermag.com/updates-to-californias-proposition-65-warnings-will-affect-oil-industry-nationwide/; Jay Johnston, *The propane industry's duty to warn*, LPGAS (Dec. 13, 2017), https://www.lpgasmagazine.com/the-propane-industrys-duty-to-warn/.

The FDA tries to defend the space and size requirements of 15 U.S.C. § 1333(a)(2) and (b)(2) by claiming that existing warnings go unnoticed and cigarette manufacturers and retailers still have room for other graphics or text. *See* FDA Br. at 32-34, 53-58. These arguments fail too. Again, the Government advocates a position that is essentially boundless if it is enough to say only that larger messages are always more noticable and consumers become desentized to redundant messages. Moreover, the Government fails to provide any showing to meet ***its burden*** to justify infringing speech rights by demanding its messaging should dominate over the speech of product manufacturers or advertisers.

Compelling any company to devote half of its packaging and 20 percent of all advertising space to governmentally prescribed warnings "both penalizes the expression of particular points of view and forces speakers to alter their speech to conform with an agenda they do not set." *Pac. Gas & Elec. Co.*, 475 U.S. at 9. This is especially true where, as here, the Government burdens private parties by demanding that they present gruesome depictions meant to scare away customers. The FDA contends "that larger, updated warnings are needed to promote public understanding of the negative health consequences of smoking," FDA Br. at 39; *see also id.* at 32, but that simply continues to ignore and compound First Amendment intrusions. Requiring larger, more prominent disclosures just because they are easier to see does not excuse their violation of First Amendment rights.

*Riley*, 487 U.S. at 795 ("[T]he First Amendment does not permit the State to sacrifice speech for efficiency.").

The FDA's asserted justification is that the appropriation of so much space for its compelled messaging is merely aimed at "ensur[ing] that consumers notice, attend to, and read the messages." 85 Fed. Reg. at 15,640, 15,647. This, however, falls well short of meeting the Government's burden to show that there are not other less-intrusive means of achieving its purpose or that larger mandated disclosures translate into accomplishing its goal (at least its ostensible prior goal) of reducing smoking.[11] *See Am. Beverage Ass'n*, 916 F.3d at 757 (striking down requirement for disclosure covering 20 percent of displays as burdensome where the city's expert opined that larger warnings are more effective but the record indicated that smaller warnings would have the same effect). Nor can the Government's arguments on appeal trump the record and the findings of the district court: Because the FDA had to follow the space and size requirements set forth in section 1333, it chose not to "test the efficacy of 'smaller or differently placed warnings.'" ROA.10211 (quoting 85 Fed. Reg. at 15,650); *see also Ent.*

---

[11] A year-long study released in 2022 found no evidence that graphic warning-labeled cigarette packs changed smoking behavior. *See* Yadira Galindo, *Graphic Warnings on Cigarette Labels Led Smokers to Hide Packs*, USC Sᴀɴ Dɪᴇɢᴏ Tᴏᴅᴀʏ (June 2, 2022), https://today.ucsd.edu/story/graphic-warnings-on-cigarette-labels-led-smokers-to-hide-packs.

*Software Ass'n v. Blagojevich*, 469 F.3d 641 (7th Cir. 2006).[12]  The FDA's position

seems to be that the burden is justifiable because "bigger is always better"—with

no evidence or proof that larger or more graphic and offensive disclosures will

achieve the Government's putative goals.

Just as inadequate is the Government's argument that its appropriation of

packaging and advertising space for compelled messaging is of no concern because

the tobacco companies still have half of their packages and "the remaining

80 percent of advertisements for brand names, logos, or other information."

FDA Br. at 33 (quoting 85 Fed. Reg. at 15,647).  This is reminiscent of the Beatles

song *Taxman*:  "Should five percent appear too small, be thankful I don't take it

all."  The Government cannot be permitted to rely on such *ipse dixit* logic,

especially not when infringement of First Amendment rights is the result.  *See*

*Sorrell*, 564 U.S. at 565-66 (the "distinction between laws burdening and laws

banning speech is but a matter of degree") (quoting *U.S. v. Playboy Ent. Grp., Inc.*,

529 U.S. 803, 812 (2000)).  If governments are allowed to co-opt 50 percent of

packaging on the premise that the bigger the compelled disclosures the better, what

---

[12] In *Blagojevich*, the Seventh Circuit invalidated state law requirements for mandatory four-inch stickers on "violent" and "sexually explicit" video games as both controversial and burdensome, noting that "[t]he State has failed to even explain why a smaller sticker would not suffice."  469 F.3d at 652.  The court wrote that these mandatory disclosures could not be upheld, just as "we would not condone a health department's requirement that half of the space on a restaurant menu be consumed by [a] raw shellfish warning."  *Id*.

stops them from demanding two-thirds of advertising space, or 75 percent, or 85 percent?  Applying the FDA's "logic," the Government's ability to take over private parties' messaging would have few if any limits.

Where fundamental rights under the First Amendment are concerned, it is no defense for the Government to argue that its compelled speech requirements are justified because it refrained from taking over *all* of a private party's opportunities for free speech.  The import of the First Amendment is to restrict government suppression or compulsion of speech, not that the government gets to decide what constitutes "ample room for" private parties' speech.  *See* FDA Br. at 32-33 (quoting 85 Fed. Reg. at 15,647).  The Court should not countenance the FDA's position in this case that citizens should be content with whatever the Government decides is "good enough" to give back to us in return.

## III.   CONCLUSION

Allowing FDA to conscript marketers' communications as provided in the *Rule* is an invitation for every level of government to force advertisers to carry government messages with which they disagree.  Such requirements are not allowed and cannot be justified where there is no showing that disclosures are necessary to combat deceptive or misleading commercial speech.  Nor can such intrusive and burdensome demands be permitted where the Government's asserted authority has no logical end and could effectively be used to convert much, most,

or nearly all product packaging and private advertising to convey its views. Because the FDA has not met its burden to show that the compelled disclosures at issue—and the corresponding burdensome restrictions on Appellees' speech rights—are consistent with First Amendment protections, *amici* respectfully assert that the lower court's judgment should be affirmed.

DATED this 19th day of July, 2023.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: *s/ James C. Grant*
    James Grant
    Caesar Kalinowski IV
    DAVIS WRIGHT TREMAINE LLP
    920 Fifth Avenue, Suite 3300
    Seattle, Washington 98104-1610
    Phone:  (206) 622-3150
    Email:  jamesgrant@dwt.com
           caesarkalinowski@dwt.com

Attorneys for *Amici Curiae* Association of National Advertising and Summus 2, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2023, I electronically filed the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Fifth Circuit using the CM/ECF system.  Service of such filing will be accomplished by the CM/ECF system upon all participants.

DATED this 19th day of July, 2023.

Attorneys for *Amicus Curiae*
Association of National Advertising
Summus 2, LLC

By   *s/  James Grant*
         James Grant

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the requirements of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B).  The brief is proportionately spaced in Times New Roman 14-point type.  According to the word processing system used to prepare the brief, the word count of the brief is 5,825, not including the parts exempted by Rule 32(f).

DATED this 19th day of July, 2023.

DAVIS WRIGHT TREMAINE LLP


By:   *s/ James Grant*
      James Grant