No. 23-40076

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

R J REYNOLDS TOBACCO COMPANY; Santa Fe Natural Tobacco
Company, Incorporated; ITG Brands LLC; Liggett Group LLC; Neocom,
Incorporated; Rangila Enterprises, Incorporated; Rangila LLC; Sahil Ismail,
Incorporated; Is Like You, Incorporated,

Plaintiffs-Appellees,

v.

FOOD & DRUG ADMINISTRATION; United States Department of Health
and Human Services; Robert M. Califf, Commissioner of Food and Drugs;
Xavier Becerra, Secretary, U.S. Department of Health and Human Services,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Eastern District of Texas

———————————

REPLY BRIEF

———————————

*Of Counsel:*

SAMUEL R. BAGENSTOS
  *General Counsel*
  *Dep't of Health and Human Services*

MARK RAZA
  *Chief Counsel*
  *Food and Drug Administration*

WENDY S. VICENTE
  *Deputy Chief Counsel for Lit.*
  *Food and Drug Administration*

JULIE LOVAS
  *Senior Counsel*
  *Office of the Chief Counsel*
  *Food and Drug Administration*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

DAMIEN M. DIGGS
  *United States Attorney*

MARK B. STERN
LINDSEY POWELL
CATHERINE PADHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7712*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 616-5372*

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ............................................................................1

ARGUMENT ...................................................................................................4

I.    The Required Health Warnings Are Consistent with the
First Amendment ......................................................................................4

    A.    The warnings convey factual and uncontroversial
information about the undisputed risks of smoking ...................4

    B.    The factual disclosures required by the rule readily
withstand review ...........................................................................11

II.    Any Unconstitutional Component of the Updated Warnings
Is Severable from the Remainder of the Rule .........................................22

III.    The Rule Is Substantively and Procedurally Reasonable and
Consistent with the Tobacco Control Act ...............................................26

IV.    Any Remedy Should Be Limited to Plaintiffs ........................................32

CONCLUSION ..............................................................................................33

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:**                                                                    <u>**Page(s)**</u>

*Air Transp. Ass'n of Am. v. FAA*,
   169 F.3d 1 (D.C. Cir. 1999) ...............................................................27

*American Hosp. Ass'n v. Azar*,
   983 F.3d 528 (D.C. Cir. 2020) ..........................................................12

*American Meat Inst. v. USDA*,
   760 F.3d 18 (D.C. Cir. 2014) ..................................................... 13, 16

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*,
   447 U.S. 557 (1980) ...........................................................................14

*Chemical Mfrs. Ass'n v. EPA*,
   870 F.2d 177 (5th Cir.), *clarified on other grounds on reh'g*,
   885 F.2d 253 (5th Cir. 1989) ....................................................... 29, 30

*Cigar Ass'n of Am. v. FDA*,
   5 F.4th 68 (D.C. Cir. 2021) ..............................................................27

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ...........................................................................15

*CTIA-The Wireless Ass'n v. City of Berkeley*,
   928 F.3d 832 (9th Cir. 2019) ...................................................... 12, 13

*Davis Cty. Solid Waste Mgmt. v. EPA*,
   108 F.3d 1454 (D.C. Cir. 1997) .......................................................25

*Discount Tobacco City & Lottery, Inc. v. United States*,
   674 F.3d 509 (6th Cir. 2012).......................... 7, 12, 13, 15, 16, 17, 22

*Hersh v. United States ex rel. Mukasey*,
   553 F.3d 743 (5th Cir. 2008)............................................................15

*International Dairy Foods Ass'n v. Amestoy,*
   92 F.3d 67 (2d Cir. 1996) ...................................................................19

*Leavitt v. Jane L.,*
   518 U.S. 137 (1996) ........................................................................23

*Madsen v. Women's Health Ctr., Inc.,*
   512 U.S. 753 (1994) ........................................................................32

*MD/DC/DE Broads. Ass'n v. FCC,*
   253 F.3d 732 (D.C. Cir. 2001) ................................................... 25, 26

*National Elec. Mfrs. Ass'n v. Sorrell,*
   272 F.3d 104 (2d Cir. 2001) ....................................................... 12, 13

*NetChoice, LLC v. Paxton,*
   49 F.4th 439 (5th Cir. 2022), *petition for cert. filed,*
   No. 22-555 (U.S. Dec. 15, 2022) ................................................ 11, 13

*New York v. United States,*
   505 U.S. 144 (1992) ..................................................................... 3, 22

*Petry v. Block,*
   737 F.2d 1193 (D.C. Cir. 1984) .......................................................28

*Phillips Petroleum Co. v. EPA,*
   803 F.2d 545 (10th Cir. 1986)..........................................................28

*R.J. Reynolds Tobacco Co. v. FDA,*
   696 F.3d 1205 (D.C. Cir. 2012) .......................................................16

*Texas v. Lyng,*
   868 F.2d 795 (5th Cir. 1989)............................................................29

*Texas Office of Pub. Util. Counsel v. FCC,*
   265 F.3d 313 (5th Cir. 2001)............................................................29

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*,
471 U.S. 626 (1985) ...................................................................... 7, 11, 12, 13, 15

**Statutes:**

Family Smoking Prevention and Tobacco Control Act,
Pub L. No. 111-31, § 202, 123 Stat. 1176, 1845 (2009) ................................... 30
21 U.S.C. § 387 note ......................................................................... 23, 32

Pub. L. No. 98-474, § 4, 98 Stat. 2200, 2202 (1984) ................................................ 5

