No. 23-40076

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

R J REYNOLDS TOBACCO COMPANY; SANTA FE NATURAL TOBACCO COMPANY, INCORPORATED; ITG BRANDS LLC; LIGGETT GROUP LLC; NEOCOM, INCORPORATED; RANGILA ENTERPRISES, INCORPORATED; RANGILA LLC; SAHIL ISMAIL, INCORPORATED; IS LIKE YOU, INCORPORATED,

*Plaintiffs-Appellees,*

v.

FOOD & DRUG ADMINISTRATION; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT M. CALIFF, COMMISSIONER OF FOOD AND DRUGS; XAVIER BECERRA, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Texas
No. 6:20-cv-00176 (Barker, J.)

## PETITION FOR REHEARING EN BANC

Philip J. Perry
Andrew D. Prins
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, DC 20004
(202) 637-2200
philip.perry@lw.com

*Counsel for Plaintiff-Appellee*
*ITG Brands LLC*

Ryan J. Watson
Christian G. Vergonis
Alex Potapov
Victoria C. Powell
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939
rwatson@jonesday.com

*Counsel for Plaintiffs-Appellees*
*R.J. Reynolds Tobacco Company,*
*et al.*

(additional counsel listed on inside cover)

(continued from front cover)

Nicholas L. Schlossman
LATHAM & WATKINS LLP
300 Colorado Street
Austin, TX  78701
(737) 910-7300
nicholas.schlossman@lw.com

*Counsel for Plaintiff-Appellee
ITG Brands LLC*

Constantine Pamphilis
KASOWITZ BENSON
TORRES LLP
1415 Louisiana Street,
Suite 2100
Houston, TX 77002
(713) 220-8852
dpamphilis@kasowitz.com

Leonard A. Feiwus
Nancy Elizabeth Kaschel
KASOWITZ BENSON
TORRES LLP
1633 Broadway
New York, NY 10019
(212) 506-1785
lfeiwus@kasowitz.com
nkaschel@kasowitz.com

*Counsel for Plaintiff-Appellee
Liggett Group LLC*

## CERTIFICATE OF INTERESTED PERSONS

*R J Reynolds Tobacco Company v. Food & Drug Administration*,
No. 23-40076

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.    Plaintiff-Appellee **R.J. Reynolds Tobacco Company** is a North Carolina corporation. R.J. Reynolds Tobacco Company is a direct, wholly owned subsidiary of R.J. Reynolds Tobacco Holdings, Inc., which is a direct, wholly owned subsidiary of Reynolds American Inc., which is an indirect, wholly owned subsidiary of British American Tobacco, p.l.c., a publicly traded corporation.

2.    Plaintiff-Appellee **Santa Fe Natural Tobacco Company, Incorporated** is a New Mexico corporation headquartered in North Carolina. Santa Fe Natural Tobacco Company is a direct, wholly owned subsidiary of Reynolds American Inc., which is an indirect, wholly owned subsidiary of British American Tobacco, p.l.c., a publicly traded corporation.

3.    Plaintiff-Appellee **ITG Brands LLC** is a Texas limited liability company headquartered in North Carolina. ITG Brands, LLC is a limited liability company with its sole member being ITG Brands Holdpartner LP. ITG Brands Holdpartner LP's general partner is ITG Brands Holdco LLC and its limited partner is ITG Holdings

USA Inc. The sole member of ITG Brands Holdco LLC is ITG Holdings USA, Inc. ITG Holdings USA Inc. is a wholly owned subsidiary of Imperial Tobacco US Holdings BV, which is a Dutch private limited company. Imperial Tobacco US Holdings BV is an indirect subsidiary of Imperial Brands plc, which is a publicly traded United Kingdom public limited company.

4.     Plaintiff-Appellee **Liggett Group LLC** is a Delaware limited liability company headquartered in North Carolina. Liggett Group LLC is a direct, wholly owned subsidiary of VGR Holding LLC, which is a direct, wholly owned subsidiary of Vector Group Ltd., a publicly traded corporation.

5.     Plaintiff-Appellee **Neocom, Incorporated** is a Texas corporation. No publicly held company owns 10% or more of its stock.

6.     Plaintiff-Appellee **Rangila Enterprises, Incorporated** is a Texas corporation. No publicly held company owns 10% or more of its stock.

7.     Plaintiff-Appellee **Rangila LLC** is a Texas limited liability company. No publicly held company owns 10% or more of its stock.

8.     Plaintiff-Appellee **Sahil Ismail, Incorporated** is a Texas corporation. No publicly held company owns 10% or more of its stock.

9.     Plaintiff-Appellee **Is Like You, Incorporated** is a Texas corporation. No publicly held company owns 10% or more of its stock.

10.     Defendant-Appellant **Food & Drug Administration ("FDA")** is a federal agency. FDA regulates cigarettes marketed in the United States using authority

delegated to it by the Department of Health and Human Services ("HHS"). 21 U.S.C. § 387a(e).

11. Defendant-Appellant **United States Department of Health and Human Services** is a federal agency. Under the Food, Drug, and Cosmetic Act and the Tobacco Control Act, HHS is responsible for regulating cigarettes marketed in the United States. *Id.* §§ 321(d), 387a(a).

12. Defendant-Appellant **Robert M. Califf, Commissioner of Food and Drugs**, has been delegated authority to administer the Tobacco Control Act. *See* 2016 FDA Staff Manual Guide § 1410.10(1)(A)(1) (Feb. 22, 2023), https://tinyurl.com/2u7edjen.

13. Defendant-Appellant **Xavier Becerra, Secretary, U.S. Department of Health and Human Services** is the federal official responsible for the implementation and enforcement of the Tobacco Control Act and the graphic warnings rule that is the subject of this litigation.

14. This appeal potentially impacts the financial interests of the tobacco industry as a whole, including manufacturers, distributors, and retailers, as well as consumers.

15. The parties and their counsel are:

**Plaintiffs-Appellees**                    **Counsel**

R.J. Reynolds Tobacco Company;           Ryan J. Watson
Santa Fe Natural Tobacco Company;        Christian G. Vergonis
Incorporated; Neocom, Incorporated;      Alex Potapov

Rangila Enterprises, Incorporated;
Rangila LLC;
Sahil Ismail, Incorporated;
Is Like You, Incorporated

Victoria C. Powell

JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939
rwatson@jonesday.com
cvergonis@jonesday.com
apotapov@jonesday.com
vpowell@jonesday.com

**Plaintiff-Appellee**                **Counsel**

ITG Brands LLC

Philip J. Perry
Andrew D. Prins
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, DC 20004
(202) 637-2200
philip.perry@lw.com
andrew.prins@lw.com

Nicholas L. Schlossman
LATHAM & WATKINS LLP
300 Colorado Street
Austin, TX  78701
(737) 910-7300
nicholas.schlossman@lw.com

**Plaintiff-Appellee**                **Counsel**

Liggett Group LLC

Constantine Pamphilis
KASOWITZ BENSON
TORRES LLP
1415 Louisiana Street,
Suite 2100
Houston, TX 77002
(713) 220-8852
dpamphilis@kasowitz.com

Leonard A. Feiwus
Nancy Elizabeth Kaschel
KASOWITZ BENSON
TORRES LLP
1633 Broadway
New York, NY 10019
(212) 506-1785
lfeiwus@kasowitz.com
nkaschel@kasowitz.com

| **Defendants-Appellants** | **Counsel** |
|---|---|
| United States Food & Drug Administration; United States Department of Health and Human Services; Robert M. Califf, Commissioner of Food & Drugs; Xavier Becerra, Secretary, U.S. Department of Health and Human Services | Lindsey E. Powell US. Department of Justice 950 Pennsylvania Avenue, N.W. Washington, DC 20530 lindsey.e.powell@usdoj.gov Catherine Meredith Padhi Mark Bernard Stern US. Department of Justice Civil Division, Appellate Section 950 Pennsylvania Avenue, N.W. Washington, DC 20530 catherine.m.padhi@usdoj.gov mark.stern@usdoj.gov Stephen Michael Pezzi US. Department of Justice Civil Division 1100 L Street, N.W. Washington, DC 20530 stephen.pezzi@usdoj.gov |
| *Amicus Curiae* | **Counsel** |
| Public Citizen | Nandan M. Joshi Allison Zieve Public Citizen Litigation Group 1600 20th Street, N.W. Washington, DC 20009 |

(202) 588-1000
njoshi@citizen.org
azieve@citizen.org

| *Amicus Curiae* | **Counsel** |
| --- | --- |
| Public Health Law Center | Agatha M. Cole |
| | Beverly, P.L.L.C. |
| | 43 W. 43rd Street |
| | Suite 159 |
| | New York, NY 10036 |
| | (917) 524-8055 |
| | agatha@beverlypllc.com |

| *Amici Curiae* | **Counsel** |
| --- | --- |
| American Academy of Pediatrics; American Cancer Society; American Cancer Society Cancer Action Network; American Heart Association; American Lung Association; American Medical Association; Campaign for Tobacco-Free Kids; Children's Hospital Association of Texas; National Association of Hispanic Nurses; Texas Academy of Family Physicians; Texas Hospital Association; Texas Medical Association; Texas Nurses Association; Texas Pediatric Society; Texas PTA; The Cooper Institute; Truth Initiative Foundation; Bruce C. Carter, M.D.; David Lakey, M.D. | Scott P. Lewis |
| | Austin P. Anderson |
| | ANDERSON & KREIGER, LLP |
| | 50 Milk Street, Floor 21 |
| | Boston, MA |
| | (617) 621-6576 |
| | slewis@andersonkreiger.com |
| | aanderson@andersonkreiger.com |

| *Amicus Curiae* | **Counsel** |
| --- | --- |
| Washington Legal Foundation | Cory L. Andrews |
| | John M. Masslon II |
| | WASHINGTON LEGAL FOUNDATION |
| | 2009 Massachusetts Avenue, NW |
| | Washington, DC 20036 |
| | (202) 588-0302 |

candrews@wlf.org

**Counsel**

*Amici Curiae*

Association of National Advertisers and Summus 2, LLC

James C. Grant
Caesar Kalinowski IV
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Phone: (206) 622-3150
jamesgrant@dwt.com
caesarkalinowski@dwt.com

*Amicus Curiae*

Altria Group, Inc.

**Counsel**

Lisa S. Blatt
Sarah M. Harris
Rohit P. Asirvatham
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
(202) 434-5000
sharris@wc.com

*/s/ Ryan J. Watson*
Ryan J. Watson
*Counsel for Plaintiffs-Appellees*
*R.J. Reynolds Tobacco Company,*
*et al.*

## INTRODUCTION AND RULE 35(b)(1) STATEMENT

FDA has mandated massive, misleading, and provocative graphic warnings commandeering the top half of both sides of every cigarette package. This is unprecedented in American history. Indeed, the D.C. Circuit struck down materially identical warnings under the First Amendment, as did the district court here. In rejecting those decisions, the panel made two fundamental mistakes, each of which merits en banc review.

The panel's first mistake was its holding, which the panel acknowledged to be "outcome-determinative" (Appx.16), that the warnings must be reviewed under the relatively lenient standard set forth in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985)—a standard reserved for disclosures that are "purely factual and uncontroversial." *Id.* at 651. Indeed, no court has *ever* applied *Zauderer* to a compelled-speech requirement that includes a government-selected image. The panel erroneously held otherwise based on the Orwellian view that compelled speech need not actually be "true" or "accurate" to be "purely factual" under *Zauderer*. Appx.22 & n.48. That erroneous holding, however, directly conflicts with the D.C. Circuit's decision in *R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1216 (D.C. Cir. 2012), and the Ninth Circuit's decision in *CTIA – The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 847 (9th Cir. 2019), both of which held *Zauderer* inapplicable to disclosures that could be misinterpreted by consumers. It also conflicts with *Zauderer*, which expressly excluded "misleading" statements. *Zauderer*, 471 U.S. at 638.

Here, there is no evidence that FDA's chosen images convey a truthful, non-misleading health warning to consumers, and the panel pointed to none. Instead, the record shows consumers took a host of misleading and inaccurate messages from FDA's graphic warnings. Here is one such example:



Consumers told FDA what this image meant to them: "It's a thyroid problem."; "Thyroid, or goit[er]"; "Looks like lymph nod[e]s." ROA.2232. Even with the clarifying text, consumers found the image misleading and unrealistic, saying: "I feel like somebody would probably do something about a tumor before it would get that big." ROA.2232-33. Indeed, the result depicted would occur only in the absence of normal medical procedures. ROA.1657.