5 U.S.C. § 706(2) ..................................................................................... 32

15 U.S.C. § 1333(a)(1)-(2) ........................................................................ 24

15 U.S.C. § 1333(b)(2) ............................................................................. 24

15 U.S.C. § 1333(d)[1] ......................................................................... 23, 24

15 U.S.C. § 1333(d)[2] ...................................................................... 24, 30, 31

15 U.S.C. § 1334(a) ................................................................................ 32

15 U.S.C. § 4402(a)(1)-(2) ........................................................................ 25

**Regulation:**

21 C.F.R. § 201.57(c)(6) .......................................................................... 18

**Legislative Material:**

H.R. Rep. No. 111-58, pt. 1 (2009),
*as reprinted in* 2009 U.S.C.C.A.N. 468 ..................................................... 18, 24

**Other Authorities:**

Exec. Order No. 12,866 (Sept. 30, 1993)................................................................27

Exec. Order No. 13,563 (Jan. 18, 2011)................................................................27

FDA, *Final Report: Cigarette Health Warnings Peer Review* (2019)...................20

84 Fed. Reg. 42,754 (Aug. 16, 2019).......... 4, 5, 6, 7, 13, 16, 19, 20, 21, 22, 28, 30

84 Fed. Reg. 60,966 (Nov. 12, 2019)....................................................................28

85 Fed. Reg. 15,638 (Mar. 18, 2020) ............... 2, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 16,
17, 19, 19-20, 20, 21, 24, 25, 26, 27, 30, 31

## SUMMARY OF ARGUMENT

Cigarette smoking is responsible for the deaths of hundreds of thousands of Americans each year and for the serious illness of millions of others. The overwhelming majority of adult smokers become addicted to nicotine by age 18. The text-and-image cigarette warnings promulgated by the U.S. Food and Drug Administration (FDA) provide important factual information about the undisputed health consequences of smoking in a format that promotes greater public understanding.

Plaintiffs attempt to trivialize their products' risks, urging that "it is always possible to find some granular fact that the public does not know." Br. 38. But plaintiffs' products are highly addictive and often deadly when used as intended, distinguishing them from the other products in plaintiffs' examples. FDA found that large swaths of the population underestimate the risks of smoking and remain unaware that it is a proven cause of cancer and cardiovascular disease. Still fewer understand that smoking causes other serious conditions, even though significant numbers of smokers suffer these harms.

Incredibly, plaintiffs contend that the government lacks an interest in promoting public understanding of such "less-known risks" because many

consumers already know that smoking causes "major risks (e.g., lung cancer)." Br. 37. Even if the public's understanding of "major risks" were far broader than it is, public awareness of some health risks would not obviate the need to disclose others—particularly when the other risks include such serious conditions as diabetes, stroke, and bladder cancer.

The warning images work in conjunction with the textual statements to aid comprehension of these undisputed risks. The record shows that the images "depict common visual presentations of the health conditions" in the warning statements and present them "in a realistic and objective format that is devoid of non-essential elements" and "not intended to evoke negative emotions." 85 Fed. Reg. 15,638, 15,670 (Mar. 18, 2020). Plaintiffs complain that prospective purchasers may conclude from the health warnings that smoking is a mistake. But the serious health consequences identified in the existing Surgeon General's warnings support the same inference, and that does not make the information communicated any less factual.

If the Court were nevertheless to conclude that certain aspects of the warnings are inconsistent with the First Amendment, it should hold those provisions severable from the remainder. Courts are to presume that

provisions are severable "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not." *New York v. United States*, 505 U.S. 144, 186 (1992) (quotation marks omitted).  Here, Congress enacted separate provisions updating the content, size, and format of the current warnings and expressly provided that any invalid provisions of the statute or implementing regulations are severable.  The history of text-only warnings, Congress's provision of large text-only warnings for smokeless tobacco products, and FDA's findings confirm that provisions updating the text and size of the warnings can function independently of the images.

The district court did not address plaintiffs' arguments that the rule violates the Administrative Procedure Act (APA) or that FDA exceeded its authority, and the arguments lack merit.  The reasonableness of the rule is amply supported by the record; FDA's disclosure of study reports and supporting materials, and its provision of a supplemental 15-day comment period, more than satisfied the APA; and the text and structure of the statute confirm FDA's authority to revise the number and substance of the warning statements.

**ARGUMENT**

## I.    The Required Health Warnings Are Consistent with the First Amendment.

### A.    The warnings convey factual and uncontroversial information about the undisputed risks of smoking.

**1.** FDA found overwhelming evidence that cigarette smoking leads to the negative health consequences described in each textual warning statement. 85 Fed. Reg. at 15,671-84. There is no scientific doubt or controversy with respect to the substance of any of these statements.

Without disputing the agency's scientific findings, plaintiffs assert that some of the statements are nevertheless "misleading[]" because they "focus on conditions that less frequently arise from smoking." Br. 26. But the record demonstrates that a significant number of people suffer each of these harms as a result of smoking. *See* 85 Fed. Reg. at 15,671-84; 84 Fed. Reg. 42,754, 42,758-59, 42,773-77 (Aug. 16, 2019). That some consequences arise more frequently than others does not make it any less of a fact that smoking causes all of these harms.