Like this image, *all* of FDA's misleading warnings are designed to shock rather than inform, because the massive and inflammatory graphics go far beyond what is necessary to communicate a simple factual message. The government bears the burden

of proof here, and its only asserted interest is informing consumers of certain consequences of smoking. Yet it submitted no evidence—none—that smaller text-only warnings on the side or bottom-third of packaging would be insufficient to inform consumers of those conditions. And that is because providing "purely factual" information is not the goal. Instead, as the D.C. Circuit held, the warnings can only be understood as an "unabashed attempt[] to…browbeat consumers into quitting." *RJR*, 696 F.3d at 1216-17. And that is most decidedly not a "purely factual and uncontroversial" message. *Id.*

The panel's second fundamental mistake was holding that FDA's warnings can satisfy *Zauderer*'s standard. They cannot, because the warnings are both "unjustified" and "unduly burdensome," 471 U.S. at 651, given their unprecedented size. Cigarette advertising is already highly restricted. *See, e.g.*, 15 U.S.C. § 1335 (banning cigarette advertising on television and radio). Packaging, therefore, is the primary mechanism by which manufacturers advertise their products. The panel ignored all of this, even though, once again, the government adduced zero evidence that smaller, text-only warnings would be insufficient. It therefore created a split with the Seventh and Ninth Circuits, which have invalidated far *smaller* warnings as unduly burdensome, *Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 652 & n.13 (7th Cir. 2006); *Am. Beverage Ass'n v. City & Cnty. Of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019) (en banc), and violated the Supreme Court's instruction in *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S.

755, 775 (2018) ("*NIFLA*"), to consider less-burdensome alternatives to the mandated disclaimer.

In short, the panel's decision eviscerates commercial-speech protections in this Circuit and authorizes the government to require similar warnings on virtually any consumer product—from fast-food, to candy, to wine. *Infra* p. 13. These exceptionally important issues warrant en banc review.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ............................................................. i

INTRODUCTION AND RULE 35(b)(1) STATEMENT ........................................ viii

TABLE OF AUTHORITIES ........................................................................... xiii

STATEMENT OF ISSUES MERITING REHEARING EN BANC ....................... 1

STATEMENT OF FACTS AND PROCEEDINGS ................................................... 1

ARGUMENT ..................................................................................................... 4

I.    THE PANEL'S HOLDING THAT MASSIVE, MISLEADING, AND PROVOCATIVE WARNINGS ARE SUBJECT TO *ZAUDERER* MERITS EN BANC REVIEW. .................................................................................... 4

    A.    The Warnings Convey Misleading Messages by Depicting Improbable and Exaggerated Consequences of Smoking. ...................... 4

    B.    Through Their Content, Size, and Placement, the Warnings Convey an Ideological Message. ................................................... 8

II.    THE PANEL'S HOLDING THAT THE UNPRECEDENTEDLY LARGE WARNINGS SATISFY *ZAUDERER* MERITS EN BANC REVIEW. ........................... 14

    A.    The Massive Warnings Are Unduly Burdensome. ................................. 14

    B.    The Warnings Are Not Justified by Any Real-World Interest. ............... 18

III.    AT A MINIMUM, THE COURT SHOULD HOLD THE PETITION PENDING *NETCHOICE*. ................................................................................... 19

CONCLUSION .............................................................................................. 20

CERTIFICATE OF SERVICE ......................................................................... 22

CERTIFICATE OF COMPLIANCE .................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Am. Beverage Ass'n v. City & Cnty. Of San Francisco,*
916 F.3d 749 (9th Cir. 2019) (en banc) ....................................................*passim*

*Am. Meat Inst. v. U.S. Dep't of Agric.,*
760 F.3d 18 (D.C. Cir. 2014) (en banc)......................................1, 4, 18, 19

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
447 U.S. 557 (1980) ........................................................................... 1

*Chamber of Com. v. SEC,*
85 F.4th 760 (5th Cir. 2023) ...................................................... 16

*CTIA – The Wireless Ass'n v. City of Berkeley,*
928 F.3d 832 (9th Cir. 2019) ........................................................viii, 4, 18

*Disc. Tobacco City & Lottery, Inc. v. United States,*
674 F.3d 509 (6th Cir. 2012) ....................................................7, 17, 18

*Ent. Software Ass'n v. Blagojevich,*
469 F.3d 641 (7th Cir. 2006) ...................................................... x, 14

*Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct.,*
512 U.S. 136 (1994) ................................................................... 15

*Int'l Dairy Foods Ass'n v. Amestoy,*
92 F.3d 67 (2d Cir. 1996) ...................................................18, 19

*Milavetz, Gallop & Milavetz, P.A. v. United States,*
559 U.S. 229 (2010) ........................................................... 7, 8

*Nat'l Ass'n of Mfrs. v. SEC,*
800 F.3d 518 (D.C. Cir. 2015) ............................................. 12

*Nat'l Inst. of Family & Life Advocates v. Becerra,*
585 U.S. 755 (2018) ....................................................................*passim*

# TABLE OF AUTHORITIES

**Page(s)**

*NetChoice, LLC v. Paxton*,
  144 S. Ct. 477 (2023) ..................................................... 19

*R.J. Reynolds Tobacco Co. v. FDA*,
  696 F.3d 1205 (D.C. Cir. 2012) ...............................................*passim*

*Sorrell v. IMS Health, Inc.*,
  564 U.S. 552 (2011) ..................................................... 8

*Tex. Office of Pub. Util. Counsel v. FCC*,
  183 F.3d 393 (5th Cir. 1999) ..................................................... 16

*Wooley v. Maynard*,
  430 U.S. 705 (1977) ..................................................... 8, 17

*Zauderer v. Office of Disciplinary Counsel*,
  471 U.S. 626 (1985) ..................................................... viii, x, 4, 6

**STATUTES**

15 U.S.C. § 1333 ..................................................... 1

15 U.S.C. § 1335 ..................................................... x, 15

**REGULATORY MATERIALS**

21 C.F.R. § 1140.34 ..................................................... 15

84 Fed. Reg. 42,754 (Aug. 16, 2019) ..................................................... 6

85 Fed. Reg. 15,638 (Mar. 18, 2020) ..................................................... 1, 16, 18

## STATEMENT OF ISSUES MERITING REHEARING EN BANC

1. Whether the massive, misleading, and provocative graphic warnings are "purely factual and uncontroversial" such that *Zauderer* applies.

2. Even if *Zauderer* applies, whether the unprecedentedly large graphic warnings are "unjustified or unduly burdensome."

## STATEMENT OF FACTS AND PROCEEDINGS

The Tobacco Control Act requires that cigarette packages and advertising bear textual warnings. 15 U.S.C. § 1333(a)(1), (b)(1). It also requires FDA to "issue regulations that require color graphics…to accompany" these warnings. *Id.* § 1333(d)[1].

**A.** In 2011, FDA issued a rule requiring that all cigarette packages and advertising bear graphic warnings materially identical to those at issue here. The D.C. Circuit held the rule violated the First Amendment. *RJR*, 696 F.3d at 1212, *overruled in part by Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 31 (D.C. Cir. 2014) (en banc). It concluded *Zauderer* scrutiny did not apply because the warnings were not "purely factual" and "uncontroversial"; and it held the rule failed to satisfy the standard established in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). 696 F.3d at 1212, 1216, 1221. FDA did not seek certiorari.

**B.** In 2020, FDA issued a graphic-warnings rule requiring that the following warnings occupy the top 50% of the front and back of cigarette packages and the top 20% of cigarette advertisements. 85 Fed. Reg. 15,638, 15,638-710 (Mar. 18, 2020).

**WARNING:** Smoking causes head and neck cancer.



**WARNING:** Smoking reduces blood flow to the limbs, which can require amputation.



**WARNING:** Tobacco smoke can harm your children.



**WARNING:** Smoking reduces blood flow, which can cause erectile dysfunction.




**WARNING:** Tobacco smoke causes fatal lung disease in nonsmokers.



**WARNING:** Smoking causes COPD, a lung disease that can be fatal.

**WARNING:** Smoking causes bladder cancer, which can lead to bloody urine.

**WARNING:** Smoking causes type 2 diabetes, which raises blood sugar.







**WARNING:** Smoking during pregnancy stunts fetal growth.

**WARNING:** Smoking causes cataracts, which can lead to blindness.





**C.**     Plaintiffs challenged the 2020 rule on First Amendment and statutory grounds.  ROA.1213-88.  The district court granted summary judgment to Plaintiffs on their First Amendment challenge.  ROA.10220.  Like the D.C. Circuit, the district court held that the warnings are not purely factual and uncontroversial because they are subject to multiple interpretations, a number of which are misleading; their imagery is provocative; and consumers could interpret them as communicating a value-laden anti-smoking message.  ROA.10205-06.

The court then held that the rule failed *Central Hudson*.  ROA.10208.  Citing *NIFLA*, 585 U.S. at 775, it found that "[t]he government has not shown that compelling these large, graphic warnings is necessary in light of other options," including "smaller or differently placed warnings" or public-information campaigns.  ROA.10210-11.  The district court did not reach Plaintiffs' statutory arguments.  ROA.10212.

The panel reversed the district court on the First Amendment claim and remanded on the others.  Appx.1-38.

# ARGUMENT

## I.    THE PANEL'S HOLDING THAT MASSIVE, MISLEADING, AND PROVOCATIVE WARNINGS ARE SUBJECT TO *ZAUDERER* MERITS EN BANC REVIEW.

### A.    The Warnings Convey Misleading Messages by Depicting Improbable and Exaggerated Consequences of Smoking.

**1.**    The Supreme Court, D.C. Circuit, and Ninth Circuit have made clear that *Zauderer* does not apply to misleading disclosures.  *Zauderer*, 471 U.S. at 634, 644; *RJR*, 696 F.3d at 1216; *CTIA*, 928 F.3d at 847; *see also Am. Meat*, 760 F.3d at 34 (Kavanaugh, J., concurring in the judgment).  In particular, the D.C. Circuit refused to apply *Zauderer* to virtually identical images partly because they "could be misinterpreted by consumers." *RJR*, 696 F.3d at 1216.

The panel rejected this reasoning and instead held that the misleading nature of the warnings was entirely irrelevant to the "factual" prong of the *Zauderer* analysis, explicitly "reject[ing] the construction…that, to be factual, the information must be true."  Appx.22.  And while the panel promised to consider the warnings' accuracy under the "uncontroversial" prong, Appx.22-23 n.48, that portion of the opinion simply does not address whether the warnings are misleading; it instead focuses on whether they address a hot-button topic.  Appx.26-28.  Thus, no part of the opinion addresses whether the warnings are misleading and so the opinion stands for the stunning proposition that misleading warnings are entitled to *Zauderer* review.

**2.** This issue is outcome-determinative because it is indisputable that the warnings are misleading. As in *RJR*, the warnings "could be misinterpreted by consumers," 696 F.3d at 1216, and therefore *Zauderer* does not apply.

In sharp contrast to text-only warnings, images are often susceptible to multiple reasonable interpretations. *See id.* And that is certainly true of the "photorealistic" warnings here. Indeed, FDA's own studies showed they were subject to multiple interpretations. ROA.1300-07, 2230-55. And many of those reasonable interpretations are clearly misleading. ROA.10204-08.

The "Neck Tumor" image, for example, misleadingly suggests that "a cancerous mass of that size could arise" before a reasonable person would seek treatment, ROA.1657:



And the record shows consumers did, in fact, find the warning misleading. As they told FDA: "I don't think that you'd let a lump get that big on your throat before

you seek medical treatment." ROA.2232; *see* ROA.2235-36 (same point for cataracts). This violates FDA's principle that warnings should depict diseases as they are "typically experienced." 84 Fed. Reg. 42,754, 42,770 (Aug. 16, 2019).

The "Erectile Dysfunction" image likewise misleadingly and confusingly suggests that smoking causes "depression," "not a happy relationship," "sleepless nights," and "[s]hame, defeat and disgust," ROA.2235-36:



Indeed, *all* of the images are misleading because they use imagery to exaggerate the consequences of smoking. *See, e.g.*, ROA.10206-07, 1300-07, 2230-55. But at a minimum, the government has not carried *its burden* of demonstrating that the warnings are purely factual and uncontroversial. *See Zauderer*, 471 U.S. at 641; *Am. Beverage*, 916 F.3d at 756. Indeed, the government performed zero testing to ensure that the warnings had a single—or even a dominant—accurate meaning. ROA.10206-08.

**3.**  The panel cited *Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509 (6th Cir. 2012).  Appx.23-24.  But that decision concerned a *facial* challenge to the *statutory* graphic-warnings requirement (not, as here, an *as-applied* challenge to a *regulation*).  Thus, even assuming *Discount Tobacco* was correctly decided, *but see* 674 F.3d at 530 (Clay, J., dissenting), it held only that "a picture *can* be accurate and factual."  *Id.* at 560 (emphasis added); *id.* at 559 (suggesting that a permissible graphic warning might be one of the textual warnings "written in what appears to be a child's handwriting").  *Discount Tobacco* emphasized that no "specific graphic warnings are before us."  *Id.* at 560 n.9.  It therefore sheds no light on the specific warnings here.

The panel also insists that any ambiguity in the images is necessarily resolved by the accompanying text because, as "any reasonable viewer" would supposedly recognize, the images have no meaning "distinct" from the words.  Appx.25.  If true, that shows that the images are entirely unnecessary.  Regardless, this argument creates yet another conflict with the D.C. Circuit, which held that the virtually identical graphics were subject to misinterpretation even though they were paired with text.  *RJR*, 696 F.3d at 1216.  Nor is there any record support for the panel's assertion.  To the contrary, as discussed above, FDA's own evidence shows that many consumers were in fact misled and confused by the images even when paired with the text.  *See supra* p. 5-6; ROA.2236, 2245, 2250.