Plaintiffs are on no firmer ground in arguing that some statements are misleading because they use the word "'cause' (as opposed to . . . 'increases the risk of,' 'may cause,' or 'can cause')." Br. 26. Plaintiffs

contend that "cause" may suggest that smoking is the "sole or primary cause of [a condition] or invariably causes [that condition]." Br. 24. But "cause" has long been used in tobacco warnings to convey the scientifically established relationship between smoking and the serious health conditions that result. The existing Surgeon General's warnings, for example—which plaintiffs concede are "purely factual [and] uncontroversial," Br. 35—warn that "smoking *causes* lung cancer, heart disease, [and] emphysema," Pub. L. No. 98-474, § 4, 98 Stat. 2200, 2202 (1984) (capitalization omitted) (emphasis added). This statement is undisputedly true even though many smokers never develop those conditions, and even though smoking is not their sole cause. As FDA explained, the causal link between smoking and the negative health consequences identified in each warning statement is supported by the strongest possible level of scientific conclusions, making it a scientific fact that smoking causes these conditions. 85 Fed. Reg. at 15,670; 84 Fed. Reg. at 42,766.

   In urging that the warning statements are misleading, Br. 24, plaintiffs cite focus-group statements indicating that some people "don't believe" that smoking causes diabetes, ROA.1378, or "clog[s] your

arteries," ROA.1365-66; that they doubt the connection between smoking and bladder cancer, ROA.1363; and that they are skeptical that a child using a nebulizer is "a realistic outcome" of secondhand smoke exposure, ROA.1431. But plaintiffs do not dispute that these views run counter to the overwhelming scientific evidence that smoking causes these conditions in a significant number of people. *See* 84 Fed. Reg. at 42,759 (finding that an estimated "1.8 million Americans have diabetes due to smoking"); *id.* at 42,776 (finding that smoking is the most powerful risk factor for peripheral arterial disease and that there are roughly 170,000 amputations in the U.S. each year due to the disease); *id.* at 42,774 (finding that "even smoking a few cigarettes per day is associated with an increased risk of bladder cancer"); 85 Fed. Reg. at 15,672 (finding that "it is not rare or atypical for children with chronic asthma resulting from secondhand smoke exposure to receive nebulizer treatments"). The lack of knowledge revealed in these statements only underscores the need for warnings.

**2.** As explained in our opening brief (at 41-46), the text-and-image pairings likewise convey factual and uncontroversial information about these undisputed health risks. Plaintiffs ask the Court to accept the proposition that images are "*inherently*" misleading. Br. 24. But it is well

established that images can be used in commercial speech in an accurate and non-misleading way, *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 647 (1985), and "can present factual information regarding the health risks of using tobacco," *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 569 (6th Cir. 2012). "Visual depictions of smoking-related disease . . . help[] to depict and explain the health effect described in the text." 84 Fed. Reg. at 42,763; 85 Fed. Reg. at 15,656. The idea that an image must convey "only one meaning" in order to be factual, Br. 22, has no grounding in the case law.

In urging that the warnings are unclear, plaintiffs rely on record excerpts in which study participants considered the text or images separately from each other or considered warnings not included in the final rule. *See* Br. 24 (citing ROA. 1352, 1354, 1356, 1359, 1363-66, 1376-80, 1386-88, 1390-1411, 1414-18, 1420-22, 1429, 1432, 1435, 1438-40, 1443-44). When the warning text and image are considered together, the factual information conveyed by the warnings is readily understood. *See* ROA.1478; 85 Fed. Reg. at 15,659. Neither the record nor common sense provides support for plaintiffs' suggestion (Br. 23) that a reasonable person viewing the heart-surgery image in conjunction with the statement,

7

"WARNING: Smoking can cause heart disease and strokes by clogging arteries," might conclude that the warning is recommending a particular treatment for heart disease.  Plaintiffs' similar assertions about other text-and-image pairings are likewise without basis.  *See id.*

There is also no support for plaintiffs' contention that the images convey an "ideological anti-smoking message" because the information they impart may be upsetting.  Br. 14; *see* Br. 17-18.  Plaintiffs note that the statement "Smoking during pregnancy stunts fetal growth" is accompanied by an image of an underweight baby, and the statement "Tobacco smoke can harm your children" is accompanied by an image of a sick child.  Br. 18-19.  But plaintiffs do not, and cannot, dispute the accuracy of these statements, and the images complement the undisputed factual information in the warning text by "depict[ing] common visual presentations of the health conditions" and presenting them "in a realistic and objective format that is devoid of non-essential elements" and "not intended to evoke negative emotions."  85 Fed. Reg. at 15,670.  Plaintiffs identify no aspect of these images that does not accurately depict the undisputed risk identified in the warning statement.  And they fail to

engage with FDA's extensive findings supporting each text-and-image pairing. *See id.* at 15,671-84.

Plaintiffs repeat an unsubstantiated comment that the head-and-neck cancer image is "'an effort to provoke repulsion' by portraying 'a stylized, exaggerated representation of neck cancer.'" Br. 17 (quoting ROA.10205). But this depiction is "very similar to other images easily found [in the medical literature] depicting the same health condition," and "it is not unusual" for some patients to present in the way depicted. 85 Fed. Reg. at 15,674. Plaintiffs offer nothing to refute FDA's conclusion that "this image depicts a factually accurate, common visual presentation of the health condition." *Id.* Nor is there any support for the suggestion that the "person's gaze" makes the image ideological because it "arguably expresses regret at her choice to smoke." Br. 17 (alteration omitted) (quoting ROA.10205). FDA eschewed visual elements intended to evoke a negative emotional response, 85 Fed. Reg. at 15,675, such as exaggerated facial expressions, and the women's visage in this image—as in others—is largely neutral.