The panel's reliance on *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229 (2010), is even further afield.  *See* Appx.26.  The panel conflates two issues: whether

people might have disparate reactions to an accurate message (*Milavetz*) and whether the compelled message is itself misleading (these warnings). In all events, *Milavetz* found "no evidence" that the compelled message was misleading, *id.* at 251; here, in contrast, the panel ignored undisputed evidence that the graphics *are* misleading.

### B. Through Their Content, Size, and Placement, the Warnings Convey an Ideological Message.

"The State may not burden the speech of others in order to tilt public debate in a preferred direction," *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 578-79 (2011), nor commandeer someone's property as a "mobile billboard for the [government's] ideological message," *Wooley v. Maynard*, 430 U.S. 705, 715 (1977). Individually and cumulatively, the content, size, and placement of the warnings do just that, pushing them firmly over the line separating dispassionate factual recitations from misleading policy-laden advocacy. The D.C. Circuit recognized as much in declining to apply *Zauderer* to the virtually identical warnings because the "inflammatory images" "cannot rationally be viewed as pure attempts to convey information to consumers" and are instead "unabashed attempts to evoke emotion (and perhaps embarrassment) and browbeat consumers into quitting." *RJR*, 696 F.3d at 1216-17. The panel's contrary conclusion squarely conflicts with that holding.

The panel's attempt to distinguish *RJR* is *ipse dixit*. It asserts—with no supporting citations and contrary to the record—that, unlike the images in *RJR*, "these images *are* 'meant to be interpreted literally'" and "are not 'primarily intended to evoke

an emotional response.'" Appx.25 (quoting 696 F.3d at 1216).  But comparison of the two sets of images shows they are impossible to distinguish from each other on this dimension:

*2011 Warnings*                    *Current Warnings*













As in *RJR*, the images plainly convey the government's ideological message that people should not smoke. For example, the warnings include images of a sick child wearing a breathing mask; diseased lungs from a dead person; diseased feet with several toes missing; bloody urine; and a crying, underweight baby:









These images go far beyond conveying simple facts, as the record here shows. One study, for example, showed that 75% of smokers believed that the warnings convey that people "should not smoke" and 85% believe that the warnings are "trying to make

people afraid" or "trying to shock people."  ROA.7638-39, 7715.  And the record demonstrates that FDA doubled down on the shocking nature of the warnings, repeatedly accepting recommendations to make the images *more* emotional and grotesque.  *E.g.*, ROA.1407, 1417-18, 1420, 1422-23, 1234-35.  In short, the district court correctly concluded that consumers could take from each warning "a value-laden message that smoking is a mistake."  ROA.10205-06.  Accordingly, the warnings are "hardly…non-ideological" because they "skew public debate" and "stigmatize" consumers.  *See Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015) (panel reh'g) (internal quotation marks omitted).

Indeed, the warnings' massive size and shocking content alone demonstrate that they are not "purely factual and uncontroversial."  The government's only asserted interest is informing consumers that smoking causes certain conditions.  But the warnings go so far beyond what is necessary to convey that simple message that they can only be understood, as the D.C. Circuit explained, as an attempt to "browbeat" consumers into submission.  696 F.3d at 1216-17.  It would be no different than requiring cashiers at fast-food restaurants to scream, at the top of their lungs, the calorie count in a cheeseburger.  It goes so far beyond what is needed to convey simple facts that it can only be understood as conveying an ideological message—"don't eat cheeseburgers!"  That is particularly so here, where the record demonstrates that smaller, text-only warnings would suffice.  *See infra* p. 16-17.

-12-

Nor can the panel's approach be confined to cigarettes (or even to health-related warnings). FDA has *never disputed* that this understanding of *Zauderer* would allow the government to compel all manner of shocking warnings on any number of consumer products in order to bully consumers into not using them. To illustrate with just a few examples:







These examples could be effortlessly multiplied: for instance, the government could require ammunition packaging to depict mass shootings, and it could require various products to depict consequences of pollution. This cannot possibly be correct. Yet it is the unavoidable consequence of the panel's misguided decision.

## II. THE PANEL'S HOLDING THAT THE UNPRECEDENTEDLY LARGE WARNINGS SATISFY *ZAUDERER* MERITS EN BANC REVIEW.

### A. The Massive Warnings Are Unduly Burdensome.

"Even under *Zauderer*, a disclosure requirement cannot be 'unjustified or unduly burdensome.'" *NIFLA*, 585 U.S. at 776 (citation omitted). The graphic warnings are unduly burdensome because they drastically limit Plaintiffs' own speech and drown out their message. The panel's contrary conclusion contravenes Supreme Court precedent and creates a circuit split.

**1.** It is undisputed that the warnings are unprecedentedly huge. They commandeer *the top 50%* of the front *and* back of cigarette packages, *as well as* the top 20% of cigarette advertising. We are aware of no similar warning in American history— other than FDA's first set of graphic warnings, which did not survive judicial review. Other circuits have invalidated far *smaller* warnings as too burdensome. The en banc Ninth Circuit, for example, invalidated under *Zauderer* a textual warning requirement occupying 20% of certain sugar-sweetened-beverage advertisements. *Am. Beverage*, 916 F.3d at 757. The Seventh Circuit likewise invalidated a sticker that covered less than 10% of packaging. *Ent. Software*, 469 F.3d at 652 & n.13 (applying strict scrutiny). The

panel's holding cannot be reconciled with these decisions—particularly *American Beverage*. But the panel *did not even mention* them.

The panel also ignored that the warnings' enormous size, shocking and misleading images, and highly charged messaging would further "drown[ ] out" (*NIFLA*, 585 U.S. at 778) Plaintiffs' speech by effectively shouting "don't smoke!" As noted, they are not different than compelling fast-food cashiers to scream the foods' calorie-count. The warnings also drastically limit the physical space that manufacturers have to communicate. ROA.1666; *see Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct.*, 512 U.S. 136, 146 (1994) (disclosure unduly burdensome because "[t]he detail required…effectively rules out" speaker's own speech). Indeed, at retail locations, consumers might *only* see graphic warnings. ROA.1668-69.




*Current Retail Display*                    *Modified Retail Display*

These burdens are magnified because Plaintiffs have few remaining avenues for communicating with adult consumers. For example, federal law bars cigarette manufacturers from television or radio advertising. 15 U.S.C. § 1335; 21 C.F.R. § 1140.34(a)-(c). And the Master Settlement Agreement, entered to settle lawsuits brought by virtually every state, imposes further advertising restrictions. Master Settlement Agreement § III(d), https://tinyurl.com/y6te8olv. Packaging thus remains

one of the few places where manufacturers can advertise (and thus differentiate) their products. Yet the rule commandeers the *top half* of *both sides* of the packaging for *the government's* message.

Instead of engaging with these issues, the panel uncritically accepted FDA's unsupported assertion that manufacturers will still have "ample room" for their messaging. Appx.36. This deferential approach is not how the First Amendment works. It cannot be squared with *NIFLA*'s mandate that the government "has the burden to *prove* that [the compelled statement] is neither unjustified nor unduly burdensome," 585 U.S. at 776 (emphasis added), or with this Court's precedents holding that agencies are not entitled to deference regarding constitutional claims, *Tex. Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 410 (5th Cir. 1999); *Chamber of Com. v. SEC*, 85 F.4th 760, 767 (5th Cir. 2023).

**2.** Instead, the question whether the warnings are unduly burdensome requires considering reasonably available alternatives; after all, if adequate but less burdensome alternatives are available, the burden is necessarily "undue." *See, e.g.*, *NIFLA*, 585 U.S. at 777-78; *Am. Beverage*, 916 F.3d at 757. Yet the panel inexplicably failed to consider, or even acknowledge, the numerous less-burdensome ways that FDA could have advanced its goal.

Indeed, it is undisputed that FDA *did not even test* smaller warnings, differently placed warnings, text-only warnings, or a public-information campaign about these risks. 85 Fed. Reg. at 15,650-51. It follows *a fortiori* that the government did not carry its

burden of proof. Worse still, undisputed evidence shows that several of these less-restrictive alternatives, including smaller warnings, would have been just as effective. ROA.1630-31 (survey comparing FDA's warnings to less-restrictive alternatives); ROA.1630 (finding no statistically significant differences between FDA's warnings and text-only warnings on side of pack). But the panel flatly ignored that evidence, creating a square conflict with the en banc Ninth Circuit in *American Beverage*, which invalidated *smaller* warnings because the record showed "that a smaller warning—half the size—would accomplish Defendant's stated goals." 916 F.3d at 757.

Moreover, FDA could have conveyed the information contained in the warnings through its own public-information campaign rather than commandeering Plaintiffs' packaging as a "mobile billboard for the [government's] ideological message." *Wooley*, 430 U.S. at 715. FDA boasts that such campaigns are effective, but it has never once run a campaign addressing *any* of the risks in the warnings. ROA.10210. The availability of this alternative is fatal to the government's position, just as in *NIFLA*. 585 U.S. at 775 (invalidating compelled-speech requirement under intermediate scrutiny partly because the government "identified no evidence" that a public-advertising campaign would be insufficient).

**3.** The panel once again misapplied *Discount Tobacco* on this issue. Appx.34. As noted, *Discount Tobacco* considered a *facial* challenge to the *statute's* graphic-warnings requirements and so at most stands for the proposition that warnings of this size are

not unconstitutional in *every* circumstance. *See supra* p. 7. Thus, even assuming it was correctly decided, it is irrelevant to this as-applied challenge to the regulations.

Moreover, *Discount Tobacco* held there was no need to "separately analyze whether the warnings are unduly burdensome," because it applied a now-defunct "rational-basis" version of *Zauderer* review. 674 F.3d at 554, 567. *NIFLA* not only made clear that *Zauderer* requires a separate "unduly burdensome" analysis, 585 U.S. at 776, but went on *to invalidate* a disclosure requirement as unduly burdensome. *Id.* at 777-78. In doing so, it noted that the requirement was over- and under-inclusive and that it required advertisements to feature some means of "call[ing] attention to the notice," such as "larger text or contrasting type or color." *Id.* That is a far cry from rational-basis review.

## B. The Warnings Are Not Justified by Any Real-World Interest.

The warnings also flunk *Zauderer* because they are "unjustified." *Id.* at 776. FDA does *not* contend that the rule is justified by *any* real-world interest, such as reducing smoking—presumably because it has no evidence of that. Instead, FDA justifies the warnings *solely* based on an abstract interest in providing information. 85 Fed. Reg. at 15,638.

That is insufficient, which is why three other circuits have held that a "purely informational" interest cannot "stand on its own" and is "not an independent interest." *RJR*, 696 F.3d at 1221; *accord Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 73-74 (2d Cir. 1996); *CTIA*, 928 F.3d at 844. If imparting information alone sufficed to compel speech, then "any and all disclosure requirements" would be fair game. *Am. Meat*, 760

F.3d at 31-32 (Kavanaugh, J., concurring in the judgment); *see also Int'l Dairy*, 92 F.3d at 74.

A purely informational interest is particularly inadequate here. First, the record shows that the public "already know[s]" about smoking risks and thus the information contained in the warnings is immaterial. *NIFLA*, 585 U.S. at 776; *see also, e.g.*, ROA.1581, 1597-98; ROA.1602-06. Second, FDA's studies show that the warnings performed dismally in changing beliefs about smoking. ROA.1471-72; 1485-87, 1489-92. And third, there is no evidence that smaller text-only warnings would be insufficient to further an "informational" interest. The panel dismissed the first problem by pointing to an interest in informing the public about "all the health consequences of smoking," Appx.33 n.71, effectively holding that *even entirely immaterial* disclosures pass muster. It dismissed the second problem by uncritically accepting the government's characterization of the evidence. Appx.33. And it ignored the third problem. This lax approach cannot be squared with *NIFLA's* mandate that the government bear the burden of proving compelled speech solves a real, non-hypothetical problem.

## III.   AT A MINIMUM, THE COURT SHOULD HOLD THE PETITION PENDING *NETCHOICE.*

The panel relied extensively on this Court's decision in *NetChoice, LLC v. Paxton*, which is pending Supreme Court review, 144 S. Ct. 477 (2023). At a minimum, this Court should hold this petition until the Supreme Court issues its opinion.

## CONCLUSION

This Court should grant rehearing en banc.