Although the warnings are not designed to be upsetting, FDA recognized that their "factually accurate content may evoke subjective,

emotional responses from some consumers," reflecting the "very real, serious, and sometimes deadly outcomes of cigarette smoking." 85 Fed. Reg. at 15,646; *see* ROA.1405 (focus group participant observing that her negative response was due to "the reality of what's going to happen if you smoke cigarettes"). Contrary to plaintiffs' suggestion, "the possibility that factual content may evoke an emotional reaction does not render the content less factual." 85 Fed. Reg. at 15,646. Similarly, that information about these harms may support an inference that smoking is inadvisable does not make the information any less of a fact. The current Surgeon General's warning that "smoking causes lung cancer, heart disease, [and] emphysema" also supports such an inference—and the warning that "quitting smoking now greatly reduces serious risks to your health" makes it explicit—but plaintiffs concede that these warnings are nevertheless "purely factual" and "uncontroversial," Br. 35.

Plaintiffs misrepresent the record when they repeatedly assert that FDA took measures to "ma[k]e the warnings *more* frightening, shocking, and disgusting." Br. 22; *see* Br. 9 (citing, *e.g.*, ROA.1417, 1420 (recommending that FDA "[m]aintain the look" on the subjects' faces in the sick-child and neck-tumor images and "not draw attention away from"

10

other aspects of the image); ROA.1423 (recommending "enhancements [to] make th[e] image clearer")). As explained above, FDA composed straightforward depictions of these health consequences that do not contain extraneous elements. 85 Fed. Reg. at 15,671-84. Plaintiffs' contention to the contrary is nothing more than unsupported rhetoric.

**B. The factual disclosures required by the rule readily withstand review.**

**1.** Because the warnings entail disclosure of factual and uncontroversial information about plaintiffs' products, they are subject to review under *Zauderer* and are valid if "reasonably related to a legitimate state interest" and not "unjustified or unduly burdensome." *NetChoice, LLC v. Paxton*, 49 F.4th 439, 485 (5th Cir. 2022) (quoting *Zauderer*, 471 U.S. at 651), *petition for cert. filed*, No. 22-555 (U.S. Dec. 15, 2022). That standard applies regardless of whether a factual disclosure consists of text or an image. *Cf. Zauderer*, 471 U.S. at 647 (holding that "commercial illustrations are entitled to the First Amendment protections afforded verbal commercial speech").

Contrary to plaintiffs' suggestion, the reason for applying less exacting review to commercial disclosures has nothing to do with

11

deception and everything to do with the fact that "disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech." *Zauderer*, 471 U.S. at 651.  "Because the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides, [a party's] constitutionally protected interest in *not* providing any particular factual information in [its] advertising is minimal."  *Id.* (citation omitted).

The courts of appeals have widely recognized as sufficient for these purposes the government's interest in providing consumers with factual information that may inform their decisions about health and related matters.  *See, e.g.*, *American Hosp. Ass'n v. Azar*, 983 F.3d 528, 538 (D.C. Cir. 2020); *CTIA-The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 846 (9th Cir. 2019); *Discount Tobacco*, 674 F.3d at 567; *National Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 115 (2d Cir. 2001).  This Court has likewise required that commercial disclosures be "reasonably related to *a* legitimate state interest" and has recognized as legitimate the government's interest in "enabling [consumers] to make an informed choice regarding whether to use" a good

or service. *NetChoice*, 49 F.4th at 485 (quotation marks and alteration omitted) (emphasis added).

No court of appeals has accepted plaintiffs' contention that *Zauderer* applies only when the government interest supporting disclosure is preventing consumer deception. *See CTIA*, 928 F.3d at 844; *American Meat Inst. v. USDA*, 760 F.3d 18, 22 (D.C. Cir. 2014) (en banc); *Discount Tobacco*, 674 F.3d at 556-58; *Sorrell*, 272 F.3d at 114-15. Accordingly, if the Court addresses *Zauderer*'s scope, *see* Opening Br. 18-19 (explaining why the Court need not reach that question), it should decline plaintiffs' invitation to create a circuit split and hold instead that the rule is not so limited.

The warnings withstand review under *Zauderer* because they are reasonably related to the government's interest in promoting greater understanding of these serious health risks and are not unduly burdensome. 471 U.S. at 651. FDA amply justified the updated size and format of the warnings. *See* 85 Fed. Reg. at 15,647, 15,664-65; 84 Fed. Reg. 42,778-79. And there is no basis for concluding that "the remaining portions of [plaintiffs'] packaging are insufficient for them to market their products." *Discount Tobacco*, 674 F.3d at 567 (holding that cigarette warnings of this size are not unduly burdensome).

13

Plaintiffs' brief includes mock-up images suggesting that the rule will significantly reduce available marketing space and render cigarette packages indistinguishable from one another if sold from cases that display only the top half of packages.  Br. 41-42.  But the rule does not require that product packages or display cases take the form that plaintiffs suggest.  *See* 85 Fed. Reg. at 15,647.  And plaintiffs fail to address the fact that they retain a full 80% of advertising space and well over 50% of product packages to communicate their preferred message.  *See id.*  That plaintiffs face other advertising constraints as a result of a voluntary agreement entered to resolve claims stemming from decades of deceptive promotion (Br. 42) has no bearing on this analysis.

**2.a.**  The updated warnings would also withstand review under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 566 (1980), were that the applicable standard, because they are narrowly tailored to the government's substantial interest in "warning the general public about the harms associated with the use of tobacco

14

products." *Discount Tobacco*, 674 F.3d at 519.[1]  Courts have widely

recognized as substantial the government's "interest in ensuring that

those" making an important decision "know what it entails."  *Hersh v.*

*United States ex rel. Mukasey*, 553 F.3d 743, 766 (5th Cir. 2008) (discussing

information relevant to entering bankruptcy); *see Citizens United v. FEC*, 558

U.S. 310, 367 (2010) (recognizing the importance of disclosures that "help

citizens make informed choices" (quotation marks omitted)).