May 6, 2024

Philip J. Perry
Andrew D. Prins
LATHAM & WATKINS LLP
555 Eleventh Street, N.W.,
Suite 1000
Washington, DC 20004
(202) 637-2200
philip.perry@lw.com

Nicholas L. Schlossman
LATHAM & WATKINS LLP
300 Colorado Street
Austin, TX 78701
(737) 910-7300
nicholas.schlossman@lw.com

*Counsel for Plaintiff-Appellee*
*ITG Brands LLC*

Respectfully submitted,

*/s/ Ryan J. Watson*
Ryan J. Watson
Christian G. Vergonis
Alex Potapov
Victoria C. Powell
JONES DAY
51 Louisiana Ave., N.W.
Washington, DC 20001
(202) 879-3939
rwatson@jonesday.com

*Counsel for Plaintiffs-Appellees*
*R.J. Reynolds Tobacco Company,*
*et al.*

Constantine Pamphilis
KASOWITZ BENSON
TORRES LLP
1415 Louisiana Street,
Suite 2100
Houston, TX 77002
(713) 220-8852
dpamphilis@kasowitz.com

Leonard A. Feiwus
Nancy Elizabeth Kaschel
KASOWITZ BENSON
TORRES LLP
1633 Broadway
New York, NY 10019
(212) 506-1785
lfeiwus@kasowitz.com
nkaschel@kasowitz.com

*Counsel for Plaintiff-Appellee*
*Liggett Group LLC*

## CERTIFICATE OF SERVICE

I certify that on May 6, 2024, I caused a copy of the foregoing to be served on all counsel of record by CM/ECF.

Dated:  May 6, 2024

*/s/ Ryan J. Watson*
Ryan J. Watson
*Counsel for Plaintiffs-Appellees*
*R.J. Reynolds Tobacco Company,*
*et al.*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 35(b)(2)(A), and Fifth Circuit Rules 35.5. Excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, the brief contains 3,900 words and was prepared using Microsoft Word for Microsoft Office 365 and produced in Garamond 14-point font.

Dated:  May 6, 2024

*/s/ Ryan J. Watson*
Ryan J. Watson
*Counsel for Plaintiffs-Appellees*
*R.J. Reynolds Tobacco Company,*
*et al.*

# APPENDIX

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 21, 2024

Lyle W. Cayce
Clerk

No. 23-40076

R J Reynolds Tobacco Company; Santa Fe Natural
Tobacco Company, Incorporated; ITG Brands LLC;
Liggett Group LLC; Neocom, Incorporated;
Rangila Enterprises, Incorporated; Rangila LLC;
Sahil Ismail, Incorporated; Is Like You, Incorporated,

*Plaintiffs—Appellees*,

*versus*

Food & Drug Administration; United States
Department of Health and Human Services;
Robert M. Califf, *Commissioner of Food and Drugs*; Xavier
Becerra, *Secretary, U.S. Department of Health and Human Services*,

*Defendants—Appellants.*

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:20-CV-176

Before Smith, Elrod, and Graves, *Circuit Judges.*

Jerry E. Smith, *Circuit Judge*:

   In 2009, Congress enacted the Family Smoking Prevention and
Tobacco Control Act ("TCA" or "Act"), which revised the required warn-
ings each cigarette manufacturer must place on its packages and advertise-

ments.[1] Modernizing the ubiquitous text of the Surgeon General's current warnings, the Act requires cigarette packages to include "color graphics depicting the negative health consequences of smoking to accompany the [updated] label statements." 15 U.S.C. § 1333(d). Those graphics and statements (together "Warnings") "shall comprise the top 50 percent of the front and rear panels of the package" of cigarettes and "at least 20 percent of the area of [any] advertisement . . . ." *Id.* § 1333(a)(2), (b)(2).

Tobacco companies quickly brought a facial challenge to the TCA's constitutionality, but the Sixth Circuit upheld it in 2012.[2] The FDA's first attempt at a rule interpreting and applying the Act fared less well, as the FDA failed to rebut an as-applied First Amendment challenge before the D.C. Circuit in 2014.[3] Now, ten years later, the FDA has tried again, so we are the third circuit to weigh in.

R.J. Reynolds Tobacco Company ("RJR") and other cigarette manufacturers and retailers claim that the FDA's newest attempt at implementing the Act's warning-label requirement violates the First Amendment, the Administrative Procedure Act ("APA"), and the requirements of the TCA itself. On cross-motions for summary judgment, the district court agreed with the plaintiffs' First Amendment challenge and granted summary judgment without reaching the remaining claims. But we disagree—the warnings are both factual and uncontroversial, so *Zauderer*[4] scrutiny applies, and the

---

[1] Pub. L. No. 111-31, div. A, title II, §§ 201(a), 202(b), 206, 123 Stat. 1776, 1842–50 (2009) (codified as amended in scattered sections of Titles 15 and 21 U.S.C.).

[2] *See Discount Tobacco City & Lottery, Inc. v. United States,* 674 F.3d 509, 552 (6th Cir. 2012) (controlling opinion by Stranch, J.).

[3] *See R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205 (D.C. Cir. 2012), *overruled by Am. Meat Inst. v. USDA*, 760 F.3d 18 (D.C. Cir. 2014) (en banc).

[4] *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626 (1985).

No. 23-40076

rule passes constitutional muster. Therefore, we reverse and remand the remaining claims for initial consideration by the district court.

## I.

A.    The TCA and Its Antecedents

In 1965, Congress passed the Federal Cigarette Labeling and Advertising Act.[5] For the first time, all cigarettes manufactured, imported, or packaged for sale or distribution within the United States had to display "CAUTION: Cigarette Smoking May Be Hazardous to Your Health."[6]

Four years later, Congress revised that warning to state, "WARNING: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous To Your Health."[7] Then, in 1984, Congress again updated the warnings with the Comprehensive Smoking Education Act.[8] Under that act, the warnings now read,

> SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy.
>
> SURGEON GENERAL'S WARNING: Quitting Smoking Now Greatly Reduces Serious Risks to Your Health.
>
> SURGEON GENERAL'S WARNING: Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, and Low Birth Weight.
>
> SURGEON GENERAL'S WARNING: Cigarette Smoke Contains Carbon Monoxide.

---

[5] Pub. L. No. 89-92, 79 Stat. 282 (1965).

[6] *Id.* § 4.

[7] *See* Public Health Cigarette Smoking Act of 1969, Pub. L. No. 91-222, 84 Stat. 87.

[8] Pub. L. No. 98-474, 98 Stat. 2200 (1984).

*Id.* § 4.[9]

Between 1984 and 2009, though, Congress found that "efforts to restrict advertising and marketing of tobacco products," including the warnings, had "failed adequately to curb tobacco use by adolescents, [so] comprehensive restrictions on the sale, promotion, and distribution of such products [were] needed." TCA § 2(6). Thus, it enacted the TCA.

In the TCA, Congress made extensive and significant legislative findings, including that (1) minors still often see and are exposed to tobacco product advertising[10]; (2) the "overwhelming majority of Americans who use tobacco products begin using such products while they are minors and become addicted to the nicotine in those products before reaching the age of 18"[11]; and (3) "[r]educing the use of tobacco by minors by 50 percent would prevent well over 10,000,000 of today's children from becoming regular, daily smokers, saving over 3,000,000 of them from premature death due to tobacco-induced disease[s]" and would "result in approximately $75,000,000,000 in savings attributable to reduced health care costs."[12]

In light of those findings, Congress believed it necessary to update the 1984 Surgeon General's Warnings with new ones. It chose nine new warnings that would rotate regularly, stating,

WARNING: Cigarettes are addictive.

WARNING: Tobacco smoke can harm your children.

---

[9] Until the FDA implements the TCA's requirements, manufacturers must continue to use those warnings from 1984. Manufacturers typically place the warnings on the side panel of each cigarette package, occupying approximately 5% of each's surface area.

[10] TCA § 2(15), (17), (18).

[11] *Id.* § 2(31).

[12] *Id.* § 2(14).

No. 23-40076

> WARNING: Cigarettes cause fatal lung disease.
>
> WARNING: Cigarettes cause cancer.
>
> WARNING: Cigarettes cause strokes and heart disease.
>
> WARNING: Smoking during pregnancy can harm your baby.
>
> WARNING: Smoking can kill you.
>
> WARNING: Tobacco smoke causes fatal lung disease in nonsmokers.
>
> WARNING: Quitting smoking now greatly reduces serious risks to your health.

15 U.S.C. § 1333(a)(1). The new warnings, Congress determined, must "comprise the top 50 percent of the front and rear panels of" each cigarette package and "at least 20 percent of the area of [any] advertisement . . . ." *Id.* § 1333(a)(2), (b)(2).

But updating the text and the font size of the warnings was not enough—Congress also wanted images with the textual warnings. So, it instructed the Secretary of Health and Human Services to "issue regulations that require color graphics depicting the negative health consequences of smoking to accompany the label statements." *Id.* § 1333(d). And Congress gave the Secretary the authority to "adjust the type size, text and format of the label statements" for clarity, conspicuousness, and legibility. *Id.* Recognizing the difficulty manufacturers may have in updating their packaging, though, Congress delayed enforcement of the regulations for fifteen months after their issuance. *Id.* § 1333 note.

Finally, acknowledging the likelihood of judicial review, Congress included a severability clause: If a court finds any part of the Act unlawful and invalid, that court should keep "the remainder" enforceable "to the fullest extent possible." TCA § 5.

B.    The TCA's Implementation and Litigation History

1.    Pre-Rule Litigation

Before the FDA could issue a rule under the TCA's graphics require-ment, several manufacturers and sellers of tobacco products—including RJR[13]—sued the United States, alleging, *inter alia*, that the Act violated their First Amendment rights. *See Discount Tobacco*, 674 F.3d at 520–21; *see also id.* at 553. The district court granted summary judgment to the government on the First Amendment claim, and the Sixth Circuit, reviewing the plain-tiffs' claims as a facial challenge to the Act, affirmed. *Id.* at 551–52.

The Sixth Circuit first determined the applicable standard of review, framing it as a choice between *Zauderer* and strict scrutiny. *See id.* at 554. It began with *Zauderer*. The court noted that "[t]he factual content of the tex-tual warnings [wa]s undisputed." *Id.* at 558. So, for *Zauderer* not to apply, "[p]laintiffs would have to establish that a graphic warning cannot convey the negative health consequences of smoking accurately, a position tanta-mount to concluding that pictures can never be factually accurate, only writ-ten statements can be." *Id.* at 559. The court rejected that position, offering instead several examples of the "many graphic warnings that would consti-tute factual disclosures under *Zauderer*." *Id.* Those included

> a picture or drawing of a nonsmoker's and smoker's lungs dis-played side by side; a picture of a doctor looking at an x-ray of either a smoker's cancerous lungs or some other part of the body presenting a smoking-related condition; a picture or drawing of the internal anatomy of a person suffering from a smoking-related medical condition; a picture or drawing of a

---

[13] The plaintiffs were Discount Tobacco City & Lottery, Inc.; Lorillard Tobacco Company; National Tobacco Company, L.P.; RJR; Commonwealth Brands, Inc.; and American Snuff Company, LLC, FKA Conwood Company, LLC. *See Discount Tobacco*, 674 F.3d at 521 n2.

person suffering from a smoking-related medical condition; and any number of pictures consisting of text and simple graphic images.

*Id.* Therefore, *Zauderer* supplied the applicable standard of review for the pre-enforcement facial challenge.

Applying *Zauderer*'s very deferential test, the Sixth Circuit held that "graphic and textual warnings that convey factual information about the health risks of tobacco use are reasonably related to the purpose of preventing consumer deception." *Id.* at 562. That deception, the court explained, arose inherently from the past decades of false advertising and misleading research by the companies that were proclaiming that tobacco had no health risks and was not addictive.[14] Further, the court found that the warnings were not unduly burdensome, despite the 50%-coverage requirement. *Id.* at 567.[15] Finally, the court rejected "the underlying premise [of the dissent] that a disclosure that provokes a visceral response must fall outside *Zauderer*'s ambit. Facts can disconcert, displease, provoke an emotional response, spark controversy, and even overwhelm reason, but that does not magically turn such facts into opinions." *Id.* at 569. Instead, "whether a disclosure is scrutinized under *Zauderer* turns on whether the disclosure conveys factual information or an opinion, not on whether the disclosure emotionally affects its audience or incites controversy." *Id.* (citing *Zauderer*, 471 U.S. at 650–51).

---

[14] *See Discount Tobacco*, 674 F.3d at 562–63 (citing *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1105–08, 1119–20, 1122–24 (D.C. Cir. 2009) (per curiam)).

[15] That court pointed out the incongruity between plaintiffs' claiming that "the warnings will not reduce the use of their tobacco products" and their assertion that the warnings were so unduly burdensome as to drown out their advertising and marketing. *Id.* at 567.

No. 23-40076

## 2. The First Rule's Litigation

While the *Discount Tobacco* litigation was pending, FDA issued a Final Rule implementing the Act's graphics requirements.[16]  The warnings used the exact language of the Act and included graphics of side-by-side healthy and damaged lungs, a dead body, and a crying woman.[17]  Each warning also showed the phone number 1-800-QUIT-NOW.