Contrary to plaintiffs' contention (Br. 33-34), no court has required as

part of this analysis a showing that informed choice leads to a particular

course of action.  Neither *Citizens United* nor *Hersh* required the

government to adduce evidence that the disclosures would lead people to

alter their decisions.  And the D.C. Circuit likewise found substantial the

government's interest in country-of-origin labeling based on the potential

for such information "to enable consumers to choose American-made

---

[1] Plaintiffs' argument for strict scrutiny turns longstanding First
Amendment principles on their head.  Br. 32 n.4.  It is well established that
commercial speech is entitled to "less extensive" protection than
noncommercial speech, *Zauderer*, 471 U.S. at 637, and that, within that
framework, disclosures are subject to lesser scrutiny because the First
Amendment interests they implicate "are substantially weaker than those
at stake when speech is actually suppressed," *id.* at 651 n.14.

products" without requiring evidence that disclosure would actually alter consumer behavior. *American Meat*, 760 F.3d at 23.[2]

There is similarly no merit to plaintiffs' contention that the government lacks a substantial interest in disclosing the serious health risks of smoking because (according to plaintiffs) consumers are already aware of some of these risks. Br. 35-37. FDA found a "pervasive lack of knowledge about and understanding of the many negative health consequences of smoking"—even those that plaintiffs insist are well known. 85 Fed. Reg. at 15,654; *see Discount Tobacco*, 674 F.3d at 528 (rejecting this argument). FDA cited evidence that 33% of adult smokers are unaware that smoking is a proven cause of cancer, and fewer than half of people identified cardiovascular disease as being among the harms caused by smoking. 84 Fed. Reg. at 42,761. There is "abundant evidence to support Congress' findings that juveniles" in particular "are not sufficiently aware of the actual risks of tobacco use," *Discount Tobacco*, 674

---

[2] Contrary to plaintiffs' assertion (Br. 33), *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1221 (D.C. Cir. 2012), does not run counter to this authority but rather took smoking reduction to be the government's primary interest and held that the government could not make up for a lack of evidence to support that objective by reframing the interest as informational.

F.3d at 528—a significant fact given that the vast majority of regular adult smokers become addicted by age 18.

In nevertheless urging that the public is fully informed of smoking's "major" risks, Br. 37, plaintiffs misstate the record and rely on a source that FDA found to have "[s]ignificant limitations," 85 Fed. Reg. at 15,655. Plaintiffs cite numbers from a small, qualitative focus-group study not designed to generate quantitative metrics (Br. 36), but a large study that was designed for that purpose showed that almost half of respondents (40.7%) identified the warning that "[t]obacco smoke can harm your children" as new information. 85 Fed. Reg. at 15,671. Even plaintiffs' preferred figures reveal sizable gaps in consumer understanding, indicating that 6-20% of American adults—or 14-49 million people—do not understand that smoking leads to stroke, heart disease, fatal lung disease, head and neck cancer, or stunted fetal growth. Br. 36-37. And those figures understate the problem by failing to capture gaps in understanding among children and adolescents, who are particularly at risk.

While plaintiffs concede that some of the health risks identified in the warnings are less well known, they assert that disclosing these risks will likewise "serve no purpose" because "[i]f consumers choose to smoke

17

knowing about its major risks (e.g., lung cancer), it is implausible that they would be deterred by learning it had some minor contributing effect on lesser risks (e.g., cataracts)." Br. 37. It is quite extraordinary to suggest that the government lacks a substantial interest in promoting public understanding of the fact that a product causes diabetes, bladder cancer, blindness, and amputation. Information that a product can affect not just one organ but "nearly every organ of the body" is unquestionably material. H.R. Rep. No. 111-58, pt. 1, at 2 (2009), *as reprinted in* 2009 U.S.C.C.A.N. 468, 469. That is why, for example, prescription-drug labeling rules require disclosure of all "clinically significant adverse reactions," including those that "are serious even if infrequent," if the drug and the consequence are shown to have even a "reasonable evidence of a causal association," 21 C.F.R. § 201.57(c)(6)—which is less robust proof of causation than the level of evidence associating the risks in the warnings with cigarette smoking.

Despite plaintiffs' efforts to trivialize these risks, the serious health information disclosed by the warnings is hardly "granular." Br. 2, 38. Each of these conditions is potentially life-altering, if not fatal, and their relationship to smoking is well established. To take just one of plaintiffs' examples: given the evidence that smoking is responsible for 40% of

18

bladder cancer deaths nationwide, 85 Fed. Reg. at 15,675, it is patently false to describe this as a "minor" risk or to say that smoking has only "some minor contributing effect," Br. 37.  The government's substantial interest in the disclosure of such information has long been recognized and does not implicate the slippery slope that plaintiffs suggest (Br. 38).  *See International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 73 (2d Cir. 1996) (finding the interest in bovine hormone disclosure insubstantial absent "scientific evidence from which an objective observer could conclude that [the hormone] has any impact" on consumer health).