Five companies—now led by RJR[18]—challenged the 2011 Rule, asserting the warnings violated the First Amendment.  The district court granted the companies' motion for summary judgment, and the D.C. Circuit affirmed.  *See R.J. Reynolds*, 696 F.3d at 1208.  That court held that the warnings were not "a remedial measure designed to counteract specific deceptive claims made by the [c]ompanies" as required by *Zauderer*. *Id.* at 1215.  Further, it ruled the chosen graphics were not "'purely factual and uncontroversial' information" because the images "could be misinterpreted by consumers" and "are primarily intended to evoke an emotional response, or, at most, shock the viewer into retaining the information in the text warning." *Id.* at 1216 (quoting *Zauderer*, 471 U.S. at 651).  So, by its reasoning, *Zauderer* scrutiny did not apply. *Id.* at 1217.[19]

Applying instead *Central Hudson*'s more stringent scrutiny, the court

---

[16] *See* Required Warnings for Cigarette Packages and Advertisements, 76 Fed. Reg. 36,628 (June 22, 2011) ("2011 Rule").

[17] *Id.* at 36649–57, 36674.

[18] Plaintiffs there were RJR; Lorillard Tobacco Co.; Commonwealth Brands, Inc.; Liggett Group LLC; and Santa Fe Natural Tobacco Co., Inc.  *See* Complaint at 4–5, *R.J. Reynolds*, 823 F. Supp. 2d 36 (D.D.C. 2011) (No. 1:11-CV-01482), 2011 WL 3611561.

[19] Instead of attempting to distinguish the Sixth Circuit's reasoning in *Discount Tobacco*—to which the dissent cited repeatedly—the majority in *R.J. Reynolds* never mentioned it, relying instead on the lack of deception and on the emotional implications of the graphics as grounds to apply *Central Hudson*.

struck down the rule as violative of the First Amendment. *Id.* at 1221–22 (citing *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980)). "Assuming FDA's interest in reducing smoking rates is substantial," the D.C. Circuit explained that the 2011 Rule nonetheless failed *Central Hudson* scrutiny because it lacked even "a shred of evidence . . . showing that the graphic warnings will 'directly advance' [FDA's] interest in reducing the number of Americans who smoke." *Id.* at 1218–19.

3. The Current Rule's Litigation

Eight years later, in 2020, the FDA finally issued this Rule.[20] The FDA asserted that the Rule—and its eleven new warnings, reproduced below—were justified by "the Government's interest in promoting greater public understanding of the negative health consequences of cigarette smoking."[21] FDA also claimed that the Rule "dissipat[es] the possibility of consumer confusion or deception," thereby advancing the government's interest in preventing "consumer misperceptions regarding the risks presented by cigarettes." 85 Fed. Reg. at 15645 (quoting *Zauderer*, 471 U.S. at 651).

---

[20] *See Required Warnings for Cigarette Packaging and Advertisements*, 85 Fed. Reg. 15638 (Mar. 18, 2020) (codified at 21 C.F.R. §§ 1141.1–12). The FDA issued this rule only after litigious prompting. *See Am. Acad. of Pediatrics v. FDA*, No. 1:16-cv-11985, 2019 WL 1047149, at *3 (D. Mass. 2019).

[21] 85 Fed. Reg. at 15638; *see id.* at 15643–50; *see also* Required Warnings for Cigarette Packages and Advertisements, 84 Fed. Reg. 42754, 42778 (Aug. 16, 2019) (Proposed Rule).

No. 23-40076



**WARNING:** Smoking causes head and neck cancer.



**WARNING:** Tobacco smoke causes fatal lung disease in nonsmokers.



**WARNING:** Smoking causes cataracts, which can lead to blindness.

**WARNING:** Smoking causes bladder cancer, which can lead to bloody urine.



**WARNING:** Tobacco smoke can harm your children.

**WARNING:** Smoking reduces blood flow, which can cause erectile dysfunction.



**WARNING:** Smoking reduces blood flow to the limbs, which can require amputation.



**WARNING:** Smoking causes COPD, a lung disease that can be fatal.

10

No. 23-40076




The Warnings do not precisely match the warnings required by the TCA—FDA kept one, split one of the TCA's warnings into two, updated three others, and replaced the remaining four with five new warnings.[22]  The FDA claims that the authority to make those changes derives from § 201 of the TCA, which allows the agency to "adjust the . . . text . . . of the cigarette

---

[22] FDA kept "Tobacco smoke can harm your children."  It then split "Cigarettes cause cancer" into "Smoking causes head and neck cancer" and "Smoking causes bladder cancer, which can lead to bloody urine."  85 Fed. Reg. at 15673–75; *see also* 84 Fed. Reg. at 42768, 42774.  It updated "Smoking during pregnancy can harm your baby" to read "Smoking during pregnancy stunts fetal growth."  85 Fed. Reg. at 15676; *see also* 84 Fed. Reg. at 42774.  It clarified "Cigarettes cause strokes and heart disease" now to explain "Smoking can cause heart disease and strokes by clogging arteries."  85 Fed. Reg. at 15677; *see also* 84 Fed. Reg. at 42774–75.  It expanded "Cigarettes cause fatal lung disease" into "Smoking causes COPD, a lung disease that can be fatal."  85 Fed. Reg. at 15678; *see also* 84 Fed. Reg. at 42775.  Finally, it added "Smoking reduces blood flow, which can cause erectile dysfunction," 85 Fed. Reg. at 15680; "Smoking reduces blood flow to the limbs, which can require amputation," *id.* at 15681; "Smoking causes type 2 diabetes, which raises blood sugar," *id.* at 15682; and "Smoking causes cataracts, which can lead to blindness," *id.* at 15683; *see also* 84 Fed. Reg. at 42776–77.

health warnings . . . ." 85 Fed. Reg. at 15641–42 (quoting 15 U.S.C. § 1333(d)). As the FDA explained, the Surgeon General's 2014 report newly attributed eleven diseases to smoking, and the Warnings better reflected those findings.[23]

The Rule also included its own severability provision. There, the FDA explained,

> [T]he individual aspects of this rule are workable on their own and should go forward in the event that some are invalidated. . . . FDA has determined that severability both is consistent with Congressional intent and would best advance the Government's interest in promoting greater public understanding of the negative health consequences of cigarette smoking. . . . [I]n a circumstance where some but not all of the rule's provisions are invalidated, FDA's intent is for the other provisions to go into effect . . . [because] each other portion of the rule would 'function sensibly' on its own . . . .

*Id.* at 15695.[24]

---

[23] *See* 85 Fed. Reg. at 15652 (citing U.S. Dept. of Health and Human Services, The Health Consequences of Smoking—50 Years of Progress: A Report of the Surgeon General *iii* (2014)).

[24] Anticipating the district court's actions here, FDA also wrote,

if a court were to invalidate some of the cigarette health warnings (i.e., text-and-image-pairings), but some of the pairings remained valid, FDA intends that the remaining required warnings would go into effect. As another example, if a court were to invalidate some but not all of the images within the cigarette health warnings, FDA intends that those images would be severed and the corresponding textual warning statements would go into effect without the invalidated images, along with the remaining cigarette health warnings that pair a textual warning statement with an image. As a third example, if a court were to invalidate all of the images within the cigarette health warnings, FDA intends for the invalidated images to be severed and all the warnings to go into effect with only their textual warn-

Less than a month after FDA promulgated the Rule, plaintiffs sued. They decried the Warnings as "unprecedented" and "precisely the type of compelled speech that the First Amendment prohibits." They alleged that each of the Warnings "misrepresent[s] or exaggerate[s] the potential effects of smoking." Further, they complained that "[c]ontrary to FDA's characterization, the peer reviewers raised serious, substantive concerns about FDA's studies" used to support the selected Warnings. Thus, plaintiffs contended, (1) the Rule violates the First Amendment, (2) the Act violates the First Amendment, and (3) the Rule violates the APA and the Act. Additionally, they urged the court to delay the implementation of the warning requirement until fifteen months after FDA issued a legally valid new rule.

Reviewing cross-motions for summary judgment, the district court began and ended with the First Amendment challenge to the Rule. It found that *Zauderer* did not apply because the Warnings were "not inherently 'accurate,' and 'purely factual and uncontroversial.'"[25] Rather, the imagery is fundamentally so "prone to ambiguous interpretation" that "it is unclear how a court would go about determining whether it[] . . . is 'accurate' and 'factual' in nature." 2022 WL 17489170, at *13–14. In other words, the court reasoned that no photorealistic image could ever be purely factual and uncontroversial because different viewers will ascribe to it different meanings. The inherent ambiguity in any graphic warning—*e.g.*, that viewers may interpret the heart disease warning to suggest that open-heart surgery "is the most common treatment for heart disease" or the best—means that the Warnings cannot be "'purely factual and uncontroversial' and objectively

---

ing statements.

*Id.* at 15695.

[25] *R.J. Reynolds Tobacco Co. v. FDA*, No. 6:20-CV-00176, 2022 WL 17489170, at *13 (E.D. Tex. Dec. 7, 2022).

accurate as required to allow relaxed *Zauderer* review." *Id.* at *14–15. Further, the court found that the graphic portions of the Warnings fell beyond *Zauderer*'s reach because they are inherently "provocative." *Id.*

The district court then turned to *Central Hudson*. *Id.* at *15. The court acknowledged that it is unsettled whether *Central Hudson* intermediate scrutiny, or instead strict scrutiny, applies to compelled speech. *Id.* But the government failed to satisfy *Central Hudson*'s narrow-tailoring requirement, so it *a fortiori* failed strict scrutiny. *Id.* at *17. The Rule was more extensive than necessary because the government had not increased funding for anti-smoking advertisements, increased its own anti-smoking communications, or "test[ed] the efficacy of 'smaller or differently placed warnings.'" *Id.* (quoting 85 Fed. Reg. at 13650).

The district court concluded by declining to sever the Warnings, even though it had considered only three of the eleven in detail. *Id.* That, the court ruled, was because "[t]he Act . . . does not allow the court to 'sever' the FDA's warnings by simply deleting their graphical component[s]." *Id.* at *18.

Relying on the preceding analysis, the district court declared that enforcing any part of the Rule against the plaintiffs would violate the First Amendment; it then vacated the entire Rule. FDA appeals.

## II.

FDA raises four issues on appeal: whether (1) the Warnings violate the First Amendment, (2) the Rule survives APA review, (3) the district court should have considered each Warning individually and severed the unconstitutional from the constitutional, and (4) vacatur was a proper remedy. Before turning to those issues, though, we first must assure ourselves we even need to.

No. 23-40076

A.    Preclusion

This is the second TCA-related case styled *R.J. Reynolds v. FDA*, and we are the third circuit to consider a challenge to that Act. In all three cases, RJR has been a party,[26] and in all three, the plaintiffs have challenged the validity of the same provisions of the Act under the First Amendment.[27] Yet the FDA has not asserted any form of preclusion.

Because they are affirmative defenses, the defendant must typically "plead and prove" res judicata or collateral estoppel for us to consider them.[28] When proper, though, we may raise preclusion *sua sponte*.[29] Yet we rarely do so, for it is a "drastic step" to "invok[e] res judicata for the first time on appeal and revers[e] the district court below as a consequence." *United Home Rentals, Inc. v. Tex. Real Est. Comm'n*, 716 F.2d 324, 330 (5th Cir. 1983).

We deem it unnecessary to take that drastic step here. Although this case meets the requirements for a district court to consider preclusion *sua sponte*—"all of the relevant facts are contained in the record and are uncontroverted"[30]—we could not resolve the entire case on preclusion alone. Even if we dismissed RJR's First Amendment challenge to the TCA as precluded, we would still need to resolve its challenge to the Rule. So, we

---

[26] Like RJR, Santa Fe and Liggett were parties in *R.J. Reynolds*. *See supra* note 18.

[27] *Contra Whole Women's Health v. Hellerstedt*, 579 U.S. 582, 604–06 (2016), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).

[28] *Sacks v. Tex. S. Univ.*, 83 F.4th 340, 344 (5th Cir. 2023) (citing *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)); *see* Fed. R. Civ. P. 8(c)(1).

[29] *See, e.g.*, *Mowbray v. Cameron Cnty.*, 274 F.3d 269, 281 (5th Cir. 2001) (res judicata); *OneBeacon Am. Ins. Co. v. Barnett*, 761 F. App'x 396, 399 (5th Cir. 2019) (collateral estoppel).

[30] *Energy Dev. Corp. v. St. Martin*, 296 F.3d 356, 363 (5th Cir. 2002) (per curiam).

No. 23-40076

turn to the merits.

B.   First Amendment

We begin by addressing FDA's contention that the Warnings do not violate the First Amendment. We usually do not turn first to a constitutional issue where a challenge presents multiple pathways for review.[31] But "federal courts have emphasized the importance of resolving First Amendment cases at the earliest possible junction." *Green v. Miss U.S.A., LLC*, 52 F.4th 773, 800 (9th Cir. 2022). Further, the district court resolved only the constitutional issue.[32] Thus, we will do the same.

The outcome-determinative question for the First Amendment issue is whether the district court properly found that the Warnings do not receive *Zauderer*'s deferential scrutiny. The district court erred. The Warnings are both factual and uncontroversial, despite the emotional impact the graphics may have. Therefore, we reverse.