**b.**  There is ample evidence that the warnings will directly further the government's interest in promoting greater understanding of these risks. The scientific literature demonstrates the need for larger warnings that include images, 84 Fed. Reg. at 42,759-64, and FDA undertook iterative studies to determine which statements and images would promote greater understanding, *id.* at 42,765-72.  FDA explained from the outset that measures of "new information" and "self-reported learning" were most predictive of whether a warning would further this interest, *id.* at 42,769, and expert feedback strongly supports the agency's analysis, *see, e.g.*, 85 Fed. Reg. at 15,660; FDA, *Final Report: Cigarette Health Warnings Peer Review*

56 (2019) (calling the quantitative studies "well designed to assess whether the revised warning statements would meet the mandate to increase understanding of the risks associated with smoking").[3]

In urging that the warnings will not promote understanding, plaintiffs focus narrowly on "health beliefs," one of the studies' many outcome measures. *See* Br. 38-39. But FDA explained that health beliefs typically change based on repeated exposure over time and that measurable changes therefore would not be expected over the short duration of these studies. 84 Fed. Reg. at 42,769. Despite that expectation, most of the warnings chosen for the final rule measurably influenced participants' beliefs about the negative health consequences of smoking. 85 Fed. Reg. at 15,659, 15,666. And all performed well on the two measures most predictive of a warning's potential to promote greater public understanding of these risks, as well as measures of attention, recall, perceived informativeness, perceived understandability, perceived

---

[3] Available at www.fda.gov/media/136124/download.

helpfulness in understanding health effects, and thinking about the health risks of smoking.  *Id.* at 15,658-59.[4]

**c.**  Contrary to plaintiffs' contention, and as explained in our opening brief (at 39-41, 55-58), FDA expressly considered alternatives to these warnings.  The agency found that public information campaigns are a valuable complement to product warnings but "are not, by themselves, an effective alternative."  85 Fed. Reg. at 15,657-58.  And FDA likewise determined that smaller, text-only warnings do not effectively convey information, particularly to adolescent viewers who are most likely to begin smoking and become addicted.  *See* 84 Fed. Reg. at 42,756, 42,760-61. FDA considered extensive evidence showing that larger warnings that include images better aid in comprehension than smaller, text-only alternatives.  *Id.* at 42,762-65, 42,779; *see* 85 Fed. Reg. at 15,655-58.

Plaintiffs fault FDA for not devising new studies to "test" the effect of smaller, text-only warnings.  Br. 43, 45.  But such warnings have been in

---

[4] Plaintiffs also cite snippets of the external peer review in urging that FDA's quantitative studies are not reliable, but as FDA explained in the final rule, and as is evident from reviewing the peer-review document in its entirety, "[t]he peer reviewers concluded that the studies were strong and that 'both studies are very well done in terms of design and data analysis' and 'appropriate to address the study's purpose.'"  85 Fed. Reg. at 15,661.

place for decades, and there is a vast body of scientific literature evaluating their effectiveness relative to larger warnings and those with images. 84 Fed. Reg. at 42,762-63, 42,779; *see Discount Tobacco*, 674 F.3d at 564-65. Overwhelming evidence shows that increased warning size and the inclusion of images aids in comprehension of the health risks of smoking— including for adolescents, whose developing brains are acutely vulnerable to nicotine addiction and who constitute by far the greatest share of new smokers. 84 Fed. Reg. at 42,762-63. FDA, like Congress before it, reasonably relied on that evidence in concluding that smaller warnings or those without images are not a sufficient alternative to the updated warnings in the final rule.

## II.    Any Unconstitutional Component of the Updated Warnings Is Severable from the Remainder of the Rule.

The case law establishes a default in favor of severability, making clear that "[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *New York v. United States*, 505 U.S. 144, 186 (1992) (quotation marks omitted). The Tobacco Control Act confirms the

severability of any unconstitutional provisions, stating that "[i]f any provision of [the statute] or of the regulations . . . is held to be invalid, the remainder of [the statute] and such regulations . . . shall not be affected and shall continue to be enforced to the fullest extent possible."  21 U.S.C. § 387 note.  Accordingly, if the Court were to hold that any aspect of the warnings is invalid, the remaining provisions must still take effect.

Plaintiffs argue that the Act's directive that FDA "issue regulations that require color graphics . . . to *accompany* the label statements," 15 U.S.C. § 1333(d)[1] (emphasis added), shows that Congress "expressly decided that a graphic-warnings rule must involve *both* graphics and text," Br. 54. In plaintiffs' view, the word "accompany" indicates that the statute "*prohibits* the images from being separated from the textual warnings" because Congress meant for images to go along with the warning text.  *Id.* But this reasoning, "if carried out in every case, would operate to defeat every claim of severability."  *Leavitt v. Jane L.*, 518 U.S. 137, 143 (1996) (per curiam).  "The relevant question . . . is not whether the legislature would prefer (A+B) to B, because by reason of the invalidation of A that choice is no longer available.  The relevant question is whether the legislature would prefer not to have B if it could not have A as well."  *Id.*  While Congress

intended the new warnings to include images, the word "accompany" does not establish that it intended to maintain the current Surgeon General's warnings if the images cannot take effect.

The severability clause resolves any doubt as to Congress's intent, and other aspects of the Tobacco Control Act compel the same conclusion. The legislative findings and other provisions of the Act make clear "Congress's intent . . . to replace the stale 1984 Surgeon General's warnings and to increase the size and update the placement of new required cigarette warnings." 85 Fed. Reg. at 15,697. The evidence before Congress showed that the current warnings go largely unnoticed. *See* H.R. Rep. No. 111-58, pt. 1, at 4. Congress sought to remedy that problem by revising the warnings in three separate ways: (1) by updating the warning text, (2) by giving the warnings more prominent size and location, and (3) by directing that the warnings include images. 15 U.S.C. § 1333(a)(1)-(2), (b)(2), (d)[1]. Each of these provisions improves upon the current warnings to promote greater understanding of the health risks of smoking. Congress also gave FDA flexibility to adjust the text and certain other aspects of the warnings to further that interest. *Id.* § 1333(d)[2].