1. *Zauderer* and *Central Hudson*

The Warnings are government-compelled speech—not speech restrictions. Because of that, the many cases plaintiffs and their *amici* cite regarding prohibitions or restrictions on speech provide, at best, merely persuasive authority.[33] That said, government-compelled speech inherently reg-

---

[31] *See Jean v. Nelson*, 472 U.S. 846, 854 (1985).

[32] *See also United Home Rentals*, 716 F.2d at 328 (Typically, "the initial review of the constitutionality of a state agency's interpretation of its own rules is a matter that the federal courts should undertake only when circumstances warrant it, and abstention would serve no purpose."). Here, however, not only do we address a federal agency's interpreting an act of Congress instead of a rule, but also the First Amendment challenge is the only one before us.

[33] For example, one of the *amici* cites ten speech-restriction cases but only two compelled-speech cases. Those two are *National Institute of Family & Life Advocates v.*

ulates speech on the basis of its content.[34]  And, as plaintiffs point out, we generally review content-based regulations of speech under strict scrutiny unless they come within an exception such as the commercial speech exceptions of *Zauderer* or *Central Hudson*.

For decades, the Supreme Court has consistently applied *Central Hudson* and *Zauderer* to cases implicating regulation of commercial speech.[35] We, too, are no strangers to those frameworks.[36]

In *Central Hudson*, the Public Service Commission of New York had banned all advertising promoting the use of electricity, and Central Hudson Gas & Electric Corporation challenged the ban as a violation of its First Amendment rights.  447 U.S. at 558–59.  The Court acknowledged that "[t]he First Amendment . . . protects commercial speech" because it "furthers the societal interest in the fullest possible dissemination of information." *Id.* at 561–62 (citing *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761–62 (1976)).  But the government may still regulate commercial speech more than it does "other constitutionally guar-

---

*Becerra* (*NIFLA*), 585 U.S. 755 (2018), and *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023). But *303 Creative* is inapplicable because that case dealt not with disclosures about the *terms* under which the service was available, but instead with compelling those services.  *See* 600 U.S. at 580; *cf. NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 485 (5th Cir. 2022) *cert. granted in part*, 144 S. Ct. 477 (2023).  In other words, *303 Creative* was much more like *West Virginia Board of Education v. Barnette*, 319 U.S. 624 (1943), or *Wooley v. Maynard*, 430 U.S. 705 (1977), where the government compelled substantive speech, whereas this case is much more like *NetChoice* and *Zauderer*, where the government compelled certain terms.  *NIFLA* is applicable, though, and we discuss it *infra*.

[34] *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573–74 (1995); *see also Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988).

[35] *See, e.g.*, *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229 (2010); *NIFLA*, 585 U.S. 755.

[36] *See, e.g.*, *NetChoice*, 49 F.4th at 485; *Chamber of Com. v. SEC*, 85 F.4th 760 (5th Cir. 2023).

anteed expression." *Id.* at 563 (citing *Ohralik v. Ohio State Bar Ass'n*, 463 U.S. 447, 456 (1978)). So, the Court applied a form of intermediate scrutiny—requiring narrow tailoring and a substantial government interest—to the Commission's rule and struck it down. *Id.* at 569–72.

Five years later, in *Zauderer*, the Court created a carve-out to *Central Hudson*'s rule for government-*compelled* commercial speech. The Court reviewed the discipline of an Ohio attorney who had published two newspaper advertisements. The Court began by explaining that "advertising . . . falls within those bounds" of commercial speech that "is entitled to the protection of the First Amendment, albeit to protection somewhat less extensive than that afforded 'noncommercial speech.'" *Zauderer*, 471 U.S. at 637 (citations omitted). And the Court applied *Central Hudson* to the speech restrictions. *Id.* at 638.

The Court applied a different standard, however, to compelled disclosures in advertising. It acknowledged that "in some instances[,] compulsion to speak may be as violative of the First Amendment as prohibitions on speech"[37] and that no State may "prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein."[38] Yet speakers have no protected interests in false statements,[39] and Ohio had "prescribe[d] what shall be orthodox [only] in *commercial advertising*," not all speech. *Id.* at 651 (emphasis added). Further, the "prescription ha[d only] taken the form of a requirement that [Zauderer] include . . . purely factual and uncontroversial infor-

---

[37] 471 U.S. at 638 (citing *Wooley*, 430 U.S. 705; *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974)).

[38] 471 U.S. at 651 (quoting *Barnette*, 319 U.S. at 642).

[39] *See id.* at 638 (citing *Friedman v. Rogers*, 440 U.S. 1 (1979)).

mation . . . ." *Id.* Thus, his limited rights in commercial advertising were "adequately protected" because his "interest in *not* providing any particular factual information in his advertising [wa]s minimal." *Id.* And the disclosure requirements were neither (1) "unjustified or unduly burdensome" nor (2) "[un]related to the State's interest in preventing deception of consumers." *Id.*; *see also id.* at 651 & n.14.

Then, in *Milavetz*, 559 U.S. at 249–50, the Court applied *Zauderer* to uphold the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The Bankruptcy Code's disclosure requirement was "directed at misleading commercial speech"; "the challenged provisions impose[d] a disclosure requirement rather than an affirmative limitation on speech"; and "the disclosures entail[ed] only an accurate statement . . . ." *Id.* (emphasis omitted). Therefore, the law did not violate the First Amendment.

Most recently in *NIFLA* in 2018, the Court distinguished *Zauderer*. It struck down a California law that required crisis-pregnancy centers to provide notices related to, among other things, the availability of state-sponsored abortion services. 585 U.S. 760–62, 765. Describing *Zauderer*, the Court did not refer to any requisite claimed state interest in preventing misleading speech. *Id.* at 768–69, 776–77.[40] Instead, the Court distinguished *Zauderer* by focusing on the controversial nature of abortion as well as the fact that the disclosures discussed state-provided services rather than compelled-speaker-provided services. *Id.* at 768–69.

Four years after *NIFLA*, we applied *Zauderer* in *NetChoice*. Describing our pre-enforcement review of a law requiring social media companies to publish three censorship disclosures as "controlled by . . . *Zauderer*," we

---

[40] Indeed, the Court assumed that the informational interest was substantial before it preliminarily enjoined the law for failing narrow tailoring. 585 U.S. at 776–78.

declared the disclosures to be factual and noncontroversial. 49 F.4th at 485. Then, we held that the state's interest in "enabling users to make an informed choice regarding whether to use [social media] Platforms" was sufficient to survive review under *Zauderer*. *Id.* (cleaned up).

Finally, just a few months ago, in *Chamber of Commerce*, we reviewed the SEC's ability to compel speech by publicly traded companies related to share buybacks. 85 F.4th at 766–67. Applying *Zauderer* and *NetChoice*, we ruled that the disclosure of a company's rationale for a stock buyback was purely factual and uncontroversial commercial speech. *Id.* at 768–72 (citing *NetChoice*, 49 F.4th at 485–88).

Distilling that precedent, *Zauderer* applies where the compelled speech is (1) purely factual and (2) uncontroversial. To survive *Zauderer* scrutiny, the warnings must (3) be justified by a legitimate state interest and (4) not unduly burdensome. FDA's Warnings meet all four requirements.

### a. The Warnings Are Purely Factual.

Despite the myriad applications of *Zauderer*, neither the Supreme Court nor this court has expressly defined "purely factual . . . information." *Zauderer*, 471 U.S. at 651. The closest comes from the distinction between a statement of fact that "expresses certainty about a thing," and "a statement of opinion . . . [that] does not."[41] We have similarly described "'explain[ing]

---

[41] *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015); *see also generally Peel v. Att'y Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 101 (1990). We recognize that "the language of an opinion is not always to be parsed as though we were dealing with language of a statute." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374 (2023) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979)). But the "difference between [a statement of fact and a statement of opinion] is so ingrained in our everyday ways of speaking and thinking" that the use of "factual" suggests little else. *Omnicare*, 575 U.S. at 183. With that ruling, we join the Sixth Circuit in its interpretation of *Zauderer*, *see Discount Tobacco*, 674 F.3d at 556–58, and the Second Circuit, *see Nat'l Elec.*

the reason' for [a company's] actions [as] a purely factual disclosure." *Chamber of Comm.*, 85 F.4th at 769 (quoting *NetChoice*, 49 F.4th at 446, 485). But, we have cautioned, the government may not demand a private party "undertake contextual analyses, weighing and balancing many factors . . . that depend on community standards," to determine the speech it must parrot. *Book People, Inc. v. Wong*, 91 F.4th 318, 340 (5th Cir. 2024).

Those interpretations closely mirror common usage as seen in several dictionaries. As a grammatical matter, both "purely" and "factual" describe "information." Therefore, we set our baseline understanding by defining "information"; and then we narrow it.

The Oxford English Dictionary ("OED") defines "information" as "[f]acts provided or learned about something" and as "[w]hat is conveyed or represented by a particular arrangement or sequence of things."[42] Similarly, Garner's Dictionary of Legal Usage ("Garner's") defines "information" through "knowledge," but as "a broader term, covering the full gamut ranging from all that is meant by knowledge to putative facts, unverified and unverifiable facts, and a collection of falsehoods."[43] Therefore, we define "information" quite broadly.

*Zauderer* narrows that baseline by requiring that the information be factual. Garner's defines "factual" as "of or involving facts" or as "true."[44]

---

*Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 114 n.5 (2d Cir. 2001).

[42] *Information*, Oxford English Dictionary, tinyurl.com/8f83y7dd (last visited Feb. 22, 2024).

[43] *Knowledge*, Garner's Dictionary of Legal Usage, tinyurl.com/38hcdcsu (last visited Feb. 22, 2024) (emphasis omitted).

[44] *See Fact (adj.); factual*, Garner's Dictionary of Legal Usage, tinyurl.com/2fyb6hjz (last visited Feb. 22, 2024). Garner's also defines "fact" as, *inter alia*, "an event, an occurrence, or a circumstance." *Fact (n.); factum*, Garner's Dic-

OED similarly explains that "factual" means (1) "[c]oncerned with what is actually the case rather than interpretations of or reactions to it" and (1.a) "actually occurring."[45] Applying those definitions, we understand "factual" to limit "information" to falsifiable material and inferences fairly drawn from it, rather than one's non-falsifiable "interpretations[,] . . . reactions," or opinions.

To reach this understanding, we reject the construction that plaintiffs and the district court proffer—that, to be factual, the information must be true. Despite that such a reading matches Garner's second definition, were we to adopt that interpretation, we would create surplusage: The adverb "purely" becomes entirely redundant in the phrase "purely factual information" if "factual information" already excludes any information that is not true and objective.[46] Therefore, instead of reading surplusage into the phrase, we adopt the more natural reading.[47]

Guided by that understanding of *Zauderer*, we must determine whether the Warnings are (1) statements composed of only (a) information supported by facts and (b) conclusions driven by those facts, and (2) not akin to unfalsifiable statements of opinion.[48]

---

TIONARY OF LEGAL USAGE, tinyurl.com/mrunrusp (last visited Feb. 22, 2024).

[45] *Factual*, OXFORD ENGLISH DICTIONARY, tinyurl.com/3v4k9y3y (last visited Feb. 22, 2024).

[46] *See Purely*, OXFORD ENGLISH DICTIONARY, tinyurl.com/yafbr6mh (last visited Feb. 22, 2024) (defining "purely" as "[e]ntirely; exclusively.").

[47] Additionally, if we understood "factual" to mean "true," we could only define "uncontroversial" as relevant to politics or disfavor. As explained below, we see no justification for that reading.

[48] We expressly refrain from suggesting that a factual statement is necessarily an accurate one. *Cf. Scott v. Harris*, 550 U.S. 372, 380 n.7 (2007). As we discuss *infra*,

Because plaintiffs challenge each component of the Warnings as well as the Warnings as a whole, we begin with the text. The Surgeon General's 2014 report found that cigarette smoking causes the negative health consequences identified in the textual warnings.[49] Without contesting the Surgeon General's report, plaintiffs allege that the updated textual warnings create Warnings that "misleadingly exaggerate smoking risks" and improperly "focus on conditions that less frequently arise from smoking." Yet they acknowledge that the 1984 (and currently used) "Surgeon General's warnings are purely factual[ and] uncontroversial."

We cannot square those contentions. Consequences supported by scientific findings, even if exaggerated or non-modal, are still, by definition, factual. Thus, though the Rule does not use the TCA's exact language, we, like the Sixth Circuit, hold that the "factual content of the textual warnings is undisputed."[50] So, the crux of the dispute must center on the images.

We agree with the Sixth Circuit's reasoning and its examples of images that might be factual. The Warnings fall well within the ambit of those examples. The addition of images to the textual warnings makes no difference to the constitutional analysis of factuality.

In *Discount Tobacco*, the Sixth Circuit read *Zauderer*'s depiction of an IUD to "demonstrate[] that a picture can be accurate and factual." 674 F.3d

---

accuracy is a matter of controversy. Instead, the "factual" nature of a statement turns on the certainty the statement expresses. *See Omnicare*, 575 U.S. at 183.

[49] *See* 85 Fed. Reg. at 15646, 15670, 15672–84; *see also supra* note 23 and accompanying text.