Provisions updating the size and text of the warnings can easily function independently of the images. FDA specifically considered the feasibility of these different scenarios—including how the random-rotation and other requirements would function. 85 Fed. Reg. at 15,695. And the agency reiterated that the "different text-and-image pairings and the different textual warning statements can be and are intended to be incorporated into the label of a package or an advertisement on an individual basis and therefore 'operate entirely independently of one another.'" *Id.* at 15,696 (quoting *Davis Cty. Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1459 (D.C. Cir. 1997) (per curiam)). Contrary to plaintiffs' suggestion (Br. 56), FDA did not need to support these observations with a quantitative study, particularly when textual warnings have long functioned on their own in this context, and the Tobacco Control Act mandates large, text-only warnings for smokeless tobacco products, 15 U.S.C. § 4402(a)(1)-(2).

Plaintiffs mistakenly rely on *MD/DC/DE Broadcasters Ass'n v. FCC*, Br. 55-56, which addressed an FCC rule requiring broadcasters to comply with one of two outreach programs to promote diversity in hiring. 253 F.3d 732, 734 (D.C. Cir. 2001) (denying rehearing). In holding one of the programs

unconstitutional, the court concluded that it could not leave the remaining program in place because "severing one of the two options" would "mak[e] the other mandatory," contrary to the agency's stated intent to give broadcasters flexibility. *Id.* at 736. The court explained that "the Commission never once considered the implications of promulgating [the] rule without Option B—except insofar as it implied that without Option B broadcasters would not have sufficient flexibility." *Id.* By contrast, the different warning provisions function independently, and FDA affirmed that it "would have adopted [any valid] portion on its own." 85 Fed. Reg. at 15,696 (quotation marks omitted).

### III. The Rule Is Substantively and Procedurally Reasonable and Consistent with the Tobacco Control Act.

**A.** There is no merit to plaintiffs' contention that the rule violates the APA. As discussed above, the record amply supports FDA's conclusion that the warnings will promote greater understanding of the risks of smoking. In developing the warnings, FDA undertook an iterative research process to determine which statements and images would promote understanding, and all the warnings included in the final rule performed well across relevant measures. 85 Fed. Reg. at 15,658-60. Thus,

plaintiffs' declaration that "the Rule lacks *any* evidence demonstrating that the warnings will further" the government's interest, Br. 48, is not merely hyperbolic—it is flat-out wrong. The record also refutes plaintiffs' contention that FDA failed to consider alternatives. *Supra* pp. 20-22.

There is likewise no basis for plaintiffs' cursory criticism of the cost-benefit analysis that FDA conducted as part of the regulatory impact analysis prescribed by executive order. Br. 48; *see* 85 Fed. Reg. at 15,697-98 (describing the analysis). The Tobacco Control Act does not require a cost-benefit analysis, and FDA did not rely on this analysis as a basis for the rulemaking. Instead, FDA conducted the analysis under Executive Orders 12,866 and 13,563—both of which expressly preclude judicial review. Exec. Order No. 12,866, § 10 (Sept. 30, 1993); Exec. Order No. 13,563, § 7(d) (Jan. 18, 2011); *see Air Transp. Ass'n of Am. v. FAA*, 169 F.3d 1, 8 (D.C. Cir. 1999). FDA's analysis was in any event reasonable, including its decision to evaluate the rule's benefits qualitatively. *Cf. Cigar Ass'n of Am. v. FDA*, 5 F.4th 68, 76 (D.C. Cir. 2021) (holding in similar circumstances that nothing "compel[led] that FDA's cost-benefit analysis take a particular form").

**B.** Plaintiffs also err in suggesting that FDA failed to provide an adequate opportunity to comment on raw data from the two qualitative

studies, or that FDA was required to publish the raw data from the two quantitative studies for comment.  Br. 48-50.  In the notice of proposed rulemaking, FDA described in detail the studies that it carried out to develop its proposal—including summaries of key data, findings, and the studies' design and methodology.  84 Fed. Reg. at 42,765-72.  When FDA decided to make additional reports about its quantitative studies available in the interest of maximum transparency, it "reopen[ed] the comment period for the proposed rule for 15 days to allow comment on the additional materials."  84 Fed. Reg. 60,966, 60,967 (Nov. 12, 2019).  The final rule accounted for comments received during that supplemental period.

The APA does not require notice or an opportunity for comment on developmental materials like the qualitative study reports, but, even if it did, the 15-day comment period provided ample "opportunity to participate"—as evidenced by plaintiffs' failure to suggest what more they would have said if afforded a longer comment period.  *Phillips Petroleum Co. v. EPA*, 803 F.2d 545, 559 (10th Cir. 1986); *see Petry v. Block*, 737 F.2d 1193, 1201 (D.C. Cir. 1984) (noting that the APA "does not specify a minimum time for submission of comments in an informal rulemaking").  Plaintiffs do not challenge the length of the original 60-day comment

period, during which they reviewed, analyzed, and commented in detail on thousands of pages of scientific, technical, and legal analysis. An additional 15 days to review 600 more pages of data underlying studies with which plaintiffs were already familiar was more than sufficient, and plaintiffs have failed to carry their burden of showing that they were prejudiced by the amount of time provided, *see Texas Office of Pub. Util. Counsel v. FCC*, 265 F.3d 313, 326 (5th Cir. 2001).