[50] *Discount Tobacco*, 674 F.3d at 558; *see also Altria Grp., Inc. v. Good*, 555 U.S. 70, 87–91 (2008) (suggesting that "statements of tar and nicotine content . . . shown to be accurate and fully substantiated by tests" are factual statements (cleaned up)).

at 560 (citing *Zauderer*, 471 U.S. at 647–49).[51]   It then suggested several examples of images that it would consider factual.[52]   For this Rule, "FDA used a certified medical illustrator to design images that depicted common visual presentations of the health conditions and/or showed disease states and symptoms as they are typically experienced, and that present the health conditions in a realistic and objective format devoid of non-essential elements." 85 Fed. Reg. at 15646.   As one of the *amici* explained it, each of the images provides "a straightforward, science-based, objectively truthful depiction of the accompanying text." The images are no different from those a medical student might see in a textbook, and several are of exactly the type described by the Sixth Circuit as purely factual.   We see no reason to split from our sister circuit.

Plaintiffs then claim the Rule is unlawful because it conveys an ideological or provocative message.   They imply a requirement that is absent, and we join the Sixth Circuit in rejecting their imaginative, novel limitation.   *See Discount Tobacco*, 674 F.3d at 569.

A fact does not become "value-laden" merely because the fact drives a reaction.   But even if it did, ideological baggage has no relevance to the first *Zauderer* prong.   Any number of factual messages are, of course, ideological.[53]

---

[51] *See also Peel*, 496 U.S. at 106–07 (describing an attorney's statement as a "Certified Civil Trial Specialist by the National Board of Trial Advocacy" as "pos[ing] no greater potential of misleading consumers than . . . confusing a reader with an accurate illustration" and citing *Zauderer*, 471 U.S. 626); *Pub. Citizen Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 219 (5th Cir. 2011) ("A depiction of a scene or picture can be presented in a non-deceptive way in an attorney advertisement." (citing *Zauderer*, 471 U.S. at 647)).

[52] *See supra* part B.1 (citing *Discount Tobacco*, 674 F.3d at 559).

[53] *See Glickman v. Wileman Bros. & Elliot, Inc.*, 521 U.S. 457, 492 n.6 (1997) (Souter, J., dissenting).   We offer the following example: "The Nazis committed genocide." That is a factual statement.   It is also a statement that denounces the Nazi's actions and

Similarly, emotional response to a statement is irrelevant to its truth. That someone may have to declare bankruptcy is likely to engender strong emotions. But the Court never even discussed that aspect of the mandatory disclosures of *Milavetz*. *See* 559 U.S. at 249–50.

Further, unlike the images before the D.C. Circuit in *R.J. Reynolds*, these images *are* "meant to be interpreted literally." 696 F.3d at 1216. They are not "primarily intended to evoke an emotional response" but instead to draw attention to the warning and depict a possible medical consequence of smoking. *Id.* Thus, at most, the emotional response of viewers is incidental to their retention of information about the health risks. Consequently, even if we adopted the D.C. Circuit's reasoning, the emotional impact of the Warnings does not abrogate their factual nature.

Plaintiffs and the district court next suggest that because the images may be subject to several interpretations, they cannot possibly have *one* factual meaning.[54] Plaintiffs take further issue with the FDA's lack of "testing to ensure the warnings have only one meaning." But when each image is paired with a fact-based, textual warning, any reasonable viewer interprets the image in light of the words. Each image *emphasizes* the factual meaning of the words it accompanies; it does not impart distinct, novel meaning. In other words, it provides context.[55]

---

beliefs as morally repugnant. That is an ideological message. Though the government may not be able to compel Volkswagen to include that message in its advertising without justification, a court would likely still review any such attempt under *Zauderer*.

[54] In the abstract, they are right. To one viewer, Little Boy's atomic plume shows the greatest threat to human survival ever created. To another, it symbolizes the end of World War II. Regardless of the interpretation, though, it factually shows the result of dropping a nuclear bomb.

[55] *Cf. Milavetz*, 559 U.S. at 252 ("The required statement that the advertiser

In its analysis, the district court considered the possible different interpretations of the image bereft of the text. That was error. Consumers will see not just the image, but the image *with* the text. That context matters.

Finally, contrary to the district court's reasoning, we uncover no case-law requiring the government to choose only the most common side-effect or consequence of the disease or injury discussed in a warning.[56] Indeed, *Milavetz* forecloses the "single, objective meaning" approach to determining whether a compelled disclosure is factual. People may interpret "debt relief agency" in many ways, but disclosing that a business *is one* is still purely factual. *See* 559 U.S. at 251–52. Similarly, there is no requirement that cigarette manufacturers "undertake contextual analyses, weighing and balancing many factors to determine" the warning—the FDA did that for them. *Book People*, 91 F.4th at 339. Therefore, the Warnings are factual so long as FDA's claims are inferable from scientific observation.

Thus, the Warnings are factual under *Zauderer*.

### b.    The Warnings Are Uncontroversial.

Plaintiffs claim that the Warnings are not uncontroversial for the same reasons they are not factual. We review the cases discussed above and disagree.

In *NIFLA*, the Court found that the abortion-services notifications were controversial, 585 U.S. at 769, but, in *NetChoice*, we found that disclosures of social media censorship decisions were not controversial, 49 F.4th

---

'help[s] people file for bankruptcy relief' gives meaningful *context* to the term 'debt relief agency.'" (emphasis added)).

[56] As FDA points out, it would "not [be] feasible . . . for a single warning to convey all the information that may be related to a particular health condition." 85 Fed. Reg. at 15684.

at 485. From these disparate results, we distill the following: A factual statement is "controversial" under *Zauderer* where the truth of the statement is not settled or is overwhelmingly disproven or where the inherent nature of the subject raises a live, contentious political dispute.[57] In other words, that the speaker does not like the message does not make it controversial; there must be something more. *See Chamber of Com.*, 85 F.4th at 770 (weighing the level of political controversy). If mere dislike sufficed, Zauderer would have prevailed, as he certainly did not want to drive away potential clients by telling them they might still be liable for costs. Similarly, if mere connection to a live, contentious, political issue sufficed, NetChoice would have prevailed.[58]

Yet, plaintiffs never suggest any good-faith debate that the Warnings are not truthful. As discussed in the section above, we evaluate the compelled speech's truthfulness as a matter of "controversy." But where, as here, neither party disputes the Warnings' claims and *amici* offer even more support for their factualness, any controversy must derive from the subject matter or the presentation of the Warnings.

Nevertheless, the assertion of controversy fails here too. Plaintiffs contend only that the Warnings are emotion-inducing and ideological. They do not assert that cigarette warnings are an inherent part of a national political debate. Instead, plaintiffs merely dislike the nature of the warnings. Yet, just as bankruptcy warnings, disclosure of stock buyback rationales, and explana-

---

[57] *See Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 535 (1980); *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n.*, 475 U.S. 1, 8–9 (1986); *see also Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1277–78 (9th Cir. 2023).

[58] Indeed, if mere dislike sufficed, the government could never compel any disclosure. If the speaker liked the disclosure, it would presumably already be making it. That proves too much.

tions of social media censorship decisions may induce emotions or be related to ideological and political issues while remaining uncontroversial, so too the Warnings.

Thus, the Warnings are uncontroversial under *Zauderer*.

### 2. The Rule Satisfies *Zauderer*.

Assured that the Warnings are both factual and uncontroversial, we now apply *Zauderer*'s deferential standard of review, under which the Warnings must be "reasonably related to the State's interest" and not "unjustified or unduly burdensome." *Zauderer*, 471 U.S. at 651.

Plaintiffs aver that the warnings are unjustified for two reasons. First, that FDA does not claim an interest in preventing deception, which plaintiffs contend *Zauderer* requires. Second, that even if *Zauderer* does not require an anti-deception interest, FDA still has not proven its informational interest sufficient or the Warnings effective.

### a. FDA's Interest Is of the Type Subject to *Zauderer Scrutiny.*

Plaintiffs claim that, because *Zauderer* upheld the compelled speech as "reasonably related to the State's interest in preventing deception of consumers[,]" only *that* interest suffices. 471 U.S. at 651. In other words, anti-deception is a necessary interest, and that interest must independently justify the entire rule on *Zauderer* review. Yet, mirroring the TCA, the FDA justifies the Rule by claiming primarily that the government has an interest in "greater public understanding" of the risks of smoking. 85 Fed. Reg. at 15650; *see* TCA § 3(6). So, in plaintiffs' view, the government's interest is not cognizable under *Zauderer*. Once again, we conclude otherwise: *Zauderer* does not require the state to assert an anti-deception interest.

Plaintiffs' primary contention is that "the Supreme Court has never held that *Zauderer* applies outside the consumer-deception context." So, it

must not apply in any other context. Our sister circuits have read *Zauderer* differently, though. As the D.C. Circuit explained in *American Meat Institute*, "the principles articulated in *Zauderer* apply more broadly to factual and uncontroversial disclosures required to serve other government interests" than the prevention of deception. 760 F.3d at 21–23. The First,[59] Second,[60] Sixth,[61] and Ninth Circuits[62] have also taken that approach.

*Chamber of Commerce* and *NetChoice* also endorse that broader application of *Zauderer*. In *Chamber of Commerce*, we upheld the buyback disclosure law on the ground that the "SEC has a legitimate interest in promoting the free flow of commercial information"; we ruled that was "more than enough to satisfy this prong of *Zauderer*." 85 F.4th at 771. That analysis pointedly dropped the deception-of-consumers rationale from its description of *Zauderer*. In *NetChoice*, we similarly described *Zauderer* as mandating that "disclosure requirements . . . be reasonably related to a legitimate state interest, *like* preventing deception of consumers." 49 F.4th at 485 (emphasis added).

Further, the Supreme Court implicitly adopted that reasoning in *NIFLA* when it declined to "decide what type of state interest is sufficient to sustain a disclosure requirement . . . ." 585 U.S. at 776. Therefore, we follow the Supreme Court, finish the job started by *NetChoice* and *Chamber of Commerce*, and join our sister circuits' interpretation.

One of the *amici* suggests that in *Test Masters Educational Services, Inc.*

---

[59] *See Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 310 n.8 (1st Cir. 2005).

[60] See *Sorrell*, 272 F.3d at 115.

[61] *See Discount Tobacco*, 674 F.3d at 556–58.

[62] See *CTIA—The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 844 (9th Cir. 2019).

*v. Robin Singh Educational Services, Inc.*,[63] this court based its holding on the interest of eschewing the "deception of consumers."[64]  Thus, *amicus* contends, we are limited to applying *Zauderer* only to that interest.  But no analysis accompanied our statement in *Test Masters*.  Instead, like *Zauderer*, we merely concluded the government's interest in preventing deception sufficed, not that that interest was necessary.[65]  The same can be said for *Public Citizen*, where we again accepted the interest in preventing deception as sufficient without deciding it was necessary.  632 F.3d at 227.  Further, we see no way to adopt the *amicus*'s reading of *Public Citizen* without disregarding our acknowledgment that the government also had a "substantial interest in promoting the ethical integrity of the legal profession" as we upheld that case's disclaimer requirement.  *Id.* at 228.[66]

In other words, our review uncovers both (1) in-circuit applications of *Zauderer* with non-consumer deception interests claimed by the state and

---

[63] 799 F.3d 437 (5th Cir. 2015), *on reh'g*, No. 13-20250, 2015 WL 13768849 (5th Cir. Oct. 22, 2015).

[64] *See id.* at 453.

[65] *See id.* ("This standard applies because Singh's original posting was deceptive.").

[66] That same *amicus* also contends that we have applied heightened scrutiny to "compelled disclosures unrelated to preventing consumer deception," so we must do so here under *Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 764–68 (5th Cir. 2008).  But that case only very briefly made mention of *Zauderer*.  We neither distinguished *Zauderer* nor suggested it did not apply because we did not need to do so.  In *Hersh*, the district court had found that the disclosure survived heightened scrutiny, so we had no need to determine the applicable level of scrutiny.

*Allstate Ins. Co v. Abbott*, 495 F.3d 151, 165 (5th Cir. 2007), presents a similarly distinguishable application.  There, we cited *Zauderer* for the state's anti-deception interest.  Next, we immediately turned to *Central Hudson*.  In other words, we never explicitly ruled that *Zauderer* applies *only* to deceptive advertising; we held only that *Central Hudson* applies to restrictions on speech (as distinguished from compelled speech).

(2) persuasive out-of-circuit applications.  Joining our sister circuits, we hold that *Zauderer* applies even when the government's claimed primary interest is not the prevention of consumer deception.  The standard is not that *only* anti-deception interests suffice, but that *any* legitimate state interest suffices, and anti-deception is a legitimate state interest.  *See Chamber of Com.*, 85 F.4th at 768.  Increasing public understanding of the risks of smoking, particularly given the "long history of deception concerning consumer health risks in the cigarette industry," is a legitimate state interest, meeting that standard.[67]

### b.    *FDA's Claimed Interest Justifies the Warnings.*

Plaintiffs compare the Warnings to the disclosures struck down in *NIFLA* and claim that the Warnings are unjustified because (1) the interest is insufficient or too amorphous and (2) FDA has not proven the Warnings effective.  We conclude otherwise.