Nor was FDA under any obligation to solicit comment on the raw data underlying its quantitative studies. Br. 49-50. FDA provided hundreds of pages of detailed reports summarizing and discussing the data at issue such that "interested parties [were] able to participate meaningfully in the rulemaking process." *Texas Office*, 265 F.3d at 326. This Court has made clear that "the public 'need not have an opportunity to comment on every bit of information influencing an agency's decision.'" *Id.* (quoting *Texas v. Lyng*, 868 F.2d 795, 799 (5th Cir. 1989)). The APA is satisfied where, as here, the notice of proposed rulemaking "adequately advised interested parties of the method the [agency] had followed" and the "data it proposed to rely on." *Chemical Mfrs. Ass'n v. EPA*, 870 F.2d 177, 202 (5th Cir.), *clarified on other grounds on reh'g*, 885 F.2d 253 (5th Cir. 1989).

Plaintiffs in any event fail to "indicate with 'reasonable specificity'" how they were prejudiced by the agency's process. *Id.*

**C.**   There is also no merit to the suggestion that FDA lacked authority to change the number and text of the warnings in this rulemaking.  Br. 52-53.  The Tobacco Control Act expressly gives FDA "authority to revise cigarette warning label statements," Family Smoking Prevention and Tobacco Control Act, Pub L. No. 111-31, § 202, 123 Stat. 1176, 1845 (2009) (capitalization omitted), if it finds, through notice-and-comment rulemaking, that doing so "would promote greater public understanding of the risks associated with the use of tobacco products," 15 U.S.C. § 1333(d)[2].  FDA exercised this authority and determined through extensive testing that the updated warning statements in the final rule will promote greater understanding of these risks than the statements provided by statute.  85 Fed. Reg. at 15,643, 15,658; 84 Fed. Reg. at 42,766-69.

Plaintiffs concede that § 1333(d)[2] provides a "broader grant of power to adjust the warnings' text" but "only *after* FDA issues the graphic-warnings rule required by Section 201(a)."  Br. 53.  Plaintiffs reason that, because the same provision authorizes revisions to both the text and images and the latter can be revised only after a color-graphics rule is

issued, FDA's authority to revise the textual warning statements must
similarly be limited. *Id.* But the impossibility of changing not-yet-existent
graphics does not prevent revisions to existing text, which are possible at
any time. And nothing in § 1333(d)[2] makes changes to the text contingent
on the ability to change the images. *See* 15 U.S.C. § 1333(d)[2] (authorizing
the Secretary to "adjust the format, type size, color graphics, and text of
any of the label requirements" upon making the necessary findings).

There is likewise no merit to plaintiffs' contention that FDA lacks
authority to change the number of warnings. Congress gave FDA broad
authority to change "any of the label requirements" as needed to account
for changing scientific and public understanding of the health risks of
tobacco use. 15 U.S.C. § 1333(d)[2]; *see* 85 Fed. Reg. at 15,642. Plaintiffs
suggest that by not expressly stating that FDA may increase the number of
warnings, Congress *sub silentio* prohibited such changes. But that
argument ignores the broad authority that Congress gave FDA to make
changes as needed to promote public understanding, as well as Congress's
specific reference to FDA's authority to "require[] *additional* or different
statements on any cigarette package by a regulation," 15 U.S.C. § 1334(a)
(emphasis added).

31

## IV.   Any Remedy Should Be Limited to Plaintiffs.

The district court's entry of nationwide relief that runs to the benefit of non-parties is authorized by neither the APA nor the Tobacco Control Act, and it contravenes the longstanding rule that relief "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quotation marks omitted).  The district court erred in determining that binding precedent compelled it to vacate the rule under 5 U.S.C. § 706(2).  Although this Court has vacated rules under that provision, a past practice does not compel vacatur in future cases.  *See* Br. 58 (recognizing that "a more limited remedy" may lawfully be ordered).  That is especially so in the context of the Tobacco Control Act, which expressly states that provisions of the statute or its implementing regulations "shall not be affected and shall continue to be enforced to the fullest extent possible" even if held invalid as "to any person or circumstance."  21 U.S.C. § 387 note.  Thus, even if vacatur were generally authorized under the APA, it is not the appropriate remedy in this context.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should

be reversed.

Respectfully submitted,

*Of Counsel:*

SAMUEL R. BAGENSTOS
  *General Counsel*
  *Dep't of Health and Human Services*

MARK RAZA
  *Chief Counsel*
  *Food and Drug Administration*

WENDY S. VICENTE
  *Deputy Chief Counsel for Lit.*
  *Food and Drug Administration*

JULIE LOVAS
  *Senior Counsel*
  *Office of the Chief Counsel*
  *Food and Drug Administration*

AUGUST 2023

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

DAMIEN M. DIGGS
  *United States Attorney*

MARK B. STERN
  *s/ Lindsey Powell*
LINDSEY POWELL
CATHERINE PADHI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7712*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5372*
  *lindsey.e.powell@usdoj.gov*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2023, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court of

Appeals for the Fifth Circuit by using the appellate CM/ECF system.

Service will be accomplished by the appellate CM/ECF system.

*s/ Lindsey Powell*

LINDSEY POWELL

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of

Appellate Procedure 32(a)(7)(B) because it contains 6,474 words.  This brief

also complies with the typeface and style requirements of Rule 32(a)(5)-(6)

because it was prepared using Book Antiqua 14-point font, a

proportionally spaced typeface.

*s/ Lindsey Powell*

LINDSEY POWELL