We begin with the claimed interest in the images.  FDA asserts that the images serve an informational interest.  In *Zauderer*, the Court explained that "[t]he use of illustrations or pictures in advertisements serves important communicative functions: it attracts the attention of the audience to the advertiser's message, and it may also serve to impart information directly." 471 U.S. at 647.  The Warnings do exactly that—they "attract attention" and

---

[67] 85 Fed. Reg. at 15645.  Even if *Zauderer* required an anti-deception interest, FDA has sufficiently alleged, and has an interest in preventing, consumer deception related to tobacco marketing.  Congress explicitly found that "[t]obacco product advertising often misleadingly portrays the use of tobacco as socially acceptable and healthful to minors." TCA § 2(17).  Further, FDA describes its interest in remedying the public's "*misperceptions* about the health risks caused by smoking" and the "long history of *deception* concerning consumer health risks in the cigarette industry."  85 Fed. Reg. at 15638, 15645 (emphases added); *see also generally Philip Morris*, 566 F.3d 1095.  Finally, the Sixth Circuit took a similar approach in *Discount Tobacco*, and we see no reason to suggest it did so improperly.  *See* 674 F.3d at 562–63.

"impart information."

Indeed, FDA justified the Warnings through an informational interest, specifically focusing on raising consumer awareness: the agency tested the Warnings' effectiveness in raising consumer awareness and then refined them based on those results. *See* 84 Fed. Reg. 42768–69. Consequently, the informational interest suffices under *Zauderer*, and FDA's selection of images in the Warnings serves that interest.

Next, we turn to the breadth of the claimed interest. In *NIFLA*, the Court explained that a compelled disclosure is justified only if it will "remedy a harm that is 'potentially real[,] not purely hypothetical,' and . . . 'extend[s] no broader than reasonably necessary.'"[68] Plaintiffs challenge that the current Surgeon General's warnings are sufficient, so the imposition of the new Warnings must inherently "extend" the First Amendment harm more "than reasonably necessary."

Not only did the Sixth Circuit reject that position in *Discount Tobacco*, *see* 674 F.3d at 563–64, but that claim also ignores FDA's significant evidence that consumers do not notice, much less internalize, the text-only warnings in the *status quo*.[69] The updated warnings serve to remedy the harm that

---

[68] *NIFLA*, 585 U.S. at 776 (first quoting *Ibanez v. Fla. Dept. of Bus. & Pro. Regul., Bd. of Accountancy*, 512 U.S. 136, 146 (1994), then quoting *In re R.M.J.*, 455 U.S. 191, 203 (1982)).

[69] *See* 85 Fed. Reg. at 15653–57; 84 Fed. Reg. at 42760–65. Plaintiffs inconsistently claim that the disclosure requirements are overly emotional and ideological such that they become non-factual speech, while also asserting that FDA's informational interest does not justify the Warnings because they will not be effective. In other words, plaintiffs suggest consumers will simultaneously notice and not notice the warnings. But, as an *amicus* explains, "disclosure requirements would serve little purpose if they could be invalidated on the ground that consumers might use the information provided in deciding whether to purchase and use the products or services at issue." Though we do not rely on that

buyers might (1) not know about tobacco's harms or (2) ignore the existing Surgeon General's warnings. In other words, FDA and Congress have well justified the extent of the new warnings.

Finally, we consider the effectiveness of the Warnings. Plaintiffs assert that alleged flaws in the FDA's studies should be reason to discount their results. At the current stage, though, we search only for the regulation's reasonable relation to the legitimate state interest.[70] Whether FDA's use of the studies survives APA review is a question we consider separately from our *Zauderer* review. FDA has sufficiently proven that the Warnings reasonably relate to and further its legitimate, and substantial, interest.[71]

Thus, for purposes of *Zauderer*, the legitimate state interest justifies the Warnings.

### c.    *The Warnings Are Not Unduly Burdensome.*

Plaintiffs challenge the Warnings as an undue burden by claiming that the size and content of the Warnings will make it nearly impossible to convey information to potential customers. Three fatally erroneous assumptions underlie plaintiffs' assertion:

First, plaintiffs conflate *Zauderer* and *Central Hudson*, describing *Zauderer* as merely an application of *Central Hudson*.[72] But those are different

---

inconsistency in ruling that the Warnings are sufficiently justified, it does weaken plaintiffs' claim. *See also supra* note 15.

[70] *See Chamber of Commerce*, 85 F.4th at 771.

[71] As discussed above, that people already know smoking is dangerous does not mean that they know all the health consequences of smoking. Informing them of those is a legitimate state interest.

[72] To justify this reading, plaintiffs cite then-Judge Kavanaugh's concurrence in *American Meat Institute*. *See* 760 F.3d at 33. But that concurrence did not receive a majority

tests. That some speech fails *Central Hudson* does not mean that speech automatically fails *Zauderer*. Indeed, the Court applied *Central Hudson* in *Zauderer* when it addressed speech restrictions, but it then declined expressly to adopt *Central Hudson* in its analysis of compelled speech. *See Zauderer*, 471 U.S. at 651 & n.14. Further, the Supreme Court treats the two as distinct.[73] Thus we decline to merge these distinct tests into one.

Second, plaintiffs focus their claim of burden solely on the size of the warnings. Yet these Warnings are no larger than those upheld by the Sixth Circuit when it reviewed the TCA. *See Discount Tobacco*, 674 F.3d at 567. Even though FDA updated the Warnings from those Congress selected in the TCA, they have not changed the size of the Warnings. We decline to give RJR a new chance to relitigate this issue without any factual distinctions.

Third, and most fundamentally, we reject plaintiffs' claim that any burden is inherently undue. True, the Warnings impose a burden on plaintiffs.[74] But that alone does not offend the Constitution. Instead, we must inquire whether that burden is *undue*. In other words, the regulation cannot impose a burden excessive or disproportionate to the benefits gained.

We draw that balancing requirement both from the plain meaning of "undue"[75] and from precedent. In *NIFLA*, the Court weighed the disclosure

---

vote of the D.C. Circuit, has never been adopted by the Supreme Court, and has never been accepted by this court.

[73] In *NIFLA*, the Court first concluded *Zauderer* did not apply. Then, it expressly admitted to uncertainty over the standard applied to compelled speech that does not receive *Zauderer* scrutiny: *Central Hudson* or strict scrutiny. *See NIFLA*, 585 U.S. at 773.

[74] Nor is that unique to the Warnings. Any compelled speech, particularly compelled speech with which the speaker disagrees, inherently imposes some burden.

[75] *See Undue*, Oxford English Dictionary, tinyurl.com/56jcsuhx ("Unwarranted or inappropriate because excessive or disproportionate.").

requirement and found it lacking. The requirements (1) were "wholly disconnected from California's informational interest"; (2) allowed for no consideration of "what the facilities say on site or in their advertisements"; and (3) "cover[ed] a curiously narrow subset of speakers." 585 U.S. at 777; *see also id.* at 777–79. Therefore, the burden outweighed any possible benefit.

In *NetChoice*, after deciding that *Zauderer* applied, we similarly turned to whether the disclosure requirements were unduly burdensome. 49 F.4th at 485. Our analysis focused on the possibility of chilling protected commercial speech. *Id.* at 486 (citing *Zauderer*, 471 U.S. at 651). We found that the one-and-done and the biannual transparency disclosure requirements would not possibly "burden the Platforms' protected speech," so they both survived *Zauderer* review. *Id.* Then, we upheld the complaint-and-appeal disclosure requirement because the burden of the disclosure was not so significant in the context of the "statute's plainly legitimate sweep" that it reached the level of an undue burden. *Id.* at 487 (quoting *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021)). In other words, we balanced the harm and the benefit, found the harm was minimal and the benefit significant, and ruled the burden was constitutional.

Finally, in *Chamber of Commerce*, we similarly balanced the interests. We explained that the compelled disclosures were not unduly burdensome because they "neither burden[] issuers' protected speech nor drown[] out their message." 85 F.4th at 772. We found the balance tilted toward the SEC because it had imposed additional speech only "within the narrow confines of SEC filings . . . ." *Id.* (citing *NetChoice*, 49 F.4th at 486).

As explained earlier, FDA claims the Warnings directly alleviate information asymmetry regarding the harms tobacco causes and consumers' suboptimal awareness of and response to those harms. And the government has shown a significant benefit from the resultant reduction in those harms. *See*

TCA § 2; *see also* 84 Fed. Reg. at 42,779; *supra* part II.B.2.b.

On the other hand, plaintiffs claim two large burdens—that the government is infringing on their First Amendment rights and that they will suffer financial harm.

The scale tilts toward the benefits for two reasons.

First, plaintiffs can still speak on 80% of their advertisements, and they still control more than 50% of the total surface area of their cigarette packages. *See* 15 U.S.C. § 1333(a)(2), (b)(2). The remaining portions offer "ample room for manufacturers to distinguish their products from other products." 85 Fed. Reg. at 15647. Thus, we are not concerned that the brands will be "drown[ed] out" by the warnings such that plaintiffs would have no reason to speak at all. *Contra NIFLA*, 585 U.S. at 778. Though the Warnings will not produce "additional speech" in the same way the novel disclosures did in *NetChoice* or *Chamber of Commerce*, they also do not impose a disproportionate requirement that would "'effectively rule[] out' the possibility of having [an advertisement] in the first place." *NIFLA*, 585 U.S. at 778 (quoting *Ibanez*, 512 U.S. at 146). So, it is extremely unlikely that the Warnings will chill protected commercial speech. *See NetChoice*, 49 F.4th at 485.

Second, as mentioned earlier, plaintiffs have, at most, a minimal interest in not withholding useful and factual information from their customers. *See Zauderer*, 471 U.S. at 651. Any harm suffered purely because of an infringement on that minimal interest is limited.

Thus, the Warnings are not unduly burdensome under *Zauderer*.

\*　　\*　　\*　　\*　　\*

In sum, because the Warnings are (1) purely factual and (2) uncontroversial, *Zauderer* scrutiny applies. Then, because the Warnings address a legitimate state interest, are justified, and are not unduly burdensome in light

of that interest and justification, the Warnings survive *Zauderer* scrutiny.

## C.     APA Claim

We turn to plaintiffs' contention that FDA issued the Rule in violation of the APA.  The district court never reached the issue, granting summary judgment for plaintiffs solely on its finding that the Rule violated the First Amendment.  We generally prefer not to resolve a complicated fact-intensive dispute without the benefit of the district court's reasoning, and the instant case is no exception.  So we remand for consideration in the first instance.

Plaintiffs are right that "this Court may affirm . . . on any ground supported by the record and presented to the district court."  *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 430 (5th Cir. 2022).  But we generally "will not reach the merits of an issue not considered by the district court" and we see no reason to stretch for them here.[76]

We recognize that an exception to that well-established rule arises where there are "special circumstances."  *PHH*, 80 F.4th at 563 (citing *Man Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 483 (5th Cir. 2006)).  But those circumstances are not present here.  The extensive dispute in the district court, and the limited briefing on appeal, repudiate any suggestion that the "proper resolution is beyond any doubt."[77]  *Id.* (quoting *Baker v. Bell*,

---

[76] *PHH Mortg. Corp. v. Old Republic Nat'l Title Ins. Co.*, 80 F.4th 555, 563 (5th Cir. 2023) (quoting *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 252 (5th Cir. 2022)); *see also Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991) ("As a court for review of errors, we are not to decide facts or make legal conclusions in the first instance. Our task is to review the actions of a trial court for claimed errors.").

[77] Although, at oral argument, both sides requested that we decide the APA issue now, and though they briefed the merits of the APA dispute in the district court, the parties presented us with comparatively little on the subject on appeal.  They spent a combined 11 pages of the 157 in their briefs on this issue, and the district court never addressed it in its order.

630 F.2d 1046, 1056 (5th Cir. 1980)).  Further, after an adverse APA ruling
by the district court, either party may still appeal, without any concern that
"injustice might otherwise result."  Thus, the case does not present the nec-
essary "special circumstances" for us to resolve an issue "not passed on
below."  *Id.*  Consequently, we remand for the district court to conduct an
initial analysis of the APA claims.

*    *    *    *    *

We summarize our conclusions as follows:

When determining whether *Zauderer* applies, (1) images can be fac-
tual; (2) ideological or emotion-inducing statements are not *per se* contro-
versial or non-factual; (3) "uncontroversial" means not subject to good-faith
dispute about the accuracy of the factual statement; and (4) legitimate state
interests other than the prevention of consumer deception are cognizable
under *Zauderer*.  For the reasons detailed above, the district court erred by
finding *Zauderer* inapplicable to the FDA's newest Warnings.[78]

Applying *Zauderer*, the Warnings survive constitutional muster
against the First Amendment challenge.  We REVERSE and REMAND
with direction for the district court to consider the merits of the APA
challenge.

---

[78] Because we reverse on the First Amendment ruling, we pass no judgment on the
district court's declination to sever or on its application of vacatur.